# USAmeriBank

February 5, 2014

Mr. Robert Rynard, SR
Westport Nursing Tampa, LLC
C/O BVM Management, Inc.
P.O. Box 501188
Indianapolis, IN 46250

Re:  Westport Nursing Tampa LLC

Dear Mr. Rynard,

I am pleased to inform you that USAmeriBank ("Lender") has approved your request for a commercial real estate loan in accordance with the terms and conditions set forth herein. Your acceptance of this commitment will become a binding part of the total transaction and closing documentation.

**LOAN AMOUNT:**  The total debt loan amount shall not exceed - $20,000,000.

**BORROWER:**  Westport Nursing Tampa, LLC - This commitment shall not be assignable, and, post the closing of the loan, there shall be no change in the ownership or control of the Borrower or any Guarantor.

**GUARANTOR:**  Full payment and performance of the loan(s) and the loan documents shall be unlimited, jointly and severally guaranteed by BVM Management Inc.

**PURPOSE:**  To refinance the 230 bed ALF/SNF located at 12250 N 22nd St., Tampa, FL 33612.

**SUBJECT PROPERTY IDENTIFICATION:**  Subject property is located at 12250 N 22nd St., Tampa, FL 33612.

**COLLATERAL:**  Payment of the loan shall be secured by a first real estate mortgage and assignment of any rents, leases and profits on an existing 230 bed ALF/SNF located on the subject property.  USAmeriBank will also perfect a security interest in all equipment, furniture and fixtures located on subject property.  In addition, the Borrower will establish an $8,000,000 cash account held in escrow at USAmeriBank securing the loan as additional collateral.

**LOAN TERM:**  The term of the loan shall be for a period of 24 months from closing.

**INTEREST RATE:**  The interest rate shall be a 4.95% fixed rate.  The loan will have a prepayment penalty of 1% during the first 18 months.



PLAINTIFF'S
EXHIBIT
25
Korhn

CONFIDENTIAL

VNB_071082

**REPAYMENT:**  During the term of the loan borrower shall make monthly payments of principal and interest based on a 20 year amortization with a balloon payment due at maturity.

**CLOSING DATE:**  The loan will close on or before the 28th day of February 2014.

**LOAN COSTS:**  All costs of originating this loan shall be paid by the Borrower at closing. Loan costs include, but will not be limited to, legal fees, title work, appraisal fees, and survey fees.  Borrower agrees to reimburse the Lender for all costs incurred in the event this loan is not consummated as a result of a failure of the Borrower to honor the terms and conditions of this commitment.

**LOAN ORIGINATION FEE:**  The Borrower shall pay Lender a loan origination fee of $200,000, which equals 1.00% of the amount of the loan, with $50,000 due upon acceptance of this commitment letter and the balance due at closing. If the Lender does not close the loan on the terms and conditions materially outlined herein, the $50,000 less any actual underwriting expenses, legal fees, costs of third party reports, or other out of pocket expenses incurred by the lender, will be refunded to the Borrower.  In addition, any third party reports completed on behalf of the Borrower will be assigned to the Borrower. If the Borrower does not close the loan with the Lender on the terms and conditions materially outlined herein, the $50,000 will be retained by the Lender.

**APPRAISAL:**  As a condition precedent to closing, the Lender must be furnished with a real estate appraisal report of the real property and fixed improvements (but not including personal property) based on the "as is normalized" value as measured by the  net loan amount of $12,000,000.  This appraisal report must be acceptable to the Lender, and shall be prepared by an appraiser approved by the Lender in its sole discretion.  The appraiser shall indicate that the appraisal report was prepared for the benefit of the Lender, and that the Lender may rely on the information contained in the report for mortgage loan purposes.

**TITLE INSURANCE:**  The Lender shall be furnished with an ALTA mortgagee title insurance policy issued by a title insurer acceptable to the Lender.  The policy shall (i) provide coverage for the full principal amount of the loan; (ii) insure the mortgage to be a first lien on the property encumbered by the mortgage; (iii) include a Florida Form 9 endorsement; (iv) delete all "standard" exceptions except taxes for the current year; (v) list only those title exceptions acceptable to Lender and its counsel; (vi) contain such "affirmative" coverage as may be required by Lender; and (vii) otherwise be acceptable to the Lender.  Copies of all easements, restrictions and other items of record shown on the title insurance commitment shall accompany the commitment which must be provided 10 days prior to closing.

**SURVEY:**  At least seven (7) days prior to closing, the Lender must be provided two (2) blueprints of a survey of the property securing the loan.  Said survey must be prepared by

VNB_071083

a registered land surveyor approved by the Lender and the title insurer and shall have been made not more than ninety (90) days prior to the date of closing. This survey shall be certified to the Lender, the title insurer, and the Borrower. This survey must be satisfactory to the Lender in its sole discretion, be in compliance with the applicable requirements provided in Schedule "A", and be in conformity with the minimum standard detail requirements for ALTA/ACSM Land Title Surveys and sufficient to delete standard survey exceptions in the loan title policy. Should Borrower have an existing survey that is acceptable to Lender and sufficient to remove the survey exception from the loan title policy, a Survey Affidavit will be signed by Borrower at closing.

**ZONING EVIDENCE:** Borrower guarantees and will submit written evidence to Lender from the appropriate zoning authority that the Property is zoned to allow the current or intended use of the Property, and is consistent with the current land use designation.

**ENVIRONMENTAL ASSESSMENT:** Receipt by Lender of an environmental assessment prepared by an officer of the Lender, or acceptable environmental consultant, which contains conclusions reasonably satisfactory to the Lender that evaluates (i) whether any hazardous waste or other toxic substances are present in the soil or water at or adjacent to the subject property, and (ii) whether the operations at the subject property comply with all air quality and other applicable environmental laws. For this purpose Lender reserves the right upon reasonable notice to enter and investigate the subject property and to take such samples as may be necessary to perform soil, water or other analyses.

**INSURANCE:** Upon receipt of Certificate of Occupancy, Borrower shall submit an insurance binder or policy for fire, wind, extended and optional perils coverage in an amount which precludes the need for co-insurance. Said policy shall be on an ACORD 28 form and include a mortgagee clause in favor of and satisfactory to the Lender. Coverage under said policy will be in an amount no less than the appraised value of the improvements and shall include but not be limited to flood insurance if appropriate. Prior to closing, Lender also requires proof of Liability Insurance coverage in an amount satisfactory to Lender. Coverage shall be on an ACORD 25 form and include Lender as additional insured/certificate holder. Rent loss (6 months) may also be a requirement of the loan. At or prior to closing, Borrower shall submit proof of prepayment of all insurance premiums for a one year term. All insurance policies shall provide that the same shall not be subject to cancellation without thirty (30) days prior written notice to the Lender. Said insurance coverage(s) shall be issued by an insurance carrier of the Borrower's choice so long as carrier has a financial rating by Best's Key Rating of A or better. The following information can be provided to the insurance carrier as the Lender interest clause:

USAmeriBank, isaoa
PO Box 17540
Clearwater, FL  33762

VNB_071084

**FINANCIAL STATEMENTS:**  Lender will require financial statement and federal tax returns as required under the terms of the loan agreement.  Specific requirements are listed below as conditions of the loan.   All financial statements and tax returns provided to the Lender shall be certified to be true, complete and correct in all respects and accurately represent the Borrower's and /or Guarantor's financial condition.

**TAXES AND OBLIGATIONS:**   Borrower will pay all taxes, assessments and governmental charges or liens imposed upon it or in respect of the subject property, before the same shall become delinquent or in default.

**DOCUMENTS OF LOAN:**  Security for this loan will be evidenced by a note, assignment of promissory note and mortgage, security agreement, appropriate state and county UCC filings and all other documents required by the Lender and/or Lender's legal counsel.

**PRE CONDITIONS:**  The following is a list of general conditions to be satisfied prior to closing:

1.  Complete copy of organizational documents for Borrower and/or Guarantor.
2.  Personal and/or Business depository accounts to be opened with Lender.
3.  Verification of Guarantor's/Borrower's liquidity of not less than $3,000,000. $3,000,000 deposited by the borrower into the $8,000,000 cash collateral account referenced in condition 14 below will serve to satisfy this requirement.
4.  Appropriate Insurances:  hazard/wind/flood/general liability/loss of rents.
5.  Appraisal indicating a maximum "as  is normalized" going concern LTV of 75% reviewed and acceptable by USAB, as measured based on the net loan amount of $12,000,000.
6.  Maximum Loan to Refinance Cost of 78% based on a net loan amount of $12,000,000 versus a total purchase/refinance cost of at least $15,350,000.  For the purposes of the "loan to Refinance Cost" calculation, the numerator would be the net loan amount of $12,000,000 and the denominator would be the sum of (i) $15,000,000 of the $20,000,000 gross loan amount, (ii) expenses incurred up to the closing date with regard to diligence and execution of the subject property transaction, (iii) monthly amortization or principal reduction of the existing indebtedness that the limited partnership has been paying to the current lender (expected to include payments from August 2013 to February of 2014), and (iv) any other reasonable project related out of pocket expenses incurred by the Borrower.
7.  Environmental assessment acceptable to USAB.
8.  SDNA on all tenants
9.  Tenant Estoppels on all tenants
10. Survey acceptable to Title Company.
11. Title insurance.
12. BVM Management, Inc. or wholly owned BVM subsidiary to execute a lease with Borrower for no less than $2,500,000, NNN annually.

CONFIDENTIAL

13. BVM related operating entity to maintain a minimum EBITDARM of no less than $2,500,000 annually. EBITDARM measurements to be calculated from the operations of the subject property

14. Borrower to establish an $8,000,000 cash account at USAB to be held as additional collateral.

15. Borrower cannot sell the independent living facility without USAB prior consent.

**FINANCIAL CONDITIONS:** The following is a list of financial conditions to be satisfied prior to and or throughout the term of the loan:

1. Borrower to provide federal tax returns on an annual basis within 30 days of filing.
2. Borrower to provide Compiled financial statements on an quarterly basis.
3. Guarantor to provide company prepared financial statements annually within 30 days of FYE and audited financial statements on an annual basis within 90 days of FYE.
4. Rent Roll on property to be provided annually.
5. Subject property operating entity to maintain a minimum debt service coverage of 1.75x tested annually beginning 12/31/14; debt service coverage is calculated as EBITDAR before distributions divided by subject loan principal and interest payments. For the avoidance of doubt, the following is an illustrative example: EBITDAR of $2,500,000 divided by annual principal and interest payments of $1,200,000 would equal a debt service coverage of 2.1x and therefore compliant.

**TIME:** Time is of the essence with respect to all dates and periods of time set forth in this loan commitment.

**TERMINATION:** This commitment may be terminated at the Lender's option by written notice to Borrower at the address set forth above upon the occurrence of any of the following events:

a) Borrower's or any Guarantor's assignment for the benefit of its creditors, admissions in writing of its inability to pay its debts as they become due, the filing of a petition of bankruptcy or being adjudicated a bankrupt or insolvent, or filing of a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, receivership or similar relief under any present or future statute, law or regulation. The foregoing shall also apply to any general partner of Borrower or of any Guarantor.

b) Any change of the financial condition of Borrower or any Guarantor, subsequent to the above date of this commitment which is, in the sole discretion of Lender material and adverse.

c) If any statement or representation made by Borrower in the commitment, or in support of the loan, shall prove untrue.

VNB_071086

d) Default by Borrower in performance of any other covenant, condition or agreement set forth in this commitment.

e) Default by Borrower or any Guarantor under any other loan or extension of credit by Lender to Borrower or any Guarantor.

f) Failure to pay the commitment fee when due.

g) Failure to accept and return the original of this commitment within the allotted time period.

h) All prior representations and agreements between the parties are merged in this commitment and this commitment can only be changed by an instrument     in writing signed by the parties hereto.  Any termination of this commitment shall not affect Lender's rights to enforce Paragraph "Loan Costs" hereof, which rights shall survive any such termination.

**DOCUMENTS AND EXHIBITS:**  All documents and exhibits required by Lender incident to the loan are to be, in form and substance, acceptable to Lender in its sole discretion. Additionally, all schedules and exhibits to this commitment shall be incorporated into and made a part of this commitment.

**ASSIGNMENT:**   The provisions of this commitment cannot be waived, modified, or assigned without prior written consent of Lender.

CONFIDENTIAL

**EXPIRATION & ACCEPTANCE:**  This commitment will be valid for a period of sixty (60) days from acceptance, provided such acceptance is received within one (1) week of the date of this letter.  Indicate your acceptance by signing below and returning the original of this commitment and any exhibits to me by February 6, 2014.  This commitment contains the entire offering of Lender to Borrower and supersedes all previous agreements, oral negotiations and/or writings.

The Lender may, prior to closing, make additional requirements in order to comply with federal regulations, governmental agencies, and as Lender's legal counsel may deem necessary regarding legal matters, but not business decisions.

Please contact me if you have any questions.

Sincerely,

Digitally signed by Trey Korhn
DN: cn=Trey Korhn, o=USAmeriBank, ou, email=tkorhn@usamerib ank.com, c=US
Date: 2014.02.05 07:11:33 -05'00'

Trey Korhn
Vice President

CONFIDENTIAL

VNB_071088

The undersigned hereby accepts this loan commitment and agrees to the terms and conditions hereof, this _____ day of _____ 2014.

BORROWER:  Westport Nursing Tampa, LLC

_____

By: Robert L. Rynard, Sr. as President of BVM Management Inc.

Its:  General Partner

CONFIDENTIAL

VNB_071089