**APPROVED**

Date Received:    Date Of Action:
02/24/2010 03/11/2010
FL OFFICE OF INSURANCE REGULATION

## UNIVERSITY VILLAGE
## LIFE - CARE RESIDENCY AND CARE CONTRACT

### SUBSEQUENT GENERATION RESIDENTS - STANDARD PLAN

THIS LIFE - CARE RESIDENCY AND CARE CONTRACT (the "Contract") entered into the date below written, by and between WESTPORT HOLDINGS TAMPA LIMITED PARTNERSHIP, a Delaware limited partnership, doing business as University Village and the Resident or Residents, whose name(s) and signature(s) appear at the end of this Contract (herein referred to separately and together as the "Resident").

### RECITALS

A.      Westport Holdings Tampa Limited Partnership ("Westport Holdings" or "Westport") maintains retirement living facilities at 12401 North 22nd Street, Tampa, Hillsborough County, Florida, consisting of an independent living facility providing those services identified in Paragraph 2 of this Contract (herein the "Retirement Center"). The Retirement Center is exclusively owned or leased by Westport Holdings.

B.      Westport Holdings is affiliated with Westport Nursing Tampa, L.L.C. ("Westport Nursing"), which owns in close proximity to the Retirement Center an assisted living facility providing those services described in Paragraphs 3 and 4 of this Contract (herein the "ALF") and a nursing home facility providing those services described in Paragraph 5 of this Contract (herein the "Skilled Nursing Center").

C.      Westport Holdings has contracted with the operator of the ALF and Skilled Nursing Center ("Health Care Services Provider") to provide to Resident those services described in Paragraphs 3,4 and 5 of this Contract.

D.      Resident desires to occupy an apartment or villa within the Retirement Center with the option of relocating to the ALF or Skilled Nursing Center at a later date, if necessary. (As used herein, the term "Apartment/Villa" shall mean a villa or apartment facilities within the Retirement Center or an apartment in the ALF, as the context requires; the term "Resident's Room" or "Room" shall mean either an apartment or a room at the Skilled Nursing Center; and the Retirement Center, the ALF and the Skilled Nursing Center, along with all other property owned by Westport at 12401 North 22nd Street, Tampa, Hillsborough County, Florida, are collectively referred to as the "Village Property" or "University Village").

E.      The parties acknowledge that the Definitions identified on Exhibit "A" of this Contract shall control the meaning of the terms used herein.

F.      Neither Westport Holdings nor Westport Nursing is affiliated with a religious or non-profit organization/management entity.

NOW, THEREFORE, in consideration of the above Recitals (incorporated herein by reference), the agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, the parties agree as follows:



DEFENDANT'S EXHIBIT
*Warren #4*
*4.24.23 OK*
PENGAD 800-631-6989

APPROVED

Date Received: Date Of Action:
02/24/2010 03/11/2010

FL OFFICE OF INSURANCE REGULATION

## PARAGRAPH 1: LIVING ACCOMMODATION.

1.01   Retirement Center.

(a)   In consideration of the amounts paid pursuant to the terms of Paragraph 7 below, the Resident shall occupy the Apartment/Villa number within the Retirement Center as identified under the Resident's signature at the end of this Contract (herein the Resident's "Original Apartment/Villa"). Resident's occupancy of such Apartment/Villa shall be subject to the terms described throughout this Contract.

(b)   The Resident is required to meet (at the time of execution hereof and at all times prior to occupancy) minimum requirements of net worth and monthly income, as determined by Westport Holdings, and attached hereto as Exhibit "B", to be accepted as a Resident.

(c)   Resident will be required to submit to a physical examination and provide a physician's report form to Westport Holdings. Resident is required to meet (at the time of execution hereof and at all times prior to occupancy) minimum health requirements (described on Exhibit "B" attached hereto) to be accepted as a Resident.

1.02   Resident Relocation.

(a)   If it becomes necessary for the Resident to relocate from the Retirement Center to the ALF or Skilled Nursing Center, then Westport Holdings will provide for such relocation, at the expense of Resident, subject to Room availability. If there is no available Room at the ALF or Skilled Nursing Center (whichever is needed), then Westport Holdings will provide Resident with a comparable Room at another health care facility at Resident's expense until such time as a Room becomes available at the ALF or Skilled Nursing Center.

(b)   Except for those health services provided for which a discount or Health Care Line of Credit reduction is applicable under Paragraph 6 of this Contract, the Resident shall pay the standard fee then-prevailing (the "Prevailing Fee") for services provided at the ALF and Skilled Nursing Center upon relocation.

(c)   Upon relocation, the Resident's Entrance Deposit (defined below) shall apply to Resident's Room pursuant to the terms of subparagraph 7.03 and shall be adjusted if required pursuant to the terms thereof.

(d)   Notwithstanding the provisions of subparagraph 8.03(f) below, should Resident be unable to pay Monthly Service Fee as a result of financial reversals, Westport Holdings shall have the option of transferring Resident to a less expensive New Apartment/Villa or Room.

(e)   As used herein the term "New Apartment/Villa" shall mean any Apartment/Villa occupied by Resident during the term of this Contract, in the Retirement Center or ALF, other than Resident's Original Apartment/Villa.

1.03   Release of Apartment/Villa Upon Relocation

(a)   (1)   If an Apartment/Villa is occupied by only one Resident in the Retirement Center or ALF, and such Resident permanently transfers to a New Apartment/Villa at the Retirement Center or ALF, his or her Apartment/Villa in the Retirement Center or ALF shall be released.

(2)   If an Apartment/Villa is occupied by only one Resident in the Retirement Center or ALF and such Resident transfers to Permanent In-Patient Care (defined in Exhibit "A" attached hereto), his or her Apartment/Villa in the Retirement Center or ALF shall be released.

(b)   (1)   In the case of two Residents who originally occupied one Apartment/Villa in the Retirement Center, if one Resident transfers to the ALF, the Apartment/Villa in the Retirement Center is not released until the second Resident no longer permanently resides at the Retirement Center or ALF.

(2)   In the case of two Residents who occupy one Apartment/Villa in the Retirement Center or the ALF, if one Resident transfers to Permanent In-Patient Care, the Apartment/Villa in the Retirement Center or ALF is not released until the second Resident no longer permanently resides at the Retirement Center or ALF.

2

APPROVED
Date Received:   Date Of Action:
02/24/2010  03/11/2010
OFFICE OF INSURANCE REGULATION

PARAGRAPH 2: GENERAL SERVICES IN THE RETIREMENT CENTER.

Westport Holdings will provide the general services described in this Paragraph 2 to the Resident living in the Retirement Center. Resident will receive posted notice sixty (60) days in advance of a change in the scope of services provided.

2.01   Housekeeping. On a weekly basis Westport Holdings will vacuum, clean all vinyl or tile floors, and clean bathrooms. On an "as needed" basis Westport Holdings will perform heavy cleaning such as windows and cleaning of carpets. The Resident agrees to maintain the Apartment/Villa in a clean, sanitary and orderly condition. If the Resident fails to do so, Westport Holdings shall have the right to restore the Apartment/Villa to a clean, sanitary and orderly condition at a reasonable cost to the Resident.

2.02   Utilities. Westport Holdings will furnish water, electricity, heat and air-conditioning for the Apartment/Villa, and will provide an emergency call system, a cable television system, and wiring for installation of a telephone. All telephone installation charges and telephone service charges will be paid by the Resident.

2.03   Furnishings. Westport Holdings will provide carpeting, drapes or blinds, and kitchen appliances for the Apartment/Villa. All other furnishings shall be provided by the Resident.

2.04   Laundry. Westport Holdings will furnish a change of bed linen, towels and washcloths on a weekly basis. Laundering of personal effects is the responsibility of the Resident. Coin operated laundry facilities will be available in the Retirement Center.

2.05   Maintenance. Westport Holdings will make all necessary repairs and replacement of property provided by Westport Holdings. Repair and replacement of the Resident's property is the Resident's responsibility. No physical changes shall be made to the Apartment/Villa without prior written approval of Westport Holdings. Such changes shall be made at the expense of the Resident.

2.06   Parking. Each Apartment/Villa (whether occupied by one or two Residents) will be assigned a single parking space provided the Resident owns and drives an automobile. If covered parking is desired, it will be available for an additional fee, subject to availability. In no case shall Resident receive more than one parking space total (per Apartment/Villa). Penthouse units include covered parking at no additional fee. Westport Holdings shall not be liable for any loss or damage to the Resident's automobile or its contents.

2.07   Transportation. Westport Holdings will provide scheduled routine transportation for medical, dental, financial, and shopping services within a reasonable proximity to the Retirement Center, as determined by Westport, as well as for social and leisure activities. Subject to availability, all transportation will be provided during normal scheduled hours.

2.08   Social and Leisure Activities. Social and leisure activities will be planned and coordinated with the Residents by the Activities Director. Residents shall have access to the recreational facilities, available generally to Residents of the Village Property during hours posted by Westport.

2.09   Food Service. Westport Holdings will provide the Resident one full course meal each day in the Retirement Center main dining room. If more than one meal per day is desired by Resident, such meals shall be available for a separate charge which will be added to the statement of amounts owed by such Resident to Westport Holdings. The statement of amounts owed shall be provided on a monthly basis (the "Monthly Statement"). Guests of a Resident are permitted to use the dining room on a reservation basis and the charge for guest meals will be added to the Resident's Monthly Statement.

PARAGRAPH 3: GENERAL SERVICES IN THE ALF.

Westport Holdings has contracted with Health Care Services Provider to provide the general services described in this Paragraph 3 to the Resident living in the ALF. Resident will receive posted notice sixty (60) days in advance of a change in the scope of services provided.

3.01   General. The services described in Paragraph 2 under the titles Housekeeping, Utilities, Furnishings, Maintenance, Transportation and Social and Leisure Activities shall be provided in the ALF in the manner described in Paragraph 2.

3.02   Laundry. Westport will furnish a change of bed linen, towels and washcloths on a weekly basis at the ALF. Coin Operated laundry facilities will be available in the ALF. Westport will also do personal laundry at an additional charge.

3.03   Parking. There will be no Resident parking available in the ALF.

3.04   Food Service. Westport will provide the Resident of the ALF three meals per day, including breakfast, lunch, and dinner. Guests of a Resident are permitted to use the dining room on a reservation basis and the charge for guest meals will be added to the Resident's Monthly Statement. Limited therapeutic diets, as determined by Westport, will be available on order of the Resident's attending physician, but a separate charge may be made for this service and added to the Resident's Monthly Statement.

3

APPROVED

Date Received:      Date Of Action:
02/24/2010  03/11/2010

FL OFFICE OF INSURANCE REGULATION

### PARAGRAPH 4: PERSONAL SERVICES IN THE ALF

Westport Holdings has contracted with Health Care Services Provider to provide the general services described in this Paragraph 4 to the Resident living in the ALF. Resident will receive posted notice sixty (60) days in advance of a change in the scope of services provided.

4.01   Provision of Services.

(a)   Health Care Services Provider will provide the personal services described in this subparagraph 4.02 below (herein the "Personal Services") to the Resident living in the ALF on an occasional basis.

(b)   Licensed nurses employed by Health Care Services Provider (herein the "Designated Village Nurse") will periodically perform an evaluation to determine Resident's Personal Services requirements. If the "ALF Administrator" (designated by Health Care Services Provider) after review of the Designated Village Nurse's evaluation determines, in such ALF Administrator's discretion, that Resident requires Personal Services on more than an occasional basis, then Resident shall be charged additional amounts as are determined by Health Care Services Provider and posted on the Village Property; provided that Resident will receive posted notice sixty (60) days in advance of any increases in such amounts.

4.02   Personal Services Described.  As used in subparagraph 4.01 above, the following items are included within the meaning of Personal Services, with such items being further defined under the Florida Administrative Code or other applicable law.

(a)   Assistance with Ambulation.

(b)   Assistance with Bathing.

(c)   Assistance with Dressing.

(d)   Assistance with Eating.

(e)   Assistance with Grooming.

(f)   Assistance with Securing Necessary Health Care.

(g)   Assistance with Securing Social and Leisure Services.

(h)   Companionship.

(i)   Emotional Security.

(j)   Emotional Support.

(k)   Personal Supervision.

(l)   Supervision or Self-Administered Medications.

(m)   Administration of Medications.

### PARAGRAPH 5: SERVICES IN THE SKILLED NURSING CENTER.

Westport Holdings has contracted with Health Care Services Provider to provide the services described in this Paragraph 5 to Residents in the Skilled Nursing Center. Resident will receive posted notice sixty (60) days in advance of a change in the scope of services provided.

5.01   Nursing Services.  Includes 24-hour supervision by licensed nurses providing personal services to aid with daily living needs.

5.02   Housekeeping.  Housekeeping and linens will be provided on an "as needed" basis.

5.03   Therapeutic Activities.  Therapeutic activities shall be provided and charged for on an "as needed" basis.

APPROVED

Date Received:   Date Of Action:
02/24/2010   03/11/2010
OFFICE OF INSURANCE REGULATION

5.04   Therapeutic Diets. Therapeutic diets will be provided and charged for on an "as needed" basis.

5.05   Services Provided - Cost. Health Care Services Provider shall maintain a list (the "Services Lists") of services provided at the Skilled Nursing Center including an identification of which services are included in the Resident's In-Patient Care Fee and which services are to be separately charged to Resident. Health Care Services Provider may revise the Services List from time to time in its discretion; provided that Resident will receive posted notice sixty (60) days in advance of any such revision.

5.06   Food Service. Health Care Services Provider will provide the Resident of the Skilled Nursing Center three meals per day, including breakfast, lunch and dinner. Guests of a Resident are permitted to use the dining room on a reservation basis and the charge for guest meals will be added to the Resident's Monthly Statement. Limited therapeutic diets will be available on order of the Resident's attending physician at no additional charge.

5.07   Other Services. Other services such as physical therapy are available and charged for as needed.

## PARAGRAPH 6: HEALTH CARE BENEFIT.

6.01   Health Care Discounts.

(a)   Subject to the maximum lifetime benefit set forth in subparagraph 6.01(b) and to the provisions in subparagraph 6.03, Westport Holdings will provide a discount to Resident for each day Resident is provided services at the ALF or at the Skilled Nursing Center, such discount to be applied to the standard fee then-prevailing for services provided at the ALF or Skilled Nursing Center. The amount of the discount for each day Resident is provided services at the ALF will be $16.43. The amount of the discount for each day Resident is provided In-Patient Care at the Skilled Nursing Center will be $24.65.

(b)   The maximum lifetime benefit provided under this paragraph is $21,000 per Resident. If there are two Residents in one Apartment/Villa (executing a single Residency and Care Contract), each resident will have a separate maximum lifetime benefit of $21,000 that cannot be shared with the other Resident.

6.02   Health Care Line of Credit.   Upon assuming occupancy, Resident will have a Health Care Line of Credit equal to the refundable portion of the Entrance Deposit that corresponds to the percentage Refund Plan selected by Resident under paragraph 7.02 of this Contract. Upon Resident's transfer to the ALF or Skilled Nursing Center, the Health Care Line of Credit will be used to pay the incremental cost of the prevailing Monthly Service Fee at the ALF (including any additional charges that may be incurred under subparagraph 4.01(b) of this Contract) or the prevailing In-Patient Care Fee at the Skilled Nursing Center over Resident's Monthly Service Fee at the Retirement Center, as set forth in this subparagraph 6.02.

(a)   Resident's Payment Obligation Upon Transfer to the ALF or Skilled Nursing Center. Except as otherwise provided in subparagraphs 6.02(c), 6.02 (d), 6.02(e), and 6.03, if only one Resident has executed this Contract or if two Residents have executed this Contract and both Residents permanently transfer to the same apartment in the ALF, Resident will be required to pay an amount equal to the Monthly Service Fee paid by the Resident at the Retirement Center, adjusted annually as described in paragraph 7.04 (a) (3) of the this Contract. When two Residents have executed this Contract and the two Residents do not permanently reside in the same Apartment/Villa or Room, each Resident will be required to pay an amount equal to the Monthly Service Fee at the Retirement Center, adjusted to single occupancy.

(b)   Reduction of Health Care Line of Credit.   The Health Care Line of Credit shall be reduced by a maximum amount equal to the prevailing Monthly Service Fee at the ALF (including Personalized Assisted Living Fee) or the prevailing In-Patient Care Fee at the Skilled Nursing Center, minus (1) the amount of any discount provided under subparagraph 6.01 of this Contract and (2) the amount of the Monthly Service Fee Resident paid at the Retirement Center.

(c)   Payment for Additional Services. The Health Care Line of Credit may not be reduced for any additional services ordered by the Resident or the Resident's physician and these shall be paid on a monthly basis by the Resident.

(d)   Temporary Transfers.   In the case of temporary transfers to the ALF or Skilled Nursing Center, the Health Care Line of Credit shall be reduced by the entire amount of the prevailing Monthly Service Fee at the ALF or the prevailing In-Patient Care Fee at the Skilled Nursing Center, less the amount of any discounts provided under subparagraph 6.01 of this Contract, for a maximum of 60 days. Thereafter the Health Care Line of Credit may not be used unless the Resident elects permanent transfer and releases his Apartment/Villa at the Retirement Center or ALF. Until Resident releases his Apartment/Villa at the Retirement Center or ALF, Resident will be required to pay the full amount of the Monthly Service Fees at the Retirement Center, the ALF or the Nursing Center, whichever applies. There will be no adjustment for second person fee to the Retirement Center Monthly Service Fee during temporary transfers.

APPROVED

Date Received: 02/24/2010   Date Of Action: 03/11/2010

FL OFFICE OF INSURANCE REGULATION

(e)    Exhaustion of Health Care Line of Credit. If the entire amount of the Health Care Line of Credit is exhausted, Resident agrees to pay the then prevailing Monthly Service Fee at the ALF or the In-Patient Care Fee at the Skilled Nursing Center, less any discount available under subparagraph 6.01 of this Contract.

(f)    Reduction of Resident Refund.    The amount of any refund payable to resident under subparagraph 6.02 of this contract upon termination of the contract will be reduced by an amount equal to the amount of all reductions to Resident's Health Care Line of Credit under this subparagraph 6.02.

6.03    Resident's Obligation to Exhaust Alternative Funding Programs.    Before Resident is entitled to any discount under subparagraph 6.01 or the benefits of the Health Care Line of Credit under subparagraph 6.02, the Resident must exhaust any and all available private insurance services, government-sponsored health care services (including, but not limited to, Medicare), or similar programs (such programs collectively referred to herein as the "Alternative Funding Program"). If the Resident requires services in the ALF or In-Patient Care in the Skilled Nursing Center that is covered by an Alternative Funding Program, and the Resident fails to timely file for refund under the applicable Alternative Funding Program or refuses a treatment that nullifies the care provided by such Alternative Funding Program, then the Resident shall not be entitled to any discount that would otherwise be provided under subparagraph 6.01 and shall not be eligible for the benefits of the Health Care Line of Credit under subparagraph 6.02 for such services. In that event, Resident will be required to pay the then prevailing Monthly Service Fee at the ALF or the In-Patient Care Fee at the Skilled Nursing Center.

6.04    Levels of Health Care.

(a)    The Resident recognizes that at some future time it may be in his or her best interest to be transferred from the Retirement Center to another level of care at the Village Property, either on a temporary or permanent basis. The decision for such transfer shall be made by the Village Health Care Committee after considering the best interests of the Resident. The "Village Health Care Committee" (defined in Exhibit "A") will consult the Resident, Resident's family or legal representative, Resident's physician, the Village Administrator and the Village Medical Director in making its decision of whether or not to relocate Resident. It is the goal of Westport to maintain the Resident in as independent a setting as possible. In the event that such decision is made, Resident agrees to relocate to the facility identified by the Village Health Care Committee.

(b)    Circumstances in which it shall be considered to be in the best interest of the Resident to relocate shall include, but are not limited to, those situations in which the Village Health Care Committee determines that:

(1)    The Resident requires assistance in areas of daily living or nursing care;

(2)    Remaining at the facility presently occupied by Resident would be harmful to either the Resident or to other persons;

(3)    The Resident is no longer able to function independently; or

(4)    The Resident's illness, infirmity or behavior becomes detrimental to the morale of others.

6.05    Health and Wellness Office. A Health and Wellness Office is located on the Village Property (the "Health and Wellness Office") and is open during regular working hours.

6.06    Personal Medical Expenses. Any and all expenses or charges which may be incurred by or on behalf of the Resident for physicians, medicines, medical supplies, special duty nursing, private rooms, special diets, hospitalization and any and all other personal medical expenses, whether such expenses are incurred while the Resident is located at the Village Property or at any other facility, shall be the sole and exclusive liability and responsibility of the Resident.

6.07    Special Care. If the Resident shall temporarily require care beyond the scope of the In-Patient Care provided by or available at the Skilled Nursing Center or beyond the scope of the care provided by or available at the ALF, Westport, in accordance with the instructions of the Resident's physician, shall make arrangements for the transfer of the Resident to a hospital, another nursing home, another assisted living facility, or other institution capable of providing such specialized care. The Resident shall be responsible for the expense of such transfer and for the expense of such other hospital, nursing home, assisted living facility, or other institution. Except as provided in subparagraph 8.01(a)(3) below, such transfer shall not constitute a "Termination" of this Contract.

6.08    Health Insurance Coverage. The Resident is required, if eligible, to maintain Medicare Parts A and B coverage (as defined by applicable regulations of the Health Care Financing Agency). Furthermore, Resident shall acquire medical insurance (supplemental medical insurance in the case of Medicare Part A covered Residents) covering hospitalization, and provide Westport Holdings with proof of such coverage, in such amounts and with such companies as are required from time to time by Westport Holdings. Westport shall have no responsibility or liability for Resident's acquisition or maintenance of such policies.

APPROVED

Date Received: Date Of Action:
02/24/2010 08/17/2010

FL OFFICE OF INSURANCE REGULATION

6.09 Liability. Westport shall not be responsible for any loss, damage, injury, or expense for any services provided by persons other than services rendered by Westport employees at the Village Property.

6.10 Subrogation. Westport has the right of subrogation with respect to any claim a Resident may have against a third party on account of injuries inflicted on the Resident by such third party, to the extent of all damages and expenses incurred by Westport by reason of such injury.

## PARAGRAPH 7: FEES, CHARGES AND PAYMENTS.

The Resident agrees to pay the following fees, charges and payments:

7.01 Entrance Deposit - Retirement Center.

(a) The Resident agrees to pay, prior to occupancy of the Apartment/Villa, an entrance deposit to be administered pursuant to the terms of this Paragraph 7 (the "Entrance Deposit"), in the amount identified below the Resident's signature.

(b) The Entrance Deposit will be held for a period of seven days in an Entrance Deposit escrow account in an institution authorized under applicable law (the "Village Escrow Account"). Alternatively, at Resident's request the Entrance Deposit will be held for a period of seven days by Westport Holdings and not deposited. In either event, if Resident rescinds this contract within the seven-day period the full amount of the Entrance Deposit will be returned to Resident. If the contract is not rescinded within the seven day period, the Entrance Deposit will be transferred to Westport Holdings.

7.02 ENTRANCE DEPOSIT – REFUND UPON TERMINATION. UPON TERMINATION OF THIS CONTRACT (THE "TERMINATION"), WESTPORT HOLDINGS WILL REFUND, WITHIN 120 DAYS (WITHIN 60 DAYS IN THE CASE OF TERMINATION UNDER SUBPARAGRAPH 8.03(g) BELOW; WITHIN 45 DAYS IN THE CASE OF TERMINATION UNDER SUBPARAGRAPH 8.03(f) BELOW), AN AMOUNT EQUAL TO RESIDENT'S ENTRANCE DEPOSIT, LESS ANY PRIOR PARTIAL REFUNDS OF RESIDENT'S ENTRANCE DEPOSIT, LESS A TERMINATION AND REFURBISHING FEE CALCULATED AS DESCRIBED IN EXHIBIT C, BASED ON THE REFURBISHING FEE PLAN SELECTED BY RESIDENT, AND LESS THE AGGREGATE AMOUNT OF ALL REDUCTIONS OF RESIDENT'S HEALTH CARE LINE OF CREDIT UNDER SUBPARAGRAPH 6.02 OF THIS CONTRACT. IF THE CONTRACT IS TERMINATED UNDER PARAGRAPH 8.01 OR 8.02 BELOW, THE REFUND WILL BE PAID TO RESIDENT'S ESTATE. IF THE CONTRACT IS TERMINATED UNDER PARAGRAPH 8.03 BELOW, THE REFUND WILL BE PAID TO RESIDENT OR TO SUCH OTHER PERSON AS RESIDENT MAY DIRECT IN A SIGNED, NOTARIZED WRITING RECEIVED BY WESTPORT HOLDINGS.

7.03 Entrance Deposit - New Apartment/Villa, ALF, Skilled Nursing Center.

(a) If a Resident relocates to a New Apartment/Villa in the Retirement Center and the then-prevailing Entrance Deposit for the New Apartment/Villa is greater than the Entrance Deposit paid on the Original Apartment/Villa, then the Resident will pay to Westport Holdings an amount equal to the difference obtained by subtracting the then-prevailing Entrance Deposit for the New Apartment/Villa minus the Entrance Deposit paid by Resident on the Original Apartment/Villa.

(b) If a Resident relocates to a New Apartment/Villa in the Retirement Center and the then-prevailing Entrance Deposit for the New Apartment/Villa is less than the Entrance Deposit paid by Resident on the Resident's then-current Apartment/Villa, then the Entrance Deposit required on the New Apartment/Villa will be increased to an amount equal to the Entrance Deposit paid for Resident's Original Apartment/Villa.

(c) In any case of relocation, the Monthly Service Fee payable under subparagraph 7.04, below, will be adjusted to the then-prevailing rate corresponding to the New Apartment/Villa and the Resident's prior Apartment/Villa shall be released for resale by Westport Holdings.

(d) If a Resident relocates to the ALF, the Resident's Entrance Deposit shall remain the same and shall be retained by Westport Holdings subject to the terms of subparagraph 7.02 above.

(e) If a Resident relocates to the Skilled Nursing Center, the Resident's Entrance Deposit shall remain the same and shall be retained by Westport Holdings subject to the terms of subparagraph 7.02 above.

**APPROVED**

Date Received:   Date Of Action:
02/24/2010  03/11/2010
FL OFFICE OF INSURANCE REGULATION

7.04  Monthly Service Fee, In-Patient Care Fee.

(a)  Monthly Service Fee - Retirement Center.

(1)  Initially, the Resident agrees to pay a service fee identified as the "Monthly Service Fee" below Resident's signature hereon (the "Monthly Service Fee") at the Retirement Center, which includes a second-person occupancy fee identified below Resident's signature hereon (the "Second-Person Fee"). If no second-person occupancy fee is identified, then the Monthly Service Fee is based on single occupancy.

(2)  The Monthly Service Fee is subject to increase as provided in subparagraph 7.04(a)(3) below and relates solely to the Apartment/Villa which the Resident will initially be living in as identified by the Resident's signature line at the end of this Contract, subject to increases described in subparagraph 7.04(a)(3) below.

(3)  Unless Resident relocates, the Monthly Service Fee can only be increased once annually on such date as is designated by Westport Holdings (even if the first adjustment would be less than one year after Resident's initial occupancy at the Retirement Center or transfer to a New Apartment) after sixty (60) days notice to the Resident. Any increase shall not be greater than the sum of:

(i)  The percentage increase in the Consumer Price Index for all Urban Consumers (all items) for Class A areas of the Southern region, published by the Bureau of Labor Statistics, U.S. Department of Labor, Washington, D.C., or the successor of that Index, plus 3%, plus;

(ii)  Resident's proportionate share of any increase in municipal, local, state and federal taxes (real property, personal property or excise) payable by Westport Holdings with respect to the Retirement Center.

(b)  Monthly Service Fee - ALF, New Apartment/Villa.

(1)  One Resident.

(i)  When an Apartment/Villa is occupied by only one Resident, if the Resident permanently moves to a different Apartment/Villa in the Retirement Center or to an apartment in the ALF, the Resident will pay the then-prevailing Monthly Service Fee relating to the New Apartment/Villa, less any discounts or reductions that may be applicable under paragraph 6 of this contract. If requested by Westport Holdings, Resident will execute a confirmation of the terms and Monthly Service fee relating to the New Apartment/Villa.

(ii)  The Resident shall continue to pay the Monthly Service Fee (for that Apartment/Villa at the Retirement Center most recently occupied by the Resident) while residing at the ALF until that date when Resident advises Westport Holdings that such Resident intends to reside permanently at the ALF and, therefore, releases his or her Apartment/Villa at the Retirement Center for resale (in which case the Resident shall thereafter pay only the Monthly Service Fee at the ALF).

(2)  Two Residents.

(i)  When two Residents occupy one Apartment/Villa in the Retirement Center, unless one of the Residents has already transferred to the ALF or In-Patient Care, they may only transfer to a New Apartment/Villa in the Retirement Center if both Residents transfer; such transfer shall be governed under the terms of subparagraph 7.04(b)(1), above.

(ii)  In the case of two Residents occupying one Apartment/Villa in the Retirement Center, if one Resident transfers permanently to the ALF, the Monthly Service Fee for the Resident in the Retirement Center will be adjusted to single occupancy. The Resident in the ALF will pay the then-prevailing single occupancy Monthly Service Fee for the ALF, less any discounts or reductions that may be applicable under paragraph 6 of this contract.

(3)  Increases at ALF. The Monthly Service Fee for the Resident in the ALF is subject to increases, which increases are not limited to the increases permitted under subparagraph 7.04(a)(3) above; provided that Resident will receive written notice sixty (60) days in advance of such increase.

(c)  Monthly Service Fee at Termination. In the event of Termination due to Resident's death, Resident's personal representative or estate shall pay the then-prevailing Monthly Service Fee (at the Retirement Center or ALF) for 30 days following Resident's death, or until the Resident's Apartment/Villa is vacated of all the Resident's personal property, whichever occurs last.

(d)    In-Patient Care Fee - Skilled Nursing Center.

APPROVED

Date Received:    Date Of Action:
02/24/2010 03/11/2010
FL OFFICE OF INSURANCE REGULATION

(1)    One Resident.

(i)    Upon transfer to the Skilled Nursing Center, the Resident agrees to pay the then-prevailing In-Patient Care fee for health care (the "In-Patient Care Fee") at such facilities, less any discounts or reductions that may be applicable under paragraph 6 of this contract. .

(ii)    The Resident shall continue to pay the Monthly Service Fee (for that Apartment/Villa most recently occupied by the Resident) while residing at the Skilled Nursing Center until that date when the Resident advises Westport Holdings that such Resident intends to reside permanently at the Skilled Nursing Center ("Permanent In-Patient Care") and therefore releases his or her Apartment/Villa for resale (in which case the Resident shall thereafter pay only the In-Patient Care Fee, less any discounts or reductions that may be applicable under paragraph 6 of this contract).

(iii)    A Resident receiving In-Patient Care after exhausting all applicable discounts will pay both the Monthly Service Fee relating to his or her Apartment/Villa as well as the then-prevailing In-Patient Care Fee until such Resident elects Permanent In-Patient Care.

(iv)    If the applicable Monthly Service Fee increases while the Resident is occupying the Skilled Nursing Center then the Resident's Monthly Service Fee shall be increased accordingly, provided that Resident will receive written notice sixty (60) days in advance of such increase.

(2)    Two Residents.  When two Residents who have jointly executed this Contract occupy:

(i)    the same Apartment/Villa in the Retirement Center;

(ii)    the same apartment in the ALF; or

(iii)    one Apartment/Villa in the Retirement Center and one apartment in the ALF; and one Resident transfers permanently to the Skilled Nursing Center, the Monthly Service Fee will be adjusted so that the Resident in the Retirement Center or the ALF pays for single occupancy.  At such time as both Residents acquire Permanent In-Patient Care status and release their Apartment/Villa for resale, they will no longer be required to pay a Monthly Service Fee relating to the Apartment/Villa and will pay only for the In-Patient Care.

7.05    Potential Tax Liability.

(a)    IN 1985, CONGRESS PASSED LEGISLATION THAT CREATES A MEANINGFUL RISK THAT THE INTERNAL REVENUE SERVICE ("IRS") COULD CLASSIFY PART OR ALL OF THE RESIDENT'S ENTRANCE DEPOSIT AS A BELOW MARKET INTEREST-RATE LOAN. IF ANY PORTION OF THE ENTRANCE DEPOSIT MADE BY THE RESIDENT IS DETERMINED IN THE FUTURE TO BE A BELOW MARKET INTEREST-RATE LOAN, THE IRS MAY "IMPUTE INTEREST" TO RESIDENT AND THE RESIDENT COULD BE LIABLE FOR CERTAIN FEDERAL INCOME TAXES AS IF THE RESIDENT'S ENTRANCE DEPOSIT WAS AN INTEREST-BEARING LOAN AND REGARDLESS OF WHETHER ANY PAYMENTS TO THE RESIDENT HAVE ACTUALLY BEEN MADE. IF WESTPORT HOLDINGS IS REQUIRED TO IMPUTE INTEREST INCOME TO THE RESIDENT ON THE BELOW MARKET INTEREST-RATE LOANS BY ANY GOVERNMENTAL AUTHORITY, THE RESIDENT WILL HAVE TAXABLE INCOME TO THE EXTENT OF THE IMPUTED INTEREST WITH NO CORRESPONDING DEDUCTION. FOR EXAMPLE, IF A RESIDENT PAID A $100,000.00 ENTRANCE DEPOSIT AND THE CURRENT ANNUAL IMPUTED INTEREST RATE WAS 8%, COMPOUNDED ANNUALLY, THE TREASURY DEPARTMENT MAY ASSERT A RIGHT TO IMPUTE $8,000.00 OF INTEREST INCOME TO THE RESIDENT.

(b)    WESTPORT HOLDINGS, BY THIS DISCUSSION, DOES NOT UNDERTAKE TO PROVIDE ANY TAX ADVICE OR OPINION TO RESIDENT IN ANY MANNER. WITHOUT LIMITING THE FOREGOING, WESTPORT HOLDINGS MAKES NO REPRESENTATIONS OR ADVICE TO RESIDENTS AS TO THE LIKELIHOOD OF THE INTERNAL REVENUE SERVICE SUCCESSFULLY IMPUTING INTEREST INCOME TO RESIDENT.  THE CODE, AND REGULATIONS PROMULGATED THEREUNDER, MAY BE AMENDED FROM TIME TO TIME AND WESTPORT HOLDINGS WILL NOT MONITOR OR PROVIDE NOTICES TO RESIDENT OF ANY SUCH AMENDMENTS. RESIDENTS ARE URGED TO SEEK INDEPENDENT TAX ADVICE CONCERNING SAME.

7.06    Additional Charges.  There will be additional charges for extra personal meals, special diets, guest meals, prescriptions, covered parking, and all other items and services not specifically identified herein as being provided by Westport Holdings. Such charges may only be increased after sixty (60) days prior posted notice to Resident.

7.07   Liability. Each Resident is liable for payment of all fees and charges incurred. If Westport Holdings has to institute legal proceedings to recover these fees and charges, Westport Holdings shall also be entitled to receive legal fees and costs incurred to effect this recovery (including legal fees and costs on appeal).

APPROVED
02/24/2015    Date Of Action:
03/11/2015
FL OFFICE OF INSURANCE REGULATION

### PARAGRAPH 8: TERMINATION OF RESIDENCY

8.01   Death or Jeopardy - One Resident Contracts.

(a)   If this Contract applies to only one Resident, it shall terminate:

(1)   Upon death of the Resident whether located in the Retirement Center, ALF or Skilled Nursing Center.

(2)   At such time as the Village Health Care Committee determines, in its discretion, that the Resident's occupancy jeopardizes the health or safety of the Resident or other Residents of the Village Property.

(3)   At such time as the Village Health Care Committee determines, in its discretion, that the Resident permanently requires a different level of care than that level available at the Village Property.

(4)   At such time as the Village Health Care Committee determines, in its discretion, that the Resident should move to a different level of care within the Village Property, if such Resident refuses to relocate within thirty (30) days after receiving written notice of such Village Health Care Committee determination.

(b)   If this Contract is terminated under subparagraphs 8.01(a)(2), (3) or (4), then Westport Holdings shall transfer the Resident to a facility designated by the Resident's physician or legal representative at the Resident's expense. If the Resident recovers to the point where readmission can be considered, such readmission will be at the sole discretion of Westport Holdings. If readmission is approved and an Apartment/Villa is available, the Resident can be readmitted by paying the then-prevailing Entrance Deposit for the Apartment/Villa to be occupied.

8.02   Death or Jeopardy - Two Resident Contracts.

(a)   If this Contract applies to two Residents, it will remain in effect notwithstanding:

(1)   the death of one of the Residents; or

(2)   the fact that a determination is made under subparagraphs 8.01(a)(2), (3) or (4) or 8.03 as to one of the Residents (although the Contract may be Terminated with respect to the remaining Resident for reasons identified in subparagraphs 8.01(a)(2), (3) or (4) or 8.03).

(b)   In the case of an event described under subparagraph 8.02(a)(1) or (2), the Monthly Service Fee shall be adjusted to single occupancy and the payment to be made by Westport Holdings under subparagraph 7.02, above, shall not be paid until Termination of this Contract with respect to the remaining Resident.

(c)   If this Contract initially applied to two Residents, upon the occurrence of an event described in subparagraph 8.01 or 8.03 with respect to the last remaining Resident, this Contract shall Terminate.

8.03   Generally. This Contract may be terminated:

(a)   By the Resident or his legal representative (provided such legal representative was appointed by a court of competent jurisdiction at the time of Termination, even though not appointed at the time of execution hereof), upon thirty (30) days written notice to Westport Holdings.

(b)   By the Resident, upon written notice to Westport Holdings on or before seven (7) days after the execution of this Contract. Such notification will entitle the Resident to a full refund of all monies paid to date (including Entrance Deposit and Monthly Service Fee).

(c)   By Westport Holdings, upon thirty (30) days written notice to the Resident in the event of marriage to a non-Resident if Westport Holdings, in its sole discretion, determines that such person does not meet admission standards;

(d)   By Westport Holdings upon thirty (30) days written notice to the Resident, upon discovery of any misstatement of a material fact in the Resident's application for admission, physician's report, or any other information submitted by or on behalf of the Resident to Westport Holdings.

APPROVED

Date Received:      Date Of Action:
02/24/2010     03/11/2010
FLORIDA OFFICE OF INSURANCE REGULATION

(e)   By Westport Holdings upon thirty (30) days written notice to the Resident, if the Resident requires services in the ALF or In-Patient Care in the Skilled Nursing Center that is covered by an Alternative Funding Program and the Resident fails to timely file for refund under the applicable Alternative Funding Program or refuses a treatment that nullifies the care provided by such Alternative Funding Program.

(f)   By Westport Holdings upon thirty (30) days written notice to the Resident, for just cause, which shall include, but not be limited to, disruptive or inappropriate behavior, drug abuse, or endangering the safety of others, and shall further include those circumstances described in subparagraph 8.01(a)(2), (3), (4) or 8.03(c), (d) or (f) herein. However, Westport Holdings will not terminate this Contract if the sole reason for termination is non-payment of the Monthly Service Fee because Resident is unable to pay as a result of such Resident's financial reverses; provided such financial reverses, in Westport Holdings' judgment, are not the result of willful or unreasonable dissipation of the Resident's assets; further provided that Westport Holdings shall fully comply with the requirements of Florida Statutes Section 651.061(2), if then in effect. Any unpaid Monthly Service Fee shall be paid to Westport Holdings upon Termination of this Contract (along with annually compounded interest thereon at a rate equal to the then-prevailing prime rate of interest published from time to time by a federally insured bank with offices in Hillsborough County, Florida, such bank to be designated by Westport, plus one percent), in addition to the Termination and Refurbishing Fee required under subparagraph 7.02, above.

(g)   If prior to occupancy, illness, injury, other incapacitation, or other physical-health reason shall preclude the Resident from living in the Retirement Center. In such event, the Resident shall receive a full refund of all monies paid to Westport Holdings (including Entrance Deposit and Monthly Service Fee), less any modification expenses specifically incurred by Westport Holdings at the written request of the Resident.

(h)   By Westport Holdings upon thirty (30) days written notice to Resident if:

(1)   A substantial portion of the Village Property is taken by condemnation or in any manner for public or quasi-public use or purpose by any legally constituted authority (in which case Resident acknowledges that Westport Holdings shall have the sole right and interest to all of the condemnation compensation and proceeds therefrom); or

(2)   A substantial portion of the Village Property is damaged or destroyed and Westport Holdings determines that repair or replacement of same would be commercially impracticable or not feasible.

PARAGRAPH 9: RESPONSIBILITY FOR RESIDENT'S PROPERTY.

9.01   Insurance. The Resident shall be responsible for insuring the Resident's personal property against fire, flooding, theft, leaking water pipes, other casualty, or any other cause. The Resident shall also be responsible for insuring against liability within his or her Apartment/Villa.

9.02   Upon Termination.

(a)   In the event of Termination of this Contract for any reason, Westport Holdings shall exercise care in safekeeping personal property until delivery can be made to those entitled to receive the property. If such personal property is not removed within thirty (30) days, Westport Holdings may store it in a commercial warehouse at the expense and risk of the Resident or Resident's estate.

(b)   Within 60 days following Resident's initial occupancy at the Retirement Center, Resident shall advise Westport Holdings of provisions made for disposition, at Termination (including but not limited to, Resident's death) of Resident's furniture, possessions and other personal property located at the Village Property.

PARAGRAPH 10: MARRIAGE OR DIVORCE.

10.01   Marriage.

(a)   If a marriage shall occur between a Resident and a non-Resident, subject to admission approval of the non-Resident by Westport Holdings, they may live together and will be charged the current Monthly Service Fee for double occupancy. The Resident may move to another living accommodation as provided under subparagraph 1.02.

(b)   If a marriage shall occur between two Residents who previously did not occupy the same Apartment/Villa, such event shall be deemed a voluntary termination of one spouse's Residency and Care Contract. The couple will thereafter pay the prevailing Monthly Service Fee associated with double occupancy and will be bound to the terms of the Residency and Care Contract identified by Westport Holdings.

11

APPROVED

10.02 Divorce If the two Residents to whom this Contract applies become legally separated or divorced and as a result one person surrenders the Apartment/Villa by Contract or court order, this Contract shall remain in effect for the remaining Resident at the Monthly Service Fee for single occupancy. Upon payment of an Entrance Deposit, and subject to availability, the remaining Resident may move to another living accommodation as provided under subparagraph 1.02. The Resident surrendering the Apartment/Villa under this subparagraph 10.02 shall receive no refund of any portion of the Entrance Deposit.

## PARAGRAPH 11: GENERAL PROVISIONS.

11.01 Burial. The Resident shall furnish Westport Holdings with a statement of burial arrangements at the time of admission to the Retirement Center. Westport Holdings will cooperate, where possible, in implementing such arrangements. The Resident or his estate is responsible for the cost of funeral and burial. If the body is unclaimed within a reasonable time, it will be turned over to the division of Universities of the State of Florida and any expenses associated therewith beyond the ability of the Resident's estate shall be borne by Westport Holdings.

11.02 Legal Incompetency.

(a)     If a Resident is believed to be mentally incompetent or physically incapacitated so that the Resident is incapable of caring for himself or herself or managing his or her property or affairs, Westport Holdings is authorized to take action to protect the person and property of the Resident, which may include guardianship proceedings. Such action will be determined with the joint consultation of the Resident, the Resident's physician or legal representative, the Village Health Care Committee, and the Medical Director of the Skilled Nursing Center. In the event that a relative qualified by law is unable or unwilling to make application for adjudication of incompetency and appointment of a guardian for the person and property of the Resident, Village may initiate such proceedings in the manner prescribed by law at the expense of the Resident.

(b)     Within 60 days after the date of this Contract, Resident will provide Westport Holdings with a written designation of that person or persons who will have authority to act on behalf of the Resident in the event Resident should become unable to manage his or her own affairs.

11.03 Right of Entry. The Resident authorizes Westport Holdings to enter his or her Apartment/Villa for repairs, maintenance, and inspection, and in the event of emergency.

11.04 Emergency Information. The Resident shall furnish Westport Holdings at the time of admission to the Retirement Center with complete emergency information including medications being taken by Resident and shall promptly notify Westport Holdings of any changes.

11.05 Assistance. Westport Holdings will assist the Resident in applying for financial assistance from any Federal, State, or other program. The Resident agrees to cooperate in applying for any assistance programs for which the Resident or Westport Holdings may be entitled.

11.06 Rules and Regulations. Westport Holdings shall adopt reasonable rules and regulations (together the "Rules") for the orderly operation of the Retirement Center, ALF and Skilled Nursing Center; and the health, safety, and welfare of the Residents. The Resident agrees to abide by such present and future Rules. The Rules must be in writing and will be effective when delivered to the Resident.

11.07 Absence. The Resident agrees to notify Westport Holdings in advance of any absence overnight or longer. If the absence is for thirty (30) days or more, the Resident will make financial arrangements in advance with the management of Westport Holdings.

11.08 Damages to the Residence. Should the Resident's Apartment/Villa become badly damaged or destroyed, Westport Holdings has the right to relocate Resident to another Apartment/Villa if available or to comparable facilities outside the Village Property.

11.09 Binding Effect. This Contract is binding upon the successors and assigns of Westport Holdings and the personal representatives of the Resident and is assignable by the Resident only for estate planning purposes and only to the trustee of a revocable inter vivos living trust wherein each grantor (or joint-grantor) making such assignment is also a grantor (or joint-grantor) of such inter vivos living trust (provided that any such assignee shall be required to sign assumption of liability documents provided by Westport Holdings, relating to Resident's obligations hereunder), or pursuant to the laws of testate or intestate succession upon death of a grantor (or joint-grantor).

APPROVED

Date Received:    Date Of Action:
02/24/2010  03/11/2010

Village Dept of INSURANCE REGULATION

11.10  Resident's Interest.

(a)    The Resident shall not have any proprietary (ownership) interest in the Village Property or other assets or properties of Westport Holdings by virtue of this Contract; provided that it is the intention of the parties that Resident receive a possessory right (beneficial interest) in Resident's unit at the Village Property for Resident's life subject to the termination and relocation provisions herein.

(b)    Resident acknowledges and agrees that Resident has no lessee, tenant or other ownership, leasehold or lien interest in or to the Village Property, or any portion thereof.

(c)    This Contract is personal to Resident and, except as provided in subparagraph 11.09, above, this Contract, and Resident's rights hereunder, may not be sold, assigned, hypothecated, mortgaged or otherwise transferred by Resident to any party.

(d)    RESIDENT ACKNOWLEDGES THAT RESIDENT IS ENTERING INTO THIS CONTRACT SOLELY FOR THE PURPOSES OF RECEIVING THE USE OF THE LIVING FACILITY AND PERSONAL SERVICES DESCRIBED HEREIN. RESIDENT WILL IN NO CASE RECEIVE ANY PROFITS, INCOME OR MONETARY BENEFIT FROM THE ENTRANCE DEPOSIT, MONTHLY SERVICE FEE OR ANY OTHER SOURCE HEREUNDER OR RELATED HERETO.

11.11  Bill of Rights.  Westport Holdings agrees to abide by the Bill of Rights for Assisted Living Facilities and Nursing Homes, in effect from time to time.  The existing bills of rights are set forth in Florida Statues Sections 400.022, 400.428 and 651.083 (1997).

11.12  Applicable Law.  THIS FACILITY AND ALL OTHER CONTINUING CARE FACILITIES IN THE STATE OF FLORIDA ARE REGULATED BY CHAPTER 651, FLORIDA STATUTES.  A COPY OF THE LAW IS ON FILE IN THIS FACILITY.  THE LAW GIVES YOU OR YOUR LEGAL REPRESENTATIVE THE RIGHT TO INSPECT OUR MOST RECENT FINANCIAL STATEMENT AND INSPECTION REPORT BEFORE SIGNING THIS CONTRACT.

11.13  Receipt of Contract.  The Resident, by executing this Contract, acknowledges that Westport Holdings presented a printed copy of this Contract to the Resident prior to transfer of any money or property from them to the Village Escrow Account.

11.14  Change of Law.  If at any time the laws relating to Adult Congregate Living Facilities, Nursing Homes or Continuing Care Facilities are revised or Westport Holdings ' license to perform services under such laws is revised, limited or revoked, then Westport Holdings may reduce the services provided herein to conform to such revised law or license or, at Westport Holdings' sole option, may immediately consider such event a Termination under Paragraph 8 herein.

11.15  Counterparts.  This Contract may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.16  Further Assurances.  Resident (or Resident's estate) agrees that it will, at any time, and from time to time, at the request of Westport Holdings, acknowledge, execute and deliver such additional documents as may be necessary to implement the intent of this Contract.

11.17  Captions.  The headings contained herein are merely for the convenience of the parties and the context of such paragraph shall control their respective meanings.  The masculine, feminine and neuter gender and the singular and plural shall be deemed to include the other whenever the context so indicates.

11.18  Severability.  In the case any one or more provisions contained in this Contract shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal or unenforceable provision has not been contained herein.

11.19  TAXES.  SHOULD AT ANY TIME, FLORIDA OR FEDERAL LAW PROVIDE FOR THE IMPLEMENTATION OF A SALES, LIFE/HEALTH INSURANCE POLICY RECEIPTS, PREMIUM, LICENSE, VALUE-ADDED OR SIMILAR TAX ON AMOUNTS RECEIVED BY WESTPORT HOLDINGS HEREUNDER THEN RESIDENT AGREES TO PAY SUCH TAX.

11.20  Notice Requirements - Exceptions.  Notwithstanding any provision herein to the contrary, the requirements within this Contract for Westport Holdings to deliver prior notice to Resident in the case of change in certain fees, charges or scope of care or services, shall not apply in the case of changes required by state or federal assistance programs and no notice shall be required for such changes.

11.21  Amendments.  Westport Holdings may require the amendment or modification of this Contract in whole or in part as required to effectuate any future change in Chapter 651, Florida Statutes, or Florida Administrative Code, pertaining to residency and care agreement requirements.

APPROVED

Date Reservations or Action:
02/24/2010 - 03/11/2010
FL OFFICE OF INSURANCE REGULATION

11.22 Entire Contract. This writing contains the entire agreement of the parties, and representations or agreements, oral or otherwise, between the parties prior or subsequent to the signing of this Contract not embodied herein shall be of any force or effect.

IN WITNESS WHEREOF, Westport Holdings and the Resident have signed this Contract as of this _____ day of _____, 20_____.

Witnesses:

WESTPORT HOLDINGS TAMPA LIMITED PARTNERSHIP, a Delaware limited partnership, d/b/a University Village

By:_____

_____
Witness (as to Westport)                      as its authorized representative

_____
Witness (as to Westport)

_____                      _____
Witness (as to Resident #1)                      Resident #1 (Signature)

_____                      _____
Witness (as to Resident #1)                      Resident #1 (Name - print or type)

_____                      _____
Witness (as to Resident #2)                      Resident #2 (Signature)

_____                      _____
Witness (as to Resident #2)                      Resident #2 (Name - print or type)

VILLAGE RETIREMENT CENTER APARTMENT/VILLA #: _____
ENTRANCE DEPOSIT: $ _____
MONTHLY SERVICE FEE: $ _____
SECOND PERSON FEE: $ _____
TOTAL: $ _____

Exhibits:

A - Definitions
B - Financial and Health Requirements
C – Refurbishing Fee Plans

14

**APPROVED**

Date Received:      Date Of Action:
02/24/2010  03/11/2010

FL OFFICE OF INSURANCE REGULATION

## THIRD-PARTY GUARANTY OF PERFORMANCE

In order to induce Westport to enter into the attached Contract and permit the Resident to occupy an Apartment/Villa in the Retirement Center, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged by the undersigned, the undersigned hereby unconditionally guarantees (jointly and severally if more than one) the payment of all amounts owed by Resident to Westport pursuant to the terms of the attached Contract including, without limitation, all Monthly Service Fees, additional charges, Entrance Deposit and other amounts thereunder, but excluding any In-Patient Care Fees. The guaranty of the undersigned hereunder shall not be modified, affected or reduced as a result of the Resident's relocation to any different Apartment/Villa or Resident's Room within the Village Property (except that such guaranty obligation may increase if Resident's Monthly Service Fee or other charges increase) or if the Contract is modified pursuant to the terms of the Contract or otherwise with the consent of the Resident. This guaranty shall not be reduced or affected if Resident is unable to pay amounts owed hereunder as a result of those circumstances described in subparagraph 8.03(f) above and the undersigned shall immediately pay to Westport any amounts unpaid and owed by Resident. All provisions of the Contract are fully incorporated herein and the undersigned consent and agree that any one of the undersigned may be sued by Westport with or without joining the Resident and without first contemporaneously suing any such other persons, or otherwise seeking or proceeding to collect from them or any of them, and without first or contemporaneously undertaking to enforce any rights with respect to the Contract.

Witnesses:

_____        _____
                                        Signature

_____        _____
                                        Name (print or type)

                                        _____
                                        Resident(s) Name(s) (print or type)

                                        _____
                                        Relationship to Resident

_____        _____
                                        Signature

_____        _____
                                        Name (print or type)

                                        _____
                                        Relationship to Resident

EXHIBIT "A"

DEFINITIONS

APPROVED

Date Received:    Date Of Action:
02/24/2010  03/11/2010

FL OFFICE OF INSURANCE REGULATION

Activity Director. The Village Activity Director as selected from time to time by Westport.

Contract. This Village Life-Care Residency and Care Contract.

Alternative Funding Program. Private health insurance, government-sponsored health care services (including, but not limited to, Medicare) or similar programs.

Apartment/Villa. The Apartment/Villa facilities within the Retirement Center or ALF as the context requires.

As Needed. The term used in the Contract to describe the frequency of services to be performed as determined by Resident and Westport.

ALF. That living facility described in Recital A.2. of the Contract.

ALF Administrator. The person designated by Westport to serve as administrator of the ALF.

Health and Wellness Office. The Village Health and Wellness Office located on the Village Property.

Current Apartment/Villa. Any Apartment/Villa where Resident is located at the time of an applicable event described in the Contract.

Designated Village Nurse. This term shall have the meaning described in subparagraph 4.01(b) of the Contract.

Entrance Deposit. The amount deposited by the Resident under subparagraph 7.01 of the Contract for administration pursuant to the terms of Paragraph 7 of the Contract. The provisions of Florida Statute Chapter 651, relating to escrow of "entrance fees" as such term is used therein, shall apply to the Entrance Deposit.

In-Patient Care. The term used in the Contract to refer to the services provided in the Skilled Nursing Center.

In-Patient Care Fee. This term shall have the meaning described in subparagraph 7.04(d) of the Contract.

Monthly Service Fee. The monthly fee paid by a Resident pursuant to the terms of subparagraph 7.04 of the Contract.

Monthly Statement. The statement of amounts owed by a Resident to Westport Holdings provided to Resident on a monthly basis.

New Apartment/Villa. Any Apartment/Villa into which Resident transfers after leaving the Resident's Original Apartment/Villa.

Original Apartment/Villa. The Original Apartment/Villa occupied by Resident at the Retirement Center as designated by Resident's signature line of the Contract.

Permanent In-Patient Care. Occurs when a determination is made either by the Resident (with approval of the Health Care Committee) or the Village Health Care Committee that such Resident, who resides at the Skilled Nursing Center, shall thereafter permanently reside at such facility and release his or her Apartment/Villa for resale by Westport.

Personal Services. This term shall have the meaning described in Paragraph 4 of the Contract.

Prevailing Fee. The amount that would be charged for services to a prospective Resident entering a facility at Westport.

Resident. That individual, or those individuals entering into the Contract, initially as residents of the Retirement Center.

Resident's Room or Room. The term referring to either an apartment or a room at the Skilled Nursing Center.

Retirement Center. That facility described in Recital A.1. of the Contract.

Skilled Nursing Center. The facility described in Recital A.3. of the Contract.

Termination. Termination of the Contract pursuant to the terms of Paragraph 8 of the Contract.

16

APPROVED

Date Received:      Date Of Action:
02/24/00~~     ~~3/1/2010

FL OFFICE OF INSURANCE REGULATION

Westport Holdings.  Westport Holdings Tampa Limited Partnership. a Delaware limited partnership doing business as University Village.

Village Escrow Account.  The account or accounts established under the escrow agreements described in subparagraph 7.01 of the Contract.

Village Health Care Committee.  The following parties selected by Westport:  Village Medical Director; the administrators of the Retirement Center. ALF and Skilled Nursing Center; the Executive Director; the Director of Nursing; and, when appointed, the Director of Social Services to perform such tasks as are identified in the Contract.  Westport may elect to add or delete parties to the Health Care Committee.

Village Property.  The term collectively referring to the Retirement Center, ALF or Skilled Nursing Center and that real property described in the opening paragraph of Recital A to the Contract.

17

**APPROVED**

Date Received:    Date Of Action:
02/24/2010  03/11/2010
FL OFFICE OF INSURANCE REGULATION

EXHIBIT "B"

**UNIVERSITY VILLAGE**
**LIFE-CARE RESIDENCY AND CARE CONTRACT**
**SUBSEQUENT GENERATION RESIDENTS**

MINIMUM FINANCIAL AND HEALTH REQUIREMENTS FOR ACCEPTANCE

1.   <u>Financial Requirements</u>.

    (a)    Net worth for Resident (together with Resident's spouse occupying the same Apartment/Villa) equals at least two times Entrance Deposit.

    (b)    Monthly income for Resident (together with Resident's spouse occupying the same Apartment/Villa) from all sources equals two times anticipated Monthly Service Fee.

    (c)    Above specific financial requirements may be waived or altered by Westport after complete review of Resident's financial situation.

2.   <u>Medical Requirements</u>.

    (a)    Resident must complete health form for review by Westport.

    (b)    Resident must provide Westport with a health certificate from Resident's physician stating that Resident's present health care needs are such that Resident can function independently and does not presently require assistance that would be appropriate for the ALF or Nursing Center.

    (c)    After review of Resident's health form and physician's report, along with such other information concerning Resident's health as Westport may reasonably request, Westport may waive or add to the above specific medical requirements in order to ensure that Resident will be able to comfortably reside at the Retirement Center.

EXHIBIT "C"

APPROVED

Date Received:    Date Of Action:
02/24/2010  03/11/2010
FL OFFICE OF INSURANCE REGULATION

## UNIVERSITY VILLAGE
## LIFE-CARE RESIDENCY AND CARE CONTRACT
## SUBSEQUENT GENERATION RESIDENTS

### REFURBISHING FEE PLANS

Plan A Addendum          90% Refund Plan

Plan B Addendum          75% Refund Plan

Plan C Addendum          40% Refund Plan

*Plan A Addendum*
**90% Refund Plan**

APPROVED

Date Received:   Date Of Action:
02/24/2010  03/11/2010

FL OFFICE OF INSURANCE REGULATION

THE RESIDENT AGREES THAT, SUBJECT TO PARAGRAPH 8.03(b) OF THE RESIDENCY AND CARE CONTRACT, UPON TERMINATION THE RESIDENT OR HIS ESTATE SHALL PAY (BY REDUCTION OF AMOUNT REFUNDED UNDER PARAGRAPH 7.02 OF THE RESIDENCY AND CARE CONTRACT) TO WESTPORT HOLDINGS A TERMINATION AND REFURBISHING FEE (THE "TERMINATION AND REFURBISHING FEE") WHICH IS EQUAL TO THE FOLLOWING

(1) IF RESIDENT TERMINATES PRIOR TO OCCUPANCY IN SITUATIONS OTHER THAN AS DESCRIBED IN SUBPARAGRAPH 8.03(g) OF THE RESIDENCY AND CARE CONTRACT, THE TERMINATION AND REFURBISHING FEE WILL BE EQUAL TO A 4% OF THE RESIDENT'S ENTRANCE DEPOSIT.

(2) IF THE RESIDENCY AND CARE CONTRACT IS TERMINATED WITHIN THE FIRST THREE MONTHS AFTER THE RESIDENT'S INITIAL OCCUPANCY AT THE RETIREMENT CENTER, THE TERMINATION AND REFURBISHING FEE SHALL BE EQUAL TO 4% OF THE RESIDENT'S ENTRANCE DEPOSIT PLUS 2% OF THE RESIDENT'S ENTRANCE DEPOSIT PER MONTH OF OCCUPANCY.

(3) IF THE RESIDENCY AND CARE CONTRACT IS TERMINATED AFTER THE RESIDENT HAS BEEN AN OCCUPANT AT THE RETIREMENT CENTER FOR THREE MONTHS, THE TERMINATION AND REFURBISHING FEE SHALL BE EQUAL TO 10% OF THE RESIDENT'S ENTRANCE DEPOSIT.

THE RESIDENT AND WESTPORT HOLDINGS HEREBY ACKNOWLEDGE THAT THE PURPOSE OF THE TERMINATION AND REFURBISHING FEE, AMONG OTHERS, IS TO COMPENSATE WESTPORT HOLDINGS FOR ITS EFFORTS IN PERFORMING VARIOUS SERVICES RELATING TO THE TERMINATION OF THE RESIDENT'S RESIDENCY AND THE REFURBISHING OF THE RESIDENT'S ROOM.

Resident elects the 90% Refund Plan as described above.

**IN WITNESS WHEREOF,** Westport Holdings and the Resident have signed this Addendum on this _____ day of _____, 20_____ .

**RESIDENT(S):**

Signature:          _____

Print Name:        _____


Signature:          _____

Print Name:        _____


Westport Holdings Tampa, L.P., a Delaware limited partnership,
d/b/a University Village

By:                     _____
                              as its authorized representative

**APPROVED**

Date Received:    Date Of Action:
02/24/2010  03/11/2010
FL OFFICE OF INSURANCE REGULATION

*Plan B Addendum*
*75% Refund Plan*

THE RESIDENT AGREES THAT, SUBJECT TO PARAGRAPH 8.03(b) OF THE RESIDENCY AND CARE CONTRACT, UPON TERMINATION THE RESIDENT OR HIS ESTATE SHALL PAY (BY REDUCTION OF AMOUNT REFUNDED UNDER PARAGRAPH 7.02 OF THE RESIDENCY AND CARE CONTRACT) TO WESTPORT HOLDINGS A TERMINATION AND REFURBISHING FEE (THE "TERMINATION AND REFURBISHING FEE") WHICH IS EQUAL TO THE FOLLOWING

(1)  IF RESIDENT TERMINATES PRIOR TO OCCUPANCY IN SITUATIONS OTHER THAN AS DESCRIBED IN SUBPARAGRAPH 8.03(g) OF THE RESIDENCY AND CARE CONTRACT, THE TERMINATION AND REFURBISHING FEE WILL BE EQUAL TO A 4% OF THE RESIDENT'S ENTRANCE DEPOSIT.

(2)  IF THE RESIDENCY AND CARE CONTRACT IS TERMINATED WITHIN THE FIRST ELEVEN MONTHS AFTER THE RESIDENT'S INITIAL OCCUPANCY AT THE RETIREMENT CENTER, THE TERMINATION AND REFURBISHING FEE SHALL BE EQUAL TO 4% OF THE RESIDENT'S ENTRANCE DEPOSIT PLUS 2% OF THE RESIDENT'S ENTRANCE DEPOSIT PER MONTH FOR THE FIRST TEN MONTHS OF OCCUPANCY AND 1% OF THE RESIDENT'S ENTRANCE DEPOSIT FOR THE ELEVENTH MONTH OF OCCUPANCY.

(3)  IF THE RESIDENCY AND CARE CONTRACT IS TERMINATED AFTER THE RESIDENT HAS BEEN AN OCCUPANT AT THE RETIREMENT CENTER FOR ELEVEN MONTHS, THE TERMINATION AND REFURBISHING FEE SHALL BE EQUAL TO 25% OF THE RESIDENT'S ENTRANCE DEPOSIT.

THE RESIDENT AND WESTPORT HOLDINGS HEREBY ACKNOWLEDGE THAT THE PURPOSE OF THE TERMINATION AND REFURBISHING FEE, AMONG OTHERS, IS TO COMPENSATE WESTPORT HOLDINGS FOR ITS EFFORTS IN PERFORMING VARIOUS SERVICES RELATING TO THE TERMINATION OF THE RESIDENT'S RESIDENCY AND THE REFURBISHING OF THE RESIDENT'S ROOM.

Resident elects the 75% Refund Plan as described above.

**IN WITNESS WHEREOF,** Westport Holdings and the Resident have signed this Addendum on this _____ day of _____, 20 _____.

RESIDENT(S):

Signature:        _____

Print Name:       _____

Signature:        _____

Print Name:       _____

Westport Holdings Tampa, L.P., a Delaware limited partnership, d/b/a University Village

By:               _____
                  as its authorized representative

APPROVED

Date Received:    Date Of Action:
02/24/2010   03/11/2010
FL OFFICE OF INSURANCE REGULATION

*Plan C Addendum*
**40% Refund Plan**

THE RESIDENT AGREES THAT, SUBJECT TO PARAGRAPH 8.03(b) OF THE RESIDENCY AND CARE CONTRACT, UPON TERMINATION THE RESIDENT OR HIS ESTATE SHALL PAY (BY REDUCTION OF AMOUNT REFUNDED UNDER PARAGRAPH 7.02 OF THE RESIDENCY AND CARE CONTRACT) TO WESTPORT HOLDINGS A TERMINATION AND REFURBISHING FEE (THE "TERMINATION AND REFURBISHING FEE") WHICH IS EQUAL TO THE FOLLOWING

(1)  IF RESIDENT TERMINATES PRIOR TO OCCUPANCY IN SITUATIONS OTHER THAN AS DESCRIBED IN SUBPARAGRAPH 8.03(g) OF THE RESIDENCY AND CARE CONTRACT, THE TERMINATION AND REFURBISHING FEE WILL BE EQUAL TO A 4% OF THE RESIDENT'S ENTRANCE DEPOSIT.

(2)  IF THE RESIDENCY AND CARE CONTRACT IS TERMINATED WITHIN THE FIRST TWENTY EIGHT MONTHS AFTER THE RESIDENT'S INITIAL OCCUPANCY AT THE RETIREMENT CENTER, THE TERMINATION AND REFURBISHING FEE SHALL BE EQUAL TO 4% OF THE RESIDENT'S ENTRANCE DEPOSIT PLUS 2% OF THE RESIDENT'S ENTRANCE DEPOSIT PER MONTH OF OCCUPANCY.

(3)  IF THE RESIDENCY AND CARE CONTRACT IS TERMINATED AFTER THE RESIDENT HAS BEEN AN OCCUPANT AT THE RETIREMENT CENTER FOR TWENTY EIGHT MONTHS, THE TERMINATION AND REFURBISHING FEE SHALL BE EQUAL TO 60% OF THE RESIDENT'S ENTRANCE DEPOSIT.

THE RESIDENT AND WESTPORT HOLDINGS HEREBY ACKNOWLEDGE THAT THE PURPOSE OF THE TERMINATION AND REFURBISHING FEE, AMONG OTHERS, IS TO COMPENSATE WESTPORT HOLDINGS FOR ITS EFFORTS IN PERFORMING VARIOUS SERVICES RELATING TO THE TERMINATION OF THE RESIDENT'S RESIDENCY AND THE REFURBISHING OF THE RESIDENT'S ROOM.

Resident elects the 40% Refund Plan as described above.

**IN WITNESS WHEREOF,** Westport Holdings and the Resident have signed this Addendum on this _____ day of _____, 20_____.

**RESIDENT(S):**

Signature:        _____

Print Name:      _____

Signature:        _____

Print Name:      _____

Westport Holdings Tampa, L.P., a Delaware limited partnership, d/b/a University Village

By:        _____

as its authorized representative

22