ORDERED.

**Dated: May 10, 2018**

Michael G. Williamson
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | **Chapter 11** |
| **WESTPORT HOLDINGS TAMPA,** **LIMITED PARTNERSHIP,** | **Case No. 8:16-bk-08167-MGW** |
| **WESTPORT HOLDINGS TAMPA II,** **LIMITED PARTNERSHIP,** | **Case No. 8:16-bk-08168-MGW** |
| Debtors. | *Jointly Administered under* *Case No. 8:16-bk-08167-MGW* |

_____/

**ORDER (A) CONFIRMING FIRST AMENDED AND RESTATED MEDIATED**
**JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES**
**BANKRUPTCY CODE, AS MODIFIED, PURSUANT TO 11 U.S.C. § 1129, AND (B)**
**APPROVING DISCLOSURE STATEMENT FOR FIRST AMENDED AND RESTATED**
**JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE UNITED STATES**
**BANKRUPTCY CODE, ON A FINAL BASIS, PURSUANT TO 11 U.S.C. § 1125**

These cases came on before the Court for three (3) days of trial on February 28, 2018,

March 1, 2018, and March 19, 2018 and a continued hearing on April 12, 2018 (the trial days and

the continued hearing shall hereinafter be referred to, collectively, as the "Confirmation Hearing"),

for the Court to consider (i) Confirmation of the First Amended and Restated Mediated Joint Plan

of Liquidation under Chapter 11 of the United States Bankruptcy Code dated as of December 31,



DEFENDANT'S
EXHIBIT
Warren # 6
4.24.23 DK
PENGAD 800-631-6989

2017 [Doc. No. 838][1] (the "Plan") filed by co-proponents Westport Holdings Tampa, Limited Partnership, a Delaware limited partnership ("Westport I"), and Westport Holdings Tampa II, Limited Partnership, a Delaware limited partnership ("Westport II"), as debtors and debtors in possession (collectively, the "Debtors"), and the Official Committee of Resident Creditors (the "Resident Committee" and, together with the Debtors, the "Plan Proponents"), as modified by certain modifications to the Plan announced on the record by the Plan Proponents prior to the commencement of the trial on February 28, 2018 and summarized in the Notice of Filing by Plan Proponents of Proposed Modifications to First Amended and Restated Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code [Doc. No. 942] (the "Plan Modifications") (the Plan, as modified by the Plan Modifications, shall hereinafter be referred to as the "Modified Plan")[2], and (ii) final approval of the Disclosure Statement for First Amended and Restated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code dated as of December 31, 2017 [Doc. No. 839] (the "Disclosure Statement") filed by the Debtors and the Resident Committee.

The Plan Proponents seek Confirmation of the Modified Plan, which seeks approval of what the Examiner (as defined below) describes as the "grand bargain". The Resident Committee is a co-proponent of the Modified Plan and Confirmation of the Modified Plan is supported by the Examiner. The grand bargain includes (i) the Current Residents' willingness to allow certain of the Resident Obligations to be paid over time and to modify certain Resident Obligations accruing two years after the Effective Date (as defined below) of the Modified Plan, (ii) the agreement to

---

[1] All references in this Confirmation Order to "Doc. No." shall mean the number of the referenced document reflected on the docket for the Westport I Bankruptcy Case (as defined below).

[2] As contemplated by Local Rule 3020-1(a), the Court has before it a single integrated document [Doc. No. 1012] that contains all of the Plan Modifications to the Plan, which integrated document shall be referred to in this Confirmation Order as the "Modified Plan".

transfer all of the membership interests in Westport Nursing Tampa, L.L.C. ("WNT") to Westport I to provide for the unification of the University Village campus, (iii) the appointment of the Liquidating Trustee to market and sell the unified University Village campus following the Effective Date, and (iv) the deferment of payment of the Administrative Expenses owed to Professionals and other parties. These significant concessions address various operational, litigation, and regulatory concerns that have plagued University Village and enhance the viability of a sale of University Village after the Effective Date of the Modified Plan.

As noted at the Confirmation Hearing, on February 26, 2018, the Resident Committee filed its Complaint and Objection to Claim No. 22 in the Bankruptcy Cases styled as *Official Committee of Resident Creditors, Plaintiff, v. CPIF Lending, LLC, Defendant* (the "Initial CPIF Complaint"), commencing Adversary Proceeding No. 8:18-ap-00102-MGW (the "CPIF Adversary Proceeding") against CPIF Lending, LLC ("CPIF"). On March 16, 2018, the Resident Committee filed its Amended Complaint and Objection to Claim No. 22 in the CPIF Adversary Proceeding styled as *Official Committee of Resident Creditors, Plaintiff, v. CPIF Lending, LLC, Defendant* (the "Amended CPIF Complaint"). The Amended CPIF Complaint contains fourteen separate counts seeking damages and other affirmative relief against CPIF and also objects to Proof of Claim Number 22 (as defined below). Although the parties concluded their presentation of evidence on the confirmation issues at the Confirmation Hearing, there was no adjudication of the claims and allegations made in the Amended CPIF Complaint and there are unresolved matters in the CPIF Adversary Proceeding. The outcome of the CPIF Adversary Proceeding may, however, have an impact upon the Claims of and payments to CPIF and other Creditors under the Modified Plan and this Confirmation Order.

Subject only to any relief that may be granted in favor of the Resident Committee (or its successor)[3] and against CPIF in the CPIF Adversary Proceeding, this Confirmation Order will, upon the Effective Date, finally and completely restructure the Debtors' obligations to all of their Creditors, with the CPIF Claims (as defined below) possibly being subject to further restructuring.[4] Because it is premature for this Court to grant relief in the CPIF Adversary Proceeding before matters are heard and evidence is presented, the Court assumes, solely for purposes of this Confirmation Order and without adjudication of such matters, that (i) no relief will be afforded to the Resident Committee (or its successor) in the CPIF Adversary Proceeding, (ii) the CPIF Claims are not subject to subordination, and (iii) CPIF's Ballot will be allowed to stand. The Court retains jurisdiction to grant any and all appropriate relief in the CPIF Adversary Proceeding.[5] This Confirmation Order shall not be deemed to have any *res judicata* or collateral estoppel effect precluding any relief in the CPIF Adversary Proceeding, and shall not prejudice the rights of any party with respect to the CPIF Adversary Proceeding.

Furthermore, based on evidence presented at the Confirmation Hearing, the Court will enter a separate order granting the Debtors' *ore tenus* motion at the Confirmation Hearing that (i) the value of the CPIF Collateral (as defined below) is $12.9 million for purposes of the Confirmation Hearing and all purposes with respect to Confirmation of the Modified Plan, and (ii) for purposes of Confirmation of the Modified Plan, the maximum amount of the CPIF Secured

---

[3] As provided in the Modified Plan and in this Confirmation Order, on the Effective Date, the Liquidating Trustee shall be substituted for the Resident Committee as the plaintiff in the CPIF Adversary Proceeding, without further order of the Court.

[4] Any relief in favor of the Resident Committee (or its successor) in the CPIF Adversary Proceeding will not adversely impact any party other than CPIF. For example, if the Court were to reduce the CPIF Claims, require payments from CPIF to the Debtors, or grant other legal or equitable relief, other Creditors will not be adversely affected by such rulings, and other Creditors may actually benefit from such rulings. Thus, only the Debtors' obligations to CPIF will be impacted by any judgment in the CPIF Adversary Proceeding.

[5] CPIF disputes that the Court has the necessary authority to enter final orders with respect to certain claims raised in the CPIF Adversary Proceeding, and has filed a motion in the CPIF Adversary Proceeding requesting a determination with respect to the Court's authority in the CPIF Adversary Proceeding, which motion remains pending.

Claim is $12.9 million less any outstanding real property taxes and personal property taxes secured by the Independent Living Facility having priority over the Liens of CPIF as of the Effective Date, as such Liens of CPIF may be subject to any relief granted in the CPIF Adversary Proceeding (the "CPIF Liens").

The Court finds that all of the principal parties in these cases agree that the "game plan" should be for the unified University Village to be sold. The only dispute as to this issue seems to be whether that sale process should take place in bankruptcy or following bankruptcy and outside of bankruptcy. Although CPIF raised a number of objections to Confirmation of the Modified Plan, CPIF's principal objection is that the Modified Plan is not feasible. Thus, the key question is whether it is feasible for the Plan Proponents to achieve their game plan outside of bankruptcy. While feasibility here is admittedly a close call, the Court is persuaded the Debtors' plan is feasible.

In the three (3) days of trial, the Plan Proponents established, through the presentation of evidence, their entitlement to Confirmation of the Modified Plan. The evidence establishes that (i) the game plan (i.e., the proposed sale of the unified University Village) is a good one and the Court finds that it is achievable, (ii) University Village must be sold and a sale of University Village is more likely to occur outside of bankruptcy and once the membership interests in WNT, a non-debtor, have been transferred to Westport I as contemplated under the Modified Mediation Settlement Agreement (as defined below), (iii) the Liquidating Trustee must be allowed to immediately market and sell the unified University Village, and the Court finds that it is more likely than not that the Liquidating Trustee will be able to sell University Village, and (iv) numerous capital improvement projects must be implemented at University Village in order to retain the Current Residents who reside at University Village and attract new residents to University Village.

The issue is whether University Village can keep operating until it is sold. CPIF argued at the Confirmation Hearing that University Village cannot keep operating because (i) the Debtors' financial projections show the Debtors are in a dire financial position, and (ii) the Debtors do not have exit financing in place. As to the first point, the Court (a) accepts the testimony of the Plan Proponents' witness, Dr. Melvyn Tockman, and the Plan Proponents' expert witness on feasibility, Eric Danner, as to the Debtors' financial projections and the ability to keep operating University Village, and (b) more importantly, notes that the Modified Plan is not premised on the continued operation of University Village for a long period of time, but for the Liquidating Trustee to quickly sell University Village. As to the second point, while the Debtors do not have exit financing in place, the Court concludes that the Debtors have a good game plan in getting exit financing based on the indications of interest already received for exit financing. In addition, as discussed further below, the Debtors have obtained a Two Million and 00/100 Dollars ($2,000,000.00) secured Postpetition debtor in possession and plan exit funding loan facility (the "SouthPoint Loan Facility") to be provided by Southpoint Global Investments, LLC ("SouthPoint"), which is expected to close upon the occurrence of the Effective Date.[6] For all of the above reasons and as provided elsewhere in this Confirmation Order, the Court is persuaded that the Plan Proponents have met their burden on feasibility.

Thus, it is important and in the best interests of all Creditors and parties in interest that the sale of University Village as contemplated by the Modified Plan, the transfer of the membership interests in WNT as contemplated by the Modified Mediation Settlement Agreement and the Modified Plan, and the closing of the SouthPoint Loan Facility, occur as soon as possible. For these reasons, as well as the Plan Proponents' showing of the necessary legal elements to support

---

[6] The Court has entered a separate order approving the SouthPoint Loan Facility. *See, infra*, at ¶ RR.

6

Confirmation of the Modified Plan pursuant to Sections 1129(a) and (b) of the Bankruptcy Code as discussed in more detail below, an order of Confirmation at this time is legally warranted and is a practical business necessity. Entry of this Confirmation Order will also allow the Debtors to close on the transfer of the membership interests in WNT and the SouthPoint Loan Facility. Accordingly, the Court finds that further delay in the entry of this Confirmation Order would adversely impact the Debtors' business operations and otherwise prejudice the Current Residents and the Former Residents.

The Court orally announced its extensive findings of fact and conclusions of law, principally at the continued Confirmation Hearing held on April 12, 2018 (the "April 12 Hearing"), and these findings of fact and conclusions of law are incorporated by reference in this Confirmation Order and shall form the opinion of the Court (the "Court's Oral Ruling"). The findings of fact and conclusions of law set forth in this Confirmation Order are consistent with and serve to implement the Preliminary Confirmation Ruling (as defined below) and the Court's Oral Ruling.

As set forth below, the Modified Plan meets all of the requirements of Sections 1129(a) and (b) of the Bankruptcy Code and is entitled to Confirmation. With respect to Confirmation of the Modified Plan, the Court specifically finds, following the Confirmation Hearing, and due and sufficient notice having been provided to all Creditors, Holders of Equity Interests and interested parties, and sufficient cause appearing therefor, that:

A. All capitalized terms used in this Confirmation Order but not defined herein shall have the meaning ascribed to such terms in the Modified Plan.

B. This Court has jurisdiction over the Debtors, the Bankruptcy Cases, all of the Debtors' Assets, wherever located, all Claims against and Equity Interests in the Debtors, and all Creditors of and Holders of Equity Interests in the Debtors pursuant to 28 U.S.C. § 1334. Confirmation of the

Modified Plan is a "core proceeding" pursuant to, without limitation, 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.        Each of the Debtors filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on September 22, 2016 (the "Petition Date"). Since the Petition Date, each of the Debtors has continued to operate its business and to manage its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

D.        On September 22, 2016, this Court entered its Order Granting Debtor's Expedited Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b) in Westport I's Chapter 11 case [Doc. No. 4] (the "Joint Administration Order"). Pursuant to the Joint Administration Order, Westport I's Chapter 11 case is being jointly administered with In re: Westport Holdings Tampa II, Limited Partnership, Case No. 8:16-bk-08168-MGW (the "Westport II Bankruptcy Case"), under the lead case In re: Westport Holdings Tampa, Limited Partnership, Case No. 8:16-bk-08167-MGW (the "Westport I Bankruptcy Case").

E.        No trustee has been appointed in these cases.

F.        On October 11, 2016, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") pursuant to Section 1102 of the Bankruptcy Code [Doc. No. 73]. The Creditors' Committee did not retain counsel and was not active in the Bankruptcy Cases.

G.        On November 7, 2016, the Court entered its Order Appointing Examiner [Doc. No. 133] (the "Examiner Order"), which appointed an examiner in these cases (the "Examiner") and set forth the powers and duties of the Examiner. On November 10, 2016, the United States Trustee appointed Jeffrey W. Warren to serve as the Examiner for the purposes set forth in the Examiner

8

Order [Doc. No. 140].    On November 15, 2016, the Court entered its Order Approving Appointment of Chapter 11 Examiner [Doc. No. 144], which order approved the United States Trustee's appointment of Jeffrey W. Warren to serve as the Examiner in these cases.

H.    On December 29, 2016, the United States Trustee appointed the Resident Committee as an official committee to represent the Current Residents of University Village in these cases [Doc. No. 258].  In addition, an unofficial committee known as the Ad Hoc Committee of Former Residents of University Village (the "Ad Hoc Committee of Former Residents") has participated in these cases.

I.    Westport I owns a Certificate of Authority to operate "University Village", one of Tampa's most established continuing care retirement communities, consisting of: (i) an independent living facility (the "Independent Living Facility") comprised of 446 independent living apartments located at 12401 North 22nd Street, Tampa, Florida 33612 (the "ILF Apartments") and 46 independent living villas and condominium units clustered within a neighborhood of duplex buildings that also includes a dedicated clubhouse located at 12250 North 22nd Street, Tampa, Florida 33612 (the "ILF Villas"), and (ii) a 110-bed assisted living facility (the "Assisted Living Facility") and a 120-bed skilled nursing facility (the "Skilled Nursing Facility" and, together with the Assisted Living Facility, the "Health Center") located at 12250 North 22nd Street, Tampa, Florida 33612.  Westport I owns the ILF Apartments (including the real property on which they are located and the improvements thereon), and Westport II owns the ILF Villas (including the real property on which they are located and the improvements thereon).  WNT owns the Health Center (including the real property on which it is located and the improvements thereon). The operations of the Debtors and the Independent Living Facility are currently managed by HMS of Tampa, Inc. ("HMS") pursuant to this Court's Order Granting Debtors' Emergency

Motion to Approve Property Management Agreement with HMS of Tampa, Inc. [Doc. No. 134]. The Assisted Living Facility is currently managed and operated by TALF, Inc., and TALF, Inc. currently owns the license issued by AHCA for the operation of the Assisted Living Facility. The Skilled Nursing Facility is currently managed and operated by TR & SNF, Inc., and TR & SNF, Inc. currently owns the license issued by AHCA for the operation of the Skilled Nursing Facility. A more detailed description of the Debtors' business is set forth in the Debtors' Joint Chapter 11 Case Management Summary [Doc. No. 6] and numerous pleadings filed with the Court throughout these cases.

J.      Westport I is currently regulated by the State of Florida Department of Financial Services, Office of Insurance Regulation (the "OIR"), under the provisions of Chapter 651, Florida Statutes, as amended.

K.      As of the date of this Confirmation Order, IMH Healthcare, LLC, a Delaware limited liability company, is the general partner of each of the Debtors and the managing member of WNT.

L.      On July 17, 2017, the Court entered its Agreed Order Scheduling Mediation and Appointing Mediator [Doc. No. 670], pursuant to which the Court required the principal parties in interest in the Bankruptcy Cases to attend a mediation settlement conference (the "Mediation") in order to achieve a consensual resolution of sale and plan issues. The Mediation was initially held on July 24, 2017 and July 25, 2017 and thereafter continued by agreement of the parties and orders of the Court.

M.      On September 8, 2017, the Resident Committee filed the Official Committee of Resident Creditors' Motion for Derivative Authority to Pursue Causes of Action of the Estates [Doc. No. 713] (the "Derivative Motion"), seeking, among other things, derivative authority to

pursue certain claims and causes of action of the Estates against CPIF. On October 16, 2017, the Court entered its Order Granting Official Committee of Resident Creditors' Motion for Derivative Authority to Pursue Causes of Action of the Estates [Doc. No. 745], which granted the Derivative Motion and authorized the Resident Committee to commence the CPIF Adversary Proceeding.

N.    On December 31, 2017, as a result of the Mediation, the Debtors and the Resident Committee filed their Joint Motion to Approve Settlement and Release Agreement [Doc. No. 802] (the "Mediation Settlement Motion"), seeking approval of a Settlement and Release Agreement dated as of December 31, 2017, by and among the Debtors, the Insider Release Parties, and the Resident Committee (the "Mediation Settlement Agreement"). A fully executed copy of the Mediation Settlement Agreement was attached as Exhibit A to the Mediation Settlement Motion. Pursuant to the Mediation Settlement Agreement, the parties thereto agreed, among other things, (i) to finalize and file with the Court, by no later than January 3, 2018, a joint plan of liquidation and a joint disclosure statement consistent with the terms of the Mediation Settlement Agreement, (ii) to conclude the liquidation of the Debtors' Estates by the settlement of all disputes and/or the transfer and assignment of all rights, claims and interests of the Debtors as provided in the Mediation Settlement Agreement and in the joint plan of liquidation to be filed with the Court, (iii) that all of the members of WNT would transfer irrevocably to Westport I their membership interests in WNT so that WNT, following such transfer, would become a wholly-owned subsidiary of Westport I, (iv) that TALF, Inc. would transfer irrevocably to a new operator full financial and operational control of the Assisted Living Facility, (v) that TR & SNF, Inc. would transfer irrevocably to a new operator full financial and operational control of the Skilled Nursing Facility, (vi) that the Resident Committee or the Liquidating Trustee, as the case may be, would be granted derivative standing to pursue any and all rights, remedies, and causes of action transferred pursuant

11

to the Mediation Settlement Agreement, and (vii) to exchange full and final mutual releases as to all of the Disputes (as that term is defined in the Mediation Settlement Agreement) and covenants not to sue, in each such case in accordance with the terms and conditions of the Mediation Settlement Agreement.

O.    On January 3, 2018, the Plan Proponents filed with the Court their (i) Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code dated as of December 31, 2017 [Doc. No. 805] (the "Initial Mediated Plan"), and (ii) Disclosure Statement for Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code dated as of December 31, 2017 [Doc. No. 806] (the "Initial Mediated Disclosure Statement").

P.    The Court held a hearing on January 12, 2018 (the "January 12 Hearing") to consider approval of the Mediation Settlement Motion and the Mediation Settlement Agreement. Objections to the Mediation Settlement Motion and the Mediation Settlement Agreement were filed by (i) CPIF [Doc. No. 817], (ii) 1199SEIU and 1199SEIU Political Action Fund [Doc. No. 818], (iii) Drew M. Dillworth, court appointed receiver for TR & SNF, Inc. [Doc. No. 821], (iv) the OIR [Doc. No. 823], (v) CNH Finance Fund I, L.P., f/k/a SCM Specialty Finance Opportunities Fund, L.P. ("CNH") [Doc. Nos. 824 and 829], (vi) the Ad Hoc Committee of Former Residents [Doc. No. 825], (vii) USAmeriBank [Doc. No. 827], (viii) Timothy Parker and Kathleen Burkholder [Doc. No. 828], and (ix) the United States Trustee [Doc. No. 830]. For purposes of this Confirmation Order, all of the foregoing objections to the Mediation Settlement Motion and the Mediation Settlement Agreement shall hereinafter be referred to, collectively, as the "Mediation Settlement Objections". At the January 12 Hearing, the Court (a) granted the Mediation Settlement Motion, subject to the modifications to the Mediation Settlement Agreement announced on the record at the January 12 Hearing (the "Mediation Settlement Agreement

12

Modifications"), and (b) required the Plan Proponents to amend the Initial Mediated Plan and the Initial Mediated Disclosure Statement in order to incorporate certain modifications to the Initial Mediated Plan and the Initial Mediated Disclosure Statement announced on the record at the January 12 Hearing.  [See Doc. No. 833.]

Q.      On January 18, 2018, the Court entered its Order Granting Joint Motion to Approve Settlement and Release Agreement [Doc. No. 840] (the "Mediation Settlement Order"), which granted the Mediation Settlement Motion and approved the Mediation Settlement Agreement as modified by the Mediation Settlement Agreement Modifications (which were incorporated in the Mediation Settlement Order) (the "Modified Mediation Settlement Agreement").  In the Mediation Settlement Order, the Court also overruled in all respects all of the Mediation Settlement Objections.  To the extent that any of the Mediation Settlement Objections could be considered to be objections to the Modified Plan, all of the Mediation Settlement Objections are overruled in all respects as they may relate to the Modified Plan.

R.      On January 18, 2018, the Plan Proponents filed with the Court the Plan and the Disclosure Statement.  On March 1, 2018, the Plan Proponents filed with the Court the Plan Modifications.

S.      On January 18, 2018, the Court entered its Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing [Doc. No. 841] (the "Disclosure Statement Approval Order").  In the Disclosure Statement Approval Order, the Court (i) determined that the Disclosure Statement met the "adequate information" standards required by Section 1125(a)(1) of the Bankruptcy Code, and (ii) conditionally approved the Disclosure

13

Statement for distribution to Creditors in conjunction with the Plan Proponents' solicitation of votes on the Plan.

T.    In the Disclosure Statement Approval Order, the Court (i) scheduled a hearing for February 22, 2018, at 9:30 a.m., to consider (a) Confirmation of the Plan, including timely filed objections thereto, (b) objections to final approval of the Disclosure Statement, (c) motions for cramdown, (d) applications for compensation, and (e) motions for allowance of administrative claims, (ii) fixed February 14, 2018 as the last date for the filing of Ballots accepting or rejecting the Plan, (iii) fixed February 15, 2018 as the last date for the filing of (a) written objections to the Disclosure Statement, (b) written objections to Confirmation of the Plan, and (c) any election under Section 1111(b)(2) of the Bankruptcy Code, (iv) fixed February 19, 2018 as the last date for the filing by the Plan Proponents of a confirmation affidavit, and (v) fixed February 20, 2018 as the last date for the filing by the Plan Proponents of a ballot tabulation.

U.    On January 19, 2018, the Court entered its Order Setting Final Evidentiary Hearing and Establishing Pre-Trial Procedures for Hearing on Confirmation [Doc. No. 842] (the "Pre-Trial Order"), which order scheduled the hearing on Confirmation of the Plan as a final evidentiary hearing and established pre-trial procedures to govern the final evidentiary hearing on Confirmation of the Plan.

V.    On January 22, 2018, the Debtors filed with Court their (i) Notice of Filing Redline of (A) First Amended and Restated Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code Dated December 31, 2017, Compared to (B) Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code Dated December 31, 2017 [Doc. No. 845], which attached a redline comparison of the Plan compared to the Initial Mediated Plan, and (ii) Notice of Filing Redline of (A) Disclosure Statement for First Amended and Restated

14

Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code Dated December 31, 2017, Compared to (B) Disclosure Statement to Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code Dated December 31,2017 [Doc. No. 846], which attached a redline comparison of the Disclosure Statement compared to the Initial Mediated Disclosure Statement.

W.    On January 22, 2018, pursuant to the Disclosure Statement Approval Order, the Debtors mailed the Disclosure Statement, the Plan, the Disclosure Statement Approval Order, and a Ballot (all of the foregoing documents hereinafter collectively referred to as the "Plan Solicitation Documents") to all Creditors of the Debtors as set forth on the Court's master mailing matrices for the Debtors' Chapter 11 cases (excluding the Current Residents).  An appropriate affidavit and certificate of service have been filed by the Debtors with the Court regarding such service. [See Doc. No. 850.]

X.    The Plan Solicitation Documents were served on the Current Residents via hand delivery by making them available at a designated location at University Village.  If the Plan Solicitation Documents were not picked up in person by a Current Resident, they were placed in such Current Resident's mailbox at University Village.

Y.    On January 23, 2018, the Debtors filed with the Court their Notice of Filing Plan Solicitation Package [Doc. No. 848], which attached full and complete copies of the Plan Solicitation Documents as exhibits thereto.

Z.    On January 23, 2018, the Debtors filed with the Court the Debtors' Notice of Posting Plan Solicitation Package on Website of Stichter, Riedel, Blain & Postler, P.A. [Doc. No. 849], which notified Creditors and parties in interest that the Plan Solicitation Documents were

posted on the website of the Debtors' bankruptcy counsel at http://www.srbp.com/srbp/case-documents/887-westport-holdings-tampa.

AA.     On February 14, 2018, the Debtors filed with the Court Debtors' Emergency Motion to Continue Confirmation Hearing Scheduled for February 22, 2018 [Doc. No. 892] (the "Motion to Continue"), pursuant to which the Debtors requested the Court to enter an order continuing the February 22, 2018 hearing on Confirmation of the Plan based on CPIF's opposition to Confirmation of the Plan and to allow the parties time to prepare for a contested confirmation hearing.  On February 21, 2018, the Court entered its Order Granting Debtors' Emergency Motion to Continue Confirmation Hearing and Re-Scheduling Deadlines [Doc. No. 905], pursuant to which the Court (i) granted the Motion to Continue, (ii) rescheduled the hearing on Confirmation of the Plan and final approval of the Disclosure Statement as a two-day final evidentiary hearing on February 28, 2018, at 9:30 a.m., and March 1, 2018, at 9:30 a.m., and (iii) rescheduled certain dates and deadlines in the Disclosure Statement Approval Order and the Pre-Trial Order.

BB.     On February 21, 2018, in accordance with the Disclosure Statement Approval Order, the Debtors filed with the Court their Ballot Tabulation with respect to the Plan [Doc. No. 904] (the "Ballot Tabulation").  The Ballot Tabulation included all Ballots received by the Court on or before the February 14, 2018 deadline for voting on the Plan (the "Ballot Deadline").  The Ballot Tabulation was served by the Debtors on the United States Trustee and on all parties receiving pleadings in the Bankruptcy Cases pursuant to the Court's CM/ECF Transmission system.

CC.     On February 26, 2018, the Debtors filed with the Court Debtors' Motion to Allow Late Filed Ballot [Doc. No. 913] (the "Late-Filed Ballot Motion"), seeking the allowance of the Ballot filed after the Ballot Deadline by the Holder of the Class 7 Claims under the Plan (the "Class 7 Ballot").  No party objected to the Late-Filed Ballot Motion and it was orally granted at the

Confirmation Hearing. Accordingly, the Late-Filed Ballot Motion is granted hereinbelow and the Class 7 Ballot shall be deemed to have been timely filed and shall be included in the Ballot Tabulation for voting purposes.

DD.    On February 25, 2018, in accordance with the Disclosure Statement Approval Order, the Debtors filed with the Court Debtors' Confirmation Declaration and Memorandum in Support of Confirmation [Doc. No. 912] (the "Confirmation Affidavit"). The Confirmation Affidavit was served by the Debtors on the United States Trustee and on all parties receiving pleadings in the Bankruptcy Cases pursuant to the Court's CM/ECF Transmission system, including counsel to CPIF. The testimony contained in the Confirmation Affidavit was proffered by counsel for the Debtors at the Confirmation Hearing, and the declarant, Mr. Eli Freiden, was made available for cross-examination. No party objected to the proffer of Mr. Freiden's testimony or requested an opportunity to cross-examine Mr. Freiden. The Court accepted all unrebutted statements made in the Confirmation Affidavit into evidence at the Confirmation Hearing.

EE.    On February 26, 2018, the Debtors filed with the Court their Notice of Filing Exhibits to Debtors' Confirmation Declaration and Memorandum in Support of Confirmation [Doc. No. 918], which attached the Debtors' Liquidation Analysis as Exhibit 3 thereto.

FF.    The following parties filed written objections to Confirmation of the Plan: (i) the United States Trustee [Doc. No. 891] (the "UST Objection"), (ii) Vogel Strategic Investments, L.P. [Doc. No. 895] (the "Vogel Objection"), (iii) CNH [Doc. No. 896] (the "CNH Objection"), (iv) the Ad Hoc Committee of Former Residents [Doc. No. 897] (the "Ad Hoc Committee Objection"), and (v) CPIF [Doc. No. 902] (the "CPIF Objection") (the UST Objection, the Vogel Objection, the CNH Objection, the Ad Hoc Committee Objection, and the CPIF Objection shall hereinafter be referred to, collectively, as the "Plan Objections").

17

GG.    Written objections to the final approval of the Disclosure Statement were filed by the United States Trustee [Doc. No. 891] and CPIF [Doc. No. 902] (collectively, the "Disclosure Statement Objections").

HH.    On February 27, 2018, the Debtors filed with the Court Debtors' Response to Vogel Strategic Investments, L.P.'s Objection to Confirmation [Doc. No. 932], which set forth the Debtors' legal arguments and responses to the objections to Confirmation of the Plan contained in the Vogel Objection.

II.    The Court held a two-day trial on February 28, 2018 and March 1, 2018 to consider Confirmation of the Modified Plan in accordance with 11 U.S.C. §§ 1129(a) and (b).  Prior to the commencement of the trial on February 28, 2018, counsel for the Debtors advised the Court (i) of the Plan Modifications (which were subsequently filed with the Court on March 1, 2018 [Doc. No. 942] and duly served on parties in interest), (ii) that the Plan had been accepted by at least one (1) Impaired Class entitled to vote on the Plan, (iii) that all of the Plan Objections and the Disclosure Statement Objections had been resolved, with the exception of the CPIF Objection and the Vogel Objection, (iv) that in connection with resolving the Plan Objections (other than the CPIF Objection), the Plan Proponents had agreed to the Plan Modifications, and (v) that as to the Class 2 Claims of CPIF, the Plan Proponents moved for Confirmation of the Modified Plan pursuant to Section 1129(b) of the Bankruptcy Code notwithstanding the vote by CPIF against the Plan (the "Cramdown Request").  Except with respect to CPIF, the Plan Modifications do not alter, modify or otherwise affect the treatment of any Classes of Creditors or the Holders of Equity Interests as set forth in the Modified Plan.

JJ.    At the Confirmation Hearing, the following witnesses and expert witnesses were presented by the Plan Proponents in support of Confirmation of the Modified Plan: (i) the

Examiner; (ii) Eli Freiden; (iii) Jeannette Baltzly of SouthPoint; (iv) Melvyn Tockman, M.D., representative of the Resident Committee; (v) Richard Gaudet of HDH Advisors, LLC, as expert witness in support of the Modified Plan's treatment of the CPIF Claims under Section 1129(b) of the Bankruptcy Code and the Modified Plan's compliance with Section 1129(a)(7) of the Bankruptcy Code; and (vi) Eric Danner of CR3 Partners, LLC, as expert witness in support of the Modified Plan's compliance with Section 1129(a)(11) of the Bankruptcy Code.

KK.    At the Confirmation Hearing, the following witnesses and expert witnesses were presented by CPIF in support of the CPIF Plan Objections (as defined below): (i) Maria Sarver, the Executive Director of the Debtors; (ii) Richard Hallowell of Kealoha Corporation, as expert witness as to the Modified Plan's treatment of the CPIF Claims under Section 1129(b) of the Bankruptcy Code; (iii) Ed Smith of HealthTrust, as expert witness as to the value of the Independent Living Facility; and (iv) Chad Shandler of CohnReznick Advisory, as expert witness as to the Modified Plan's compliance with Sections 1129(a)(7) and 1129(a)(11) of the Bankruptcy Code.

LL.    At the conclusion of the March 1, 2018 trial day, the Court announced on the record (i) certain preliminary rulings as to confirmation of the Modified Plan, including that a legitimate basis existed for the separate classification of the Class 13 Claims and the Class 14 Claims and that such separate classification was proper (the "Preliminary Confirmation Ruling"), (ii) concerns regarding the Modified Plan's feasibility without an exit financing facility, and (iii) that the trial on Confirmation of the Modified Plan would be continued to March 19, 2018, at 9:30 a.m.

MM.    On March 13, 2018, CPIF filed with the Court its Supplemental Objection of CPIF Lending, LLC to Proposed Plan Modifications [Doc. No. 946] (the "CPIF Supplemental Objection" and, together with the CPIF Objection, the "CPIF Plan Objections").

19

NN.     The Court held a third and final day of trial on March 19, 2018 to consider Confirmation of the Modified Plan in accordance with 11 U.S.C. §§ 1129(a) and (b).   At the conclusion of the March 19, 2018 trial, the Court announced on the record that (i) by no later than April 10, 2018, the Plan Proponents and CPIF were required to file their respective briefs on feasibility of the Modified Plan and the Plan Proponents were required to file their responses to the CPIF Plan Objections, and (ii) the Court would hold a continued hearing on April 12, 2018, at 1:30 p.m., to announce its rulings on Confirmation of the Modified Plan and final approval of the Disclosure Statement.

OO.     On April 10, 2018, as required by the Court at the conclusion of the March 19, 2018 trial day, the Plan Proponents timely filed the Plan Proponents' Response to Objections to Confirmation [Doc. No. 973] (the "Response to CPIF Plan Objections"), which sets forth the legal arguments and responses of the Plan Proponents as to the CPIF Plan Objections.

PP.     On April 10, 2018, as required by the Court at the conclusion of the March 19, 2018 trial, CPIF timely filed CPIF Lending, LLC's Feasibility Memorandum [Doc. No. 974].  In addition, on April 10, 2018, CPIF timely filed its Addendum to CPIF Lending, LLC's Feasibility Memorandum [Doc. No. 976].

QQ.     On April 10, 2018, as required by the Court at the conclusion of the March 19, 2018 trial, the Plan Proponents timely filed the Plan Proponents' Post-Trial Brief on Feasibility [Doc. No. 975] (the "Plan Proponents' Feasibility Brief").

RR.     On April 11, 2018, the Debtors filed with the Court Debtors' Emergency Motion for Authority to Obtain Postpetition Financing and Grant Junior Liens, Superpriority Administrative Expense Status, and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 [Doc. No. 979] (the "SouthPoint Financing Motion").   Pursuant to the

SouthPoint Financing Motion, the Debtors sought authority to borrow on a secured basis from SouthPoint a maximum principal amount of up to Two Million and 00/100 Dollars ($2,000,000.00) under a secured Postpetition debtor in possession line of credit facility, to provide needed financing to ensure the Debtors' exit from bankruptcy, fund certain emergent capital expenditure needs, and fund potential operating deficits which may occur until the Debtors and WNT are sold following the Effective Date of the Modified Plan. The SouthPoint Financing Motion was granted on an interim basis as announced on the record at the April 12 Hearing and on a final basis at a hearing held by the Court on April 25, 2018. On May 2, 2018, the Court entered its Final Order Granting Debtors' Emergency Motion for Authority to Obtain Postpetition Financing and Grant Junior Liens, Superpriority Administrative Expense Status, and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001 [Doc. No. 1006] (the "SouthPoint Financing Order").

SS.   As stated above, the Court orally announced its extensive findings of fact and conclusions of law as to Confirmation of the Modified Plan at the April 12 Hearing. [See Hearing Transcript at Doc. No. 986.]

TT.   The Plan classifies Claims and Equity Interests into sixteen (16) separate Classes. Classes 1, 10, 11, 12, and 16 are treated as Unimpaired under the Plan. Since the Claims and Equity Interests included in these Classes are not Impaired by the Plan, the Holders thereof are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

UU.   The following Classes of Claims are treated as Impaired under the Plan and were entitled to vote on the Plan:

    a.   Class 2: Allowed Secured Claims of CPIF;

    b.   Class 4: Allowed Secured Tax Claims of Governmental Units;

c.      Class 5: Allowed Secured Claims of Drywizard Drywall Services, Inc.;

d.      Class 6: Allowed Secured Claims of Geiger;

e.      Class 7: Allowed Secured Claims of Flood Pros of SWFL Corp.;

f.      Class 8: Allowed Secured Claims of Prospect Construction & Development Group;

g.      Class 9: Allowed Secured Claims of Team Construction Services, LLC;

h.      Class 13: Allowed Unsecured Claims of the Resident Parties;

i.      Class 14: Other Allowed Unsecured Claims; and

j.      Class 15: Allowed Subordinated Unsecured Claims of Current Operators.

VV.      CPIF asserts that, prior to the Petition Date, CPIF loaned approximately $9,500,000.00 to the Debtors (the "CPIF Loan"). CPIF also asserts that, as of the Petition Date, the approximate principal balance owed on the CPIF Loan was $9,500,000.00.

WW.      On October 26, 2016, CPIF filed (i) Proof of Claim Number 22 against Westport I in the Westport I Bankruptcy Case asserting a Secured Claim in the amount of $9,781,224.58, plus Postpetition interest and attorneys' fees, costs and charges incurred in the Westport I Bankruptcy Case ("Proof of Claim Number 22"), and (ii) Proof of Claim Number 2 against Westport II in the Westport II Bankruptcy Case asserting a Secured Claim in the amount of $9,781,224.58, plus Postpetition interest and attorneys' fees, costs and charges incurred in the Westport II Bankruptcy Case ("Proof of Claim Number 2" and, together with Proof of Claim Number 22, the "CPIF Claims"). CPIF asserts that the CPIF Claims are secured by a first-priority lien on the real estate owned by the Debtors and substantially all personal property owned by the Debtors, as more specifically described in CPIF's loan documents (collectively, the "CPIF Collateral"), including that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of

22

March 31, 2014 as recorded in Official Records Book 22502, Page 1793 in the Public Records in Hillsborough County, Florida.

XX.    The Court finds that, based upon the tabulation of Ballots as set forth in the Ballot Tabulation and the evidence at the Confirmation Hearing, the Creditors in Classes 4, 7, 13[7], 14, and 15 have accepted the Modified Plan in the requisite number and amount required under Section 1126(c) of the Bankruptcy Code.  The Resident Committee and the Ad Hoc Committee of Former Residents supported Confirmation of the Modified Plan.  Class 6 (Geiger) and Class 9 (Team Construction Services, LLC) voted to reject the Plan and Class 5 (Drywizard Drywall Services, Inc.) and Class 8 (Prospect Construction & Development Group) did not cast a Ballot either accepting or rejecting the Plan.  Based on the Court's determination of value as set forth in this Confirmation Order, the Holders of Claims in Classes 5, 6, 8 and 9 do not hold Secured Claims, and Confirmation of the Modified Plan over the rejection of the Plan by such Classes or the failure to vote to accept or reject the Plan by such Classes is appropriate.  With respect to Class 2, the Court grants the Cramdown Request in the ordered paragraphs below.

YY.    The Court finds that neither the Modified Plan nor this Confirmation Order adversely affects or changes the treatment of the Claim of any Creditor or the interest of any Holder of Equity Interests of the Debtors who has not accepted in writing the Modified Plan.  Accordingly, in accordance with Section 1127(d) of the Bankruptcy Code, the Modified Plan shall be and is hereby deemed accepted by all Creditors of the Debtors who have previously accepted the Plan.  No further solicitation or resolicitation of acceptances of the Modified Plan is required under the circumstances.  The Court finds that the Plan Proponents have complied with each of the

---

[7] Based on the Plan Modifications, counsel for the Ad Hoc Committee of Former Residents announced their intention to change certain Class 13 Ballots of the Former Residents to accept the Plan.  Given Class 13's acceptance of the Plan, the change of Ballots is not necessary to obtain the acceptance of Class 13.

requirements of Sections 1127(a) and 1127(c) of the Bankruptcy Code with respect to the Modified

Plan.

ZZ.   The Court finds that, based upon the entire record:

a.   The Modified Plan has been proposed in good faith by the Plan Proponents following extensive arm's-length negotiations by and among the Debtors, the Resident Committee, the Ad Hoc Committee of Former Residents, the Examiner, and other Creditors and parties in interest.

b.   Based upon the Cash presently on hand with the Debtors and the evidence that the Debtors are more likely than not to get exit financing (either under the SouthPoint Loan Facility to be provided by SouthPoint or from another financing source), the Liquidating Estate will have sufficient funds as of the expected Effective Date to pay, reserve for, or escrow all payments required to be made on the Effective Date in the amounts required under the Bankruptcy Code and as provided for in the Modified Plan.

c.   The Distributions to Creditors under the Modified Plan will be higher than if the Debtors' Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code.

d.   The Modified Plan is feasible and, except as otherwise provided in the Modified Plan, the Confirmation and consummation of the Modified Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors under the Bankruptcy Code.

AAA.  The Court finds that the Modified Plan and this Confirmation Order, including

without limitation the discharge, exculpation from liability, general injunction and other related

provisions of Article 11 of the Modified Plan, are fair, equitable, reasonable and proper, are in the

best interests of the Debtors' Estates, and are binding upon all Creditors and Holders of Equity

Interests, whether or not the Claim or Equity Interest of any such Creditor or Holder is Impaired under

the Modified Plan and whether or not such Creditor or Holder has accepted the Modified Plan or was

entitled to vote on the Modified Plan.  For the avoidance of doubt, and as confirmed by counsel for

the Plan Proponents at the Confirmation Hearing, the Modified Plan does not provide for any third

party releases beyond the scope of the following releases approved in the Modified Mediation Settlement Agreement (the "Settlement Releases")[8]:

(a) **Mutual Releases**. As a material inducement to the Parties to enter into this Agreement, on the Closing Date, each of the Parties, on behalf of himself, herself, or itself and all of his, hers or its respective Affiliates, shareholders, officers, directors, members, managers, partners, employees, agents, attorneys, legal representatives, successors and assigns and anyone claiming by, through or under them (collectively, the "**Releasing Party**"), shall be deemed to fully and forever remise, release and discharge each of the other Parties and their business units, past, present and future agents, general agents, members, managers, brokers, representatives, heirs, successors, Affiliates, subsidiaries, parents, predecessors, assigns, officers, stockholders, limited partners, general partners, directors, principals, attorneys, employees, partners, independent contractors, consultants, experts, administrators, insurers, reinsurers, and indemnitors (collectively, the "**Released Parties**") of and from any and all, and all manner of, action and actions, cause and causes of action, suits, debts, breaches of duty, other breaches, notes, dues, sums of money, accounts, reckonings, undertakings, bonds, bills, specialties, covenants, contracts, controversies, agreements, guarantees, indemnifications, promises, liens, variances, trespasses, damages, judgments, taxes, interest, penalties, assessments, extents, executions, expenses, losses, costs, attorneys' fees, claims, counterclaims, demands, obligations and liabilities whatsoever of every kind and nature, whether known or unknown, direct or consequential, foreseen or unforeseen, matured or unmatured, developed or undeveloped, discoverable or undiscoverable, whether or not well-founded in fact or in law, and whether in law or equity or otherwise, which any Releasing Party ever had, now has, shall or may have against the Released Parties arising out of, on, in connection with, or in any way relating to, or for or by reason of any matter, cause, or thing whatsoever, from the beginning of the world until the Closing Date, including, but not limited to, any matter, cause or thing whatsoever related to, arising out of, or in connection with the Disputes, the Debtors, WNT, University Village, the Independent Living Facility, the Assisted Living Facility, the Skilled Nursing Facility, the Health Center, the Bankruptcy Cases, the Joint Plan, the Draft Complaint, the Insider Recovery Claims, and the Insider Causes of Action; provided, however, that nothing contained in this Section 13(a) or elsewhere in this Agreement shall release any Released Party from his, her or its covenants, obligations, duties and agreements set forth in this Agreement; and provided further, however, that nothing contained in this Section 13(a) or elsewhere in this Agreement shall

---

[8] The Settlement Releases are set forth herein verbatim from the Modified Mediation Settlement Agreement and any internal cross-references and capitalized terms in the Settlement Releases shall reference provisions of the Modified Mediation Settlement Agreement and have such meanings ascribed to them in the Modified Mediation Settlement Agreement.

release any claims or causes of action or defenses or other rights that the Insiders may have against the following parties: (i) potential claims against Timothy Parker and Kathleen Burkholder and/or counterclaims against Timothy Parker and Kathleen Burkholder in connection with a cause of action pending in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, as Case Number 2016-CA-007666, including, among other things, claims for fraudulent inducement and corporate espionage, (ii) potential claims against Larry Landry, individually, Westport Holdings University Village, LLC, Westport Senior Living Investment Fund, LP, and AgeWell Senior Living, LLC and its members, including, among other things, claims for fraudulent inducement and the unauthorized dissemination of proprietary information, and (iii) any other party that is not a Released Party (collectively, the "**Retained Insider Actions**"); and provided further, however, that nothing contained in this Section 13(a) or elsewhere in this Agreement shall prohibit any of the other Parties from pursuing any claims against the parties listed in subparagraph (ii) above.

(b)    **Covenants Not to Sue or File.** This Agreement represents, and is intended to effectuate, the complete and final resolution of all Disputes among the Parties with respect to University Village. Therefore, without in any way limiting the scope or effect of the mutual releases provided in Section 13(a) above:

(i)    The Debtors, WNT and the Resident Committee agree never to file or institute against any of the Insiders any claim, allegation, demand, suit, action, cause of action, or proceeding of any kind or nature whatsoever, whether at law, in equity or otherwise, in or before any court, administrative agency, arbitral or alternative dispute resolution panel or authority or other tribunal wherever situated, asserting, directly or indirectly, any claim, demand, right or cause of action of any kind or nature whatsoever, whether legal, equitable, fixed, contingent, matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable, known or unknown, suspected, disclosed or undisclosed, hidden or concealed, whether on behalf of the Debtors, the Debtor's Estates, the Current Residents, or on behalf of any Person or entity not a signatory to this Agreement, arising out of, on, in connection with, or in any way relating to University Village; provided, however, that this covenant not to sue or file shall not apply to any action taken by a Party to enforce any obligation arising out of, or preserved under, or to remedy any violation of, this Agreement.

(ii)    The Insiders agree never to file or institute against the Debtors or the Debtors' Estates (or any property thereof) any claim, allegation, demand, suit, action, cause of action, or proceeding of any kind or nature whatsoever, whether at law, in equity or otherwise, in or

26

before any court, administrative agency, arbitral or alternative dispute resolution panel or authority or other tribunal wherever situated, asserting, directly or indirectly, any claim, demand, right or cause of action of any kind or nature whatsoever, whether legal, equitable, fixed, contingent, matured, unmatured, liquidated, unliquidated, foreseeable, unforeseeable, known or unknown, suspected, disclosed or undisclosed, hidden or concealed, whether on behalf of the Insiders or on behalf of any Person or entity not a signatory to this Agreement, arising out of, on, in connection with, or in any way relating to University Village; provided, however, that this covenant not to sue or file shall not apply to any action taken by a Party to enforce any obligation arising out of, or preserved under, or to remedy any violation of, this Agreement.

BBB.    Except as otherwise released in or provided in the Modified Mediation Settlement Agreement, it is the intention of the Court and expressly contemplated in the Modified Plan and in this Confirmation Order that (i) all Assets (including the Causes of Action) be and are preserved for liquidation and prosecution following the Effective Date, and (ii) no Assets (including the Causes of Action) shall be abandoned and no Causes of Action shall lapse or be judicially estopped as a result of the entry of this Confirmation Order or the consummation of the Modified Plan. Accordingly, except as otherwise released in or provided in the Modified Mediation Settlement Agreement, the Court finds that all Assets (including the Causes of Action) shall vest in the Liquidating Estate pursuant to the terms of the Modified Plan.

CCC.    With respect to the requirements of 11 U.S.C. § 1129(a) as applicable to the Modified Plan, the Court finds as follows (and also incorporates the Preliminary Confirmation Ruling, the Court's Oral Ruling and the statements of the Debtors in the Confirmation Affidavit as to 11 U.S.C. § 1129(a)):

  a. Copies of the Plan Solicitation Documents were timely mailed or delivered to all Creditors of the Debtors as shown on the Court's master mailing matrices for the Debtors' Chapter 11 cases (including the Current Residents) and to other parties in interest in accordance with the Disclosure Statement Approval Order. The Court hereby expressly finds that (i) timely and proper notice of the Confirmation Hearing and the time fixed for filing objections to, and Ballots on, the Plan and objections to the Disclosure Statement was given to

27

all Creditors and Holders of Equity Interests of the Debtors and all parties in interest, (ii) such notice was adequate and sufficient to notify all Creditors and Holders of Equity Interests of the Debtors and all parties in interest of the Confirmation Hearing and the objection and/or voting deadlines as to the Plan and the Disclosure Statement, and (iii) such notice complied in all respects with the procedural orders of the Court, the Bankruptcy Code, the Bankruptcy Rules, including without limitation Bankruptcy Rules 2002, 3018, 3019, and 9006, and the Local Rules, and otherwise satisfied the requirements of due process. No other or further notice is required.

b.   The Modified Plan complies with each of the applicable provisions of Title 11 of the United States Code, including without limitation the provisions of Sections 1122 and 1123 of the Bankruptcy Code.

c.   As required by Section 1129(a)(2) of the Bankruptcy Code, the Plan Proponents have complied with the applicable provisions of Title 11 of the United States Code. Without limiting the generality of the foregoing and by way of example, the Plan Proponents have complied with the disclosure and solicitation requirements of Sections 1125 and 1126 of the Bankruptcy Code. Further, the Court expressly finds that the Disclosure Statement and the Modified Plan contain adequate information for purposes of Section 1125 of the Bankruptcy Code, and that no further disclosure is required by the Plan Proponents in connection with the Modified Plan.

d.   The Modified Plan has been proposed in good faith by the Plan Proponents following extensive arm's length negotiations by and among the Debtors, the Resident Committee, the Ad Hoc Committee of Former Residents, the Examiner, and other Creditors and parties in interest. The Modified Plan has not been proposed by any means forbidden by law.

e.   The provisions regarding discharge, exculpation from liability, general injunction and related provisions set forth in Article 11 of the Modified Plan are proposed in good faith, are equitable, and are supported by valid consideration.

f.   Any payment made or to be made by the Debtors, the Plan Proponents, the Liquidating Trustee, or by any person issuing securities or acquiring property under the Modified Plan, for services or for costs and expenses in or in connection with the Bankruptcy Cases, or in connection with the Modified Plan and incident to the Bankruptcy Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

g.   The identity and affiliations of all individuals who are to serve, after confirmation of the Modified Plan, as directors or officers of Westport I or Westport II or as Liquidating Trustee have been fully disclosed, and the appointment of such individuals to such offices, or their continuance therein,

28

is equitable and is consistent with the interests of the Creditors and Holders of Equity Interests and with public policy.

h.    The identity of, and the nature of any compensation for, the Liquidating Trustee or any insiders that will be employed or retained by Westport I or Westport II have been fully disclosed.

i.    No governmental regulatory commission now has, or will have after Confirmation of the Modified Plan, jurisdiction over any rates of Westport I or Westport II or the Liquidating Estate.

j.    With respect to each Impaired Class of Claims, each Holder of a Claim of such Class (i) has accepted the Modified Plan or (ii) will receive or retain under the Modified Plan on account of such Claim property of a value, as of the Effective Date of the Modified Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. The Modified Plan satisfies the "best interests of creditors" test as to all Creditors (including CPIF).

k.    With respect to each Class of Claims or Equity Interests, (i) such Class has accepted the Modified Plan (except for Class 2, as to which the Court has granted the Cramdown Request), or (ii) such Class is not Impaired under the Modified Plan.

l.    The Modified Plan meets the requirements of Section 1129(a)(9) of the Bankruptcy Code.

m.    At least one Impaired Class of Claims has accepted the Modified Plan, determined without including any acceptance of the Modified Plan by any insider holding a Claim of such Class.

n.    The Modified Plan meets the requirements of Section 1129(a)(11) of the Bankruptcy Code. Confirmation of the Modified Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor thereto under the Modified Plan except as otherwise provided in the Modified Plan. The Plan Proponents have demonstrated the likelihood that the Debtors and the Liquidating Trustee will be able to meet their respective financial and other obligations under the Modified Plan and documents ancillary thereto. The Modified Plan is feasible.

o.    All fees payable under 28 U.S.C. § 1930 through the date of entry of this Confirmation Order have been paid by the Debtors or shall be paid as set forth below in this Confirmation Order. All fees payable under 28 U.S.C. § 1930 for the periods following Confirmation of the Modified Plan shall be paid as set forth below in this Confirmation Order.

p.      The Debtors have no "retiree benefits" (as such term is defined in Section 1114 of the Bankruptcy Code) payable pursuant to 11 U.S.C. § 1114.

DDD.   With respect to the CPIF Plan Objections other than feasibility, the Court finds, based on the evidence presented, the arguments of counsel, the Response to CPIF Plan Objections, the Plan Proponents' Feasibility Brief, and the specific facts of the Bankruptcy Cases, and for the reasons announced on the record at the Confirmation Hearing (including the Preliminary Confirmation Ruling and the Court's Oral Ruling), that the CPIF Plan Objections should be overruled in all respects.   Specifically, as to the other CPIF Plan Objections, the Court finds as follows:

a.      pursuant to Section 1129(b)(1) of the Bankruptcy Code, the Modified Plan does not discriminate unfairly, and is fair and equitable, with respect to CPIF as the Holder of the Class 2 Claims;

b.      the totality of the Modified Plan's treatment of the Class 2 CPIF Secured Claim, including the interest rate of 5.84% per annum, the 10-year term, and the CPIF Reserve, is fair and equitable within the meaning of Section 1129(b)(2) of the Bankruptcy Code and satisfies the cramdown requirements under Section 1129(b)(2) of the Bankruptcy Code;

c.      the Court accepts the testimony of the Plan Proponents' expert witness, Richard Gaudet, and finds that the interest rate of 5.84% per annum in Article 5.04(b) of the Modified Plan satisfies the requirements of *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004);

d.      the Modified Plan satisfies the best interests of creditors test as there was no evidence presented at the Confirmation Hearing that CPIF would receive more than $12.9 million from a sale of University Village in a Chapter 7 liquidation; and

e.      the Modified Plan has been proposed in good faith by the Plan Proponents as the Modified Plan proposes to sell University Village to maximize its value.

EEE.   The Court also finds, based on the evidence presented, the arguments of counsel, and the specific facts of the Bankruptcy Cases, and for the reasons announced on the record at the Confirmation Hearing (including the Preliminary Court Ruling and the Court's Oral Ruling), that the other Plan Objections other than the CPIF Plan Objections should be overruled in all respects.

30

Therefore, with respect to Confirmation of the Modified Plan, all requirements of 11 U.S.C. §§ 1129(a) and (b) have been met.

The Court having made the above findings, it is, accordingly,

**ORDERED**:

1.      The findings of fact and conclusions of law set forth in this Confirmation Order and as made on the record in open court at the Confirmation Hearing, which constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, are ratified and adopted as findings of this Court and are incorporated herein.

2.      To the extent any of the findings of fact set forth above are deemed to be conclusions of law, such findings of fact are hereby adopted as conclusions of law.  To the extent any of the following conclusions of law are deemed to be findings of fact, such conclusions of law are hereby adopted as findings of fact.

3.      The Disclosure Statement contains "adequate information" in accordance with Section 1125(a)(1) of the Bankruptcy Code.  Therefore, pursuant to Section 1125(b) of the Bankruptcy Code and Bankruptcy Rule 3017(b), the Disclosure Statement is approved in all respects on a final basis.

4.      The Disclosure Statement Objections are overruled in all respects.

5.      The Modified Plan is confirmed in all respects.

6.      The CPIF Plan Objections and the other Plan Objections are overruled in all respects.

7.      The Plan Proponents have complied in all respects with the provisions of Section 1127 of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to the modifications to the Plan contained in the Plan Modifications.

8.      The Cramdown Request is granted.

9.     The Late-Filed Ballot Motion is granted.

10.     The Court appoints Jeffrey W. Warren as the initial Liquidating Trustee. The Liquidating Trustee shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his earlier death, resignation or removal. In the event of the death, resignation or removal of the Liquidating Trustee, any successor thereto shall be selected following notice to the Notice Parties and a hearing before the Court.

11.     The Liquidating Trustee shall have the power and authority to administer the Liquidating Estate for the purposes described in, and in accordance with the powers given by, the Modified Plan and this Confirmation Order. In addition, the Liquidating Trustee shall have standing to liquidate the Assets (including pursuing the Causes of Action). For purposes of performing the foregoing, the Liquidating Trustee shall have the status of a representative of the Estates under 11 U.S.C. § 1123(b)(3)(B).

12.     The Liquidating Trustee shall be substituted for the Resident Committee as the plaintiff in the CPIF Adversary Proceeding, without further order of the Court. In addition, the Liquidating Trustee shall be substituted for the Debtors in any contested matters, including, but not limited to, any pending objections to Claims and in any proceedings involving the Assets, including, but not limited to, any Causes of Action, without further order of the Court. The Liquidating Trustee shall be authorized to pursue objections to Claims or other contested matters or adversary proceedings in the Bankruptcy Cases, and to prosecute, liquidate and collect the Assets (including the Causes of Action), including the proceeds thereof, in his own name for the benefit of the Liquidating Estate.

13.     The Liquidating Trustee shall succeed to the rights of the Debtors as debtors-in-possession under Section 1107 of the Bankruptcy Code, including, but not limited to, (i) the right of the Debtors to seek any remedies otherwise available to the Debtors under Section 506(c) of the

32

Bankruptcy Code to surcharge the collateral securing any Allowed Secured Claim in Classes 2 and 5-12 for, among other expenses, the Allowed Administrative Expenses of Professionals, the allowed expenses of the Liquidating Trustee, the allowed expenses of any professionals employed by the Liquidating Trustee, or the allowed expenses of any member of the Trust Advisory Board and (ii) the right of the Debtors to seek to obtain Exit Financing on such terms as are approved by the Court in accordance with Section 364 of the Bankruptcy Code. For the avoidance of doubt, nothing herein is an adjudication of any purported right to surcharge the collateral of any Allowed Secured Claim in Classes 2 and 5-12 or a determination that any specific categories of expenses are permitted to be surcharged under applicable law.

14. The Liquidating Trustee shall be entitled to retain any of the Professionals, in his sole discretion, that have been employed by the Debtors or other parties in interest in the Bankruptcy Cases. The Liquidating Trustee shall obtain the approval of the Court prior to retention and engagement of any professional who has not previously been approved by the Court as a Professional for the Debtors, the Resident Committee, or the Examiner in the Bankruptcy Cases. The provision of services by a Professional to the Debtors in the Bankruptcy Cases shall not disqualify such Professional from employment by the Liquidating Trustee.

15. The initial compensation of the Liquidating Trustee shall be on an hourly rate basis as established by the Court, plus reimbursement for actual, reasonable and necessary expenses incurred by the Liquidating Trustee, and such amounts shall be paid by the Liquidating Estate. The Liquidating Trustee shall not be entitled to increase such hourly rate absent an order of the Court. From and after the Effective Date, any professionals engaged or retained by the Liquidating Trustee shall be entitled to reasonable compensation to perform services for the Liquidating Trustee. The fees and expenses of the Liquidating Trustee and any professionals employed by the

33

Liquidating Trustee shall be subject to review and approval by the Court. Unless otherwise provided in an order of the Court, the Liquidating Trustee and any professionals engaged or retained by the Liquidating Trustee shall be required to file interim applications for approval of fees and expenses with the Court every sixty (60) days following the Effective Date.

16. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Liquidating Estate.

17. Based on the Notice of Waiver of Conditions Precedent Pursuant to Article 10.03 of the First Amended and Restated Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code, as Modified [Doc. No. 1013] filed by the Plan Proponents with the Court on May 9, 2018, the "Effective Date" of the Modified Plan shall be the date of the entry of this Confirmation Order on the Docket (the "Effective Date"). The Plan Proponents or the Liquidating Trustee shall file a notice (the "Effective Date Notice") with the Court designating the Effective Date. The Liquidating Trustee shall serve the Effective Date Notice on the Notice Parties and on all parties receiving pleadings in the Bankruptcy Cases pursuant to the Court's CM/ECF Transmission system. Any appeals from this Confirmation Order must be filed within the time proscribed by Part VIII of the Bankruptcy Rules, which time will begin to run on the Effective Date.

18. The Debtors and their respective partners, directors, officers and agents and the Liquidating Trustee are authorized and directed to take all such steps as may be necessary to effectuate and implement the Modified Plan and this Confirmation Order, including, without limitation, the execution and delivery of all instruments of transfer, agreements and other documents (including, but not limited to, the Asset Purchase Agreement and the Plan Documents), and any amendments, supplements or modifications to any of the foregoing, as may be appropriate or necessary to

consummate the transactions contemplated by the Modified Plan, this Confirmation Order, the Modified Mediation Settlement Agreement, the Mediation Settlement Order, and the SouthPoint Loan Facility.

19. On and after the Effective Date, the Debtors will be operated and managed solely by the Liquidating Trustee, through HMS or such other qualified managers appointed in the Liquidating Trustee's business judgment, and the operations of the Health Center shall be managed consistent with the terms of the Modified Mediation Settlement Agreement, subject to the oversight of the Liquidating Trustee as provided in the Modified Mediation Settlement Agreement and any lease or management agreement contemplated therein, all in accordance with the irrevocable delegations of authority contemplated in Articles 8.03(a) and (b) of the Modified Plan. Notwithstanding anything in the limited partnership agreements of the Debtors, no Holders of Equity Interests in the Debtors shall have any power to direct or remove the Liquidating Trustee or otherwise manage the affairs of the Debtors after the Effective Date.

20. On the Effective Date, except as otherwise expressly provided in the Modified Plan, this Confirmation Order, or in the Modified Mediation Settlement Agreement, all Assets of the Estates (including the Excluded Assets and the Causes of Action) shall vest in, and become assets of, the Liquidating Estate, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature; provided, however, that all of the CPIF Collateral shall vest in the Liquidating Estate subject to the CPIF Liens (subject to any relief granted in the CPIF Adversary Proceeding) and, unless assumed by a Buyer in accordance with Section 5.04(b) of the Modified Plan, the CPIF Liens (subject to any relief granted in the CPIF Adversary Proceeding) will attach to the proceeds of the sale of the CPIF

Collateral in the amount of the CPIF Reserve and shall remain until the Secured Claims of CPIF are paid in full or disallowed.

21.     All matters provided for under the Modified Plan involving the limited partnership structure of the Debtors, or any limited partnership action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Modified Plan or in this Confirmation Order, and shall be authorized and approved in all respects without any requirement for further action by the partners of the Debtors.  From and after the Effective Date, the Liquidating Trustee shall have all powers accorded by law of the State of Delaware to put into effect and carry out the Modified Plan and this Confirmation Order.

22.     The Debtors will continue to exist after the Effective Date as Delaware limited partnerships, with all of the powers of for profit limited partnerships under applicable law in the State of Delaware and pursuant to their respective limited partnership agreements, articles of organization or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

23.     On the Effective Date, the Liquidating Trustee is authorized without further order of the Court to market the Independent Living Facility and the Health Center.  Any sale of the Independent Living Facility and the Health Center by the Liquidating Trustee after the Effective Date shall be subject to Court approval and the provisions of Section 363 of the Bankruptcy Code and without prejudice to the rights of any party in interest to object to such sale.  With respect to the Independent Living Facility, CPIF will have any credit-bidding rights it may be entitled to under Section 363(k) of the Bankruptcy Code, if any, at an amount and in such manner to be determined by the Court.  After the Effective Date, the Closing of the purchase and sale of the

Purchased Assets pursuant to an Asset Purchase Agreement shall occur on the Closing Date, with the disbursement of the Cash Sale Proceeds to be made in accordance with the Modified Plan. For the avoidance of doubt, as clarified on the record of the Confirmation Hearing, the requirement to establish and fund the CPIF Reserve from the Cash Sale Proceeds before the Cash Sale Proceeds can be used for any other purpose applies to any sale of the CPIF Collateral, even one that closes beyond six months after the Effective Date; provided, however, that a Closing beyond six months after the Effective Date may instead provide for a Buyer's assumption of the Allowed Secured Claims of CPIF and retention of the CPIF Liens as permitted by the Modified Plan. At the Closing, the then operators of the Assisted Living Facility and the Skilled Nursing Facility (the "Health Center Operators") shall, to the extent necessary, terminate or transfer (i) the full financial and operational control of the Health Center, (ii) any lease of the Health Center by WNT, as landlord, to the Health Center Operators, as tenants, and (iii) any and all licenses, permits, provider agreements, and other additional documents to turn over full financial and operational control of the Health Center from the Health Center Operators to any Buyer under the Asset Purchase Agreement.

24.    Following the Effective Date, the members of WNT are authorized and directed to execute and deliver any and all documents, assignments, or other instruments that are necessary to transfer all of the membership interests in WNT to Westport I (the "Transferred WNT Interests"). CPIF shall have no Liens on the Transferred WNT Interests or any other assets or property of WNT.

25.    On or after the Effective Date, the Debtors, WNT, and SouthPoint are authorized and directed to execute and deliver any and all documents, mortgages, guaranties, or other

37

instruments that are necessary to close the SouthPoint Loan Facility, including as provided in the Southpoint Financing Order.

26.     Pursuant to the Modified Plan, on the Effective Date, the Causes of Action shall vest in, and become assets of, the Liquidating Estate as provided in Article 8.05 of the Modified Plan, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Modified Plan or by a Final Order of the Bankruptcy Court, including the Mediation Settlement Order.  The Liquidating Trustee is authorized to pursue the Causes of Action.  Except as otherwise provided in the Modified Plan, the Liquidating Trustee will have the rights, powers and privileges, in his sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Causes of Action without seeking any approval from the Court.  The Liquidating Trustee Reserve Amount will fund the expenses of the Liquidating Trustee to pursue the Causes of Action, including fees of counsel for the Liquidating Trustee.  Neither a vote to accept the Modified Plan by any Creditor nor the entry of this Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor.  Confirmation of the Modified Plan and entry of this Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would preclude or prohibit prosecution of any Causes of Action following Confirmation of the Modified Plan.

27.     Upon the Effective Date, (i) the Resident Committee, the Ad Hoc Committee of Former Residents, and the Creditors' Committee (collectively, the "Committees") shall be dissolved and the members of the Committees shall be deemed discharged from all rights, duties and liabilities arising from, or related to, the Bankruptcy Cases, and (ii) the Professionals for the Committees shall cease providing any services to the Committees or otherwise in connection with

the Bankruptcy Cases.  On the Effective Date, the Trust Advisory Board shall be established, and have the rights and duties, in accordance with Article 8.22 of the Modified Plan.

28.    Except with respect to the OIR and AHCA, the entry of this Confirmation Order shall be deemed to provide or waive any required authorizations, consents, permits, approvals, or licenses from, and all filings with, and all reports to, any Governmental Unit, whether foreign, federal, state, or local, and all agencies thereof, which are required for the execution, delivery and performance of the documents or obligations provided for under the Modified Plan or in this Confirmation Order.

29.    On and after the Effective Date, the Liquidating Trustee shall (i) execute and deliver the Plan Documents in accordance with the provisions of the Modified Plan, and (ii) otherwise carry out his other Effective Date responsibilities under the Modified Plan, including (a) the execution and delivery of all documentation contemplated by the Modified Plan, the Plan Documents, and this Confirmation Order, and (b) making the Distributions as provided in Article 9.01 of the Modified Plan.  The Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate on behalf of the Debtors, to effectuate and further evidence the terms and conditions of the Modified Plan or an Asset Purchase Agreement or to otherwise comply with applicable law.

30.    Any Asset Purchase Agreement shall provide for and require the simultaneous sale of the Debtors' Purchased Assets and the WNT Purchased Assets.  The sale of the WNT Purchased Assets is necessary for the consummation of the Modified Plan.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or

as contemplated by the Modified Plan or the Asset Purchase Agreement, or the vesting, re-vesting, transfer or sale of any Assets of, by or in the Debtors or their Estates or any assets of, by or in WNT pursuant to, in implementation of or as contemplated by the Modified Plan or the Asset Purchase Agreement, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents or Governmental Units shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

31.     From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims.  Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Court by no later than the Claims Objection Deadline (unless such period is extended by the Court upon motion of the Liquidating Trustee).  Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (i) sixty (60) days following the Effective Date or (ii) the date sixty (60) days after the Liquidating Trustee receives actual notice of the filing of such Claim.

32.     Except as otherwise provided in the Modified Plan or in this Confirmation Order, the Debtors shall be discharged on the Effective Date from any and all Claims, Cure Claims, Debts, Equity Interests, Liens, encumbrances, contract rights, rights of setoff, or Liabilities of any nature

40

(whether contingent, fixed, liquidated, unliquidated, matured, unmatured or disputed) that arose from any acts or conduct of the Debtors occurring prior to the Effective Date.

33. Except as otherwise expressly provided in the Modified Plan or in this Confirmation Order, as of the Effective Date, the provisions relating to discharge, exculpation from liability, injunctions, and stays set forth in Article 11 of the Modified Plan shall apply and be fully binding and are hereby incorporated by reference in this Confirmation Order. The Plan Proponents have satisfied the disclosure requirements set forth in Bankruptcy Rule 3020(c)(1) as to such provisions. The provisions contained in Article 11.01 of the Modified Plan shall not be construed to reduce or abridge any defenses of Professionals or other parties, including, without limitation, defenses of res judicata, collateral estoppel, judicial estoppel, immunity, or the application of the *Barton* doctrine. The Court shall retain exclusive jurisdiction over any claims made or proceedings commenced against any Professionals representing the Debtors, the Committees or the Examiner in connection with these Chapter 11 cases.

34. As of the closing under the Modified Mediation Settlement Agreement, the Settlement Releases (as set forth in full in paragraph AAA above) shall apply and be fully binding.

35. All rights of Holders of Claims or Equity Interests of all Classes under the Modified Plan, including, without limitation, the right to receive Distributions on account of such Claims or Equity Interests, hereafter shall be limited solely to the right to receive such Distributions exclusively according to the Modified Plan, the provisions of which shall be binding on such Holders to the fullest extent provided by Section 1141(a) of the Bankruptcy Code. After the date hereof, the Holders of such Claims or Equity Interests shall have no further rights against the Debtors or the Liquidating Estate except as expressly provided in the Modified Plan or in this Confirmation Order.

36.     The Modified Plan and its provisions shall be binding upon the Debtors, the Debtors' Estates, the Liquidating Trustee, all Creditors, and all Holders of Equity Interests (whether or not the Claim or Equity Interest of any such Creditors or Holders is Impaired under the Modified Plan and whether or not such Creditors or Holders have accepted the Modified Plan), SouthPoint, all parties to any Assumed Contracts or Non-Resident Rejected Contracts, all other parties in interest, and the respective successors and assigns of each of the foregoing.

37.     Exhibit A attached to the Modified Plan identifies the Assumed Contracts, which consist of all Prepetition executory contracts and unexpired leases, other than Assumed Resident Contracts (as defined below), to which either Debtor is a party.  On the Effective Date, the Debtors will conditionally assume the Assumed Contracts, with the final assumption of the Assumed Contracts and assignment of the Assumed Contracts to a Buyer to occur at the Closing, subject to the discretion of a Buyer.  Until the Closing, Westport I and Westport II shall comply with the terms of the Assumed Contracts.  Until such assumption becomes final upon the Closing, the subsequent termination of any conditionally assumed Assumed Contract between the Effective Date and the Closing shall not result in any claims arising from such termination becoming an Administrative Expense of the Debtors' Estates.

38.     On the Effective Date, the Debtors will conditionally assume any Current Resident Contracts and Third Party Leases (the "Assumed Resident Contracts"), with the final assumption of the Assumed Resident Contracts and assignment of the Assumed Resident Contracts to a Buyer to occur at the Closing, subject to the discretion of a Buyer.  Until the Closing, Westport I and Westport II shall comply with the terms of the Assumed Resident Contracts.  Until such assumption becomes final upon the Closing, the subsequent termination of any conditionally assumed Assumed Resident Contract between the Effective Date and the Closing shall not result

42

in any claims arising from such termination becoming an Administrative Expense of the Debtors'

Estates. Notwithstanding the foregoing, any claims arising from the termination of any

conditionally assumed Assumed Resident Contract, by either the voluntary termination or death

of the respective Current Resident on or before the later of (i) a Closing or (ii) the second

anniversary of the Effective Date, shall be treated in accordance with the Allowed Resident

Unsecured Claims in Class 13 of the Modified Plan.

39.     The amount of minimum liquid reserve required and approved by the OIR as of the

Closing, as calculated in accordance with Rule 69O-19.050 of the Florida Administrative Code

(the "Continuing Care Reserve"), shall serve as adequate assurance of the Buyer's future

performance under the Assumed Resident Contracts, as contemplated under Section 365(b)(1)(C)

of the Bankruptcy Code.  To the extent that the Debtors' existing Cash set aside for regulatory

reserves is insufficient to fund the Continuing Care Reserve at the Closing, then the Buyer must

fund the difference in Cash at the Closing.

40.     All other executory contracts and unexpired leases that exist between either of the

Debtors and another Person or Entity and that (i) are not Assumed Contracts or Assumed Resident

Contracts, or (ii) have not been expressly rejected or assumed by the Debtors with Court approval

on or before the Effective Date, shall be deemed rejected by the Debtors as of the Effective Date

(the "Non-Resident Rejected Contracts").  This Confirmation Order shall constitute an order of the

Court approving the rejection of each such Non-Resident Rejected Contract, pursuant to Sections 365

and 1123(b)(2) of the Bankruptcy Code.

41.     Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising

by reason of the rejection of any Non-Resident Rejected Contract must be filed with the Court on

or before the Bar Date for rejection damage Claims in respect of such Non-Resident Rejected

Contract or such Claim shall be forever barred and unenforceable against the Debtors, the Liquidating Estate, the Liquidating Trustee, or the Buyer.  With respect to any Non-Resident Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Court shall be the Voting Deadline.  The Modified Plan and any other order of the Court providing for the rejection of a Non-Resident Rejected Contract shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of a Non-Resident Rejected Contract of the Bar Date for filing a Claim in connection therewith.  All Claims for damages from the rejection of a Non-Resident Rejected Contract, once fixed and liquidated by the Court and determined to be Allowed Claims, shall be Allowed Class 14 Unsecured Claims.  Any such Claims that become Disputed Class 14 Claims shall be Disputed Claims for purposes of administration of Distributions under the Modified Plan to Holders of Allowed Class 14 Unsecured Claims.

42.     All settlements, agreements and compromises provided for under the Modified Plan, and all transactions, documents, instruments, and agreements referred to therein, contemplated thereunder or executed and delivered therewith, and any amendments or modifications thereto in substantial conformity therewith, are hereby approved, and the Debtors, the Liquidating Trustee, and the other parties thereto are authorized and directed to enter into them and to perform thereunder according to their respective terms.

43.     The Modified Plan is confirmed in its entirety.  The inclusion of language in this Confirmation Order referring to specific provisions of the Modified Plan or authorizing specific action by the Debtors or the Liquidating Trustee shall not be construed to imply non-approval of other provisions of the Modified Plan or non-authorization of other actions.  The failure to reference or discuss any particular provision of the Modified Plan in this Confirmation Order shall have no effect

on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Modified Plan.

44. To the extent of any inconsistency between the terms of the Modified Plan and this Confirmation Order, the terms of this Confirmation Order shall govern.

45. As reflected in the Modified Plan, Vogel, as the owner and successor-in-interest to Geiger's claim, shall receive the treatment under Class 6 of the Modified Plan. As reflected in the Modified Plan, Vogel, as the owner and successor-in-interest to Team Construction Service, LLC's claim, shall receive the treatment under Class 9 of the Modified Plan.

46. All fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the United States Trustee by the Liquidating Trustee by no later than thirty (30) days following the Effective Date. Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Cases shall be paid by the Liquidating Trustee, until the earlier of (i) the closing of the Bankruptcy Cases by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Cases or converting the Bankruptcy Cases to another chapter under the Bankruptcy Code. Any such payment to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

47. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Cases are closed, this Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Cases that is permitted under applicable law, including that

necessary to ensure that the purposes and intent of the Modified Plan are carried out. Without limiting the generality of the foregoing, after Confirmation of the Modified Plan and until the Bankruptcy Cases are closed, this Court shall retain jurisdiction of the Bankruptcy Cases for each of the specific purposes set forth in Article 12.02 of the Modified Plan and shall retain complete jurisdiction to enter a judgment in the CPIF Adversary Proceeding to the extent permitted under applicable law.[9] This Court shall also retain exclusive jurisdiction over any claims made or proceedings commenced against any Professionals representing the Debtors, the Committees or the Examiner in connection with the Bankruptcy Cases. To the extent that this Court does not have jurisdiction, then the United States District Court for the Middle District of Florida, Tampa Division shall have exclusive jurisdiction over any such claims or proceedings.

48. This Court shall also retain jurisdiction to determine any and all (i) timely filed applications for Administrative Expenses, and (ii) applications for allowance of compensation and reimbursement of expenses of Professionals under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of the Bankruptcy Cases for the periods prior to and through and including the Effective Date. To the extent that any Creditor or party in interest asserts (or could have asserted) an Administrative Expense Claim against either Debtor and failed to file such Administrative Expense Claim by the deadline set forth in the Disclosure Statement Approval Order, such Administrative Expense Claim shall be forever barred and unenforceable against the Debtors, the Liquidating Estate, the Liquidating Trustee, or the Buyer. Unless already on file with the Court, all applications for allowance of compensation and reimbursement of expenses of Professionals shall be filed with the Court by no later than thirty (30) days following the Effective Date and shall include all periods prior to and through and including the Effective Date. Counsel for the Debtors or the

---

[9] *See, supra*, note 5.

Liquidating Trustee shall coordinate with the Court on a hearing date for all of the foregoing applications.

49.    The stay provided by Bankruptcy Rule 3020(e) shall expire with respect to this Confirmation Order upon the entry of this Confirmation Order on the Docket.

50.    The Court will conduct a post-Confirmation status conference on July 11, 2018, at 9:30 a.m., in Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida.

51.    A copy of this Confirmation Order shall be served on all parties receiving pleadings in the Bankruptcy Cases pursuant to the Court's CM/ECF Transmission system and all parties on the Local Rule 1007-2 Parties in Interest List for the Bankruptcy Cases.  Notice of the entry of this Confirmation Order in the form attached hereto as Exhibit A (the "Confirmation Notice") shall be sent to all Creditors of the Debtors as set forth on the Court's master mailing matrices for the Debtors' Chapter 11 cases.  The Confirmation Notice shall reflect that a copy of this Confirmation Order is available on the Internet at http://www.srbp.com/srbp/case-documents/887-westport-holdings-tampa.  Counsel for the Debtors shall thereafter file a certificate of service with the Court regarding the foregoing service of this Confirmation Order and the Confirmation Notice.

Attorney Charles A. Postler is directed to serve a copy of this Confirmation Order on interested parties who are CM/ECF recipients and file a proof of service within 3 days of entry of this Confirmation Order.

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | **Chapter 11** |
| **WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP,** | **Case No. 8:16-bk-08167-MGW** |
| **WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP,** | **Case No. 8:16-bk-08168-MGW** |
| Debtors. _____/ | *Jointly Administered under Case No. 8:16-bk-08167-MGW* |

**NOTICE OF CONFIRMATION OF FIRST AMENDED AND**
**RESTATED MEDIATED JOINT PLAN OF LIQUIDATION UNDER**
**CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE,**
**AS MODIFIED, PURSUANT TO 11 U.S.C. § 1129**

NOTICE IS HEREBY GIVEN, pursuant to Federal Rule of Bankruptcy Procedure 2002(f)(7), that on May _____, 2018, the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, entered its Order (A) Confirming First Amended and Restated Mediated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code, as Modified, Pursuant to 11 U.S.C. § 1129, and (B) Approving Disclosure Statement for First Amended and Restated Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code, on a Final Basis, Pursuant to 11 U.S.C. § 1125 (the "Confirmation Order"). A copy of the Confirmation Order is available on request to undersigned counsel for the Debtors or can be reviewed at http://www.srbp.com/srbp/case-documents/887-westport-holdings-tampa.

Dated: _____, 2018.

/s/ *Charles A. Postler*
Charles A. Postler (Fla. Bar No. 455318)
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
PH    (813) 229-0144
FAX   (813) 229-1811
Email: cpostler@srbp.com
Attorneys for Debtors