ORDERED.

Dated: **February 14, 2020**

*Michael G. Williamson*

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8167-MGW |
| WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8168-MGW |
| Debtors. | *Jointly Administered under* Case No. 8:16-bk-8167-MGW |
| _____/ | |

**ORDER GRANTING LIQUIDATING
TRUSTEE'S MOTION FOR ENTRY OF FINAL ORDER
AUTHORIZING (I) THE SALE OF THE ASSETS OF DEBTORS FREE
AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (II)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS**

**THIS CASE** came on for hearing on February 4, 2020 at 9:30 a.m. (the "**Final Sale Hearing**") upon the Motion for Entry of Final Order Authorizing (I) the Sale of the Assets of Debtors Free and Clear of All Liens, Claims, and Encumbrances, and (II) Authorizing the Assumption and Assignment of Contracts (Doc. No. 1587) (the "**Final Sale Motion**") filed by Jeffrey W. Warren, as the Liquidating Trustee (the "**Liquidating Trustee**") for Westport Holdings Tampa, Limited Partnership ("**Westport I**") and Westport Holdings Tampa II, Limited Partnership ("**Westport II**,"

DEFENDANT'S
EXHIBIT
*Warren #10*
4.24.23 OK
PENGAD 800-631-6989

and together with Westport I, the "**Debtors**"). In connection with the Final Sale Motion, the Court has considered the Liquidating Trustee's declaration (Doc. No. 1623) ("**Declaration**"),[1] and the Notice of Filing Asset Purchase Agreement with Tampa Life Plan Village, Inc. (the "**Tampa Life Plan Asset Purchase Agreement**") (Doc. No. 1625), together with the limited objection to the Final Sale Motion filed by CPIF Lending, LLC ("**CPIF**") (Doc. No. 1600), the objection to the Final Sale Motion filed by Valley National Bank f/k/a USAmeribank ("**Valley**") (Doc. No. 1617), the limited objection to the Final Sale Motion filed by Jennis Law Firm ("**Jennis Law**") (Doc. No. 1620), the joinder of CNH Finance Fund I, L.P. f/k/a SCM Specialty Finance Opportunities Fund, L.P. ("**CNH**") in Valley's objection (Doc. No. 1624), and any objections orally raised at the Final Sale Hearing, including the objections raised by BVM Management, Inc. (collectively, the "**Sale Objections**").

In the Final Sale Motion, the Liquidating Trustee seeks entry of an order, pursuant to 11 U.S.C. §§ 105, 363, 365, 1107, 1108, and 1129(b); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure; and Local Rule 6004-1, finally authorizing: (a) the sale of substantially all of the assets of the Debtors free and clear of all liens, claims, and encumbrances to Tampa Life Plan Village, Inc. ("**Tampa Life Plan**" or the "**Purchaser**"),[2] and (b) the assumption and assignment of the Assumed Contracts.

---

[1] Capitalized terms used in herein but not otherwise defined shall have the meanings ascribed to them in the Final Sale Motion and the Declaration.

[2] After filing the Final Sale Motion but before the Final Sale Hearing, the Liquidating Trustee terminated the QSH Asset Purchase Agreement and entered into the Tampa Life Plan Asset Purchase Agreement. For purposes of this Order, the terms "Tampa Life Plan" and "Purchaser" shall also include any affiliate(s) of Tampa Life Plan who may be assigned the obligations to close on the proposed transactions under the Purchase Agreement.

This Court previously entered an interim sale order (the "**Interim Sale Order**") (Doc. No. 1410) authorizing and directing the Liquidating Trustee to take all necessary and appropriate steps to proceed with the transactions contemplated in the Asset Purchase Agreement between the Liquidating Trustee and Quality Senior Housing Foundation, Inc. or its assignee (the "QSH Asset **Purchase Agreement**") subject only to entry of this order (the "**Final Sale Order**") and obtaining regulatory approvals from the Florida Office of Insurance Regulation (the "**OIR**").

Additionally, the Liquidating Trustee filed a Motion to Modify Confirmed First Amended and Restated Mediated Joint Plan of Liquidation (the "**Plan Modification Motion**") (Doc. No. 1585), as modified by the Liquidating Trustee's (A) Supplement to Motion to Modify Confirmed First Amended and Restated Mediated Joint Plan of Liquidation and (B) Notice of Filing Modifications to Second Amended and Restated Joint Plan of Liquidation (Doc. No. 1622) (the "**Supplement**"), which seeks approval and confirmation of the Second Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (Doc. Nos. 1586), as modified by the Supplement (as modified, the "**Second Amended Plan**"). At the Final Sale Hearing, the Court orally granted the Plan Modification Motion and confirmed the Second Amended Plan in open court. The Court will enter a separate order granting the Plan Modification Motion and confirming the Second Amended Plan (the "**Plan Modification Order**").

At the Final Sale Hearing, the Court heard the proffers of the Liquidating Trustee and argument on the Final Sale Motion and the Sale Objections. Upon consideration of the Final Sale Motion, the Declaration, the Sale Objections, the

arguments of counsel at the Final Sale Hearing, together with the record, and otherwise being fully advised in the premises, the Court finds that (a) the relief requested in the Final Sale Motion is in the best interests of the Debtors, their estates, their creditors, the Residents (as defined in the Tampa Life Plan Asset Purchase Agreement), and other parties in interest, and (b) this Final Sale Order should be entered (i) granting the Final Sale Motion on an final basis, (ii) approving and directing the Liquidating Trustee to take all necessary and appropriate steps to consummate the Transactions (as defined in the Tampa Life Plan Asset Purchase Agreement), subject only to obtaining all necessary regulatory approvals for the Transactions from the OIR (the "**Regulatory Approvals**"); and (iii) overruling the Sale Objections.

Accordingly, the Court makes the following findings of fact and conclusions of law supporting the final relief granted herein:

A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (N). Venue of these Chapter 11 cases and the Final Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The Liquidating Trustee has full power and authority to execute and deliver the Transaction Documents (as defined in the Tampa Life Plan Asset Purchase Agreement), and all other documents contemplated thereby, subject only to Regulatory Approvals for the Transactions, which shall be a condition precedent to consummation of the Transactions.

C.     The Liquidating Trustee has fully complied with Section 363 of the Bankruptcy Code with respect to the sale of the Purchased Assets (as defined in the

Tampa Life Plan Asset Purchase Agreement). All persons claiming an interest in the Purchased Assets received due and proper notice of the Sale Motion and of the opportunity to object thereto.

D.      The transfer of the Purchased Assets and recordation of mortgages in connection with the purchase of the Purchased Assets are exempt from any stamp or similar taxes payable in connection with the Transactions contemplated by the Tampa Life Plan Asset Purchase Agreement pursuant to Section 1146(a) of the Bankruptcy Code.

E.      The Purchaser is not an "insider" of the Sellers (as defined in the Tampa Life Plan Asset Purchase Agreement), as that term is defined in Section 101(31) of the Bankruptcy Code.

F.      The Tampa Life Plan Asset Purchase Agreement was negotiated at arm's-length and entered into in good faith by the respective parties thereto and their agents and representatives, and the Purchaser is entitled to all of the benefits and protections of Sections 363(m) and (n) of the Bankruptcy Code.

G.      The Liquidating Trustee (through his agents) served copies of the Final Sale Motion by first class mail upon the U.S. Trustee, all known creditors of the Debtors as identified on the Debtors' schedules of assets and liabilities, all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service, all parties that have requested notice pursuant to Bankruptcy Rule 2002, all persons or entities known or reasonably believed to have asserted a lien in any of the Purchased Assets, and the counterparties to each of the Resident Contracts, the Third-Party Leases, and the Transferred Debtor Contracts (the "**Notice Parties**").

Such notice complies fully with Bankruptcy Rule 2002, and was reasonably calculated to provide timely and adequate notice of the Transactions to the Debtors' creditors and other parties in interest.

H.      To the extent not inconsistent with this Final Sale Order, the Court ratifies and adopts the findings of fact and conclusions of law set forth in the Interim Sale Order.

Accordingly, it is **ORDERED**:

1.      The Final Sale Motion is **GRANTED** on a final basis.

2.      Except as expressly provided herein, any and all Sale Objections are **OVERRULED**.

3.      The Tampa Life Plan Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby authorized and approved.

4.      Subject to obtaining Regulatory Approvals, pursuant to Section 363(b) of the Bankruptcy Code, the Liquidating Trustee is authorized, directed, and empowered to execute the Tampa Life Plan Asset Purchase Agreement and take all necessary and appropriate steps to consummate the Transactions and otherwise enter into such agreements, compromises, and arrangements to permit the prompt consummation of the Transactions.

5.      At the Closing, the Purchased Assets shall transfer to the Purchaser free and clear of all liens pursuant to Section 363(f) of the Bankruptcy Code.  All liens encumbering the Purchased Assets that are not satisfied at the Closing shall attach to

the Sale Proceeds[3] to the same extent, validity, and priority that existed prior to the sale. Those holders of liens against the Purchased Assets who did not object to the Final Sale Motion are deemed to have consented to the Sale pursuant to Section 363(f)(2) of the Bankruptcy Code.

6. At the Closing, the Liquidating Trustee is authorized to either (a) pay CPIF from the Sale Proceeds an agreed amount in cash in full and final satisfaction of all claims, liens, and encumbrances that CPIF asserts against the Purchased Assets as set forth in Claim No. 22 filed against Westport I and Claim No. 2 filed against Westport II or (b) fund the CPIF Reserve (as defined in the Second Amended Plan) from the Sale Proceeds before any other Sale Proceeds are used by the Liquidating Trustee for any other purpose pursuant to this Order. No portion of the CPIF Reserve may be used by the Liquidating Trustee without the prior written consent of CPIF or further order of this Court. For the avoidance of doubt, the payments identified in Paragraphs 9, 10, 11, 12, 13 and 14 below shall not be paid out of the Sale Proceeds unless and until the requirements of subsection (a) or subsection (b) of this Paragraph have been satisfied.

7. Nothing in this Order is intended to, nor shall be deemed to, modify or impair in any way the rights of CPIF: (a) under the *Final Order Granting Liquidating Trustee's Expedited Motion for Authority to Obtain Post-Confirmation Financing and Grant Senior Liens, Super Priority Administrative Expense Status, and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001* (Doc. No. 1197);

---

[3] The term "Sale Proceeds" as used in this Order shall have the same meaning as ascribed to the term "Cash Sale Proceeds" as used in, and defined by, the Confirmed Plan and the Second Amended Plan, and the terms "Sale Proceeds" and "Cash Sale Proceeds" shall by synonymous for all purposes in this Order.

(b) under the *Final Order Granting Liquidating Trustee's Expedited Motion for Authority to Borrow Additional Funds Under Existing Post-Confirmation Facility with CPIF Lending, LLC Pursuant to 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001* (Doc. No. 1554); (c) under the *Order Granting Liquidating Trustee's Unopposed Expedited Motion for Authority to Extend the Maturity Date Under Post-Confirmation Facility with CPIF Lending, LLC* (Doc. No. 1578); (d) under the Interim Sale Order, including, without limitation, the rights of CPIF under Paragraph 3 of said Order; (e) under the Confirmed Plan, (f) under the Confirmation Order; (g) with respect to the requirement to fund the CPIF Reserve (as defined in the Confirmed Plan and the Second Amended Plan) in full from the sale proceeds attributable to the Independent Living Facility before such sale proceeds can be used for any other purpose, (h) the Second Amended Plan, or (i) the Plan Modification Order.

8.    At the Closing, the Liquidating Trustee is authorized to pay CPIF from the Sale Proceeds such amount as is necessary to satisfy all principal, accrued interest through Closing, and any fees accrued pursuant to the terms of the CPIF DIP Facility in full and final satisfaction of all claims, liens, and encumbrances that CPIF may have under the CPIF DIP Facility.

9.    By separate order (Doc. No. 1610), this Court has approved the settlement and compromise of the disputes between the Liquidating Trustee and Southpoint Global Investments, LLC ("**Southpoint**") regarding the exit financing facility provided by Southpoint to the Debtors; and, at the Closing, the Liquidating Trustee is authorized to pay Southpoint from the Sale Proceeds $325,000.00 in full and final satisfaction of

any and all claims, liens, and encumbrances that Southpoint asserts against the Purchased Assets.

10.   At the Closing, the Liquidating Trustee is authorized to pay from the Sale Proceeds (i) $26,880.00 to Prospect Construction & Development Group ("**Prospect Construction**") in full and final satisfaction of any and all claims, liens, and encumbrances that Prospect Construction asserts against the Purchased Assets, including that certain Claim of Lien recorded in the Official Records of Hillsborough County, Book 24134, Page 821, on June 3, 2016; and (ii) $28,758.71 to Vogel Strategic Investments, L.P. ("**Vogel**") in full and final satisfaction of any and all claims, liens, and encumbrances that Vogel asserts against the Purchased Assets by way of its acquisition of Claim No. 69-1 filed by Team Construction Services against Westport I and subsequently transferred to Vogel, including but not limited to that certain Claim of Lien recorded in the Official Records of Hillsborough County, Book 24023, Pages 118-121, on April 19, 2016.

11.   At the Closing, the Liquidating Trustee is authorized to pay the Hillsborough County Tax Collector from the Sale Proceeds (a) the full amount of all unpaid *ad valorem* real estate taxes and accrued interest due for years 2016 through 2019, in full and final satisfaction of any and all claims, liens, and encumbrances that Hillsborough County asserts against the Purchased Assets, and (b) the full amount of all Outstanding Personal Property Taxes and accrued interest for years 2015 through 2019.

12.   At the Closing, the Liquidating Trustee is authorized to pay from the Sale Proceeds: (i) $32,444.96 to US Foods in full and final satisfaction of the Allowed Priority

Claims of US Foods pursuant to the terms of this Court's order allowing such claims (Doc. No. 1422); (ii) $265,066.16 to the IRS in full and final satisfaction of the Allowed Priority Claim of the IRS, as set forth in Claim No. 6-6 filed by the IRS against Westport I; and (iii) $20,996.65 to Service Employees International Union National Industry Pension Fund in full and final satisfaction of the Allowed Priority Claim of the Service Employees International Union National Industry Pension Fund pursuant to the terms of this Court's order allowing such claim (Doc. No. 1407).

13.    At the Closing, the Liquidating Trustee is authorized to pay from the Sale Proceeds $22,800.00 to Novum Management Group, Inc. ("**Novum**") in satisfaction of 50% of Novum's allowed administrative expense claim, with the Purchaser assuming the obligation to pay the $22,800.00 balance of Novum's allowed administrative expense claim in accordance with Section 3.02 of the Second Amended Plan and the Plan Modification Order.

14.    At the Closing, from the remaining Sale Proceeds after payment of the other claims in accordance with this Final Sale Order, the Liquidating Trustee is authorized to pay holders of Allowed Administrative Expenses not otherwise provided for herein, with the Purchaser assuming the liability to pay the balance of such Allowed Administrative Expenses in accordance with the treatment for Deferred Allowed Administrative Expenses in Section 3.02 of the Second Amended Plan and the Plan Modification Order. For the avoidance of doubt, the lien granted to the holders of Deferred Allowed Administrative Expenses in Section 3.02 of the Confirmed Plan (as defined therein) is released, cancelled, and of no further effect as against the Purchased

Assets, or the Sale Proceeds, as a result of the entry of this Final Sale Order and the Plan Modification Order.

15.     Without affecting the finality of this Order, at least three (3) business days prior to the expected Closing Date, the Liquidating Trustee shall file with the Court, and serve on all parties entitled to payment at Closing set forth herein, a copy of the proposed closing statement setting forth the expected Closing Date and all payments to be made at the Closing from the Sale Proceeds (the "**Closing Statement**"). *ANY OBJECTIONS TO THE CLOSING STATEMENT MUST BE FILED WITH THE COURT BY NO LATER THAN 5:00 P.M. EASTERN PREVAILING TIME ON THE DAY PRIOR TO THE EXPECTED CLOSING DATE. EXCEPT AS OTHERWISE ORDERED BY THIS COURT, NO CLOSING SHALL OCCUR UNLESS AND UNTIL ANY TIMELY FILED OBJECTIONS TO THE CLOSING STATEMENT HAVE BEEN RESOLVED BY THE LIQUIDATING TRSUTEE AND THE PARTY RAISING THE OBJECTION OR HAVE BEEN RESOLVED BY THE COURT.*

16.     At the Closing, pursuant to Sections 365(a) and (b)(1) of the Bankruptcy Code, the Liquidating Trustee is authorized to finally assume and assign to the Purchaser all of the Debtors' right, title, and interest in and to the Assumed Contracts free and clear of all liens, claims, and encumbrances, provided, however, that the Purchaser will assume and pay all Allowed Assumed Resident Contract Cure Claims as set forth in Second Amended Plan and the Plan Modification Order. Prior to the Closing Date, the Liquidating Trustee may continue to resolve Residents' objections to the amounts of their Allowed Assumed Resident Contract Cure Claims and Resident

Unsecured Claims, but, unless otherwise ordered by this Court, the amounts of the Allowed Assumed Resident Contract Cure Claims and Allowed Resident Unsecured Claims shall be fixed on the Closing Date and any objections to such amounts not timely asserted shall be deemed waived.

17.    Moreover, the only non-resident holder of an Allowed Cure Claim is Commercial Laundries of West Florida, Inc., whose Allowed Cure Claim will be paid by the Purchaser in accordance with the Agreed Order on Liquidating Trustee's Supplemental Objection to Cure Claim By Commercial Laundries of West Florida, Inc., entered on October 5, 2018. (Doc. No. 1162.)

18.    As a result of the sale of the Purchased Assets free and clear of all liens, claims, and encumbrances herein, and subject to the provisions of Paragraphs 5 and 6 *supra*, the following recorded instruments shall be deemed released, cancelled, and of no further effect as against the Purchased Assets, including but not limited to the real estate parcels identified by the legal descriptions on Composite Exhibit "A" hereto:

(a)    the Mortgage, Assignment of Rents, Security Agreement and Fixture Filing from Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership, to CPIF Lending, LLC, a Washington limited liability company recorded in Official Records Book 22502, Page 1793, together with and as affected that certain unrecorded Amendment No. 1 and Amendment No. 2 to Loan Agreement evidenced by the Amendment to Loan Agreement recorded in Official Records Book 23514, Page 853, of the Public Records of Hillsborough County, Florida;

(b)    the UCC Financing Statement recorded in Official Records Book 22502, Page 1819, as assigned by the UCC Financing Statement Assignment recorded

in Official Records Book 23156, Page 1825, as affected by the UCC Financing Statement Continuation recorded in Official Records Book 26300, Page 566, of the Public Records of Hillsborough County, Florida;

(c)     the UCC Financing Statement recorded in Official Records Book 22502, Page 1829, as assigned by the UCC Financing Statement Assignment recorded in Official Records Book 23156, Page 1725, as affected by the UCC Financing Statement Continuation recorded in Official Records Book 26300, Page 564, of the Public Records of Hillsborough County, Florida;

(d)     the Mortgage and Security Agreement from Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership, to Southpoint Global Investments, LLC, a Florida limited liability company recorded in Official Records Book 25773, Page 455, of the Public Records of Hillsborough County, Florida;

(e)     the Mortgage and Security Agreement from Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership, to CPIF Lending, LLC, a Washington limited liability company recorded in Official Records Book 26229, Page 1825, of the Public Records of Hillsborough County, Florida;

(f)     the Notice of Lien against Westport Holdings Tampa, LP and Westport Holdings Tampa II, LP, in favor of US Lifestyles, LLC, an Indiana limited liability company, recorded in Official Records Book 26356, Page 397, of the Public Records of Hillsborough County, Florida;

(g)     the Claim of Lien in favor of Team Construction Services, LLC recorded in Official Records Book 24023, Page 118, of the Public Records of

Hillsborough County, Florida, as subsequently transferred to Vogel Strategic Investments, LP; and

(h)    the Claim of Lien in favor of Prospect Construction & Development recorded in Official Records Book 24134, Page 821, of the Public Records of Hillsborough County, Florida.

19.    Certified copies of this Final Sale Order and the Interim Sale Order shall be filed and recorded in the Official Records of the Clerk of Court for Hillsborough County, Florida.

20.    The transfer of the Purchased Assets and recordation of mortgages in connection with the purchase of the Purchased Assets shall be free and clear of any stamp or similar taxes payable in connection with the Transactions contemplated by the Tampa Life Plan Asset Purchase Agreement pursuant to section 1146(a) of the Bankruptcy Code.

21.    The terms and provisions of this Final Sale Order shall be binding in all respects upon the Purchaser, the Liquidating Trustee, the Sellers, the Liquidating Estate, all creditors and interest holders of the Debtors, and all other interested parties and their respective successors and assigns, including, but not limited to, any creditor asserting a lien in the Purchased Assets.

22.    Neither the Purchaser nor any of its respective affiliates, successors, or assigns, shall, as a result of any action taken in connection with the purchase of the Purchased Assets: (a) be considered a successor to the Sellers for any purpose, including but not limited to successor employer; (b) have, de facto or otherwise, merged with or

into the Sellers; or (c) be a continuation or substantial continuation of any of the Sellers or any enterprise of the Sellers.

23.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would interfere with the ability of the Sellers to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Tampa Life Plan Asset Purchase Agreement and this Final Sale Order; provided, however, that nothing herein shall be construed as a limitation on any regulatory agencies to approve or disapprove of the Purchaser as a licensed operator of the Purchased Assets.

24.     Other than as expressly provided in the Tampa Life Plan Asset Purchase Agreement or an order of this Court, the Purchaser shall not have any liability or other obligation of the Sellers arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The Transactions do not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors or their estates, there is not substantial continuity between the Purchaser and the Debtors,

there is no continuity of enterprise between the Purchaser and the Debtors, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to Debtors or Debtor's estates.

25.     The Liquidating Trustee, the Purchaser, and their professionals have acted in good faith; the terms and conditions of the Tampa Life Plan Asset Purchase Agreement are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Liquidating Trustee and the Purchaser; and the Purchaser is an arm's length purchaser. Accordingly, the Purchaser is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code, such that the reversal or modification on appeal of the sale of the Purchased Assets shall not affect the validity of the sale to the Purchaser whether or not the Purchaser knew of the pendency of the appeal. In the absence of a stay pending appeal, if the Purchaser closes on the Transactions at any time on or after the entry of this Final Sale Order, then, with respect to the Transactions, the Purchaser shall be entitled to the protection of Section 363(m) of the Bankruptcy Code if this Final Sale Order, the Interim Sale Order, or any authorization contained herein is reversed or modified on appeal. Furthermore, the sale, conveyance, transfer, and assignment of the Purchased Assets to the Purchaser approved by this Final Sale Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

26.     The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Tampa Life Plan Asset Purchased Assets other than for any liabilities specifically assumed pursuant to the Tampa Life Plan Asset Purchase Agreement or this Final Sale Order. Without limiting

the generality of the foregoing, and except as otherwise specifically provided in the Purchase Agreement, the Purchaser shall not be liable for any claims against the Sellers or any of their predecessors or affiliates, and the Purchaser shall have no successor liabilities of any kind or character whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities in any way relating to the operation of the Debtors' business prior to the Closing Date.

27.    The Tampa Life Plan Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Liquidating Estate or the rights of CPIF, including but not limited to, the rights of CPIF under the documents identified in Paragraph 7 *supra*.

28.    The Court shall retain jurisdiction to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Final Sale Order and the Tampa Life Plan Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith, and (ii) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions.

29.    To the extent that this Final Sale Order is inconsistent with any prior order, motion, or any other filing in these bankruptcy cases with respect to the Sale

- 17 -

Motion, including the Interim Sale Order, the terms of this Final Sale Order shall govern. To the extent the terms of this Final Sale Order are inconsistent with the terms of the Tampa Life Plan Asset Purchase Agreement agreed to by the Parties, the terms of this Final Sale Order shall govern. The provisions of this Final Sale Order are non-severable and mutually dependent.

30.    To the extent applicable, the automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to Debtors to the extent necessary, without further order of the Court, to allow the Parties to take any and all actions necessary to consummate the Transactions.

31.    Notice of the Final Sale Motion constitutes good, sufficient and timely notice, and no other or further notice shall be required, other than service of a copy of this Final Sale Order by first class mail postage prepaid upon the Notice Parties.

32.    Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Sale Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this Final Sale Order.

33.    The Liquidating Trustee may execute any and all Transaction Documents on behalf of the Debtors in his capacity as Liquidating Trustee for the Debtors and without the need for any signatures of, or approvals from, any other officers, directors, or general or limited partners of the Debtors.

34.    With respect to the payments set forth herein that the Liquidating Trustee is authorized to make at the Closing, the Liquidating Trustee may direct that the closing agent make such payments directly from the Sale Proceeds at the Closing.

35.    With respect to the Liquidating Trustee's motion to strike the Valley objection (Doc. No. 1621) (the "**Motion to Strike**"), the Motion to Strike is denied as moot inasmuch as the Court has overruled the Valley objection on the merits and the Court makes no findings of fact or conclusions of law with respect to whether Valley had standing to assert its Sale Objection.

Attorney Adam Lawton Alpert is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

- 19 -

6DC223402.DOCX