UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

WESTPORT HOLDINGS TAMPA,                            Case No. 8:16-bk-8167-MGW
LIMITED PARTNERSHIP,

WESTPORT HOLDINGS TAMPA                             Case No. 8:16-bk-8168-MGW
II, LIMITED PARTNERSHIP,

                                                    *Jointly Administered under*
        Debtors.                                    *Case No. 8:16-bk-8167-MGW*
_____/

### LIQUIDATING TRUSTEE'S
### NOTICE OF FILING EXECUTED LITIGATION
### FUNDING AGREEMENT WITH A/Z PROPERTY PARTNERS, LLC

Jeffrey W. Warren, Esq., as Liquidating Trustee for Westport Holdings Tampa,
Limited Partnership, and Westport Holdings Tampa II, Limited Partnership, by and
through the undersigned counsel, hereby gives notice of filing the attached executed
Litigation Funding Agreement with A/Z Property Partners LLC in accordance with the
*Final Order Granting Liquidating Trustee's Expedited Motion for Authority to Enter
Into Litigation Funding Agreement With A/Z Property Partners LLC* (Doc. No. 1827).

Dated: Tampa, Florida          BUSH ROSS, P.A.
       July 17, 2020           Post Office Box 3913
                               Tampa, Florida 33601-3913
                               (813) 224-9255 (telephone)
                               (813) 223-9620 (fax)
                               *Counsel for Jeffrey W. Warren, as Liquidating
                               Trustee for Westport Holdings Tampa, Limited
                               Partnership and Westport Holdings Tampa II,
                               Limited Partnership*

                               By:___/s/ Adam Lawton Alpert_____
                                   Adam Lawton Alpert
                                   Florida Bar No. 0490857
                                   aalpert@bushross.com



DEFENDANT'S
EXHIBIT
PENGAD 800-631-6989
Warren #11
4·24·23 oK

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2020, I electronically filed a true and correct copy of the foregoing with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system, which will deliver a copy to all counsel of record.

_____/s/ Adam Lawton Alpert_____
ATTORNEY

2

6EB136104.DOCX

# POST-CONFIRMATION LITIGATION FUNDING AGREEMENT

Among

**WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP,** a Delaware limited partnership, by Jeffrey W. Warren, its Liquidating Trustee in Jointly Administered Case No. 8:16-bk-08167-MGW in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division

And

**WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP,** a Delaware limited partnership, by Jeffrey W. Warren, Its Liquidating Trustee in Jointly Administered Case No. 8:16-bk-08167-MGW in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division

As Plaintiffs

And

**A/Z PROPERTY PARTNERS LLC, or its designee**

As Funder

Dated: July 15, 2020

6EM252302.DOCX

**THIS POST-CONFIRMATION LITIGATION FUNDING AGREEMENT** (this "**Agreement**") dated as of July 15, 2020 is entered into by and among **WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP**, a Delaware limited partnership, and **WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP**, a Delaware limited partnership (together, the "**Plaintiffs**" and each, a "**Plaintiff**"), and **A/Z PROPERTY PARTNERS LLC** or its designee (the "**Funder**").

## RECITALS

**WHEREAS**, on September 22, 2016 (the "**Petition Date**"), the Plaintiffs, as Debtors, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, Case Nos. 8:16-bk-08167-MGW and 8:16-bk-08168-MGW, in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**").

**WHEREAS**, on May 10, 2018, the Bankruptcy Court entered the Order (A) Confirming First Amended and Restated Mediated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, as Modified, Pursuant to 11 U.S.C. § 1129, and (B) Approving Disclosure Statement for First Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, on a Final Basis, Pursuant to 11 U.S.C. § 1125 (Doc. No. 1016) (the "**Confirmation Order**"), and the First Amended and Restated Mediated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, as Modified (Doc. No. 1012) (the "**Confirmed Plan**") became effective.

**WHEREAS**, effective May 30, 2018, the Debtors and the Florida Office of Insurance Regulation (the "**OIR**") entered into a Consent Order authorizing the Liquidating Trustee to operate the Debtors' business through the earlier of December 31, 2018 or the OIR's approval of and a closing on the sale of substantially all of the Debtors' assets, as contemplated in the Confirmed Plan (the "**Debtors' Consent Order**"). The Debtors' Consent Order has been amended numerous times and currently authorizes the Liquidating Trustee to operate the Debtors' business through July 19, 2020. (Doc. No. 1816.)

**WHEREAS**, on February 4, 2020, the Liquidating Trustee entered into an Asset Purchase Agreement ("**APA**") for the sale of substantially all of the assets of the Debtors to Tampa Life, as modified by certain amendments entered into on March 31, 2020.

**WHEREAS**, on February 14, 2020, the Bankruptcy Court entered an Order (I) Granting Liquidating Trustee's Motion to Modify Confirmed First Amended and Restated Mediated Joint Plan of Liquidation and (II) Confirming Second Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (Doc. No. 1633), which approved the Confirmed Second Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (Doc. No. 1635) (the "**Confirmed Second Amended Plan**"), which contemplates the Sale to Tampa Life in accordance with the APA.

**WHEREAS**, on February 14, 2020, the Bankruptcy Court also entered an Order Granting Liquidating Trustee's Motion for Entry of Final Order Authorizing (I) the Sale of the Assets of Debtors Free and Clear of All Liens, Claims, and Encumbrances, and (II) Authorizing the

2

6EM252302.DOCX

Assumption and Assignment of Contracts (Doc. No. 1634) (the "**Final Sale Order**"), which authorized the Sale to Tampa Life in accordance with the APA.

WHEREAS, on May 19, 2020, the OIR and Tampa Life entered into Consent Order No. 263505-20-CO authorizing Tampa Life to acquire substantially all of the assets of the Debtors pursuant to the terms of the APA, and Tampa Life and the Liquidating Trustee anticipate that the Closing for the transactions contemplated in the APA will occur on July 17, 2020 (the "**Tampa Life Consent Order**"). (Doc. No. 1750.)

WHEREAS, the Liquidating Trustee is now prepared to consummate the transactions contemplated in the APA, the Final Sale Order, the Confirmed Second Amended Plan, and the Tampa Life Consent Order (the "**Closing**"); however, the Liquidating Trustee does not have sufficient cash in order to consummate the Closing on the Sale on July 17, 2020.

WHEREAS, the Plaintiffs have valid and substantial claims against Valley National Bank, as successor by merger to USAmeribank (the "**Defendant**"). The Funder wishes to invest with the Plaintiffs to facilitate the Closing, the prosecution of the claims, and to profit if the claims are successful. The Funder agrees that its financing is nonrecourse; the litigation proceed rights it shall purchase represent no value if there are no proceeds of the litigation.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Plaintiffs and Funder agree as follows:

1.      DEFINITIONS

1.1     General Terms

For purposes of this Agreement, in addition to the definitions above and elsewhere in this Agreement, the terms listed below in Section 1.2 shall have the meanings set forth below. Unless otherwise specified herein, any agreement or contract referred to herein shall mean such agreement as modified, amended or supplemented from time to time.

1.2     Specific Terms

"Adversary Proceeding" shall mean the adversary proceeding filed in the Bankruptcy Court against Defendant, Adversary Proceeding No. 8:20-ap-00007-MGW.

"Approval Order" shall mean the Order of the Bankruptcy Court approving this Agreement, granting the Motion, and authorizing the Plaintiffs to enter into the Agreement. Such Order shall be in form and substance acceptable to the Funder and shall among other things: (a) grant a perfected, first priority, priming security interest in and lien on the Collarteral, which security interest and lien shall not be subordinate to any other interests, liens, claims, charges, encumbrances, security interests, or surcharges, including surcharges under section 506(c) or any other section of the Bankruptcy Code, in the amount of any sums due under the Litigation Funding Agreement; (b) waive any applicable stays for the effectiveness of the Order with the Order becoming immediately effective; (c) find that the Funder entered into this transaction in good faith

3

6EM252302.DOCX

within the meaning of section 364(e) of the Bankruptcy Code; (d) order that the Funder and this transaction is entitled to the protections of section 364(e) of the Bankruptcy Code; (e) find that the Liquidating Trustee shall have standing as well as the right and authority to prosecute the Claims and nothing in the Litigation Funding Agreement, the Approval Order, or otherwise shall prejudice in any way such standing, right, or authority; (f) find that the hearing on the Motion is a final hearing within the meaning of Bankruptcy Rule 4001(c)(2), (g) approve the privilege procedures set forth in this Agreement and finds that the Parties will not waive privilege—and shall maintain privilege—by complying with such procedures; (h) provide that the terms of the Approval Order are mutually dependent and nonseverable; and (i) find that the Litigation Funding Agreement is neither champertous nor usurious and is enforceable according to its terms.

"Award" shall mean the total monetary amount awarded to the Plaintiffs on account of or as a direct or indirect result of the Claims, whether by negotiation, arbitration, mediation, lawsuit, judgment, settlement, or otherwise. For the avoidance of doubt, "Award" includes both cash and the monetary value of non-cash assets at the time the Award is paid, and it excludes the value of injunctive, declaratory, or other non-monetary relief.

"Claims" shall mean all causes of action that the Plaintiffs have or may have against Defendant, including but not limited to, the causes of action asserted in the adversary proceeding filed in the Bankruptcy Court by the Plaintiffs against Defendant, Adversary Proceeding No. 8:20-ap-00007-MGW and any other causes of action the Plaintiffs will file against the Defendant, including any refiling, counterclaim, appeal, settlement, enforcement action, arbitration, or other action or process related to the adversary proceeding, whether primary, ancillary, or parallel.

"Collateral" shall mean the Claims, the Proceeds, and the Proceeds Account, whether any or all of the foregoing items of Collateral are now existing or hereinafter arising.   Collateral shall also include all proceeds of all of the foregoing items of Collateral.

"Common Interest Material" shall mean any discussion, evaluation, negotiation, and any other communication and exchanges of information relating to the Claims in any way, whether written or oral, between or among the Plaintiffs, Litigation Counsel, Funder, and/or Funder's Representatives, *provided* that such communication would be protected by attorney–client privilege between Litigation Counsel and the Plaintiff, work-product doctrine, or other discovery protection if not disclosed to a third party lacking a common legal interest.

"Conclusion of the Claim" shall mean the final resolution of the Claims, whether by settlement, the entry of a non-appealable final judgment against the Plaintiffs, or the enforcement of a final, non-appealable judgment in favor of the Plaintiffs.

"Confidential Information" shall mean:

(i) the Common Interest Material;

(ii) discussions and negotiations related to this Agreement, including drafts of this Agreement; and

(iii) to the extent not already covered as Common Interest Material, the Claims, including: (a) the information, of any type, relevant to understanding the Claims; (b) the parties' Litigation Counsel's, or Funder's Representatives' strategies, tactics, analyses, or expectations

4

6EM252302.DOCX

regarding the Claims or Award; and (c) any professional work product relating to the Claims or the Award, whether prepared for the Plaintiffs, Litigation Counsel, the Funder, or the Funder's Representatives.

Notwithstanding the foregoing, information is not Confidential Information that (a) was or becomes generally available to the public other than by breach of this Agreement; (b) was, as documented by the written records of the receiving party, known by the receiving party at the time of disclosure to it or was developed by the receiving party or its representatives without using Confidential Information or information derived from it; (c) was disclosed to the receiving party in good faith by a third party who has an independent right to such subject matter and information; or (d) is required to be disclosed by law.

"Costs" shall mean the expenses incurred by or on behalf of the Plaintiffs for conducting the Claims and complying with the terms of this Agreement and include: professional fees, whether for attorneys, advisors, experts, or witnesses; and procedural fees relating to court, arbitration, or other process, including filing and arbitrator fees; provided that the amounts in each case are approved by Litigation Counsel.

"Defendant" shall mean Valley National Bank, for itself and as successor-by-merger to USAmeribank.

"Draw Requests" shall mean copies of respective invoices for payment from Litigation Counsel.

"Funder" shall mean A/Z Property Partners LLC, or its designee.

"Funder's Representative" shall mean Troy Taylor of Algon Group and any successor advisor the Funder retains to represent its interests regarding the Claims and this Agreement.

"Independent Counsel" shall mean Bush Ross, P.A., and any successor or supplemental counsel retained by the Plaintiffs to advise on this Agreement's terms, amendments, and assignments, on settlement proposals and on privilege issues. Such counsel has and shall have no direct or indirect economic relationship with the Funder prior to the Conclusion of the Claims.

"Investment" shall mean the amount of money the Funder invests relating to the Claims, including Costs and the Option Payment.

"Liquidation Trustee" shall mean Jeffrey W. Warren as the Liquidating Trustee for WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, a Delaware limited partnership, in Jointly Administered Case No. 8:16-bk-08167-MGW in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division and WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, a Delaware limited partnership, in Case No. 8:16-bk-08168-MGW, as jointly administered with Case No. 8:16-bk-08167-MGW, in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

"Litigation Account" shall mean the separate bank account that the Plaintiffs may open for such purpose or the general trust account of the Independent Counsel to be used for the receipt of the Investment from the Funder and the payment of Costs.

5

6EM252302.DOCX

"Litigation Counsel" shall mean Mercer Law, LLC and any successor or supplementary counsel or professional or expert retained by the Plaintiffs in accordance with this Agreement to conduct, or assist in the conduct, of the Claims.

"Litigation Proceed Rights" shall mean the rights of the Funder to funds under this Agreement.

"Litigation Reports" shall mean reports from Litigation Counsel to be provided at least monthly, or on a more frequent basis as may be reasonably requested by the Parties, regarding the prosecution of the Claims.

"Motion" shall refer to the Liquidating Trustee's Expedited Motion for Authority to Enter into Litigation Funding Agreement with A/Z Property Partners LLC (Doc. No. 1822).

"Option Payment" shall mean the amount paid by Funder to acquire the option to provide the funding to pursue the Claims to be used solely by the Plaintiffs to make payments required at the Closing. The Option Payment, however, shall not be greater than Two Hundred and Fifty Thousand and no/100 Dollars ($250,000.00) unless the Funder consents.

"Parties" shall mean the Plaintiffs and Funder.

"Plaintiffs" shall mean WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, a Delaware limited partnership, by Jeffrey W. Warren, its Liquidating Trustee in Jointly Administered Case No. 8:16-bk-08167-MGW in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division and WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, a Delaware limited partnership, by Jeffrey W. Warren, its Liquidating Trustee in Case No. 8:16-bk-08168-MGW, as jointly administered with Case No. 8:16-bk-08167-MGW, in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division. The Plaintiffs shall include the Liquidating Trustee.

"Proceeds" shall mean (i) any and all value received to satisfy the Award, if the Award results from settlement or other negotiated agreement, and (ii) any and all value received to satisfy the Award, less any state, federal, or international taxes owed on such value, if the Award is a judgment, order, or other determination by an independent party, such as a court or arbitrator.

"Proceeds Account" shall mean the separate bank account that the Plaintiffs may open for receipt of Proceeds or the general trust account of the Independent Counsel to be used for the receipt of Proceeds. The Plaintiffs may not access the funds in the Proceeds Account until after the Funder is paid the value of its Litigation Proceed Rights, whether from the Proceeds Account or from any other source owned or controlled by the Plaintiffs. The restriction on use of the Proceeds Account shall terminate upon the Funder's receipt of the value of its Litigation Proceed Rights.

2    REPRESENTATIONS AND WARRANTIES

2.1    Plaintiffs' Representations and Warranties

2.1.1    Common Interest: The Plaintiffs have received Independent Counsel's advice regarding the common-interest doctrine in Florida.

6

2.1.2   Full Disclosure: The Plaintiffs represent that, as of the date of this Agreement, the Plaintiffs have provided the Funder all material information relating to the Claims, excluding information protected solely by the attorney–client privilege.

2.1.3   Fully Informed: The Plaintiffs represent that they have reviewed the disclosures by the Funder, and the Plaintiffs do not object to the conflicts or potential conflicts described therein.

2.1.4   No Impairment:

2.1.4.1 The Plaintiffs have not taken any action (including executing documents) or failed to take any action, which (a) would materially and adversely affect the Claims or (b) would give any person or entity other than the Funder an interest in the Award or the Proceeds.   The Plaintiffs further represent that they have (a) complied with all applicable procedural deadlines in the Adversary Proceeding or (b) otherwise cured such noncompliance.

2.1.4.2 The Plaintiffs agree and undertake that (a) they will not institute any action, suit, or arbitration separate from the Claims arising from the same facts, circumstances or law giving rise to the Claims; (b) they will not take any step reasonably likely to have a materially adverse impact on the Claims or the Funder's share of any Proceeds; and (c) they will not take any step that would give any person or entity an interest in the Claims, Award, or potential Proceeds except as otherwise permitted by this Agreement.

2.1.4.3   The Plaintiffs represent that there are no liens on or security interests in the Claims or the Proceeds other than the purported lien of The Jennis Law Firm.

2.1.4.4   The Plaintiffs represent and warrant that the Motion has been properly served pursuant to Rule 9014(b) of the Federal Rules of Bankruptcy Procedure on all creditors holding or purporting to hold a lien on or security interest in any assets of the Plaintiffs, except for the following creditors who do not assert or purport to have a lien on the Causes of Action: Hillsborough County Tax Collector; Drywizard Drywall Services, Inc.; Geiger; Flood Pros of SWFL Corp.; Prospect Construction Services, LLC; Deere & Company d/b/a John Deere Financial; and Marlin Business Bank.

2.1.5   Solvency: The Plaintiffs are liquidating debtors in the Bankruptcy Cases and are in the process of transferring substantially all of their assets and accepting from Tampa Life deferred payments on a subordinated basis to satisfy certain obligations of the Plaintiffs.

2.1.6   Independent Counsel: The Plaintiffs represent that their Independent Counsel advised them about the terms of this Agreement.

2.1.7   Completeness and Accuracy: The Plaintiffs represent that as of the date of this Agreement, (a) all material information they and Litigation Counsel provided to the Funder is true and correct, and (b) all their representations and warranties in this Agreement are true and correct.

2.2   Funder's Representations and Warranties

2.2.1   Funds: The Funder represents that it is fully capitalized and has and will continue to have sufficient funds available to fulfill its obligations under this Agreement.

7

2.2.2   <u>Fully Informed</u>: The Funder has thoroughly reviewed all the information about the Claims provided to it.

2.2.3   <u>No Conflicts of Interest</u>:

2.2.3.1 Other than as set forth in this Agreement, the Funder has not, as of the date of this Agreement: (a) paid a referral fee to Litigation Counsel in connection with the Claims, the Plaintiffs, or this Agreement; (b) entered any transaction with Litigation Counsel that has or would make Litigation Counsel a part owner of the Funder; and (c) entered into any relationship with the Plaintiffs' Litigation Counsel or Independent Counsel that potentially conflicts with the Plaintiffs' interests regarding the Claims. For the avoidance of doubt, the Funder engaged Mercer Law, LLC to review and provide advice to Funder regarding the Liquidating Trustee's Expedited Motion for Authority to Enter into Litigation Funding Agreement with A/Z Property Partners LLC (Doc. No. 1822) and the creation of this Agreement.

2.2.3.2 The Funder will not, prior to the Conclusion of the Claims, pay a referral fee to Litigation Counsel in connection with the Claims, the Plaintiffs, or this Agreement; transfer or agree to transfer any ownership in the Funder to Litigation Counsel. This provision shall survive the termination of this Agreement if the Agreement is terminated prior to the Conclusion of the Claims.

2.2.3.3 The Funder does not have a duty, contractual obligation, or other requirement to monetize its interest in the Claims within any particular time frame or which would require the Funder to cease funding the Claims. For the avoidance of doubt, the preceding sentence does not include a fiduciary duty that would require the Funder to cease funding the Claims because of the Funder's assessment of the merits of the Claims.

2.2.4   <u>No Waiver of Privilege</u>:

2.2.4.1 As of the date of this Agreement, the Funder and the Funder's Representative have not disclosed any Common Interest Material to anyone without the prior written consent of the Plaintiffs; and

2.2.4.2 The Funder and the Funder's Representatives shall not disclose any Common Interest Material to anyone without prior written consent of the Plaintiffs other than their counsel or tax or accounting advisor and in such case such parties shall agree in to be bound by the terms of this Agreement.

2.2.4.3 For the avoidance of doubt, this prohibition prevents disclosure without prior written consent to the Funder's investors and/or any party to whom the Funder wishes to transfer part or all of its interest in the Claims. If consent is given, the Funder shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Common Interest Material on terms no less restrictive than those set forth in this Agreement for Confidential Information. This provision shall survive the termination of this Agreement and remain in effect until the Conclusion of the Claims.

2.2.5   <u>Secondary Market Financing</u>:

6EM252302.DOCX

2.2.5.1 The Funder represents that as of the date of this Agreement it has not sold or entered negotiations to sell part or all of its interest in the Claims or the Proceeds to anyone.

2.2.5.2 The Funder will not securitize its interest in the Claims or the Proceeds.

3      CONDITIONS PRECEDENT

The Parties acknowledge that a condition precedent to the obligations of the Parties under the Agreement is the entry by the Bankruptcy Court of an order approving the Agreement. Moreover, a condition precedent to the Funder's obligations under the Agreement is that the Court entered the Approval Order, which is not subject to a stay pending appeal.

4      FURTHER DILIGENCE

The Funder shall have until ten (10) days from the payment of the Option Payment to complete its due diligence and shall be entitled to terminate the Litigation Funding Agreement, with no penalty whatsoever (other than the nonrecovery of the Option Payment) in its sole and absolute discretion.

5      ADDITIONAL COVENANTS

5.1    Covenants of Plaintiffs

5.1.1    Representations Remain True: The Plaintiffs covenant that all of their representations and warranties shall continue to be true throughout the term of this Agreement.

5.1.2    Duty to Cooperate: The Plaintiffs covenant to cooperate in the prosecution of the Claims. Specifically, the Plaintiffs shall promptly and fully assist Litigation Counsel as reasonably necessary to conduct and conclude the Claims. For the avoidance of doubt, such assistance includes all actions any Plaintiffs may reasonably expect undertaking such as: submitting to examination; verifying statements under oath; and appearing at any proceedings. The examples in the preceding sentence are illustrative and do not limit the Plaintiffs' duty to cooperate in any way.

5.1.3    Duty to Inform: The Plaintiffs agree and undertake to keep the Funder fully informed about the progress of the Claims including specifically:

5.1.3.1 Non-Privileged Information: The Plaintiffs hereby irrevocably instructs Litigation Counsel, and if further instructions are needed, undertake to instruct Litigation Counsel, to provide the Funder and the Funder's Representative (collectively, the "Funder Parties") with all material non-privileged information as soon as practicable, regardless of the information's source, confidentiality, or form, unless one or more of the Funder Parties already possess or control such information.

5.1.3.2 Attorney Work Product: Acknowledging that this Agreement contains provisions requiring the parties to protect the confidentiality of any Confidential Information disclosed to it and that such information includes attorney work product, the Plaintiffs hereby irrevocably instruct their Litigation Counsel, and if further instructions are needed, undertake to instruct their Litigation

9

6EM252302.DOCX

Counsel to provide the Funder's Representatives with all material attorney work product relating to the Claims as soon as practicable.

5.1.3.3 Attorney–Client Privileged Information: Relying on the parties' agreement that they share a common legal interest and that communicating attorney–client privileged information to the Funder in the furtherance of that interest does not waive the privilege, the Plaintiffs undertake to share such information on a topic-by-topic basis, *provided that* neither the Plaintiffs nor Litigation Counsel shall disclose attorney–client protected information to the Funder or the Funder's Representatives unless (i) the Plaintiffs have discussed with Litigation Counsel or Independent Counsel the information to be shared, the reason for the sharing, and the probable consequences if the sharing is ultimately held to waive the privilege; and (ii) the Plaintiffs have given written consent to such information sharing.

5.1.4    No Change in Litigation Counsel Without Funder Notice: The Plaintiffs agree and undertake that they will not engage a new attorney or law firm to prosecute the Claims, either as replacement or supplemental Litigation Counsel, without giving the Funder 10 days' prior notice and without giving good faith consideration to the Funder's response, if any. For the avoidance of doubt, "engage" in the immediately preceding sentence means "execute a retainer agreement or other contract to employ such attorney or law firm."

5.1.5    Funder Participation in Settlement Decision Making:

5.1.5.1 The Plaintiffs will immediately notify the Funder upon receiving a settlement offer, providing the Funder with the complete details of the offer in such notice. The Plaintiffs will not respond to the settlement offer until after giving good faith consideration to the Funder's analysis of the offer, *provided that* the Funder communicates its analysis within 10 days of receiving notice of the offer.

5.1.5.2 The Plaintiffs will not make a settlement offer without first notifying the Funder of the proposed offer, including its complete details, and giving good faith consideration to the Funder's analysis, *provided that* the Funder communicates its analysis within 10 days of receiving the proposed offer.

3.1.6    Independent Counsel: The Plaintiffs will obtain Independent Counsel before agreeing to any material amendment to this Agreement and before engaging replacement or supplemental counsel to conduct the Claims.

5.2    Joint Covenants of the Parties:

5.2.1    Good Faith Dealings: The Parties agree that they will act reasonably and in good faith in every action taken under this Agreement. For the avoidance of doubt, however, the exercise of the Parties' rights under the Agreement shall not constitute a breach of this covenant.

6    COMMON INTEREST AND CONFIDENTIALITY

6.1    Common Interest: The Plaintiffs and the Funder agree they share a common legal interest and, to the degree necessary to further their common legal interest, agree to share Common Interest

10

Material in accordance with the provisions of this Agreement. The Plaintiffs and the Funder agree the material would not be shared if the common legal interest did not exist.

6.2 Non-Disclosure Generally: During the term of this Agreement and for one year following its termination, the recipient of Confidential Information shall not disclose, use, or make available, directly or indirectly, any Confidential Information to anyone, except as needed to perform its obligations under this Agreement or as the disclosing party otherwise authorizes in writing. When disclosing, using, or making Confidential Information available in connection with the performance of its obligations under this Agreement or as permitted by the disclosing party, recipient shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Confidential Information on terms no less restrictive than as set forth in this Agreement. The recipient agrees that neither the execution of this Agreement nor the provision of Confidential Information thereto enables the recipient to use the Confidential Information for any purpose or in any way other than as specified in this Agreement.

6.3 Potentially Enforceable Disclosure Requests: If one of the Parties receives a potentially enforceable request for the production of Confidential Information, including without limitation a subpoena or other official process, the Party will promptly notify the other Parties in writing, unless such notice is prohibited by law. If allowed, such notice shall be given before complying with the request and shall include a copy of the request.

If the request is of the recipient of Confidential Information, and notice to the disclosing party is prohibited by law, the recipient must make a good faith effort to contest the disclosure, if appropriate. The recipient shall also make a good faith effort to obtain an agreement protecting the confidentiality of the Confidential Information prior to disclosing it.

If a party elects to contest the request, no party shall make any disclosure until a final, non-appealable or non-stayed order has been entered compelling such disclosure. The contesting party shall pay its own expenses and control its contest, *provided that*, if the recipient contests a request when forbidden by law to give the disclosing party notice of the disclosure request, the disclosing party shall reimburse the recipient's reasonable expenses promptly after being notified of them.

7     FUNDING TERMS

7.1 Committed Capital: The Funder commits to finance the prosecution of the Claims until such obligation is terminated pursuant to the Agreement including, without limitation, sections 6 and 7 of the Agreement.

7.2     The Funder shall be entitled to recover the following amounts from the Collateral in the following order: (a) *first*, reimbursement for the professional fees and expenses incurred and paid or to pay any and all outstanding professional fees and expenses relating in any way (i) to the negotiation and preparation of the Litigation Funding Agreement and the Motion, (ii) the prosecution of the Claims, and (iii) the Funder's monitoring of and input into the prosecution of the Claims, without interest; (b) *second*, reimbursement for the Option Payment, without interest; and (c) *third*, 85% of the remaining net proceeds of the recovery after payment of (a) and (b) immediately above.  For the avoidance of doubt, professional fees shall include the fees of attorneys, expert and consulting witnesses, and advisors.

7.3     Purchase of Litigation Proceed Rights: Subject to the limitations of Funder's obligations expressly provided in this Agreement, on a monthly basis, or any other periodic basis established by the Parties, and the Litigation Counsel, Draw Requests will be submitted to Funder by the Plaintiffs. The Parties may object, in writing, within 15 days of presentment of the Draw Request to the requesting professional or expert and such Draw Request shall not be paid until such objection is either resolved with the objecting Party or resolved by the Bankruptcy Court. Should there be no timely objection (or a timely objection resolved), the Funder shall advance to the Litigation Account, on a non-recourse basis, the amount of the approved Draw Request which will be deemed an Investment within 15 days of the approval. The Plaintiffs are authorized to pay an approved Draw Request from the Litigation Account without further approval by Funder; provided, however, Plaintiffs must at all times be in compliance with orders of the Bankruptcy Court.

7.4     Sale of Litigation Proceed Rights: Subject to the terms and conditions of this Agreement, upon completion of the Investment, the Litigation Proceed Rights of the Funder shall be increased by the amount of the Investment. Periodically, the Funder shall receive confirmation, in writing, of the Litigation Proceed Rights evincing its Investments.

7.5     No Commitment for Additional Financing: The Plaintiffs acknowledge and agree that the Funder has not made any representation, undertaking, commitment, or agreement to provide or assist the Plaintiffs in obtaining any financing, investment, or other assistance, other than the investments as set forth herein. In addition, the Plaintiffs acknowledge and agree that (i) no statements, whether written or oral, made by the Funder or its Representatives on or after the date of this Agreement shall create an obligation, commitment, or agreement to provide or assist the Plaintiffs in obtaining any financing or investment; (ii) the Plaintiffs shall not rely on any such statement by the Funder or its representatives; and (iii) an obligation, commitment, or agreement to provide or assist the Plaintiffs in obtaining any financing or investment may only be created by a written agreement, signed by the Funder and the Plaintiffs, setting forth the terms and conditions of such financing or investment and stating that the parties intend for such writing to be a binding obligation or agreement.

7.6     New Funder Participation: The Funder can invite additional potential funders to participate in Draw Requests, but the Plaintiffs, in their sole discretion, must approve both the new funder's participation and the size of its investment before the potential funder can participate. For the avoidance of doubt, no Litigation Proceed Rights shall be sold to any person unless such person joins this Agreement.

8       FUNDER RIGHT TO TERMINATE INVESTMENT WITHOUT CAUSE

8.1     Termination at Any Time: At any time, the Funder may give written notice to the Plaintiff of its intention to terminate its investment in the Claims. To make its notice effective, the Funder must return a fully executed acknowledgment that it is forfeiting all of its Litigation Proceed Rights. The acknowledgment shall reflect that the Funder (i) no longer owns any Litigation Proceed Rights, and (ii) the other provisions of this Agreement remain in force.  For the avoidance of doubt and all other provisions of the Agreement notwithstanding, if the Funder provides the notice provided in this subsection, it shall not have any further obligation to finance the prosecution of the Claims or otherwise provide funding under this Agreement.

12

6EM252302.DOCX

8.2     Termination at Any Time with Replacement Funding: At any time the Funder has the right to propose exiting the Agreement by assigning its rights and obligations to a Qualified Replacement Funder. Such assignment requires (i) the Plaintiffs' written consent, which shall not be unreasonably withheld; and (ii) the Qualified Replacement Funder's joinder to this Agreement. The ownership of the exiting Funder's Litigation Proceed Rights will be retained by the exiting Funder or transferred to the Qualified Replacement Funder pursuant to their agreement.  For the avoidance of doubt and all other provisions of the Agreement notwithstanding, if the Plaintiffs consent as provided in this subsection, the Funder shall not have any further obligation to finance the prosecution of the Claims or otherwise provide funding under this Agreement.

9       TERMINATION FOR CAUSE

9.1     Termination: Either party may terminate this Agreement for cause if the other party commits a material breach as defined in this Section with the consequences as specified in this Section.

9.2     Material Breach by the Plaintiffs:

9.2.1   Material Provisions: The provisions of this contract relating to complete and accurate disclosure of material information about the Claims; to cooperation in conducting the Claims and of non-impairment of the Claims; and to the potential award and any proceeds thereof. These provisions are the very essence of this Agreement and any breach by the Plaintiffs of those provisions is presumptively material. The presumption of materiality can be rebutted by the Plaintiffs by showing that such breach did not reduce the potential value of the Funder's Litigation Proceed Rights by more than 20%.

9.2.2   Supporting Information: Notwithstanding Subsection 9.2.1, failure to disclose material information about the Claims that supports the Claims, strengthens the Claims, or otherwise cannot reasonably be believed to have influenced the Funder to avoid investing or re-investing in the Claims had it been disclosed when required is not a material breach of the disclosure provisions.

9.2.3   Material Breach of Other Provisions: The breach by the Plaintiffs of any other provision is material if it, by itself, reduces the potential value of the Funder's Litigation Proceed Rights by more than 50%.

9.2.4   Notice of Material Breach by the Plaintiffs: If the Funder believes the Plaintiffs have materially breached this Agreement it shall promptly serve notice on the Plaintiffs. If the breach can be cured, the Plaintiffs then have 30 days to do so.

9.2.5   Consequences of Material Breach by the Plaintiffs: If the Plaintiffs commit an incurable material breach or fail to timely cure material breach as defined therein, the Funder is entitled to a refund of all of its Investment remaining in the Litigation Account and is entitled to keep its Litigation Proceed Rights. The Funder shall have shall not have any further obligation to finance the prosecution of the Claims or otherwise provide funding under this Agreement.  This provision shall not limit the Funder's other remedies at law or equity.

9.2.6   Dispute: If the existence of a material breach is disputed by the Plaintiff the Proceeds Account shall be preserved pending the Bankruptcy Court's resolution of the dispute.

13

6EM252302.DOCX

9.3    Material Breach by the Funder:

9.3.1    Material Provisions: The Funder recognizes that its representations regarding its ability to honor its capital commitments, its commitments to protect Plaintiff's privileged information, and its assumption of duty of good faith and fair dealing are of the essence of this Agreement. A material breach occurs if the Funder is unable to invest Committed Capital when required. A material breach occurs if a disclosure could result in waiver of the privilege if any other party to the litigation learned of the disclosure, regardless of how the other party to the litigation learned of the disclosure. A material breach has occurred if a judge, arbiter, or other third-party dispute resolution mechanism so rules.

9.3.2    Material Breach of Other Provisions: The breach by the Funder of any other provision is material if it, by itself, reduces the potential value of the Award or Proceeds by more than 20%.

9.3.3    Notice of Material Breach by the Funder: If the Plaintiffs believe the Funder has materially breached this Agreement, the Plaintiff shall promptly serve notice on the Funder. If the breach can be cured by the Funder, then it has 30 days to do so.

9.3.4    Consequences of Material Breach by Funder: If the Funder commits an incurable breach or fails to timely cure a material breach as defined therein, the Litigation Proceed Rights shall be reduced in an amount sufficient to compensate the Plaintiffs. This provision shall not limit any other remedies the Plaintiffs may have in law or equity.

9.3.5    Dispute: If the Funder disputes the existence of a material breach, the Proceeds Account shall be preserved pending the Bankruptcy Court's resolution of the dispute.

10    SECURITY INTEREST

10.1    Proceeds Account: The Plaintiffs hereby irrevocably instructs, and, if further instructions are needed, will instruct, Litigation Counsel to receive any Proceeds that the Plaintiffs becomes entitled to on behalf of the Plaintiffs, and to immediately deposit all such Proceeds in the Proceeds Account.

10.2    Security Interest in the Collateral: To secure its obligations to the Funder now existing or hereinafter arising under this Agreement, the Plaintiffs hereby grant the Funder a first priority, properly perfected security interest in the Collateral.

10.3    No Other Security Interests: The Plaintiffs shall not grant a security interest in the Collateral to anyone other than the Funder without the Funder's prior written consent.

11    MISCELLANEOUS

11.1    Governing Law: The Agreement shall be governed by and construed in accordance with the internal laws of the State of Florida without giving effect to its choice of law provisions and, to the extent applicable, the Bankruptcy Code.

11.2    Jurisdiction; Service of Process; Venue: Any judicial proceeding related to the Agreement must be brought in the Bankruptcy Court or, if the Bankruptcy Court does not have jurisdiction,

14

6EM252302.DOCX

any federal or state court of competent jurisdiction located in the State of Florida. By execution and delivery of the Agreement to which it is a party, each party (i) accepts the non-exclusive jurisdiction of the aforesaid courts and irrevocably agrees to be bound by any judgment rendered thereby, (ii) waives personal service of process, (iii) agrees that service of process upon it may be made by certified or registered mail, return receipt requested, and (iv) waives any objection to jurisdiction and venue of any action instituted hereunder and agrees not to assert any defense based on lack of jurisdiction, venue or convenience. The Parties acknowledge that they participated in the negotiation and drafting of this Agreement and that, accordingly, no Party shall request a court to construe this Agreement more stringently against any Party than against any other Party.

11.3    Successors and Assigns; Participations; New Lenders: The Agreement shall inure to the benefit of Plaintiffs and Funder, and each of their respective successors and assigns. This Agreement shall be binding upon the parties and their respective successors and assigns, and no party may assign, delegate or transfer any of its rights or obligations thereunder without the prior written consent of the other parties. No rights are intended to be created under this Agreement for the benefit of any third party.   Such third parties—which shall not be a beneficiary under this Agreement—include, but are not limited to, any third party donee, creditor or incidental beneficiary of Plaintiffs, including, but not limited to, any trustee or examiner succeeding to the rights of Plaintiffs pursuant to Chapter 11 of the Bankruptcy Code (except for the Liquidating Trustee) or pursuant to any conversion to a case under Chapter 7 of the Bankruptcy Code. Nothing contained in this Agreement shall be construed as a delegation to Funder of any Plaintiff or the Liquidating Trustee's duty of performance. No assignment by Funder shall release Funder from its obligations hereunder arising prior to the date of assignment. Each approved transferee shall have all of the rights and benefits with respect to the Approval Order and this Agreement held by it as fully as if the original holder thereof, and either Funder or any approved transferee may be designated as the sole agent to manage the transactions and obligations contemplated therein; provided that, notwithstanding anything to the contrary in any document, Plaintiffs shall not be obligated to pay under this Agreement to any approved transferee any sum in excess of the sum which Plaintiffs would have been obligated to pay to Funder had such participation not been effected. Notwithstanding any other provision of this Agreement, Funder may disclose to any approved transferee all information, reports, financial statements, certificates and documents obtained under any provision of this Agreement.

11.4    Notice: Any notice, notification or request shall be given to any party to this Agreement at such party's address set forth beneath its signature on the signature page to this Agreement, or at such other address as such party may hereafter specify in a notice given in the manner required under this section.

11.5    Further Obligations:   The Plaintiffs shall take such further actions as may be necessary to ensure that the Funder has a first priority perfected security interest in the Collateral.   Without limiting the foregoing in any way, upon request of the Funder, the Plaintiffs shall consent to the filing of the appropriate UCC financing statement and shall agree to a commercially reasonably control account for any relevant account.

11.6    Severability; Captions; Counterparts; Facsimile Signatures: If any provision of any Agreement is adjudicated to be invalid under applicable laws or regulations, such provision shall be inapplicable to the extent of such invalidity without affecting the validity or enforceability of

15

6EM252302.DOCX

the remainder of the Agreement, which shall be given effect so far as possible. The captions in the Agreement are intended for convenience and reference only and shall not affect the meaning or interpretation of the Agreement. The Agreement may be executed in one or more counterparts (which taken together, as applicable, shall constitute one and the same instrument) and by facsimile transmission, which facsimile signatures shall be considered original executed counterparts. Each party to this Agreement agrees that it will be bound by its own facsimile signature and that it accepts the facsimile signature of each other party.

11.7   Entire Agreement: This Agreement constitutes the entire agreement between Plaintiffs and Funder with respect to the subject matter hereof and thereof, and supersedes all prior agreements and understandings, if any, relating to the subject matter hereof or thereof. Any promises, representations, warranties or guarantees not herein contained and hereinafter made shall have no force and effect unless in writing signed by Plaintiffs and Funder. No provision of this Agreement may be changed, modified, amended, restated, waived, supplemented, discharged, canceled or terminated orally or by any course of dealing or in any other manner other than by an agreement in writing signed by Plaintiffs and Funder. Each party hereto acknowledges that it has been advised by counsel in connection with the negotiation and execution of this Agreement and is not relying upon oral representations or statements inconsistent with the terms and provisions hereof.

11.8   Funder Approvals: Unless expressly provided herein to the contrary, any action, approval, consent, waiver or satisfaction of Funder with respect to any matter that is subject of this Agreement may be taken or not taken as the case may be or granted or withheld as the case may be by Funder in its sole and absolute discretion.

11.9   Acknowledgements: Plaintiffs hereby acknowledge that: (a) they have been advised by counsel in the negotiation, execution and delivery of this Agreement; (b) Funder has no fiduciary relationship to Plaintiffs, and (c) the relationship between Plaintiffs on the one hand and Funder on the other hand is solely that of independent Parties; and (d) no joint venture exists between Plaintiffs, on the one hand, and Funder, on the other hand.

11.10   Bankruptcy Court Orders Paramount: In the event of any direct conflict between the terms and conditions of this Agreement and the specific terms and conditions of the Approval Order, the terms and conditions of the Approval Order shall prevail. Nothing set forth in this Agreement shall require any Party to act or fail to act in a manner that would violate the Bankruptcy Code or any order of the Bankruptcy Court, without prejudice to any other Party's ability to declare a default based upon such action or failure to act.

**[SIGNATURES APPEAR ON THE FOLLOWING PAGES]**

16

6EM252302.DOCX

IN WITNESS WHEREOF, each of the parties below has duly executed this Agreement as of the date first written above.

**WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP,**
a Delaware limited partnership

By: _____
    Jeffrey W. Warren
    Its Liquidating Trustee in Jointly Administered
    Case No. 8:16-bk-08167-MGW in the United States
    Bankruptcy Court for the Middle District of Florida,
    Tampa Division

**WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP,**
a Delaware limited partnership

By: _____
    Jeffrey W. Warren
    Its Liquidating Trustee in Jointly Administered
    Case No. 8:16-bk-08167-MGW in the United States
    Bankruptcy Court for the Middle District of Florida,
    Tampa Division

**THE LIQUIDATING TRUSTEE FOR THE PLAINTIFFS**

By: _____
    Jeffrey W. Warren, Liquidating Trustee in Jointly Administered
    Case No. 8:16-bk-08167-MGW in the United States
    Bankruptcy Court for the Middle District of Florida,
    Tampa Division

Address for Notice to Plaintiffs and the Liquidating Trustee:

Jeffrey W. Warren, Esq.
Bush Ross, P.A.
1801 N. Highland Avenue
Tampa, Florida 33602
Facsimile No.: (813) 223-9620

17

6EM252302.DOCX

With a copy to (which shall not constitute notice):

Adam Lawton Alpert, Esq.
Bush Ross, P.A.
1801 N. Highland Avenue
Tampa, Florida 33602
Facsimile No.: (813) 223-9620

[Signatures Continue on Following Page]

18

6EM252302.DOCX

**A/Z PROPERTY PARTNERS LLC,**
a Delaware limited liability company

By: _____

      Richard S. Ackerman
      Its: Managing Member

<u>Address for Notice to Lender:</u>

A/Z PROPERTY PARTNERS LLC
c/o Richard S. Ackerman
315 S. Beverly Drive
Suite 315
Beverly Hills California 90212
rackerman@bigrockpartners.com

With a copy to (which shall not constitute notice):

Troy Taylor
Algon Group
10 Glenlake Pkwy NE #130
Atlanta, GA 30328
troy@algongroup.com