UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                            Chapter 11

WESTPORT HOLDINGS TAMPA,                          Case No. 8:16-bk-8167-CED
LIMITED PARTNERSHIP,

WESTPORT HOLDINGS TAMPA                           Case No. 8:16-bk-8168-CED
II, LIMITED PARTNERSHIP,
                                                  *(Jointly Administered)*

        Debtors.
_____/

## JENNIS MORSE ETLINGER'S MOTION FOR
## (I) DETERMINATION OF LIEN AND (II) AUTHORIZATION OF LIS PENDENS

David Jennis, P.A. doing business as Jennis Morse Etlinger ("JME"), as the holder of an

allowed administrative expense claim and pursuant to Sections 105, 362 and 506 and Bankruptcy

Rule 3012, hereby seeks the entry of an order **(i)** determining its Lien survived the Closing (as both

are defined below) and **(ii)** authorizing JME to record a Lis Pendens, a proposed form attached hereto

as **Exhibit A**, in the Official Records of Hillsborough County, Florida regarding the real property

commonly known as the health center located at 12250 North 22nd Street, Tampa, Florida 33612 and

the independent living facility located at 12401 North 22nd Street, Tampa, Florida 33612 and 12250

North 22nd Street, Tampa, Florida 33612 (collectively, the "Property"). In support of this Motion,

JME states as follows:

### I.        Summary of Argument

1.        Despite the Liquidating Trustee's (defined below) herculean efforts to achieve the

"grand bargain", after approximately four years of service, JME has accrued an allowed but unpaid

administrative expense claim of $648,849.96[1] (the "Administrative Claim").

_____

[1] JME reserves the right to seek approval of fees for any additional time rendered and costs incurred in connection
with these bankruptcy cases.

4874-6522-2974, v. 2                              1

DEFENDANT'S
EXHIBIT
Warren # 12
4-24-23 Ot
PENGAD 800-631-6989

2.     This Administrative Claims is secured by a Lien on the Property for no less than three reasons.

3.     First, JME did not consent to the closing of the sale of the assets yet the closing and/or title agent closed nonetheless.

4.     Second, *assuming arguendo* JME had consented, it was not paid the amount necessitated by the Sale Order (defined below) and therefore the Lien was not extinguished.

5.     Third and finally, the Court's rulings, both at the hearing and in its written orders, expressly preserved JME's arguments and most importantly its Lien.

## II.     Background

### A.     Committee Fees

6.     This Section II A can be summarized as follows:

| Application | Order | Amount |
|---|---|---|
| February 21, 2017 First Committee Application (Doc. No. 376) | May 17, 2019 Committee Order (Doc. No. 1490) | |
| February 9, 2018 Second Committee Application (Doc. No. 888) | May 17, 2019 Committee Order (Doc. No. 1490) | $735,577.12 Total Awarded |
| June 11, 2018 Third Committee Application (Doc. No. 1053) | May 17, 2019 Committee Order (Doc. No. 1490) | |

7.     On September 22, 2016, Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership (collectively, the "Debtors") filed their *Voluntary Petition for Non-Individuals Filing for Bankruptcy* (Doc. Nos. 1) as Case Nos. 8:16-bk-8167-MGW and 8:16-bk-8168-MGW, respectively.

8.     On September 22, 2016, the Court entered an *Order Granting Debtor's Expedited Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b)* (Doc. No. 4) thereby jointly administering the cases under the lead case 8:16-bk-8167-MGW.

4874-6522-2974, v. 2                                     2

9.      On December 29, 2016, the United States Trustee for Region 21 filed its *Notice of Appointment of Committee of Resident Creditors* (Doc. No. 258) thereby establishing an Official Committee of Resident Creditors (the "Committee").

10.     On February 6, 2017, the Committee filed its *Application to Employ and Retain David S. Jennis and Jennis Law Firm as Counsel for the Committee of Resident Creditors Nunc Pro Tunc to December 29, 2016* (Doc. No. 318) and supporting *Declaration in Support of Application to Employ and Retain David S. Jennis and the Jennis Law Firm as Counsel for the Committee of Resident Creditors* (Doc. No. 319).

11.     On February 13, 2017, the Court entered an *Order Approving Application to Employ and Retain David S. Jennis and Jennis Law Firm as Counsel for the Committee of Resident Creditors Nunc Pro Tunc to December 29, 2016* (Doc. No. 346) thereby approving the Committee's retention of JME as counsel.

12.     On February 21, 2017, JME filed its *Application for Compensation and Reimbursement of Expenses as Counsel for the Official Committee of Resident Creditors for the Period from December 29, 2016 to February 20, 2017* (Doc. No. 376) (the "First Committee Application").

13.     On February 9, 2018, JME filed its *Supplement to Application for Compensation and Reimbursement of Expenses as Counsel for the Official Committee of Resident Creditors for the Period From February 1, 2017 Through January 31, 2018* (Doc. No. 888) (the "Second Committee Application").

14.     On June 11, 2018, JME filed its *Second Supplement to Application for Compensation and Reimbursement of Expenses as Counsel for the Official Committee of Resident Creditors for the Period From February 1, 2018 Through May 10, 2018* (Doc. No. 1053) (the "Third Committee Application").

15.     On May 17, 2019, the Court entered its *Order on Jennis Law Firm's Applications for Compensation and Reimbursement of Expenses as Counsel for the Official Committee of Resident Creditors* (Doc. No. 1490) (the "Committee Order") approving the First, Second and Third Committee Applications (collectively, the "Committee Applications") and awarding under Section 330 of the Bankruptcy Code a cumulative amount of $735,577.12 as an allowed administrative expense under Section 503(b)(2) of the Bankruptcy Code secured by the lien set forth in Section 3.02 of the Original Plan and Original Confirmation Order (as both are defined below).[2]

### B.     Post Confirmation Fees

16.     This Section II B can be summarized as follows:

| Application | Order | Amount |
|---|---|---|
| July 13, 2018<br>First Special Counsel Application<br>(Doc. No. 1108) | May 17, 2019<br>First Special Counsel Order<br>(Doc. No. 1491) | $106,751.88<br>Total<br>Awarded<br>(for all 10<br>applications) |
| September 13, 2018<br>Second Special Counsel Application<br>(Doc. No. 1149) | May 17, 2019<br>First Special Counsel Order<br>(Doc. No. 1491) | |
| November 16, 2018<br>Third Special Counsel Application<br>(Doc. No. 1199) | May 17, 2019<br>First Special Counsel Order<br>(Doc. No. 1491) | |
| January 14, 2019<br>Fourth Special Counsel Application<br>(Doc. No. 1310) | May 17, 2019<br>First Special Counsel Order<br>(Doc. No. 1491) | |
| March 8, 2019<br>Fifth Special Counsel Application<br>(Doc. No. 1429) | March 10, 2020<br>Third Special Counsel Order<br>(Doc. No. 1659) | |

---

[2] It is worth noting that the Committee Applications actually sought an aggregate amount of $944,870.74.  However, in the spirit of cooperation with various other parties, JME agreed to a voluntary reduction of twenty-five percent (25.00%) of the compensation sought.  At the time it was represented to JME that it would not be asked to accept any future discount on its allowed fees.

| Application Continued | Order Continued | Amount Continued |
|---|---|---|
| July 12, 2019<br>Sixth Special Counsel Application<br>(Doc. No. 1514) | March 10, 2020<br>Fourth Special Counsel Order<br>(Doc. No. 1660) | |
| January 13, 2020<br>Seventh Special Counsel Application<br>(Doc. No. 1605) | February 19, 2020<br>Second Special Counsel Order<br>(Doc. No. 1639) | $106,751.88<br>Total<br>Awarded<br>(for all 10<br>applications) |
| March 13, 2020<br>Eighth Special Counsel Application<br>(Doc. No. 1667) | April 9, 2010<br>Fifth Special Counsel Order<br>(Doc. No. 1704) | |
| May 6, 2020<br>Ninth Special Counsel Application<br>(Doc. No. 1737) | May 18, 2020<br>Sixth Special Counsel Order<br>(Doc. No. 1748) | |
| January 8, 2021<br>Tenth Special Counsel Application<br>(Doc. No. 1880) | February 15, 2023<br>Seventh Special Counsel Order<br>(Doc. N0. 2041) | |

17.     On January 3, 2018, the Debtors and the Committee filed their *Mediated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 805) amended and restated by the *First Amended and Restated Mediated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, as Modified* (Doc. No. 1012) (collectively, the "Original Plan") which pursuant to Section 8.11 appointed Jeffrey Warren as the liquidating trustee (the "Liquidating Trustee") and pursuant to Section 8.13(b) the Liquidating Trustee engaged JME as special litigation counsel in certain adversaries.

18.     On February 26, 2018, the Committee filed its *Complaint and Objection to Claim No. 22* (CPIF Doc. No. 1) assigned Case Number 8:18-ap-00102-MGW which the Liquidating Trustee substituted into via a *Notice of Substitution of Party Plaintiff and Motion to Amend Case Caption* (CPIF Doc. No. 38), both of whom were represented by JME; and, on January 8, 2020, the Liquidating Trustee filed his *Complaint* (VNB Doc. No. 1) assigned Case Number 8:20-ap-00007-MGW, also represented by JME.

19.     On July 13, 2018, JME filed its *First Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of May 10, 2018 Through June 30, 2018* (Doc. No. 1108) (the "First Special Counsel Application").

20.     On September 13, 2018, JME filed its *Second Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of July 1, 2018 Through August 31, 2018* (Doc. No. 1149) (the "Second Special Counsel Application").

21.     On November 16, 2018, JME filed its *Third Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of September 1, 2018 Through October 31, 2018* (Doc. No. 1199) (the "Third Special Counsel Application").

22.     On January 14, 2019, JME filed its *Fourth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of November 1, 2018 Through December 31, 2018* (Doc. No. 1300) supplemented by the *Notice of Filing Composite Exhibit "A" to Fourth Interim Post Confirmation Application of Jennis Law Firm* (Doc. No. 1310) (collectively, the "Fourth Special Counsel Application").

23.     On March 8, 2019, JME filed its *Fifth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of January 1, 2019 Through February 28, 2019* (Doc. No. 1429) (the "Fifth Special Counsel Application").

24.     On May 17, 2019, the Court entered its *Order on Post Confirmation Applications of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee* (Doc. No. 1491) (the "First Special Counsel Order") approving the First, Second, Third and Fourth Special Counsel Applications.

25.     On July 12, 2019, JME filed its *Sixth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of May 1, 2019 Through June 30, 2019* (Doc. No. 1514) (the "Sixth Special Counsel Application").

26.     On January 13, 2020, JME filed its *Seventh Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of November 1, 2019 Through December 31, 2019* (Doc. No. 1605) (the "Seventh Special Counsel Application").

27.     On February 19, 2020, the Court entered its *Order Granting Seventh Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee, Jeffrey W. Warren* (Doc. No. 1639) (the "Second Special Counsel Order") approving the Seventh Special Counsel Application.

28.     On March 10, 2020, the Court entered its *Order Granting Fifth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee, Jeffrey W. Warren* (Doc. No. 1659) (the "Third Special Counsel Order") approving the Fifth Special Counsel Application.

29.     On March 10, 2020, the Court entered its *Order Granting Sixth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee, Jeffrey W. Warren* (Doc. No. 1660) (the "Fourth Special Counsel Order") approving the Sixth Special Counsel Application.

30.     On March 13, 2020, JME filed its *Eighth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of January 1, 2020 Through February 29, 2020* (Doc. No. 1667) (the "Eighth Special Counsel Application").

31.     On April 9, 2020, the Court entered its *Order Granting Eighth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee, Jeffrey W. Warren* (Doc. No. 1704) (the "Fifth Special Counsel Order") approving the Eighth Special Counsel Application.

32.     On May 6, 2020, JME filed its *Ninth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of March 1, 2020 Through April 30, 2020 and Estimate Through Closing* (Doc. No. 1732) supplemented by the *Supplement to Ninth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of March 1, 2020 Through April 30, 2020 and Estimate Through Closing* (Doc. No. 1737) (collectively, the "Ninth Special Counsel Application").

4874-6522-2974, v. 2                                        8

33.     On May 18, 2020, the Court entered its *Order Approving Ninth Interim Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee, Jeffrey W. Warren* (Doc. No. 1748) (the "Sixth Special Counsel Order") approving the Ninth Special Counsel Application.

34.     On January 8, 2021, JME filed its *Tenth and Final Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of May 1, 2020 Through December 31, 2020* (Doc. No. 1880) (the "Tenth Special Counsel Application").

35.     On February 15, 2023, this Court entered its *Order Granting, in part, Tenth and Final Post Confirmation Application of Jennis Law Firm for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Liquidating Trustee for the Period of May 1, 2020 Through December 31, 2020* (Doc. No. 2041) (the "Seventh Special Counsel Order").

36.     Pursuant to the First, Second, Third, Fourth, Fifth, Sixth and Seventh Special Counsel Orders (collectively, the "Special Counsel Orders"), JME was approved under Section 330 of the Bankruptcy Code a cumulative amount of $106,751.88 as an allowed administrative expense under Section 503(b)(2) of the Bankruptcy Code secured by the lien set forth in Section 3.02 of the Original Plan and Original Confirmation Order.[3]

## C.     Confirmation, Sale and Closing

37.     On January 3, 2018, the Debtors and the Committee filed their Original Plan which states at Article 3.02:

---

[3] Again, it is worth noting that the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Special Counsel Applications (collectively, the "Special Counsel Applications") actually sought an aggregate amount of $125,661.28. However, in the spirit of cooperation with various other parties, JME agreed to a voluntary reduction of twenty-five percent (25.00%) of the compensation sought on its first four applications. And, again, at the time it was represented to JME that it would not be asked to accept any future discount on its allowed fees.

*Administrative Expense.* Except as otherwise provided in Articles 3.03 through 3.07 below, each Holder of an Allowed Administrative Expense shall be paid (a) on the Closing Date an amount, in Cash, equal to the Allowed Amount of its Administrative Expense less any portion of such Allowed Administrative Expense that has already been satisfied pursuant to the Exit Financing, or (b) under such other terms as may be agreed to by the Holder of such Allowed Administrative Expense. The Allowed Administrative Expenses of Professionals that are not otherwise paid through Exit Financing (the "**Deferred Allowed Administrative Expenses**") shall be subordinated to the payment of Allowed Secured Claims in Classes 2 through 12 (other than to the extent such claims are classified and treated as Class 14 Unsecured Claims pursuant to this Plan). **THE PAYMENT OF THE DEFERRED ALLOWED ADMINISTRATIVE EXPENSES SHALL BE SECURED BY A LIEN ON ALL OF THE ASSETS OF THE DEBTORS THAT IS SUBORDINATE TO ANY LIENS OF ALL OTHER ALLOWED SECURED CLAIMS IN CLASSES 2 THROUGH 12;** provided, however, that such treatment shall be without prejudice to the rights of the Liquidating Trustee to seek to surcharge collateral securing any Allowed Secured Claim in Classes 2 and 5-12 for such Deferred Allowed Administrative Expenses (emphasis added).

38.    On May 10, 2018, the Court entered its *Order (A) Confirming First Amended and Restated Mediated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, as Modified, Pursuant to 11 U.S.C. § 1129, and (B) Approving Disclosure Statement for First Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, on a Final Basis, Pursuant to 11 U.S.C. § 1125* (Doc. No. 1016) (the "Original Confirmation Order").

39.    On May 10, 2018, the Debtors filed their *Notice of Effective Date of First Amended and Restated Mediated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code, as Modified* (Doc. No. 1017) stating the effective date of the Original Plan was May 10, 2018 (the "Effective Date").

40.    On December 31, 2019, the Liquidating Trustee filed his *Motion to Modify Confirmed First Amended and Restated Mediated Joint Plan of Liquidation* (Doc. No. 1585) (the "Motion to Modify"). The Motion to Modify states at Paragraphs 15(c) and (i), respectively:

Section 1.154a shall be added to the Plan with the following language:

> **1.154a** *"Subordinated Deferred Administrative Expense Note"* means each of those certain Subordinated Interest Bearing Unsecured Promissory Notes issued to Holders of Deferred Allowed Administrative Expense Claims, in substantially the form attached hereto as Exhibit "D", which provide for the Buyer to make quarterly payments of the Buyer's Available Cash to the Holders of such claims on a pro rata basis, as calculated by multiplying the Buyer's Available Cash by a fraction the numerator of which is the outstanding balance of principal and accrued interest for any given Subordinated Interest Bearing Unsecured Promissory Note and the denominator of which is the aggregate outstanding balance of principal and accrued interest for all Subordinated Deferred Administrative Expense Notes, beginning on the last Business Day after the first full calendar quarter following the second anniversary of the Effective Date and continuing on the last Business Day of each subsequent calendar quarter until paid in full.

. . .

Section 3.02 of the Plan will be deleted in its entirety and replaced with the following:

> **3.02** *Administrative Expenses.* Except as otherwise provided in Articles 3.03 through 3.07 below, each Holder of an Allowed Administrative Expense shall be paid (a) on the Closing Date an amount, in Cash, equal to the Allowed Amount of its Administrative Expense less any portion of such Allowed Administrative Expense that has already been satisfied pursuant to the Exit Financing, or (b) under such other terms as may be agreed to by the Holder of such Allowed Administrative Expense. Notwithstanding the foregoing, any portion of an Allowed Administrative Expenses not paid on the Closing Date (the "**Deferred Allowed Administrative Expense Claims**") shall receive from the Buyer, in full and final satisfaction of such Holder's Deferred Allowed Administrative Expense Claim, a Subordinated Deferred Administrative Expense Note in the face amount of such Holder's Deferred Allowed Administrative Expense Claim, pursuant to which such Holder shall receive pro rata quarterly payments of Buyer's Available Cash beginning on the last Business Day of the first full calendar quarter following the second anniversary of the Effective Date and continuing on the last Business Day of each subsequent calendar quarter until paid in full, together with interest at 3% per annum beginning on the second anniversary of the Effective Date; provided, however, such payments shall be subject to the subordination provisions of the Master Trust Indenture, including but not limited to the restrictions on use of gross revenues of the Buyers set forth in Article III therein.

It is worth noting that no Exhibit "D" was attached to the Motion to Modify. Furthermore, absent from the Motion to Modify was the amounts or percentage of the portion of the claim that would be paid on the closing date and that portion relegated to the deferred notes.

41.    On December 31, 2019, the Liquidating Trustee filed his *Motion for Entry of Final Order Authorizing (I) the Sale of the Assets of the Debtors Free and Clear of All Liens, Claims, and Encumbrances, and (II) Authorizing the Assumption and Assignment of Contracts* (Doc. No. 1587) (the "Motion to Sell"). The Motion to Sell states at Paragraph 12(f):

> *Satisfaction of Deferred Allowed Administrative Expenses*: Pursuant to Sec. 3.02 of the Confirmed Plan, the Deferred Allowed Administrative Expenses (which were not paid from the Debtor's exit financing) are secured by a lien on all of the assets of the Debtors that is subordinate to the liens of all other Allowed Secured Claims. At the Closing, **HOLDERS OF DEFERRED ALLOWED ADMINISTRATIVE EXPENSES WILL RECEIVE FIFTY PERCENT (50%) OF THEIR ALLOWED CLAIMS IN FULL AND FINAL SATISFACTION OF THE LIENS SECURING SUCH CLAIMS.** In addition, the Buyer will assume the liability to pay the balance of such Deferred Allowed Administrative Expenses from Buyer's Available Cash subject to the subordination provisions of the Master Trust Indenture, including but not limited to the restrictions on use of gross revenues of the Buyer set forth in Article III therein. Notwithstanding the foregoing, the payment of the Deferred Allowed Administrative Expenses will be *pari passu* with the Buyer's obligation to pay (i) certain costs and expenses of the Sale that may not otherwise be satisfied at the Closing (the "**Deferred Fees and Costs**"), and (ii) the deferred portion of the disputed administrative expense claim of Novum Management Group, Inc. (as discussed in paragraph 14 below) (emphasis added and footnote omitted).[4]

42.    On February 3, 2020, JME filed its *Limited Objection to Liquidating Trustee's Motions to Modify Confirmed Plan (Doc. No. 1585) and the Motion for Order Authorizing Sale (Doc. No. 1587)* (Doc. No. 1620) (the "Modification Objection") directed to both the Motions to Modify and to Sell.

43.    On February 4, 2020, the Court conducted a hearing, amongst other things, to consider the Motion to Modify, Motion to Sell and Modification Objection (Doc. No. 1627) (the "Modification Hearing"). At the Modification Hearing the following exchange took place on the record:

> Mr. Warren: . . . But what we contemplate is that if the Court gives us – enters a final order prior to the closing, we would file with the Court and give notice to all parties with a closing statement. And if anyone had an objection to that result, as evidenced by the final closing statement, that those rights to object would be preserved.

---

[4] No further supplemental disclosure statement was filed, just the Motions to Modify and to Sell.

And I think that perhaps gives us the best route to go forward, you know, so that we can go to OIR and say, you know, subject to your approval, subject to the closing, you can now approve these applications for the transfer. And then we would have one last opportunity for parties to raise a complaint if they so choose.

Mr. Etlinger: And, your Honor, we don't disagree to that approach. Once a closing statement's out there, we can preserve or renew any objection at that point.

The Court: So we'll know what the number is.

Mr. Etlinger: Exactly.

The Court: I think that's a good approach, Mr. Warren. I'll overrule the objection but preserving, however, the issue pending the closing statement, and then we can deal with it.

Tr. 51:15-25, 52:1-10.

Thus, the Court's ruling preserved JME's right to object to the Motion to Modify and Motion to Sell, the proposed sale or the proposed distributions. A copy of the relevant excerpt from the Modification Hearing is attached hereto as **Exhibit B.**

**44.**     On February 14, 2020, the Court entered its *Order (I) Granting Liquidating Trustee's Motion to Modify Confirmed First Amended and Restated Mediated Joint Plan of Liquidation and (II) Confirming Second Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 1633) (the "Order to Modify").

**45.**     On February 14, 2020, the Court entered its *Order Granting Liquidating Trustee's Motion for Entry of Final Order Authorizing (I) the Sale of the Assets of Debtors Free and Clear of All Liens, Claims, and Encumbrances, and (II) Authorizing the Assumption and Assignment of Contracts* (Doc. No. 1634) (the "Order to Sell"). The Order to Sell states at Paragraph 5 that "[t]hose holders of liens against the Purchased Assets **WHO DID NOT OBJECT TO THE FINAL SALE MOTION** are deemed to have consented to the Sale pursuant to Section 363(f)(2) of the Bankruptcy Code." (emphasis added). The Order to Sell further states at Paragraph 14:

At the Closing, from the remaining Sale Proceeds after payment of the other claims in accordance with this Final Sale Order, the Liquidating Trustee is authorized to pay holders of Allowed Administrative Expenses not otherwise provided for herein, with the Purchaser assuming the liability to pay the balance of such Allowed Administrative Expenses in accordance with the treatment for Deferred Allowed Administrative Expenses in Section 3.02 of the Second Amended Plan and the Plan Modification Order.  For the avoidance of doubt, the lien granted to the holders of Deferred Allowed Administrative Expenses in Section 3.02 of the Confirmed Plan (as defined therein) is released, cancelled, and of no further effect as against the Purchased Assets, or the Sale Proceeds, as a result of the entry of this Final Sale Order and the Plan Modification Order.

46.     On February 14, 2020, the Liquidating Trustee filed his *Confirmed Second Amended and Restated Joint Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (Doc. No. 1635) (the "Second Amended Plan").

47.     On May 22, 2020, the Liquidating Trustee filed his *Notice of Filing Pro Forma Closing Statement* (Doc. No. 1757) (the "Original Closing Statement").  The Original Closing Statement proposed to pay JME 26.99% at closing and 73.01% pursuant to deferred notes.

48.     On June 22, 2020, the Liquidating Trustee filed his *Notice of Filing Pro Forma Closing Statement* (Doc. No. 1786) (the "Amended Closing Statement").  The Amended Closing Statement proposed to pay JME 23.47% at closing and 76.53% pursuant to deferred notes.  A summary of these amounts are attached as **Exhibit C.**

49.     On June 23, 2020, JME and the Liquidating Trustee exchanged emails regarding the Amended Closing Statement stating:

Liquidating Trustee: So there is no mistake on your part, if you object and persist, there will not be a closing.  Numbers may still go a little lower to cross the finish line . . .

JME: . . . You definitely do not have my firm's agreement to accept an even further reduced % . . .

Liquidating Trustee: No.  There will be no closing if any administrative claimant does not agree.  That is non-negotiable.

(the "June Exchange").  A copy of the full June Exchange is attached hereto as **Exhibit D.**

50.     On June 24, 2020, JME filed its *Objection to Liquidating Trustee's Notice of Filing Pro Forma Closing Statement* (Doc. No. 1787) (the "Closing Statement Objection").

51.     On July 2, 2020, this Court entered its *Order Overruling Jennis Law Firm's Objection to Liquidating Trustee's Notice of Filing Pro Forma Closing Statement* (Doc. No. 1810) (the "Order on Objection") which states at Paragraph 2 that "the Closing may only occur if the Jennis Law Firm consents to (a) the distribution to be made to the Jennis Law Firm in cash at the Closing and (b) the Subordinated Deferred Administrative Expense Note to be issued by the Buyer to the Jennis Law Firm at the Closing." (footnote omitted).[5]

52.     Between July 2 and July 17, 2020, JME and the Liquidating Trustee (primarily through his counsel) continued to discuss a potential closing and JME remained steadfast in its objections.  As such, JME unequivocally did not consent to the closing and the terms of the deferred note.  The Liquidating Trustee did send an email on July 15, 2020 referencing a payment of $193,479.04 but it does not request JME's consent to the closing, wire instructions for distributions or a W-9 (the "July Email").  A copy of the July Email is attached hereto as **Exhibit E.**

53.     On July 17, 2020, the Liquidating Trustee filed his *Notice of Closing on Sale of Assets to Tampa Life Plan Village, Inc.* (Doc. No. 1829) stating that on July 17, 2020 the closing had occurred (the "Closing").

54.     On August 21, 2020, JME received $193,479.04 from the Closing however this was accompanied by a statement from the firm that in "providing [a W-9] and directing you to wire the funds does not in any way imply agreement or consent to the discounted payment."[6]

---

[5] JME could not appeal this or any other relevant orders as the Court's ruling at the Modification Hearing had expressly preserved all of JME's objections and rights.

[6] $735,577.12 Committee Applications + $106,751.88 Special Counsel Applications = $842,329.00 allowed fees and costs - $193,479.04 Closing payment = $648,849.96 allowed but outstanding Administrative Claim.

### III.    Standard and Relief Requested

55.    "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

56.    "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be . . . " 11 U.S.C. § 506(a)(1).

57.    "On request by a party in interest and after notice – to the holder of the claim and any other entity the court designates – and a hearing, the court may determine: the amount of a secured claim under § 506(a) of the Code." Fed. R. Bankr. P. 3012(a)(1).

58.    In this case, JME did not consent to the closing[7],[8].

---

[7] "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including - . . . compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). "Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that – with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim." Id. at § 1129(a)(9)(A). "The term 'has agreed' has been interpreted as requiring an affirmative consent and not merely a failure to object." In re CS Estate, Inc., 2018 Bankr. LEXIS 25, *10 (Bankr. W.D. Wis. 2018) (citing In re Jankins, 184 B.R. 488, 492 n. 8 (Bankr. E.D. Va. 1995) and In re Randolph, 273 B.R. 914, 918 (Bankr. M.D. Fla. 2002) (interpreting nearly identical language under § 1322(a)(2)). "The language of Section 1129(a)(9) specifically requires each holder of each 'particular claim' to enter into an agreement with the plan proponent to waive the right to payment of administrative expenses in full." In re Digital Impact, 223 B.R. 1, 7 (Bankr. N.D. Ok. 1998). "This Court concludes that in order to waive the protection of Section 1129(a)(9)(A), a claimant must individually and affirmatively agree to such treatment." Id. Or put another way, simply because the majority of the members of a class have deemed to have accepted the treatment does not mean that all members are deemed to have accepted the treatment. Id. at 7-8; see also In re Keaton, 88 B.R. 154, 156-57 (Bankr. S.D. Oh. 1988). "Obviously [a claimant under 11 U.S.C. § 1129(a)(9)(C)] has complete discretion to decide whether to agree to such different treatment or whether even to consider agreement to such different treatment." 1900 M Rest. Assocs. v. United States (In re 1900 M Rest. Assocs.), 319 B.R. 302, 312-13 (Bankr. D.C. 2005). JME has an allowed and approved Administrative Claim ordinarily due on the Effective Date. However, as negotiated by the Liquidating Trustee, JME agreed to defer payment to the closing on the Property. JME did not agree to the final terms of the Closing, specifically its revised treatment at the Closing. Evidence of this is expanded upon in the following footnote. It is irrelevant if any or all of the other administrative claimants agreed to the treatment. As articulated in In re Digital Impact and In re Keaton, each administrative claimant had to agree to the separate treatment which JME did not.

[8] Evidence of JME's lack of consent consists of the following, although JME concedes it does not have transcripts for every event: (i) Modification Objection, (ii) Modification Hearing, (iii) May 27, 2020 hearing, (iv) June 8, 2020 hearing, (v) June 17, 2020 hearing, (vi) June Exchange, (vii) Closing Statement Objection, (viii) June 25, 2020 hearing, (ix) June 25, 2020 phonecall, (x) June 29, 2020 hearing, (xi) Order on Objection, (xii) July 8, 2020 hearing, (xiii) July 14, 2020 phonecall, (xiv) July 15, 2020 correspondences, (xv) July 15, 2020 hearing, (xvi) July 16, 2020 correspondences and (xvii) various additional correspondences.

4874-6522-2974, v. 2                                        16

59.     Alternatively, *assuming arguendo* JME consented,[9] it was not paid 50% of its allowed claim at closing and thus by the express terms of the Sale Order its Lien would survive. Lastly, the Modification Hearing and Order to Sell specifically preserved the issues and therefore with it JME's Lien. Therefore, JME is entitled to a determination that its Lien survived the Closing and for authorization to record the Lis Pendens.

60.     The Original Plan and Original Confirmation Order contemplated that JME's Administrative Claim would be secured by a lien on all of the assets of the Debtors (the "Lien").

61.     While the Closing did occur despite JME's lack of consent, JME has not been paid the full amount from the Sale Order nor has its Lien been extinguished by prior rulings. Therefore, JME is entitled to a determination that its Lien has survived the Closing for the full amount of the Administrative Claim plus additional attorneys' fees and costs of collection.

62.     Furthermore, JME requests authority to record a Lis Pendens as to the Lien.

63.     And, to the extent necessary JME seeks relief from the automatic stay pursuant to Section 362(d). *See, e.g., In re Skandis*, 2022 Bankr. LEXIS 2733, *1 (Barnk. W.D. Mich. 2022) ("[B]ecause the Debtor never obtained relief from the automatic stay under section 362 or other authorization from this court, the notice of lis pendens is invalid, void and of no effect under the law.").[10]

---

[9] Upon information and belief, the position that JME consented to the Closing was based on the July Email which parties "took as consent the absence of a protest after you receive confirmation of the actual distribution to be made to your firm at the closing and you knew that the closing was actually occurring." *See* the August 14, 2020 email attached hereto as **Exhibit F**. However, that position fails the standard articulated in *In re CS Estate, Inc.*; *In re Jankins* and *In re Randolph* which hold that agreement requires an affirmative action. Even if the parties could rely on absence of objection, the July Email was in fact refuted by the July 16, 2020, the following day, which was an expression of rejection after the July Email. *See* the July 16, 2020 email attached hereto as **Exhibit G**. Simply put, putting JME on negative notice was insufficient but even if it was JME responded in the negative.

[10] On February 15, 2023, this Court entered its Seventh Special Counsel Order which states in pertinent part that it was "without prejudice to JME's filing of any supplemental materials (the "**JME Supplement**") which respect to the issues raised and argued by JME and/or the Liquidating Trustee at the hearing held on February 24, 2021 which matters the Court took under advisement pending the filing of the JME Supplement."

64.     Finally, even though the Property may have been sold and may not be considered an asset of the estate, this Motion still materially impacts the administration of the estates.  Chief among the reasons is the impact on an allowed and approved administrative expense claim. Subsequent to this motion, the firm will seek to compel payment of its administrative claim and/or enforcement of its lien (the firm expressly reserves all rights to later file said papers).  Thus, the Court continues to have core jurisdiction to adjudicate this matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), (K) and (O), and, the Court's prior rulings.

65.     **WHEREFORE**, JME respectfully requests that the Court enter an order **(i)** granting this Motion, **(ii)** determining that JME's Lien survived the Closing, **(iii)** authorizing JME to record a Lis Pendens on the Property, **(iv)** awarding attorneys' pursuant to 11 U.S.C. § 506(b) or otherwise and **(v)** providing JME such additional relief as it deems just.

DATED this 30th day of March, 2023.

/s/ David S. Jennis
David S. Jennis
Florida Bar No. 775940
Daniel E. Etlinger
Florida Bar No. 77420
**Jennis Morse Etlinger**
606 East Madison Street
Tampa, Florida 33602
Email: djennis@jennislaw.com
        detlinger@jennislaw.com
        ecf@jennislaw.com
Telephone: (813) 229-2800

4874-6522-2974, v. 2                              18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the foregoing has been furnished via CM/ECF to all other parties receiving CM/ECF service in the ordinary course of business, and, via U.S. Mail to **Tampa Life Plan Village, Inc.**, 12401 N. 22nd Street, Tampa, FL 33612; **UMB Bank, National Association**, 5910 N Central Expressway, Suite 1900, Dallas, TX 75206; **Alvarez & Diaz-Silveira LLP**, 355 Alhambra Circle, Suite 1450, Coral Gables, FL 33134; and **Old Republic National Title Insurance,** Attn: General Counsel, 400 Second Avenue South, Minneapolis, MN 55401 on this 30th day of March, 2023.

/s/ David S. Jennis
David S. Jennis