JEFFREY W. WARREN,
LIQUIDATING TRUSTEE FOR
WESTPORT HOLDINGS TAMPA,
LIMITED PARTNERSHIP and
WESTPORT HOLDINGS II,
LIMITED PARTNERSHIP,

    Plaintiff,

vs.

VALLEY NATIONAL BANK,
principal subsidiary to VALLEY
NATIONAL BANKCORP, a New
Jersey domestic profit corporation,
as successor by merger to
USAMERIBANK,

    Defendant.

Adv. Pro. No.: 8:20-ap-00007-MGW

# Expert Report

# April 17, 2023

Prepared by:
Oscher   Consulting, PLLC



EXHIBIT
1
Unterholzer

Jeffrey W. Warren, Liquidating Trustee for Westport Holdings Tampa,
Limited Partnership and
Westport Holdings II, Limited Partnership

vs.

Valley National Bank

## Table of Contents

|  | Page(s) |
|---|---|
| Understanding | 3 |
| Background | 6 |
| Information Considered | 6 |
| Findings | 6 |
| Conclusion | 20 |

### Exhibits:

| | |
|---|---|
| Curriculum Vitae | Exhibit I |
| Rule 26 Disclosure | Exhibit II |
| Information Considered | Exhibit III |
| Balance Sheet as of December 31, 2013 | Exhibit IV |
| Annual and Periodic Reports to OIR | Exhibit V |
| Adjusted Periodic Report to OIR | Exhibit VI |
| Solvency Analysis as of December 31, 2013 | Exhibit VII |
| Solvency Analysis as of March 31, 2014 | Exhibit VIII |

## UNDERSTANDING

Jeffrey W. Warren, Liquidating Trustee for Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership (the "Plaintiff" or "Liquidating Trustee") has been appointed as Liquidating Trustee, and has been empowered to commence and pursue causes of action on behalf of Westport Holdings Tampa, Limited Partnership ("Westport") and Westport Holdings Tampa II, Limited Partnership ("Westport II") (collectively, the "Debtors"). Westport and Westport II are Delaware limited partnerships that filed voluntary petitions under Chapter 11 of the Bankruptcy Code on September 22, 2016.

Valley National Bank, principal subsidiary to Valley National Bancorp, as successor by merger to USAmeriBank (the "Defendant" or "Valley"), is a New Jersey domestic profit corporation headquartered in Wayne, Passaic County, New Jersey, with branches operating in New Jersey, New York, Florida and Alabama.

Prior to March 31, 2014, Westport Senior Living Investment Fund, L.P. ("WSLIF" or the "Fund") held the 99% limited partnership interests in Westport and Westport II. The general partner of Westport, Westport Holdings University Village, LLC ("WHUV") held a 1% interest in Westport. The general partner of Westport II, Westport Holdings Hidden Springs, LLC ("WHHS") held a 1% interest in Westport II. Both WHUV and WHHS were managed by Westport Advisors, Ltd. ("Westport Advisors"). The sole manager of Westport Advisors was Lawrence Landry ("Mr. Landry").

Prior to March 31, 2014, Westport Nursing Tampa, LLC ("Westport Nursing") was Westport's wholly owned subsidiary. The Debtors and Westport Nursing owned "University Village," a continuing care retirement community ("CCRC") in Tampa, Florida. Under the CCRC concept, residents enter into a residency and care agreement which requires payment of a one-time entrance fee and a monthly service fee. Generally, payment of these fees entitles residents to the use and privileges of the Village for life. As

3

a continuing care provider, Westport was subject to regulation by the Office of Insurance Regulation ("OIR") of the State of Florida.

The University Village campus included an Independent Living Facility (the "ILF"), containing 446 independent living apartments in a facility owned by Westport and 46 independent living villas clustered within a neighborhood of duplex buildings, including a dedicated clubhouse, owned by Westport II, and a Health Center containing a 110-unit Assisted Living Facility ("ALF") and a 120-bed Skilled Nursing Facility ("SNF"), both located on property owned by Westport Nursing. University Village has operated as a CCRC since 1998. It was acquired by entities affiliated with Mr. Landry in 1999. In 2002, the Health Center was leased to TR & SNF, Inc. ("TR & SNF"), the operator of the SNF, and TALF, Inc. ("TALF"), the operator of the ALF, and Westport Nursing operated as the landlord of the Health Center facility.

Horizon LP UV Lender, LLC, a Delaware limited liability company ("Horizon"), as successor by assignment to Capmark Bank, was the holder of certain notes, and the lender under loan agreements and other lending documents (the "Horizon Obligations"), originally entered into during 2006, and subsequently amended and restated. Westport and Westport Nursing were the "Borrowers", while Westport II and the Fund were "Guarantors" (or, collectively with the Borrowers, the "Obligors") with respect to the Horizon Obligations. During the relevant time frame, the Horizon Obligations approximated $20,000,000.

Under the terms of the loan agreements with Horizon, the Horizon Obligations were scheduled to mature on January 15, 2013. During the years or months prior to January 15, 2013, University Village was marketed for sale to a new ownership group and the maturity date of the Horizon Obligations was extended to September 2013. John Bartle and affiliated entities ("Mr. Bartle") emerged as potential buyers. During September 2013, while Horizon believes the Obligors were in default, Horizon and the Obligors entered into a deed-in-lieu agreement, which would allow the Obligors to

continue negotiations to complete a sale to Mr. Bartle. If a transaction could not be completed by December 15, 2013, Horizon would receive title to the University Village property through deeds in lieu of foreclosure. Although he was unable to close as anticipated on December 15, 2013, Mr. Bartle initiated litigation and prevented Horizon from acquiring control of University Village.

On March 31, 2014, the Defendant participated in a transaction (the "March 31, 2014 Transaction") in which the Horizon Obligations were extinguished, $15,000,000 was loaned to Westport Nursing by the Defendant, and $9,500,000 was loaned to Westport by CPIF Lending, LLC ("CPIF"). As part of this transaction, the limited partnership interests in Westport and Westport II held by WSILF were transferred to entities[1] affiliated with Mr. Bartle. Westport Nursing was spun off and ceased to be Westport's wholly owned subsidiary. At the same time, $3,000,000 held by Westport at Regions Bank as part of its Minimum Liquid Reserve ("MLR")[2] was transferred to an account established by the Defendant and was pledged to secure the $15,000,000 loan amount.

The Liquidating Trustee has alleged that the March 31, 2014 Transaction was made for less than reasonably equivalent value at a time when the Debtors were insolvent or were rendered insolvent by the transaction.

The Liquidating Trustee engaged Oscher Consulting and Lisl Unterholzner ("Oscher") to perform a forensic financial analysis related to the March 31, 2014 Transaction and to review and analyze voidable transfer of assets claims asserted in the above-named action, and to prepare this report on her findings and conclusions.

---

[1] Including but not limited to BVM University Village, LLC, BVM Management, Inc., IMH Health Care LLC, JF Consultants, LLC, BHMSILF Investments, LLC, BHMSILFGP, LLC, and Compliance Concepts, LLC.
[2] The Florida Statutes require entities entering into continuing care contracts with residents to maintain MLR funds in escrow. The calculation of required MLR funds is prescribed in the Florida Statutes and is based upon a percentage of historical operating expenses, expected debt service, and other factors.

## BACKGROUND

Lisl Unterholzner ("Ms. Unterholzner") is a Partner at Oscher Consulting, PLLC, a Certified Public Accounting firm. Ms. Unterholzner is a Certified Public Accountant ("CPA") and has been accredited in Business Valuation by the American Institute of CPAs. Ms. Unterholzner has also been accredited as a Certified Fraud Examiner. Ms. Unterholzner's experience includes forensic accounting investigations, performing business valuations, and the analysis of economic damages.

A copy of Ms. Unterholzner's curriculum vitae is attached as **Exhibit I**. A listing of cases in which Ms. Unterholzner has provided testimony at trial or deposition is attached as **Exhibit II**. Ms. Unterholzner is compensated at the rate of $400 per hour.

## INFORMATION CONSIDERED

The information reviewed and considered is identified in **Exhibit III**.

## FINDINGS

The Liquidating Trustee has alleged that the March 31, 2014 Transaction was made for less than reasonably equivalent value at a time when the Debtors were insolvent or were rendered insolvent by the transaction.

I have reviewed and analyzed documentation including the consolidated audited financial statements of Westport and its affilates, Westport II and Westport Nursing, other financial records of the Debtors and Westport Nursing, filings with the Office of Insurance Regulation ("OIR") of the State of Florida, appraisal reports, lending documents, deposition testimony, and other documentation relating to the pending

litigation and related litigation surrounding the acquisition of University Village by entities affiliated with Mr. Bartle. My findings give consideration to:

- The Debtors' solvency prior to the Transaction;

- The Debtors' solvency as a result of the Transaction;

## Audited Financial Statements

The financial condition of University Village immediately prior to the March 31, 2014 Transaction is reflected in the consolidated financial statements for the year ended December 31, 2013 ("2013 Audited Financial Statements") and prior years.[3] Westport's consolidated financial statements were audited by Lamn, Krielow & Dytrych, P.A. ("LKD" or the "Auditors") annually from at least 2006 (if not earlier) through 2013. The Notes to Consolidated Financial Statements section of the 2013 Audited Financial Statements include the following details about the nature of Westport's operations:

> "Westport Holdings Tampa, Limited Partnership, was organized in Delaware and registered to transact business in the State of Florida in October 2000, merged on December 31, 2000 with Westport Housing Tampa, L.L.C., a limited liability company originally incorporated in the State of Florida in July 1999. Westport Holdings Tampa, Limited Partnership (the Partnership) is the surviving business entity. Westport Holdings University Village, L.L,C. is the sole general partner of Westport Holdings Tampa, Limited Partnership. Westport Senior Living Investment Fund, L.P. (the Fund) is the sole limited partner of Westport Holdings Tampa, Limited Partnership and the sole member of Westport Holdings University Village, L.L.C. Westport Holdings Tampa, Limited Partnership's wholly owned subsidiary, Westport Nursing Tampa, L.L.C. was incorporated in the State of Florida in January 1999.

---

[3] I have reviewed the consolidated financial statements audited by LKD for the years ended December 31, 2006 through December 31, 2013.

7

The Partnership owns and operates an independent living facility under the name University Village (the Village), containing 446 apartments in Tampa, Florida. The Partnership operates under the "continuing care" concept (CCRC) in which residents enter into a residency and care agreement which requires payment of a one-time entrance fee (either prospective or deferred) and a monthly service fee. Generally, payment of these fees entitles residents to the use and privileges of the Village for life. The residency and care agreement does not entitle the residents to an interest in the real estate or any property owned by the Partnership. Westport Holdings Tampa II, Limited Partnership (the Villas), was organized in Delaware and registered to transact business in the State of Florida in October 2000, is an affiliate for which the Partnership is the primary beneficiary, and is developing 60 villa units and a community clubhouse on approximately 11 acres adjacent to the Village. At December 31, 2013 and 2012, 46 villa units had been completed. The completed units are operated as additional residences for the Village's CCRC.

Westport Nursing Tampa, L.L.C. owns a health center within the Village, which consists of a 120 bed skilled nursing facility and a 110 unit assisted living facility. Prior to October 16, 2002, Westport Nursing Tampa, L.L.C. provided health care and other patient services through operation of the health center. Effective October 16, 2002, the Partnership leased the skilled nursing center and assisted living facility and related assets to two unrelated Florida not-for-profit corporations under a triple-net lease with an original expiration date of October 31, 2007. The lease was amended during 2007, which extended the term for an additional 12 months effective November 1, 2007. Beginning November 1, 2008, both parties agreed to continue with the lease on a month-to-month basis."

Note 1 to the 2013 Audited Finacial Statements includes the following Principles of Consolidation:

"The accompanying consolidated financial statements include the accounts of Westport Holdings Tampa, Limited Partnership and its subsidiary, Westport Nursing Tampa, L.L.C., and Westport Holdings

Tampa II, Limited Partnership (collectively the Partnership) after elimination of significant intercompany accounts and transactions.

In accordance with GAAP with respect to *Consolidation of Variable Interest Entities*, the Partnership also began consolidating, as of January 8, 2004, Westport Holdings Tampa II, Limited Partnership (the Villas), an affiliate for which the Partnership became, as of that date, the primary beneficiary. The primary beneficiary of a variable interest entity is the party that absorbs a majority of the entity's expected losses, receives a majority of its expected residual returns, or both, as a result of holding variable interests, which are the ownership, contractual, or other pecuniary interests in an entity that change with changes in the fair value of the entity's net assets excluding variable interests. Interests of the owner of the related affiliate, totaling 100% of the entity, are recorded as minority interests in the consolidated balance sheets."

Thus, the financial statements and notes reflect the operations of University Village, which as of December 31, 2013 included the 446 Independent Living Apartments (owned by Westport), the 46 Independent Living Villas (owned by Westport II), and the Health Center (110 Assisted Living units, 120 Skilled Nursing beds, owned by Westport Nursing, a wholly-owned subsidiary of Westport) on a consolidated basis, after eliminating intercompany transactions.[4]

---

[4] The supplementary information reflects a receivable on Westport's books from Westport II recorded as Due from affiliates ($7,129,374), Fixed Assets of $10,875,429 and net minority interest of $3,746,055. Westport Holdings Tampa, Limited Partnership and Subsidiary d/b/a University Village (a wholly owned subsidiary of Westport Senior Living Investment Fund, L.P.) Consolidated Financial Statements for the years ended December 31, 2013 and 2012, page 31 and 32 of 33.

The following diagram illustrates corporate structure of University Village:



## Results from Operations 2006 – 2013

Among the badges of fraud identified by the Liquidating Trustee was that the Debtors were undercapitalized at the time of the March 31, 2014 Transaction.

The audited financial statements for the periods from 2006 through 2013 noted losses in six of eight years, a deficit of working capital in all periods, and the need for funding provided by Westport Senior Living Investment Fund, L.P., (the "Fund," which held the 99% limited partnership interests in Westport and Westport II) which was used for operating expenses.[5]

---

[5] The 2013 Audited Financial Statements contain the following at Note 12: "Due to affiliates represents the net amounts due primarily for operating expenses and debt reduction the Fund and other related entities paid on behalf of the Partnership. The Fund provides the Partnership with operational support, which is integral to conducting the Partnership's business.  The Partnership is not required to reimburse the Fund for the related costs, and the accompanying consolidated statement of operations and comprehensive loss and partners' capital does not include any charges relating to these services."

It appears that University Village's losses would have been even greater were it not for the monies advanced by the Fund to pay ongoing operating expenses. The consolidated audited financial statements reflect the following profits and losses, cumulative amounts advanced by the Fund, and working capital deficiencies from 2006 through 2013:

| Year | Net Loss/Income | Due to the Fund | Working Capital Deficit |
|------|-----------------|-----------------|-------------------------|
| 2006 | ($2,018,696) | $4,610,494 | $2,350,000 |
| 2007 | (2,240,699) | 5,546,521 | 3,300,000 |
| 2008 | (577,753) | 6,535,626 | 3,818,000 |
| 2009 | (591,558) | 6,788,598 | 11,590,000 |
| 2010 | 507,923 | 7,314,576 | 1,063,000 |
| 2011 | 1,416,400 | 7,496,295 | 3,813,000 |
| 2012 | (698,850) | 7,960,550 | 21,286,000 |
| 2013 | (4,369,580) | 7,960,375 | 21,371,000 |

**Goodwill**

The 2013 Audited Financial Statements contain the following at Note 1, "Summary of Significant Accounting Policies," under the heading "Intangible Assets, Net"[6]:

"The Partnership's intangible assets represent the excess of purchase price over fair market value of assets purchased and liabilities assumed through acquisitions, which are considered goodwill. The Partnership accounts for its intangible assets in accordance with GAAP, whereby amortization of goodwill ceased as of December 31, 2001, and the Partnership now evaluates the goodwill on an annual basis for potential impairment."

---

[6] Westport Holdings Tampa, Limited Partnership and Subsidiary d/b/a University Village (a wholly owned subsidiary of Westport Senior Living Investment Fund, L.P.) Consolidated Financial Statements For the years ended December 31, 2013 and 2012, page 13 of 33.

Additional information appears in Note 5, "Intangible Assets, Net"[7]:

> "As of December 31, 2013 and 2012, the Partnership had $42,286,878 and $46,186,878, respectively, in intangible assets, which is net of $8,870,328 in accumulated amortization recorded through December 31, 2001. For goodwill at December 31, 2013 and 2012, the Partnership completed the annual tests for impairment using the two-step process prescribed by GAAP. At December 31, 2013, management determined that an impairment of $3,900,000 was required as the carrying value of goodwill exceeded its estimated implied fair value. Implied fair value was estimated using a market-based measurement."

Regarding the methodology to determine the fair value of goodwill reported in the 2013 Audited Financial Statements, Note 17 "Fair Value Measurements" includes the following:

> "GAAP provides a framework for measuring fair value. Fair value is defined as the exchange price that would be received for an asset or paid to transfer a liability in the principal or most advantageous market for the asset of liability in an orderly transaction between market participants on the measurement date. GAAP requires that valuation techniques maximize the use of observable inputs and minimize the use of unobservable inputs, and also establishes a fair value hierarchy, which prioritizes the valuation inputs into three levels.
>
> > Level 1: Quoted prices (unadjusted) for identical assets or liabilities in active markets that the entity has the ability to access as of the measurement date.
> >
> > Level 2: Significant other observable inputs other than Level 1 prices, such as quoted prices for similar assets or liabilities, quoted prices in markets that are not active, and other inputs

---

[7] Ibid. page 19 of 33.

that are observable or can be corroborated by observable market data.

Level 3: Significant unobservable inputs that reflect a Partnership's own assumptions about the assumption that market participants would use in pricing an asset or liability.

The asset's or liability's fair value measurement level within the fair value hierarchy is based on the lowest level of any input that is significant to the fair value measurement. The fair value calculations may not be indicative of net realizable value or reflective of future fair values. Furthermore, while the Partnership believes its valuation methods are appropriate and consistent with other market participants, the use of different methods or assumptions to determine fair value could result in a different fair value measurement at the reporting date."

The 2013 Audited Financial Statements indicate that goodwill was a level 3 fair value measurement, based on significant unobservable inputs that reflect management's assumptions that market participants would use in pricing University Village.

Conceptually, goodwill is an intangible asset that reflects the existence of operating business assets that are in place and ready for use. The presence of an assembled workforce, the residents and the CCRC contracts that were in place, and University Village's reputation in the marketplace would all be components of goodwill.

Goodwill that is internally created or that arises in the ordinary course of business is not typically recorded on an entity's financial statements. Where goodwill exists on an entity's financial statements, it is generally the result of an acquisition that occurred historically in which the purchase price exceeded the value of identified tangible and intangible assets.

It appears that the goodwill carried on the 2013 Audited Financial Statements would have originally been recognized in 1999 when the Fund acquired the property and operations of University Village.

From 2006 through 2013, goodwill has represented between 42% and 47% of total assets:

| Year | Total Assets | Goodwill | Percentage of Total Assets |
|------|-------------|----------|----------------------------|
| 2006 | $107,795,358 | $46,186,878 | 42.8% |
| 2007 | 109,600,098 | 46,186,878 | 42.1% |
| 2008 | 107,360,504 | 46,186,878 | 43.0% |
| 2009 | 102,289,121 | 46,186,878 | 45.2% |
| 2010 | 99,737,402 | 46,186,878 | 46.3% |
| 2011 | 98,917,111 | 46,186,878 | 46.7% |
| 2012 | 97,475,958 | 46,186,878 | 47.4% |
| 2013 | 92,325,391 | 42,286,878 | 45.8% |

The 2013 Audited Financial Statements contain the following at Note 5:

"For goodwill at December 31, 2013 and 2012, the Partnership completed the annual tests for impairment using the two-step process prescribed by GAAP. At December 31, 2013, management determined that an impairment of $3,900,000 was required as the carrying value of goodwill exceeded its estimated implied fair value."

Fair value for financial reporting is defined as "the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date." Unlike other assets, goodwill is not separately transferable and is seldom considered to have a value that is independent of the entity and business operations it is associated with.

Workpapers or other documentation of the annual evaluation of goodwill have not been made available to me. In light of the ongoing losses, it is not clear that the expectation of future benefits as recognized in 1999 would continue to be relevant, although goodwill continued to be reported as a significant asset on the consolidated balance sheet.

14

### OIR Reports

As a continuing care provider, Westport was subject to regulation by the Office of Insurance Regulation ("OIR") of the State of Florida and was required to file annual and periodic (quarterly) reports including its balance sheet, statement of operations, and statement of cash flows prepared in accordance with generally accepted accounting principles and as prescribed in the Florida Statutes.

Exhibit IV reflects Westport and Westport II's balance sheets as of December 31, 2013, from the 2013 Audited Financial Statements, both prior to consolidation and after intercompany eliminations for presentation on a consolidated basis.

Amounts reflected in the annual report submitted by Westport to OIR are consistent with the unconsolidated balance sheet of Westport and its subsidiary, Westport Nursing, after certain adjustments for OIR presentation and reporting purposes. (Exhibit V)

Exhibit V also reflects Westport's periodic report as of March 31, 2014, which shows the effects of the repayment of the Horizon Obligations (a reduction of over $20,000,000 in current liabilities) and an increase in long term debt related to the Valley and CPIF loans (an increase of nearly $25,000,000).

I noted that the OIR reports continue to report Westport and Westport Nursing as a single continuing care provider, in spite of the fact that Westport Nursing ceased to be Westport's wholly owned subsidiary.

I also noted that the March 31, 2014 periodic report showed an increase of over $6,500,000 in other non-current assets as compared to the December 31, 2013 annual report. Based on the CPIF closing statement and Westport's internal financial reports, it appears that the increase is attributable to capitalized loan costs ($905,774), a capital expenditure reserve of $1,750,000 associated with the CPIF loan, and a failure to reduce goodwill by the $3,900,000 impairment previously recognized as of December 31, 2013.

I understand that the OIR ultimately determined that Westport Nursing could not continue to be reported on a consolidated basis with Westport as a result of the March 31, 2014 Transaction. Even if it had been permissible to continue reporting on a consolidated basis after March 31, 2014, the consolidated entity would have been insolvent after correcting for the failure to reduce goodwill by the $3,900,000 impairment previously recognized as on the 2013 Audited Financial Statements. (Exhibit VI)

**Appraisal Reports**

I have reviewed and analyzed real estate appraisal reports prepared for BVM Management, Inc. ("BVM Management") and for the Defendant during the first quarter of 2014.

One appraisal report (the "IRR Report"), effective as of February 21, 2014, was prepared by John F. Thigpen, MAI and Bradford L. Johnson, MAI, MIRCS of Integra Realty Resources ("IRR"). The IRR Report considers the value of the skilled nursing and assisted living facility owned by Westport Nursing. IRR valued "all assets of the business enterprise including real property, FF&E [Furniture, Fixtures and Equipment], and business value." The purpose of IRR's engagement was to estimate the market value of the specified assets of the business as is, fee simple estate. [8]

IRR determined the value of the skilled nursing and assisted living facility to be $16,390,000. This value included $13,040,000 in real property, $460,000 in FF&E, and $2,890,000 in intangibles.

IRR defined intangibles to include cash, workforce, contracts, name, patents, copyrights and other residual intangible assets, to include capitalized economic profit.[9] IRR notes that the working capital components of business enterprise value (cash, working capital, accounts receivable, and accounts payable) are not usually included in

---

[8] Appraisal Report of The Inn at University Village, Prepared for USAmeribank, Effective Date February 21, 2014. Page 6.
[9] The Dictionary of Real Estate Appraisal (Chicago, IL: Appraisal Institute, Fourth Edition)

the sale of a senior housing facility and they have excluded those items from their value conclusion.[10]

A second appraisal, prepared by Gerald Rasmussen and Ceiliah Epner of Cushman & Wakefield Regional, Inc. ("Cushman & Wakefield") for BVM Management, Inc. considers the value of the independent living portion of the University Village campus owned by the Debtors as of March 6, 2014. In its transmittal letter, dated 3/28/14, Cushman & Wakefield noted that they valued the Independent Living portion only of University Village, and that the subject upon acquisition property was anticipated to be separated from the Assisted Living/Memory Care and Healthcare Skilled Nursing part of the campus.[11] Cushman & Wakefield also noted that the property was "appraised as a going concern and assumes a fair sale, which includes the transfer of a valid operating license, an assembled workforce, and the transfer of all business assets necessary for the operation."

Cushman & Wakefield determined the Market Value of the fee simple going concern as of March 6, 2014 to be $22,700,000 which included $17,000,000 in real property, $2,100,000 in personal property and $3,600,000 in business enterprise value as an integral part of the going-concern.[12]

**Solvency Analysis as of December 31, 2013**

Based on the 2013 consolidated financial statements and the appraisals conducted by IRR and Cushman & Wakefield, I have analyzed the Debtors' solvency as of December 31, 2013. (Exhibit VII)

---

[10] Appraisal Report of The Inn at University Village, Prepared for USAmeribank, Effective Date February 21, 2014. Page 21.

[11] Appraisal Report of University Village, Prepared for BVM Management, Inc. by Cushman & Wakefield Regional, Inc. as of March 6, 2014, Page 3.

[12] Ibid.

I have assumed that the value of the real property, FF&E and intangibles determined, as of February 21 and March 6, 2014, reasonably approximates their fair values on December 31, 2013.

A solvency analysis considers whether the fair value of an entity's assets exceeds the fair value of the entity's liabilities. Where assets and liabilities recorded on the balance sheet do not reflect their fair value, adjustments are made. In this case, the following adjustments have been made:

1.  Real estate, FF&E and intangible assets have been adjusted to the values determined by Cushman & Wakefield and IRR.

2.  Eliminates the minority interest in Westport II as the real estate, FF&E and Goodwill associated with the independent living villas are already captured in Cushman & Wakefield's appraisal and all operational cash flows associated with the independent living villas were recorded by Westport consistent with Note 1 to the 2013 Audited Finacial Statements.

## Solvency Analysis as of March 31, 2014

As a result of the March 31, 2014 Transaction, Westport Holdings interest in Westport Nursing was transferred to entities affiliated with Mr. Bartle and $3,000,000 of Westport Holdings MLR reserve, previously held in a Regions Bank account, was transferred to the Defendant and held as cash collateral subject to an Assignment and Pledge of Deposit Account executed by Westport Nursing.

18

The following diagram illustrates the corporate structure of University Village after the March 31, 2014 Transaction:



The Liquidating Trustee has alleged that Westport Holding's transfer of MLR funds should be avoided because the debtors March 31, 2014 transaction, among other things, did not receive reasonably equivalent value for the transfer, and the Debtors were insolvent or were rendered insolvent by the transaction.

The following adjustments have been made to analyze the Debtors solvency (Exhibit VIII) on March 31, 2014 as a result of the March 31, 2014 Transaction:

1. Balance sheet amounts reported on the December 31, 2013 annual report to the OIR has been rolled forward to March 31, 2014 based on the periodic report to the OIR.

2. Fair value adjustments have been made to Land, Buildings and Equipment, net and to intangible assets based on the values determined by Cushman & Wakefield and IRR.

3. Assets transferred to Westport Nursing, previously consolidated with Westport, have been removed from the Debtors' balance sheet.

## CONCLUSION

Even if it had been permissible to continue reporting the assets and liabilities of Westport and Westport Nursing on a consolidated basis after March 31, 2014, the consolidated entity would have been insolvent after correcting for the failure to reduce goodwill by the $3,900,000 impairment previously recognized as on the 2013 Audited Financial Statements.

Based on the 2013 consolidated financial statements and the appraisals conducted by IRR and Cushman & Wakefield, the Debtors were insolvent as of December 31, 2013.

Based on the 2013 Audited Financial Statements, the reports filed with OIR, the appraisals conducted by IRR and Cushman & Wakefield, and the loan documents, closing statements and other documents by which Westport Nursing was spun off and ceased to be a wholly owned subsidiary of Westport, the Debtors were insolvent as of March 31, 2014.

To the extent that additional information becomes available, I reserve the right to update my opinions as may be appropriate.

Lisl Unterholzner
April 17, 2023

# LISL A. UNTERHOLZNER, CPA/ABV, CFE

*Education and Honors:*

- Certified Public Accountant, June 2014
- University of South Florida Tampa, FL
  *Bachelor of Science Cum Laude, Accounting*, May 2012
  Dean's List of Scholars for Academic Excellence, College of Business
- Rice University Houston, TX
  *Bachelor of Architecture*, May 1996
  *Bachelor of Arts, Architecture and French Studies*, May 1994

  Clyde Ferguson Bull Traveling Fellowship in French- awarded to one graduating major in French Studies for travel in France to support career goals following graduation

  National Merit Scholar
  Tau Sigma Delta Honor Society in Architecture
  Pi Delta Phi French Honor Society
  President's Honor Roll

*Certifications:*

- Accredited in Business Valuation by the American Institute of Certified Public Accountants
- Certified Fraud Examiner

*Employment:*

| | |
|---|---|
| 2013 – Present | Oscher Consulting, P.A. – Consultant |
| 2007 – 2008 | West Palm Wines – Wine Buyer, Educator, Consultant |
| 2006 – 2007 | Cork & Olive – Field Trainer |
| 2001 – 2006 | Frederick Wildman & Sons, Ltd. – Southern Area Manager |
| 1996 – 2001 | Frederick Wildman & Sons, Ltd. – Sales Represntative |

*Professional:*
*(current and past)*

- American Institute of Certified Public Accountants
- Florida Institute of Certified Public Accountants
- Association of Certified Fraud Examiners

*Community:*
*(current and past)*

- The Florida Bar Thirteenth Judicial Circuit Grievance Committee 13-C
- Hillsborough County Bar Association
- The Junior League of Tampa Tampa, FL
- Rice Alumni Volunteers for Admission (RAVA) Tampa, FL

Exhibit II

## LISL A. UNTERHOLZNER
## OSCHER CONSULTING
## LITIGATION BACKGROUND

| FIRM | CASE NUMBER | CASE NAME | DATE(S) |
|---|---|---|---|
| Robert L. Chapman<br>Bush Ross, P.A.<br>1801 N. Highland Avenue<br>Tampa, FL 33602-2656<br>(813) 224-9255 | Arbitration Proceeding<br>Former Case No. 19-CA-004680<br>In the Circuit Court for the<br>Thirteenth Judicial Circuit in<br>and for Hillsborough County,<br>Florida Civil Division | Sorin Lupu v. Michael Oana<br>and Florida 10002, LLC | 10/5/2020<br>Arbitration |
| Richard E. Fee<br>Fee & Jeffries, P.A.<br>1227 N. Franklin Street<br>Tampa, FL 33602<br>(813) 229-8008 | In the Circuit Court for the<br>Thirteenth Judicial Circuit in<br>and for Hillsborough County,<br>Florida Civil Division<br>Case No.: 09-CA-019912 | Narendra S. Sastry, M.D., P.A.,<br>and Narayana S. Rattehalli,<br>M.D., P.A., d/b/a Gulf to Bay<br>Cardiovascular & Thoracic<br>Surgical Associates, Narendra<br>S. Sastry, M.D., P.A., and<br>Narayana S. Rattehalli, M.D.,<br>P.A. v. Ravi Sharma M.D. and<br>Ravi Sharma M.D., P.A. | 7/20/2021<br>Deposition |
| James C. Valenti<br>James C. Valenti, P.A.<br>114 N. Tennessee Avenue<br>Suite 200<br>Lakeland, FL 33801<br>(863) 937-6056 | In the Circuit Court of the<br>Tenth Judicial Circuit in<br>and for Polk County, Florida<br>Case No.:2017CA-1942 | H&S Investment Group of<br>Central Florida, LLC<br>v.<br>Lenard S. Spiker, a/k/a Steve<br>Spiker, David Spiker, Pamela<br>J. Spiker, and Imperial Paving,<br>LLC. | 10/6/2021<br>Deposition |
| John A. Anthony<br>Anthony & Partners, LLC<br>100 S. Ashley Drive<br>Suite 1600<br>Tampa, FL 33602<br>(813) 273-5616 | In the Circuit Court of the<br>Fifth Judicial Circuit in<br>and for Hernando County,<br>Florida Civil Division | MNP Industries, LLC<br>v.<br>Wayne S. Smeal, Tamela<br>Orsini-Maly, Johnny Ray<br>Walton, Breny Wycinski, Tracy<br>Lee, Tim Kelleher, Shelby<br>Skinner, Cody Parcell, Steve<br>Lagasse, Miracle Products, LLC<br>d/b/a Golden Trust LLC, and<br>GPO Plus, Inc. | 12/1/2021<br>Arbitration |
| John W. Landkammer<br>Anthony & Partners, LLC<br>100 S. Ashley Drive<br>Suite 1600<br>Tampa, FL 33602<br>(813) 273-5616 | In the Circuit Court of the<br>Tenth Judicial Circuit in<br>and for Polk County, Florida<br>Case No.:2021CA-392<br>Case No.:2021CA-397 | Lindsey J. Crowley<br>v.<br>Marcos Fernandez and Elm<br>Restaurant Group, LLC | 2/9/2022<br>Deposition<br>3/7/2022<br>Trial |

Exhibit II

| FIRM | CASE NUMBER | CASE NAME | DATE(S) |
|---|---|---|---|
| Robin S. Trupp<br>Curry Law Group, P.A.<br>P.O. Box 1143<br>Brandon, FL 33509<br>(813) 653-2500 | In the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida<br>Case No.: 19-CA-002510 | Perry Brown<br>v.<br>Rocky Brown | 7/14/2022<br>Arbitration |
| Ernest W. Leonard<br>Freidman & Feiger, LLP<br>5301 Spring Valley Road<br>Suite 200<br>Dallas, TX 75254<br>(972) 788-1400 | In the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County Florida<br>Case No. 2019-CA-999-15-K | Community Care Health Network, LLC, d/b/a Matrix Medical Network<br>v.<br>Shahriar "James" Ekbatani, Ramin "Ray" Ekbatani, Shahrzad Ekbatani, as Trustee of Nobility Trust and Dignity Trust, Terrence Diaz, and Jerry Cox | 11/15/2022<br>Deposition |
| Dean A. Kent<br>Trenam Law<br>101 East Kennedy Boulevard<br>Suite 2700<br>Tampa, FL 33602<br>(813) 223-7474 | In the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County Florida<br>Case No. 19-CA-007708-CI | Buccaneer Landscape Management Corporation<br>v.<br>Juniper Landscaping of Florida, LLC, and ZS Fund, LP | 1/5/2023<br>Deposition |
| Nicholas D. Zorn, Jr.<br>Law Offices of Athena Thanos Litigation Group- General Counsel - USAA<br>100 South Ashley Drive<br>Suite 550<br>Tampa, FL 33602<br>(813) 280-8056 | In the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida<br>Case No. 19-CA-009150 | Karen Payne and Robert Payne.<br>v.<br>Katsuko F. Looney | 3/17/2023<br>Deposition |

Exhibit III

| INFORMATION CONSIDERED |
| --- |

- Declaration regarding Self-Authentication of Records

- Regions March 2014 statement

- University Village-DFS - Deposition Transcript - Kathleen Burkholder

- Consolidated financial statements audited by LKD for the years ended December 31, 2006 through December 31, 2013

- Westport Holdings Tampa, Limited Partnership and Subsidiary d/b/a University Village (a wholly owned subsidiary of Westport Senior Living Investment Fund, L.P.) Consolidated Financial Statements For the years ended December 31, 2013 and 2012

- Appraisal Report of The Inn at University Village, Prepared for USAmeribank, Effective Date February 21, 2014

- Appraisal Report of University Village, Prepared for BVM Management, Inc. by Cushman & Wakefield Regional, Inc. as of March 6, 2014

- Confidential Loan Closing Statement between Westport Holdings, Tampa and CPIF Lending, LLC

- Consolidated audited financial statements of Westport and its affilates, Westport II and Westport Nursing

- Filings with the Florida Office of Insurance Regulation ("FOIR")

- Lending documents

- Deposition testimony of John Bartle and Kathleen Burkholder

Westport Holdings Tampa d/b/a University Village
Balance Sheets as of December 31, 2013

Exhibit IV

| | 2013 | | | |
|---|---|---|---|---|
| | Westport Holdings Tampa, LP and Subsidiary | Westport Holdings Tampa, II, LP | Eliminations | Total |
| **Assets** | | | | |
| **Current Assets** | | | | |
| Cash and cash equivalents | $771,300 | $0 | $0 | $771,300 |
| Restricted cash | 226,598 | - | - | 226,598 |
| Accounts Receivable, net | 1,962,829 | - | - | 1,962,829 |
| Prepaid expenses and other current assets | 141,441 | - | - | 141,441 |
| Inventory | 58,675 | - | - | 58,675 |
| | | | | - |
| **Total Current Assets** | 3,160,843 | - | - | 3,160,843 |
| | | | | - |
| **Land, Buildings and Equipment, net** | 31,149,277 | 10,875,429 | - | 42,024,706 |
| | | | | - |
| **Other Assets** | | | - | - |
| Assets limited as to use | 4,712,021 | - | - | 4,712,021 |
| Intangible assets, net | 42,286,878 | - | - | 42,286,878 |
| Deposits | 140,943 | - | - | 140,943 |
| Due from Affiliates | 7,129,374 | - | (7,129,374) | - |
| | | | - | - |
| **Total Other Assets** | 54,269,216 | - | (7,129,374) | 47,139,842 |
| | | | - | - |
| **Total Assets** | $ 88,579,336 | $ 10,875,429 | $ (7,129,374) | $ 92,325,391 |
| | | | | - |
| **Liabilities and Partners' Capital** | | | | |
| **Current Liabilities** | | | | |
| Accounts payable and accrued expenses | 1,102,560 | - | - | 1,102,560 |
| Accrued employee compensation and benefits | 522,086 | - | - | 522,086 |
| Customer deposits | 6,550 | - | - | 6,550 |
| Current maturities of Personal Income Protection Program deposits | 2,899,737 | - | - | 2,899,737 |
| Current maturities of long-term debt | 19,900,637 | - | - | 19,900,637 |
| Line of credit | 100,000 | - | - | 100,000 |
| **Total current liabilities** | 24,531,570 | - | - | 24,531,570 |
| **Long-Term Liabilities** | | | | |
| Long-term debt, less current maturities | 64,069 | | - | 64,069 |
| Due to affiliates | 13,451,432 | 7,129,374 | (7,129,374) | 13,451,432 |
| Deferred revenue from entrance fees | 15,817,495 | - | - | 15,817,495 |
| Refundable entrance fees | 28,186,003 | - | - | 28,186,003 |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | - | 6,491,706 |
| **Total long-term liabilities** | 64,010,705 | 7,129,374 | (7,129,374) | 64,010,705 |
| **Total liabilities** | 88,542,275 | 7,129,374 | (7,129,374) | 88,542,275 |
| | | | | 0 |
| **Commitments and Contingencies** | | | | |
| Minority interest | - | - | 3,746,055 | 3,746,055 |
| **Partners' Capital** | | | | |
| Capital contributions | 49,352,000 | 11,976,871 | (11,976,871) | 49,352,000 |
| Accumulated deficit | (49,316,228) | (8,230,816) | 8,230,816 | (49,316,228) |
| Accumulated other comprehensive income | 1,289 | 0 | 0 | 1,289 |
| **Total Partners' Capital** | 37,061 | 3,746,055 | (3,746,055) | 37,061 |
| | | | | - |
| **Total Liabilities and Partners' Capital** | $ 88,579,336 | $ 10,875,429 | $ (7,129,374) | $ 92,325,391 |

**Westport Holdings Tampa d/b/a University Village**
**Reconciliation of Audited Financial Statements to OIR Reports**

Exhibit V

|  | As of December 31, 2013 | | | | As of March 31, 2014 | | |
|---|---|---|---|---|---|---|---|
|  | Westport Holdings Tampa, LP and Subsidiary | Adjustments for OIR Reporting | Annual Report of Westport Holdings Tampa, L.P. to the OIR | Annual Report Line | Periodic Report of Westport Holdings Tampa, L.P. to the OIR | Periodic Report Line | Change from Annual Report |
| **Assets** | | | | | | | |
| Current Assets | $3,160,843 | $29,252 (1) | $3,190,095 | 7 | $2,645,387 | 7 | ($544,708) (4) |
| Non-Current Assets | | | | | | | |
| Land, Buildings and Equipment, net | 31,149,277 | 1 (2) | 31,149,278 | 9 and 9a. | 30,754,021 | 9 and 9a. | (395,257) (4) |
| Assets limited as to use (MLR and other) | 4,712,021 | (29,252) (1) | 4,682,769 | 8a. and 8b. | 4,749,438 | 8a. and 8b. | 66,669 (4) |
| Other Non-Current Assets | | | | | | | |
| Intangible assets, net | 42,286,878 | - | 42,286,878 | | 46,208,752 | | 3,921,874 (5) |
| Deposits | 140,943 | - | 140,943 | | 119,070 | | (21,873) |
| Due from Affiliates | 7,129,374 | - | 7,129,374 | | 7,129,374 | | - |
| Capitalized Loan Coasts | - | - | - | | 905,744 | | 905,744 (5) |
| Capital Expenditure Reserve | - | - | - | | 1,750,000 | | 1,750,000 (5) |
| Total Other Non-Current Assets | 49,557,195 | - | 49,557,195 | 11 | 56,112,940 | 11 | 6,555,745 (5) |
| **Total Assets** | $ 88,579,336 | $ 1 | $ 88,579,337 | 13 | $ 94,261,786 | 13 | $ 5,682,449 |
| **Liabilities** | | | | | | | |
| Current Liabilities | $24,531,570 | $691,411 (3) | $25,222,981 | 21 | $2,504,211 | 21 | ($22,718,770) (6) |
| Non-Current Liabilities | | | | | | | |
| Long-term debt, less current maturities | 64,069 | | 64,069 | 23a. | 24,553,358 | 23a. | 24,489,289 (6) |
| Due to affiliates | 13,451,432 | (67,764) (3) | 13,383,668 | 24 | 12,883,697 | 24 | (499,971) (7) |
| Deferred revenue from entrance fees | 15,817,495 | - | 15,817,495 | 22 | 16,039,980 | 22 | 222,485 (4) |
| Other Non-Current Liabilities | | | | | | | |
| Refundable entrance fees | 28,186,003 | (623,647) (3) | 27,562,356 | | n/a | | |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | 6,491,706 | | n/a | | |
| Total Other Non-Current Liabilities | 34,677,709 | (623,647) | 34,054,062 | 25 | 36,383,818 | 25 | 2,329,756 (4) |
| **Total liabilities** | $ 88,542,275 | $ - | $ 88,542,275 | 27 | $ 92,365,064 | 27 | $ 3,822,789 |
| **Total Fund Balance / Net Worth** | $ 37,061 | | $ 37,062 | | $ 1,896,722 | | $ 1,859,660 |

**Notes:**

(1) $29,252 of Minimum Liquid Reserve reported as Excess of Minimum Liquid Reserve funds.

(2) Rounding

(3) Accounts payable due to affiliates ($67,764) and Refunds payable ($623,647) reported as current liabilities. It is not clear what portion of refunds payable comes from refundable entrance fees as opposed to PIP deposits.

(4) The difference is attributed to ordinary business operations pending further investigation.

(5) Detail based on internal financial statements. The difference is attributable to the exclusion of the goodwill impairment recognized as of December 31, 2013 (increasing the reported amount by $3,900,000), capitalized loan costs of $905,744 and a capital expenditure reserve ($1,750,000) associated with the CPIF loan.

(6) The decrease in current liabilities and increase in long-term debt is primarily associated with the March 31, 2014 Transaction.

(7) Unknown difference pending further investigation.

Case 8:20-ap-00007-CPM    Doc 441-2    Filed 11/15/23    Page 27 of 29

| | Annual Report of Westport Holdings Tampa, L.P. to the OIR as of December 31, 2013 | Adjustment to March 31, 2014 based on OIR Filing | Error Correction | Adjusted Periodic Report to the OIR as of March 31, 2014 |
|---|---|---|---|---|
| **Assets** | | | | |
| Current Assets | $3,190,095 | ($544,708) | - | $2,645,387 |
| **Non-Current Assets** | | | | |
| Land, Buildings and Equipment, net | 31,149,278 | (395,257) | - | 30,754,021 |
| Assets limited as to use (MLR and other) | 4,682,769 | 66,669 | - | 4,749,438 |
| **Other Non-Current Assets** | | | | |
| Intangible assets, net | 42,286,878 | 3,921,874 | (3,900,000) | 42,308,752 |
| Deposits | 140,943 | (21,873) | - | 119,070 |
| Due from Affiliates | 7,129,374 | - | - | 7,129,374 |
| Capitalized Loan Coasts | - | 905,744 | - | 905,744 |
| Capital Expenditure Reserve | - | 1,750,000 | - | 1,750,000 |
| **Total Other Non-Current Assets** | 49,557,195 | 6,555,745 | (3,900,000) | 52,212,940 |
| **Total Assets** | $88,579,337 | $5,682,449 | ($3,900,000) | $90,361,786 |
| | | | | |
| **Liabilities** | - | | | |
| Current Liabilities | $25,222,981 | ($22,718,770) | - | $2,504,211 |
| **Non-Current Liabilities** | | | | |
| Long-term debt, less current maturities | 64,069 | 24,489,289 | - | 24,553,358 |
| Due to affiliates | 13,383,668 | (499,971) | - | 12,883,697 |
| Deferred revenue from entrance fees | 15,817,495 | 222,485 | - | 16,039,980 |
| **Other Non-Current Liabilities** | | | | |
| Refundable entrance fees | 27,562,356 | - | - | 27,562,356 |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | - | 6,491,706 |
| **Total Other Non-Current Liabilities** | 34,054,062 | 2,329,756 | - | 36,383,818 |
| **Total liabilities** | $88,542,275 | $3,822,789 | $0 | $92,365,064 |
| | | | | |
| **Net Adjustment** | | $1,859,660 | ($3,900,000) | |
| | | | | |
| **Net Worth** | $37,062 | | | ($2,003,278) |

**Westport Holdings Tampa d/b/a University Village**
**Solvency Analysis as of December 31, 2013**

**Exhibit VII**

| | Consolidate Audited Balance Sheet as of December 31, 2013 | Fair Value Adjustments | Adjusted Balance Sheet as of December 31, 2013 |
|---|---|---|---|
| **Assets** | | | |
| Current Assets | $3,160,843 | | $3,160,843 |
| Land, Buildings and Equipment, net | 42,024,706 | ($9,424,706) (1) | 32,600,000 |
| **Other Assets** | | | |
| Assets limited as to use | 4,712,021 | - | 4,712,021 |
| Intangible assets, net | 42,286,878 | (35,796,878) (2) | 6,490,000 |
| Deposits | 140,943 | - | 140,943 |
| Capitalized Loan Coasts | - | - | - |
| Capital Expenditure Reserve | - | - | - |
| Total Other Assets | 47,139,842 | (35,796,878) | 11,342,964 |
| **Total Assets** | $92,325,391 | ($45,221,584) | $47,103,807 |
| | | | |
| **Liabilities** | | | |
| **Current Liabilities** | | | |
| Accounts payable and accrued expenses | $1,102,560 | - | $1,102,560 |
| Accrued employee compensation and benefits | 522,086 | - | 522,086 |
| Customer deposits | 6,550 | - | 6,550 |
| Current maturities of Personal Income Protection Program deposits | 2,899,737 | - | 2,899,737 |
| Current maturities of long-term debt | 19,900,637 | - | 19,900,637 |
| Line of credit | 100,000 | - | 100,000 |
| **Current Liabilities** | 24,531,570 | - | 24,531,570 |
| **Long-Term Liabilities** | | | |
| Long-term debt, less current maturities | 64,069 | - | 64,069 |
| Due to affiliates | 13,451,432 | - | 13,451,432 |
| Deferred revenue from entrance fees | 15,817,495 | - | 15,817,495 |
| Refundable entrance fees | 28,186,003 | - | 28,186,003 |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | 6,491,706 |
| **Long-Term Liabilities** | 64,010,705 | - | 64,010,705 |
| **Total liabilities** | 88,542,275 | - | 88,542,275 |
| | | | |
| **Commitments and Contingencies** | | | |
| Minority interest | 3,746,055 | ($3,746,055) (1) | - |
| | | | |
| **Net Worth** | $ 37,061 | $ (3,746,055) | $ (41,438,468) |

**Notes:**

(1) Adjustment of real property and furniture, fixtures and equipment to values determined by IRR and Cushman & Wakefield. The value of the minority interest is considered in the real property value of the villas and is therefore excluded for solvency.

(2) Adjustment of goodwill to intangible/business enterprise values determined by IRR and Cushman & Wakefield.

Case 8:20-ap-00007-CPM    Doc 441-2    Filed 11/15/23    Page 29 of 29

| | Annual Report of Westport Holdings Tampa, L.P. to the OIR as of December 31, 2013 | Adjustment to March 31, 2014 based on OIR Filing | Fair Value Adjustments | Assets Transferred to Westport Nursing | Adjusted Balance Sheet of Westport and Westport II as of March 31, 2014 |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Current Assets | $3,190,095 | ($544,708) | - | - | $2,645,387 |
| Non-Current Assets | | | | | |
| Land, Buildings and Equipment, net | 31,149,278 | (395,257) | 1,845,979 (1) | ($13,500,000) (1) | 19,100,000 |
| Assets limited as to use (MLR and other) | 4,682,769 | 66,669 | - | (3,000,000) (3) | 1,749,438 |
| Other Non-Current Assets | | | | | |
| Intangible assets, net | 42,286,878 | 3,921,874 | (39,718,752) (2) | (2,890,000) (2) | 3,600,000 |
| Deposits | 140,943 | (21,873) | - | - | 119,070 |
| Due from Affiliates | 7,129,374 | - | (7,129,374) (1) | - | - |
| Capitalized Loan Coasts | - | 905,744 | - | - | 905,744 |
| Capital Expenditure Reserve | - | 1,750,000 | - | - | 1,750,000 |
| Total Other Non-Current Assets | 49,557,195 | 6,555,745 | (46,848,126) | (2,890,000) | 6,374,814 |
| **Total Assets** | $88,579,337 | $5,682,449 | ($45,002,147) | ($19,390,000) | $29,869,639 |
| | | | | | |
| **Liabilities** | | | | | |
| Current Liabilities | $25,222,981 | ($22,718,770) | - | - | $2,504,211 |
| Non-Current Liabilities | | | | | |
| Long-term debt, less current maturities | 64,069 | 24,489,289 | - | (15,000,000) (4) | 9,553,358 |
| Due to affiliates | 13,383,668 | (499,971) | - | - | 12,883,697 |
| Deferred revenue from entrance fees | 15,817,495 | 222,485 | - | - | 16,039,980 |
| Other Non-Current Liabilities | | | | | |
| Refundable entrance fees | 27,562,356 | - | - | - | 27,562,356 |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | - | - | 6,491,706 |
| Total Other Non-Current Liabilities | 34,054,062 | 2,329,756 | - | - | 34,054,062 |
| **Total liabilities** | $88,542,275 | $3,822,789 | - | (15,000,000) | 75,035,308 |
| | | | | | |
| Net Adjustment | | $1,859,660 | ($45,002,147) | ($4,390,000) | |
| | | | | | |
| **Net Worth** | $37,062 | | | | ($45,165,669) |

**Notes:**

(1) Adjustment of real property and furniture, fixtures and equipment to values determined by IRR and Cushman & Wakefield. The value of the minority interest is considered in the real property value of the villas and is therefore excluded for solvency.

(2) Adjustment of goodwill to intangible/business enterprise values determined by IRR and Cushman & Wakefield.

(3) MLR funds transferred from Regions Bank to Defendant.

(4) Extended by Defendant on March 31, 2014.