JEFFREY W. WARREN,

# LIQUIDATING TRUSTEE FOR

WESTPORT HOLDINGS TAMPA,
LIMITED PARTNERSHIP and
WESTPORT HOLDINGS II,
LIMITED PARTNERSHIP,

  Plaintiff,

  vs.

VALLEY NATIONAL BANK,
principal subsidiary to VALLEY
NATIONAL BANKCORP, a New
Jersey domestic profit corporation,
as successor by merger to
USAMERIBANK,

  Defendant.

Adv. Pro. No.: 8:20-ap-00007-MGW

## Rebuttal Expert Report

### as of

### July 7, 2023

Prepared by:
Oscher    Consulting, PLLC



EXHIBIT

5

Unterholzner

Jeffrey W. Warren, Liquidating Trustee for Westport Holdings Tampa,
Limited Partnership and
Westport Holdings II, Limited Partnership

vs.

Valley National Bank

## Table of Contents

|  | Page(s) |
|---|---|
| Understanding | 3 |
| Background | 6 |
| Information Considered | 6 |
| Findings | 7 |
| Conclusion | 16 |

### Exhibits:

| | |
|---|---|
| Curriculum Vitae | Exhibit I |
| Rule 26 Disclosure | Exhibit II |
| Information Considered | Exhibit III |
| Comparison of Solvency Analyses 1 | Exhibit IV |
| Comparison of Solvency Analyses 2 | Exhibit V |
| Ratio Analysis | Exhibit VI |

## UNDERSTANDING

Jeffrey W. Warren, Liquidating Trustee for Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership (the "Plaintiff" or "Liquidating Trustee") has been appointed as Liquidating Trustee and has been empowered to commence and pursue causes of action on behalf of Westport Holdings Tampa, Limited Partnership ("Westport") and Westport Holdings Tampa II, Limited Partnership ("Westport II") (collectively, the "Debtors"). Westport and Westport II are Delaware limited partnerships that filed voluntary petitions under Chapter 11 of the Bankruptcy Code on September 22, 2016.

Valley National Bank, principal subsidiary to Valley National Bancorp, as successor by merger to USAmeriBank (the "Defendant" or "Valley"), is a New Jersey domestic profit corporation headquartered in Wayne, Passaic County, New Jersey, with branches operating in New Jersey, New York, Florida, and Alabama.

Prior to March 31, 2014, Westport Senior Living Investment Fund, L.P. ("WSLIF" or the "Fund") held the 99% limited partnership interests in Westport and Westport II. The general partner of Westport, Westport Holdings University Village, LLC ("WHUV") held a 1% interest in Westport. The general partner of Westport II, Westport Holdings Hidden Springs, LLC ("WHHS") held a 1% interest in Westport II. Both WHUV and WHHS were managed by Westport Advisors, Ltd. ("Westport Advisors"). The sole manager of Westport Advisors was Lawrence Landry ("Mr. Landry").

Prior to March 31, 2014, Westport Nursing Tampa, LLC ("Westport Nursing") was Westport's wholly owned subsidiary. The Debtors and Westport Nursing owned "University Village," a continuing care retirement community ("CCRC") in Tampa, Florida. Under the CCRC concept, residents enter into a residency and care agreement which requires payment of a one-time entrance fee and a monthly service fee. Generally, payment of these fees entitles residents to the use and privileges of the Village for life. As

3

a continuing care provider, Westport was subject to regulation by the Office of Insurance Regulation ("OIR") of the State of Florida.

The University Village campus included an Independent Living Facility (the "ILF"), containing 446 independent living apartments in a facility owned by Westport and 46 independent living villas clustered within a neighborhood of duplex buildings, including a dedicated clubhouse, owned by Westport II, and a Health Center containing a 110-unit Assisted Living Facility ("ALF") and a 120-bed Skilled Nursing Facility ("SNF"), both located on property owned by Westport Nursing. University Village has operated as a CCRC since 1998. It was acquired by entities affiliated with Mr. Landry in 1999. In 2002, the Health Center was leased to TR & SNF, Inc. ("TR & SNF"), the operator of the SNF, and TALF, Inc. ("TALF"), the operator of the ALF, and Westport Nursing operated as the landlord of the Health Center facility.

Horizon LP UV Lender, LLC, a Delaware limited liability company ("Horizon"), as successor by assignment to Capmark Bank, was the holder of certain notes, and the lender under loan agreements and other lending documents (the "Horizon Obligations"), originally entered into during 2006, and subsequently amended and restated. Westport and Westport Nursing were the "Borrowers", while Westport II and the Fund were "Guarantors" (or, collectively with the Borrowers, the "Obligors") with respect to the Horizon Obligations. During the relevant time frame, the Horizon Obligations approximated $20,000,000.

Under the terms of the loan agreements with Horizon, the Horizon Obligations were scheduled to mature on January 15, 2013. During the years or months prior to January 15, 2013, University Village was marketed for sale to a new ownership group and the maturity date of the Horizon Obligations was extended to September 2013. John Bartle and affiliated entities ("Mr. Bartle") emerged as potential buyers. During September 2013, while Horizon believes the Obligors were in default, Horizon and the Obligors entered into a deed-in-lieu agreement, which would allow the Obligors to

4

continue negotiations to complete a sale to Mr. Bartle. If a transaction could not be completed by December 15, 2013, Horizon would receive title to the University Village property through deeds in lieu of foreclosure. Although he was unable to close as anticipated on December 15, 2013, Mr. Bartle initiated litigation and prevented Horizon from acquiring control of University Village.

On March 31, 2014, the Defendant participated in a transaction (the "March 31, 2014 Transaction") in which the Horizon Obligations were extinguished, $15,000,000 was loaned to Westport Nursing by the Defendant, and $9,500,000 was loaned to Westport by CPIF Lending, LLC ("CPIF"). As part of this transaction, the limited partnership interests in Westport and Westport II held by WSILF were transferred to entities[1] affiliated with Mr. Bartle. Westport Nursing was spun off and ceased to be Westport's wholly owned subsidiary. At the same time, $3,000,000 held by Westport at Regions Bank as part of its Minimum Liquid Reserve ("MLR")[2] was transferred to an account established by the Defendant and was pledged to secure the $15,000,000 loan amount.

The Liquidating Trustee has alleged that the March 31, 2014 Transaction was made for less than reasonably equivalent value at a time when the Debtors were insolvent or were rendered insolvent by the transaction.

Valley has retained Stanley A. Murphy ("Mr. Murphy") to opine on the Debtors' solvency before and after the March 31, 2014 Transaction and to analyze whether the Debtors received reasonably equivalent value when Westport Nursing was spun off as a result of the March 31, 2014 Transaction. Mr. Murphy has prepared an expert report dated April 17, 2023.

---

[1] Including but not limited to BVM University Village, LLC, BVM Management, Inc., IMH Health Care LLC, JF Consultants, LLC, BHMSILF Investments, LLC, BHMSILFGP, LLC, and Compliance Concepts, LLC.

[2] The Florida Statutes require entities entering into continuing care contracts with residents to maintain MLR funds in escrow. The calculation of required MLR funds is prescribed in the Florida Statutes and is based upon a percentage of historical operating expenses, expected debt service, and other factors.

Oscher Consulting and Lisl Unterholzner ("Oscher") have been retained by the Liquidating Trustee to opine on the Debtors' solvency as a result of the March 31, 2014 Transaction. Oscher's expert report ("Initial Expert Report"), concluding that the Debtors were insolvent as of December 31, 2013 and as of March 31, 2014, was dated April 17, 2023. Oscher has been requested to provide this rebuttal report with regard to Mr. Murphy's opinions.

## BACKGROUND

Lisl Unterholzner ("Ms. Unterholzner") is a Partner at Oscher Consulting, PLLC, a Certified Public Accounting firm. Ms. Unterholzner is a Certified Public Accountant ("CPA") and has been accredited in Business Valuation by the American Institute of CPAs. Ms. Unterholzner has also been accredited as a Certified Fraud Examiner. Ms. Unterholzner's experience includes forensic accounting investigations, performing business valuations, and the analysis of economic damages.

A copy of Ms. Unterholzner's curriculum vitae is attached as **Exhibit I**. A listing of cases in which Ms. Unterholzner has provided testimony at trial or deposition is attached as **Exhibit II**. Ms. Unterholzner is compensated at the rate of $400 per hour.

## INFORMATION CONSIDERED

The information reviewed and considered is identified in **Exhibit III**.

6

## FINDINGS

I have reviewed and analyzed the report prepared by Mr. Murphy and the documents relied on by Mr. Murphy for his conclusions that could be identified. I have also reveiwed and analyzed documentation including the consolidated audited financial statements of Westport and its affilates, Westport II and Westport Nursing, other financial records of the Debtors and Westport Nursing, filings with the Office of Insurance Regulation ("OIR") of the State of Florida, appraisal reports, lending documents, deposition testimony, and other documentation relating to the pending litigation and related litigation surrounding the acquisition of University Village by entities affiliated with Mr. Bartle.

My findings give consideration to:

- Mr. Murphy's conclusion that the Debtors and Westport Nursing were not insolvent on a balance sheet basis immediately before and immediately after the March 31, 2014 Transaction.

- Mr. Murphy's conclusion that the Debtors and Westport Nursing did not have unreasonably small capital immediatedly before and after the March 31, 2014 Transaction.

- Mr. Murphy's conclusion that the Debtors and Westport Nursing were able to pay their debts as they became due immediately before and after the March 31, 2014 Transaction.

- Mr. Murphy's conclusion that Westport received reasonably equivalent value for its transfers with regard to the spin off of Westport Nursing.

### Mr. Murphy's Opinion on Solvency

Mr. Murphy concluded that the Debtors and Westport Nursing were not insolvent

7

on a balance sheet basis immediately before and immediately after the March 31, 2014 Transaction. Paragraphs 26 - 89 of Mr. Murphy's report addresses his "Insolvency Evaluation as of the Valuation Date." Mr. Murphy utilized a balance sheet test for insolvency as of February 28, 2014 and March 31, 2014, making adjustments to the Debtors' assets and liabilities based on either, 1) third party appraisals of the real estate owned by the Debtors and Westport Nursing (Exhibits 1 & 2 to Mr. Murphy's expert report), or 2) his own discounted cash flow analysis of the operations of University Village forecast for a ten-year period (Exhibits 4 & 5 to Mr. Murphy's expert report). The net present value of the ten-year cash flow forecast, as of February 28, 2014 and March 31, 2014, was included as Exhibits 6 and 7 to Mr. Murphy's expert report.

### Oscher's Findings on Mr. Murphy's Opinion on Solvency

Exhibit IV compares my solvency analysis (Exhibit VIII to my Initial Expert Report) with Mr. Murphy's analysis as reflected in his Exhibit 2 (based on appraisal reports). Exhibit V compares my solvency analysis (Exhibit VIII to my Initial Expert Report) with Mr. Murphy's analysis as reflected in his Exhibit 5 (based on his discounted cash flow analysis). I noted that the starting point for both of Mr. Murphy's March 31, 2014 analyses was an internal financial statement which does not agree to the quarterly report filed with OIR as of March 31, 2014,[3] resulting in a potential overstatement of net worth prior to any adjustments.

Although Westport Nursing was spun off, and ceased to be Westport's wholly-owned subsidiary as a result of the March 31, 2014 Transaction, I noted that Mr. Murphy's solvency analysis continues to include the assets and liabilities of Westport Nursing in his balance sheet analysis as of March 31, 2014.[4] In his Exhibit 2, Mr. Murphy utilizes an appraisal report for the real property owned by the Debtors and Westport Nursing to

---

[3] Total liabilities reported to the OIR were $92,365,064, while the statement used by Mr. Murphy includes $79,2989,917 in total liabilities, a difference of over $13,000,000.

[4] As discussed further in my findings on reasonably equivalent value, I have excluded from my solvency analysis Westport Nursing's fixed assets, intangible assets, $3 million in MLR funds transferred and debt of $15 million.

make an upward adjustment of approximately $14.4 million to fixed assets[5] on the Debtors consolidated balance sheet.

Mr. Murphy identified a ten-year budget for 2014 – 2023 (the "Ten-Year Projections"), prepared by Kathleen Burkholder ("Ms. Burkholder"), the former Director of Accounting and Chief Financial Officer[6] of University Villas, as the basis for his discounted cash flow analysis, reflected in Exhibit 5 to his report. I have analyzed the Ten-Year Projections utilized by Mr. Murphy, and I noted that it is based on the assumption that the Debtors and Westport Nursing would continue to operate in the same manner that they had before Westport Nursing was spun off. Since 2002, Westport Nursing operated as a landlord, leasing its facility to skilled nursing operator TR & SNF, Inc. and assisted living operator TALF, Inc. The Debtors and Westport Nursing received $900,000 in income from the lease of the assisted living and skilled nursing facility in 2013, which was projected to grow to $1.8 million annually from year 2 – year 10 of the projections. Prior to March 31, 2014, this income was available to pay the Debtors' operating expenses and debt obligations, but it ceased to be available to the Debtors after the March 31, 2014 Transaction.[7]

I understand that counsel for the Trustee has engaged Meredith Benedict, CPA ("Ms. Benedict") and Forvis, LLP ("Forvis") to opine on the reasonableness of the Ten Year Projections. Forvis' senior living and long-term care team provide advisory and consulting services to aging services providers, including skilled nursing facilities, CCRCs, life plan communities, assisted living facilities, and intermediate care facilities.

---

[5] The IRR appraisal report relied upon by Mr. Murphy determined the value of the skilled nursing and assisted living facility owned by Westport Nursing to be $16,390,000. This value included $13,040,000 in real property, $460,000 in FF&E, and $2,890,000 in intangibles.

[6] Ms. Burkholder was involved, in several roles, in the accounting department at University Village from 1986 – 2015. She served as the Director of Accounting from 1997 until approximately July 2014 and Chief Financial Officer until she ceased to be employed by University Village in approximately August 2015. Among her responsibilities, Ms. Burkholder prepared the annual and quarterly reports submitted to OIR and made the MLR calculation.

[7] See the deposition transcript of Kathleen Burkholder, (Case No. 2015-CA-0585, State of Florida, ex rel, the Department of Financial Services of the State of Florida v. Westport Holdings Tampa, Limited Partnership d/b/a University Village) April 24, 2015, page 13, line 22 – page 14, line 25 and page 22, line 1 – page 23, line 16.

Such services include analyses of financial feasibilty and prosepctive reporting, which are the subject of Ms. Benedict's expertise.

While Ms. Benedict will address the feasibilty of the Ten-Year Projections in greater detail, I noted that the Ten-Year Projections' increases in future cash flows rely on projections of future occupancy increases that are not consistent with historical occupancy trends. Ms. Burkolder projected increases in independent living occupancy from 71% at the end of 2013 to over 96% at the end of 2023. In the prior ten-year period, independent living units saw move outs exceeding move ins seven out of ten years, with independent living occupancy declining from a high of 90% in 2006 to 71% at the end of 2013.[8] It is not clear that the Ten-Year Projections prepared by Ms. Burkholder included a marketing plan and allocated resources sufficient to achieve the forecast results relied upon by Mr. Murphy. To the extent that the Ten-Year Projections are not reasonably attainable and overstate future cash flows, Mr. Murphy's conclusion of solvency based on the Ten-Year Projections is unsupported.

In concluding that the Debtors were solvent, Mr. Murphy has excluded several significant liabilities from his balance sheet analyses (Exhibits 1, 2, 4, and 5), including refundable entrance fees ($32.7 million as of March 31, 2014), which represents cash owed to residents (or their estates) who move out or pass away, and deferred revenue from entrance fees ($15.8 million as of March 31, 2014), which represents the cost of future care for residents. Additionally, Mr. Murphy's discounted cash flow analysis (Exhibits 4 & 5 to Mr. Murphy's expert report), excludes personal income protection program ("PIP") deposits ($6.2 million as of March 31, 2014), which represents refundable cash deposits owed to residents. I am not aware of any basis to exclude these liabilities from a solvency analysis, as they represent claims against the Debtors' assets.

---

[8] See [LIQ_TT_1678157 – 1678158], [LIQ_TT-1680659 – 1680661] and [LIQ_TT_1678168 – 1678168].

10

## Mr. Murphy's Opinion on Capital Adequacy

Mr. Murphy concluded that the Debtors and Westport Nursing did not have unreasonably small capital immediately before and after the March 31, 2014 Transaction. Paragraphs 90 - 92 of Mr. Murphy's report addresses his analysis of the Debtors' capital adequacy. Mr. Murphy's analysis is based on his conclusion of solvency as of March 31, 2014 and his analysis of the financial cushion provided in the Ten-Year Projections.

## Oscher's Findings on Mr. Murphy's Opinion on Capital Adequacy

It is my understanding that the sufficiency of an entity's capital should be assessed based on a comparison of the entity's assets in relation to its debts. If an entity has already become insolvent, it no longer possesses assets in excess of its debts, and its capital is not sufficient. In addition to a solvency analysis, additional analyses tending to indicate insufficient capital include analyzing its historical operations and benchmarking the company's liquidity, profitability, leverage, and growth to expected ratios for its industry.

For the reasons previously discussed, I do not believe that Mr. Murphy has appropriately analyzed the Debtors' assets and liabilities as of March 31, 2014, and, as a result, he overstates the capital available to the Debtors. I noted that Mr. Murphy has not performed any analyses based on the historical results of the Debtors operations, relying instead on the Ten-Year Projections.

As noted in my Initial Expert Report (pages 10 - 11) and reflected in the table below, Westport's consolidated audited financial statements for the period from 2006 through 2013 included losses in six of eight prior years, a deficit of working capital in all periods, and the ongoing need for outside funding from an affiliate, Westport Senior Living Investment Fund, L.P., (the "Fund," which held the 99% limited partnership interests in Westport and Westport II which were acquired by Bartle).

11

| Year | Net Loss/Income | Due to the Fund | Working Capital Deficit |
|------|-----------------|-----------------|-------------------------|
| 2006 | ($2,018,696) | $4,610,494 | $2,350,000 |
| 2007 | (2,240,699) | 5,546,521 | 3,300,000 |
| 2008 | (577,753) | 6,535,626 | 3,818,000 |
| 2009 | (591,558) | 6,788,598 | 11,590,000 |
| 2010 | 507,923 | 7,314,576 | 1,063,000 |
| 2011 | 1,416,400 | 7,496,295 | 3,813,000 |
| 2012 | (698,850) | 7,960,550 | 21,286,000 |
| 2013 | (4,369,580) | 7,960,375 | 21,371,000 |

CARF International is an independent accrediting body that sets best-practice standards for CCRCs. It publishes a "Financial Ratio & Trend Analysis" report annually, based on the audited financial statements of its accredited CCRCs. I have calculated certain of the ratios (Exhibit VI) based on Westport's 2013 audted financial statements for comparison to the industry[9], as follows:

| | Westport | CARF 25th Percentile | CARF Median | CARF 75th Percentile |
|------|----------|----------------------|-------------|----------------------|
| LIQUIDITY RATIOS | | | | |
| Days Cash on Hand | 24 | 172 | 317 | 556 |
| Cushion Ratio | 0.54 | 3.41 | 7.45 | 13.24 |
| | | | | |
| CAPITAL STRUCTURE RATIOS | | | | |
| Debt Service Coverage Ratio | 1.08 | 1.78 | 2.62 | 3.78 |
| Debt Service Coverage - Revenue Basis Ratio | -0.91 | 0.36 | 0.91 | 1.42 |

Liquidity ratios help to assess an entity's ablity to meet short-term cash needs (more days indicates a greater financial cushion). With 24 days cash on hand to meet expected operating expenses as of December 31, 2013, Westport was undercapitalized

[9] Represented by CARF's 2014 Financial Ratios, which were based on 2013 audited financial statements for single site CCRCs.

compared to accredited CCRCs. The cushion ratio helps to assess an entity's cash in relation to its annual debt obligation (a higher ratio indicates a greater financial cushion). The ratio as of December 31, 2013, based on principal and interest payments made to Horizon, indicates a limited cushion as compared to accredited CCRCs. When the Horizon debt was refinanced in the March 31, 2014 Transaction, it was at higher interest rates and would have increased annual cash needs for debt service, further depressing the ratio unless additional unrestricted cash could become available.

Capital structure ratios help to assess the strength or weakness of a CCRC's balance sheet. The debt service coverage ratio addresses the ability to fund annual debt service from operating revenue and net entrance fees, while the revenue basis ratio excludes net entrance fees (a higher ratio indicates a stronger balance sheet and greater ability to fund debt service). While both of Westport's ratios were below the 25th percentile, the revenue basis ratio is negative because Westport was funding operating expense from net entrance fees, rather than reserving a portion to fund expected future medical care.

The March 31, 2014 Transaction refinanced the Horizon debt, but did not result in a significant cash infusion. Ms. Burkholder testified[10] that, although $1.75 million associated with the CPIF loan was designated as a capital expenditure reserve, she was initially able to draw down and use approximately $250,000. In order to access additional capital expenditure funds, a reserve of $400,000 had to be established prior to any further draw downs, which occurred by August 2014. Total draw downs used for capital expenditures[11] did not exceed $380,000, well below the $1.865 million called for in the first year of the Ten-Year Projections. Without access to capital to renovate units and generate entrance fees, Westport could not be reasonably expected to achieve the cash

---

[10] Deposition transcript of Kathleen Burkholder, (Case No. 2015-CA-0585, State of Florida, ex rel, the Department of Financial Services of the State of Florida v. Westport Holdings Tampa, Limited Partnership d/b/a University Village) April 24, 2015, page 30, line 2 – page 32, line 2.

[11] Ms. Burkholder indicated that after approximately $380,000 was drawn down, $1 million was used, at the direction of Mr. Bartle, as collateral for the acquisition of an unrelated property. From that point on, she could no longer access the capital expenditure reserve funds.

13

flow forecast in the Ten-Year Projections which were relied on by Mr. Murphy for his conclusions.

### Mr. Murphy's Opinion on the Debtors' Ability to Pay their Debts

Mr. Murphy concluded that the Debtors and Westport Nursing were able to pay their debts as they became due immediately before and after the March 31, 2014 Transaction. Paragraph 53 of Mr. Murphy's report addresses his conclusion that, based on the Ten-Year Projections, "University Village would be able to pay their debts as they became due including long term debt service payments."[12]

### Oscher's Findings on Mr. Murphy's Opinion on the Debtors' Ability to Pay their Debts

Mr. Murphy's opinion on the Debtors' ability to pay their debts as they became due relies on the Ten-Year Projections. To the extent that the results could not be reasonably expected to be achieved due to the deficiencies noted in the Forvis Report, Mr. Murphy's opinion is unsupported.

### Mr. Murphy's Opinion on Reasonably Equivalent Value

Mr. Murphy concluded that Westport received reasonably equivalent value for its transfers with regard to the spin off of Westport Nursing. Paragraphs 94 - 99 of Mr. Murphy's report addresses his analysis of whether reasonably equivalent value was received in the March 31, 2014 Transaction. In support of his conclusion, Mr. Murphy analyzed journal entries recorded by Westport and Westport Nursing related to the closing of the March 31, 2014 Transaction. Mr. Murphy's analysis indicated that Westport's net equity declined by $6.3 million as of result of the March 31, 2014 Transaction. In other words, it gave up more than it received. Mr. Murphy also noted relief from guarantor liability and direct and indirect benefits from being able to continue to sell CCRC contracts prior to concluding that Westport received reasonably equivalent

---

[12] Expert Report and Disclosure of Stanley A. Murphy, April 17, 2023, ¶53, page 15 – 16.

value.

**Oscher's Findings on Mr. Murphy's Opinion on Reasonably Equivalent Value**

It is my understanding that the term "reasonably equivalent value" is not defined in the Bankruptcy Code, but that the Trier-of-Fact may consider direct, indirect, or contingent benefits in its determination.

It is not clear from Mr. Murphy's analysis of direct and indirect benefits how the factors he identified have been reconciled in his determination that Westport received reasonably equivalent value.

Exhibits IV and V identify the assets and liabilities of Westport Nursing, formerly included on Westport's consolidated balance sheet, that were transferred in the March 31, 2014 Transaction.[13] Westport Nursing received fixed assets of $13.5 million, intangible assets of $2.89 million and $3 million of MLR funds, for a total of $19.39 million transferred. Offsetting those assets by $15 million in debt extended by the Defendants results in a net transfer of $4.39 million from Westport to Westport Nursing as a result of the March 31, 2014 Transaction. In addition, Westport ceased to receive the lease income of at least $900,000 annually that was associated with Westport Nursing's facility and its agreements with the skilled nuring operator TR & SNF, Inc. and the asisted living operator TALF, Inc.

Mr. Murphy has stated that Westport received direct and indirect benefits by being able to continue to operate as a CCRC, and that the March 31, 2014 Transaction allowed Westport Nursing to obtain financing and avoid foreclosure.[14] Mr. Murphy does not appear to have considered the possibility that Westport could have benefited as much if not more had Horizon completed the deed in lieu transaction. It is my understanding that Horizon, in preparing to assume control of University Village, hired Life Care Services,

---

[13] These amounts were also analyzed in Exhibit VIII to my Initial Expert Report.
[14] Expert Report and Disclosure of Stanley A. Murphy, April 17, 2023, ¶99 – 102, pages 30 – 31.

LLC, the largest operator of CCRC's in the country, to manage University Village on its behalf, spent time and money preparing for a successful transition, and was prepared to inject needed capital. Mr. Bartle did not request or receive OIR approval prior to the March 31, 2014 Transaction and did not provide the capital needed to increase occupancy. It is my understanding that the lack of adequate capital and of an approved, qualified provider is what ultimately resulted in OIR issuing an initial order of suspension of Westport's certificate of authority to operate as a CCRC on February 13, 2015, preventing Westport from entering into new continuing care contracts.

## CONCLUSION

Mr. Murphy's conclusion of solvency is flawed because it is based, in part, on Ten-Year Projections that could not reasonably be achieved, because it considers the assets and liabilities of Westport and Westport Nursing on a consolidated basis after March 31, 2014 when Westport Nursing ceased to be Westport's wholly-owned subsidiary, and because he improperly excludes liabilities that represent claims on Westport's assets as of March 31, 2014.

Mr. Murphy's conclusions on the adequacy of capital and Westport's ability to pay its debts as they became due are similarly based on Ten-Year Projections that could not reasonably be achieved and are therefore unsupported.

Mr. Murphy's conclusion on reasonably equivalent value does not make clear how the indirect benefits he identified compensate for a transfer of assets in excess of debt relief. I have concluded that Westport did not receive reasonably equivalent value for the assets transferred and the loss of income associated with those assets.

To the extent that additional information becomes available, I reserve the right to update my opinions as may be appropriate.

Lisl Unterholzner
July 7, 2023

# LISL A. UNTERHOLZNER, CPA/ABV, CFE

*Education and Honors:*

- **Certified Public Accountant, June 2014**
- **University of South Florida Tampa, FL**
  *Bachelor of Science Cum Laude, Accounting, May 2012*
  **Dean's List of Scholars for Academic Excellence, College of Business**
- **Rice University Houston, TX**
  *Bachelor of Architecture, May 1996*
  *Bachelor of Arts, Architecture and French Studies, May 1994*

  **Clyde Ferguson Bull Traveling Fellowship in French- awarded to one graduating major in French Studies for travel in France to support career goals following graduation**

  **National Merit Scholar**
  **Tau Sigma Delta Honor Society in Architecture**
  **Pi Delta Phi French Honor Society**
  **President's Honor Roll**

*Certifications:*

- **Accredited in Business Valuation by the American Institute of Certified Public Accountants**
- **Certified Fraud Examiner**

*Employment:*

| | |
|---|---|
| 2013 – Present | **Oscher Consulting, P.A. – Consultant** |
| 2007 – 2008 | **West Palm Wines – Wine Buyer, Educator, Consultant** |
| 2006 – 2007 | **Cork & Olive – Field Trainer** |
| 2001 – 2006 | **Frederick Wildman & Sons, Ltd. – Southern Area Manager** |
| 1996 – 2001 | **Frederick Wildman & Sons, Ltd. – Sales Represntative** |

*Professional:*
*(current and past)*

- **American Institute of Certified Public Accountants**
- **Florida Institute of Certified Public Accountants**
- **Association of Certified Fraud Examiners**

*Community:*
*(current and past)*

- **The Florida Bar Thirteenth Judicial Circuit Grievance Committee 13-C**
- **Hillsborough County Bar Association**
- **The Junior League of Tampa Tampa, FL**
- **Rice Alumni Volunteers for Admission (RAVA) Tampa, FL**

Exhibit II

## LISL A. UNTERHOLZNER
## OSCHER CONSULTING
## LITIGATION BACKGROUND

| FIRM | CASE NUMBER | CASE NAME | DATE(S) |
|---|---|---|---|
| Robert L. Chapman<br>Bush Ross, P.A.<br>1801 N. Highland Avenue<br>Tampa, FL 33602-2656<br>(813) 224-9255 | Arbitration Proceeding<br>Former Case No. 19-CA-004680<br>In the Circuit Court for the<br>Thirteenth Judicial Circuit in<br>and for Hillsborough County,<br>Florida Civil Division | Sorin Lupu v. Michael Oana<br>and Florida 10002, LLC | 10/5/2020<br>Arbitration |
| Richard E. Fee<br>Fee & Jeffries, P.A.<br>1227 N. Franklin Street<br>Tampa, FL 33602<br>(813) 229-8008 | In the Circuit Court for the<br>Thirteenth Judicial Circuit in<br>and for Hillsborough County,<br>Florida Civil Division<br>Case No.: 09-CA-019912 | Narendra S. Sastry, M.D., P.A.,<br>and Narayana S. Rattehalli,<br>M.D., P.A., d/b/a Gulf to Bay<br>Cardiovascular & Thoracic<br>Surgical Associates, Narendra<br>S. Sastry, M.D., P.A., and<br>Narayana S. Rattehalli, M.D.,<br>P.A. v. Ravi Sharma M.D. and<br>Ravi Sharma M.D., P.A. | 7/20/2021<br>Deposition |
| James C. Valenti<br>James C. Valenti, P.A.<br>114 N. Tennessee Avenue<br>Suite 200<br>Lakeland, FL 33801<br>(863) 937-6056 | In the Circuit Court of the<br>Tenth Judicial Circuit in<br>and for Polk County, Florida<br>Case No.:2017CA-1942 | H&S Investment Group of<br>Central Florida, LLC<br>v.<br>Lenard S. Spiker, a/k/a Steve<br>Spiker, David Spiker, Pamela<br>J. Spiker, and Imperial Paving,<br>LLC. | 10/6/2021<br>Deposition |
| John A. Anthony<br>Anthony & Partners, LLC<br>100 S. Ashley Drive<br>Suite 1600<br>Tampa, FL 33602<br>(813) 273-5616 | In the Circuit Court of the<br>Fifth Judicial Circuit in<br>and for Hernando County,<br>Florida Civil Division | MNP Industries, LLC<br>v.<br>Wayne S. Smeal, Tamela<br>Orsini-Maly, Johnny Ray<br>Walton, Breny Wycinski, Tracy<br>Lee, Tim Kelleher, Shelby<br>Skinner, Cody Parcell, Steve<br>Lagasse, Miracle Products, LLC<br>d/b/a Golden Trust LLC, and<br>GPO Plus, Inc. | 12/1/2021<br>Arbitration |
| John W. Landkammer<br>Anthony & Partners, LLC<br>100 S. Ashley Drive<br>Suite 1600<br>Tampa, FL 33602<br>(813) 273-5616 | In the Circuit Court of the<br>Tenth Judicial Circuit in<br>and for Polk County, Florida<br>Case No.:2021CA-392<br>Case No.:2021CA-397 | Lindsey J. Crowley<br>v.<br>Marcos Fernandez and Elm<br>Restaurant Group, LLC | 2/9/2022<br>Deposition<br>3/7/2022<br>Trial |

Exhibit II

| **FIRM** | **CASE NUMBER** | **CASE NAME** | **DATE(S)** |
|---|---|---|---|
| Robin S. Trupp<br>Curry Law Group, P.A.<br>P.O. Box 1143<br>Brandon, FL 33509<br>(813) 653-2500 | In the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida<br>Case No.: 19-CA-002510 | Perry Brown<br>v.<br>Rocky Brown | 7/14/2022<br>Arbitration |
| Ernest W. Leonard<br>Freidman & Feiger, LLP<br>5301 Spring Valley Road<br>Suite 200<br>Dallas, TX 75254<br>(972) 788-1400 | In the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County Florida<br>Case No. 2019-CA-999-15-K | Community Care Health Network, LLC, d/b/a Matrix Medical Network<br>v.<br>Shahriar "James" Ekbatani, Ramin "Ray" Ekbatani, Shahrzad Ekbatani, as Trustee of Nobility Trust and Dignity Trust, Terrence Diaz, and Jerry Cox | 11/15/2022<br>Deposition |
| Dean A. Kent<br>Trenam Law<br>101 East Kennedy Boulevard<br>Suite 2700<br>Tampa, FL 33602<br>(813) 223-7474 | In the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County Florida<br>Case No. 19-CA-007708-CI | Buccaneer Landscape Management Corporation<br>v.<br>Juniper Landscaping of Florida, LLC, and ZS Fund, LP | 1/5/2023<br>Deposition |
| Nicholas D. Zorn, Jr.<br>Law Offices of Athena Thanos Litigation Group- General Counsel - USAA<br>100 South Ashley Drive<br>Suite 550<br>Tampa, FL 33602<br>(813) 280-8056 | In the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida<br>Case No. 19-CA-009150 | Karen Payne and Robert Payne.<br>v.<br>Katsuko F. Looney | 3/17/2023<br>Deposition |
| Caren S. Marlowe<br>Ogletree Deakins<br>100 North Tampa Street<br>Suite 3600<br>Tampa, FL 33602<br>(813) 221-7236 | JAMS Arbitration<br>Reference No. 1460008328 | It Works Marketing, Inc.,<br>v.<br>Morgan McIntyre Martin | 6/20/2023<br>Arbitration |

Exhibit III

## INFORMATION CONSIDERED

| | |
|---|---|
| • | Declaration regarding Self-Authentication of Records |
| • | Regions March 2014 statement |
| • | University Village-DFS - Deposition Transcript - Kathleen Burkholder |
| • | Consolidated financial statements audited by LKD for the years ended December 31, 2006 through December 31, 2013 |
| • | Westport Holdings Tampa, Limited Partnership and Subsidiary d/b/a University Village (a wholly owned subsidiary of Westport Senior Living Investment Fund, L.P.) Consolidated Financial Statements For the years ended December 31, 2013 and 2012 |
| • | Appraisal Report of The Inn at University Village, Prepared for USAmeribank, Effective Date February 21, 2014 |
| • | Appraisal Report of University Village, Prepared for BVM Management, Inc. by Cushman & Wakefield Regional, Inc. as of March 6, 2014 |
| • | Confidential Loan Closing Statement between Westport Holdings, Tampa and CPIF Lending, LLC |
| • | Consolidated audited financial statements of Westport and its affilates, Westport II and Westport Nursing |
| • | Filings with the Florida Office of Insurance Regulation ("FOIR") |
| • | Lending documents |
| • | Deposition testimony of John Bartle |
| • | E-Mail dated 4/25/2012, 2:57:13 PM, from Dave Klewer to Kathy Burkholder; Subject: RE: Updated valuation report for today's discuss; Attachments: CLW Valuation Analysis – University Village- updated 4.25.12 |
| • | E-Mail dated 11/6/2013, 4:29:14 PM, from Robin Mulligan to Kathy Burkholder; Subject: UV 2011 Appraisal; Attachments: appraisal_20120420172003 |
| • | E-Mail dated 2/5/2014, 2:12:10 PM, from Anne Sheehan to Kathy Burkholder, Subject: FW: UV 2011 Appraisal; Attachments: Health Trust University Village-FINAL12-07-11 |

1

Exhibit III

| | |
|---|---|
| • | E-Mail dated 3/5/2014, 6:13:02 PM, from Kathy Burkholder to Tim Parker; Subject: Info for Appraisal #2; Attachments: Dec 2010 Financial Stmts – Departmental format; Dec 2013 Financial Statements – Departmental Format |
| • | Appraisal of the Going Concern, as of March 6, 2014; Prepared by Cushman & Wakefield Regional, Inc.; Prepared for BVM Management, Inc. |
| • | Email dated 3/5/2014, 6:14:03 PM, from Kathy Burkholder to tparker; Subject: Historical Occupancy 2010 – 2013 |
| • | Email dated 3/19/2014, 5:26:41 PM, from Kathy Burkholder to Ceiliah.Epner; Subject: Appraisal Items for UV; Attachments: Historical Entrance Feed – Refunds; Historical Net Entrance Fees |
| • | Real Estate Appraisal Report – University Village, September 22, 2016 and February 6, 2018; Prepared by HealthTrust |
| • | Order (A) Confirming First Amended and Restated Mediated Joint Plan of Liquidation; Case 8:16-bk-08167-MGW, Doc 1016, Filed 5/10/18 |
| • | Regions Bank Statement, Westport Holdings Tampa, L.P.; Account # 1046000011; 01/01/2014 through 12/31/2014 |
| • | Regions Bank Statement, Westport Holdings Tampa, L.P.; Account # 1046000011; 03/01/2014 through 03/31/2014 |
| • | University Village 7-Day Entrance Fee Escrow Agreement, dated January 8, 2004, between Westport Holdings Tampa, Limited Partnership and Regions Bank |
| • | Agreement for University Village Minimum Liquid Reserve Escrow, dated June 22, 2004, between Westport Holdings Tampa, Limited Partnership and Regions Bank |
| • | Debt Service Reserve Escrow and Security Agreement, dated December 21, 2006, between Westport Holdings Tampa, Limited Partnership and Westport Nursing Tampa, LLC and Capmark Finance, Inc. |
| • | Email dated 9/04/2013, 8:05:35 PM, from Kathy Burkholder to Lou Jackson; Subject: FW: University Village Additional Information Needed; Attachments: Price sheet, Occupancy 2011, Occupancy 2112, Occupancy Aug 2013, Mlr calculation, FTE report 2013; PIP Deposits Aug 2013 |

Exhibit III

| | |
|---|---|
| • | Email date 11/11/2013, 7:00:05 PM, from Christie Perez to eagleoneslj; Subject MLR Calculation; Attachments: MLR 2012 001, MLR CALC 002, MLR CALC 003 |
| • | Email dated 3/14/2014, 7:32:45 PM, from Kathy Burkholder to Lou Jackson; Subject: Regions bank Escrow and MLR Agreements; Attachments: Regions bank escrow agreement, Regions bank MLR agreement |
| • | Email dated 3/25/2014, 2:48:34 PM, from Kathy Burkholder to Lou Jackson; Subject: FW: Regions bank Escrow and MLR Agreements; Attachments: Regions bank escrow agreement, Regions bank MLR agreement |
| • | Email dated 3/29/2014, 2:55:52 PM, from Lou Jackson to Kathy Burkholder; Subject: Fwd: 7 Day Escrow |
| • | Email dated 3/26/2014, 5:20:15 PM, from Lou Jackson to Kathy Burkholder; Subject: OIR worksheet for MLR |
| • | Email dated 3/31/2014, 12:16:07 PM, from Kathy Burkholder to Lou Jackson; Subject: OIR worksheet for MLR |
| • | Email dated 3/31/2014, 12:23:49 PM; from Craig Taylor to Dane Starbuck; Subject: Question—MLR funds; Attachments: Debt Service Reserve Agreement |
| • | Email dated 3/31/2014, 12:27:58 PM; from Dane Starbuck to Craig Taylor; Subject: Re: Question—MLR funds |
| • | Email dated 3/31/2014, 12:35:14 PM; from Craig Taylor to Dane Starbuck; Subject: Question—MLR funds |
| • | Email dated 3/31/2014, 2:59:27 PM, from Lou Jackson to Kathy Burkholder; Subject: University MLR Reserve; Attachments: Debt_service_reserve, Debt_Service_Reserve_Agreement |
| • | Email dated 5/12/2014, 11:27:38 AM, from Kathy Burkholder to jbartl6081; Subject: FW: University Village Escrow Agreement; Attachments: Providers Debt Service Reserve Certification 2003 03 12 |
| • | Email dated 5/12/2014, 12:07:22 PM, from Kevin Angelis to Kathy Burkholder; Subject: RE: University Village Escrow Agreement; Attachments: Providers Debt Service Reserve Certification 2003 03 12 |

3

Exhibit III

- Email dated 5/12/2014, 6:11:49 PM, from Sandra Guion to Kathy Burkholder; Subject: MLR doc; Attachments: Providers Debt Service Reserve Certification 2003 03 12

- Email dated 5/12/2014, 7:28:24 PM, from Kathy Burkholder to Larry Landry; Subject: MLR Debt Reserve; Attachments: Providers Debt Service Reserve Certification 2003 03 12

- Email dated 5/14/2014, 9:38:29 AM, from Lou Jackson to kevin.angelis; Subject: Re: University Village Escrow Agreement

- Email dated 5/14/2014, 9:42:02 AM, from kevin.angelis to Lou Jackson; Subject: Re: University Village Escrow Agreement

- Email dated 5/14/2014, 9:52:04 AM, from Lou Jackson to Kathy Burkholder; Subject: Re: University Village Escrow Agreement

- Email dated 5/14/2014, 9:53:38 AM, from kevin.angelis to Lou Jackson; Subject: Re: University Village Escrow Agreement

- Email dated 5/14/2014, 9:55:59 AM, from Kathy Burkholder to Lou Jackson; Subject: Re: University Village Escrow Agreement

- Email dated 5/14/2014, 9:59:16 AM; from Larry Landry to Kevin Angelis; Subject: Re: University Village Escrow Agreement

- Email dated 5/14/2014, 1:45:00 PM, from Kathy Burkholder to Larry Landry; Subject: MLR Debt Reserve; Attachments: Providers Debt Service Reserve Certification 2003 03 12

- Email dated 5/14/2014, 3:17:04 PM, from Kathy Burkholder to kevin.angelis; Subject: MLR Form; Attachments: UV MLR Form

- Email dated 5/14/2014, 3:46:36 PM, from Lou Jackson to kevin.angelis; Subject: Fwd: MLR Form; Attachments: UV_MLR_Form

- Email dated 5/14/2014, 4:55:27 PM, from Lou Jackson to kevin.angelis; Subject: Re: MLR Form

- Email dated 5/14/2014, 3:50:53 PM, from Kathy Burkholder to Desmond Wilson; Subject: RE: University Village Escrow Agreement; Attachments: MLR Debt Service Certificate Form

- Email dated 5/15/2014, 1:51:35 PM, from Kathy Burkholder to Larry Landry; Subject: Wiring Instructions

Exhibit III

| | |
|---|---|
| • | Email dated 5/15/2014, 5:53:55 PM, from Kathy Burkholder to kevin.angelis; Subject: FW: April reports for bank; Attachments: April 2014 IL Financial Statements, April 2014 NC Financial Statements, APRI 2014 ESCROW 1, APRIL 2014 MLR, APRIL 2014 OPERATING, APRIL 2014 PAYROLL, Rent Roll-Combined – Apr 14 (for bank), Progress report on Stabilization for CPIF, Internal variance report Apr 2014 |
| • | Email dated 7/27/2014, 6:49:13 PM, from Kevin Angelis to Kathy Burkholder; Subject: Health Center Bank Payment; Attachments: 2014.07.31 UNI Loan Statement |
| • | Email dated 7/29/2014, 6:27:08 PM, from Kevin Angelis to Kathy Burkholder; Subject: RE: Health Center Bank Payment; Attachments: SFLTPAAPR03B14041810211 |
| • | Email dated 8/21/2014, 3:21:15 PM, from Kathy Burkholder to kevin.angelis; Subject: FW: Bank Statements |
| • | Email dated 9/26/2014, 7:02:39 PM, from Kathy Burkholder to jbartle6081; Subject: Responses to the state; Attachments: Annual report questions from statex, Certificate of Compliance; Ownership Disclosure 2014 May update, UV Management Comment Letter, Annual report 2013 revised, agewell management contract, HEALTH CENTER LEASES, AHCA Certificate, MLR Calculation 2014 revised, Revolving Promissory note, Other Liabilities |
| • | Email dated 9/29/2014, 4:47:53 PM, from Kathy Burkholder to John Bartle; Subject: RE: Responses to the state |
| • | Email dated 10/14/2014, 3:42:38 PM, from Larry Landry to Kathy Burkholder; Subject: RE: Updated MLR Calculation |
| • | Email dated 10/16/2014, 5:21:03 PM, from Kathy Burkholder to John Bartle; Subject: RE: Updated MLR Calculation; Attachments: mlr, ANNUAL REPORT, ANN88104 2014 MLR Confirmation Ltr 2 – Regions |
| • | Email dated 10/23/2014, 5:42:10 PM, from jbartle6081 to Tim Parker; Subject: RE: MLR underfunded |
| • | Email dated 11/18/2014, 5:00:35 PM, from Lou Jackson to Kathy Burkholder; Subject: Re: MLR repayment agreement |
| • | Email dated 12/18/2014, 2:39:48 PM, from Kathy Burkholder to Becky.Griffith; Subject: FW: MLR Withdrawals; Attachments: MLR88104 |

Exhibit III

| | |
|---|---|
| | 2014 12 12 MLR Withdrawals, Remodeling apt costs 2012 (MLR funds used), Remodeling apt costs 2013 (MLR funds used) |
| • | Email dated 12/24/2014, 6:04:32 PM, from John Bartle to Kathy Burkholder; Subject: Disclosures |
| • | Email dated 12/24/2014, 7:14:35 PM, from Tim Parker to John Bartle; Subject: Disclosures |
| • | Email dated 12/30/2014, 12:27:47 AM, from John Bartle to Kathy Burkholder; Subject: OIR Disclosures |
| • | Email dated 12/30/2014, 12:50:03 PM, from Kathy Burkholder to John Bartle; Subject: OIR Disclosures |
| • | Email dated 12/30/2014, 1:34:01 PM, from Kathy Burkholder to Lou Jackson; Subject: RE: OIR Disclosures |
| • | Email dated 1/25/2015, 10:48:54 PM, from Kathy Burkholder to Dane Starbuck; Subject: RE: OIR requirements; Attachments: MLR stmts, OIR_University Village_MLR Letter_1-21-15 |
| • | Email dated 1/21/2015, 11:00.47 PM, from Dane Starbuck to Kathy Burkholder; Subject: OIR requirements |
| • | Email dated 1/23/2015, 9:28:55 PM, from Kathy Burkholder to Dane Starbuck; Subject: OIR Information; Attachments: 6. Escrow Agreement, 6. Resident contract, 7. Evidence of escrow, Westport Holdings Tampa 2015 Budget Proforma, MLR Letter, Surety Bond, 11. Deposits, Solvency (2013 audited stmts), Nov OIR Balance Sheet |
| • | Email dated 1/28/2015, 4:32:07 PM, from Kathy Burkholder to Lou Jackson; Subject: RE: PIP |
| • | Email dated 1/28/2015, 4:34:36 PM, from Kathy Burkholder to Tim Parker; Subject: FW: PIP |
| • | Email dated 1/28/2015, 4:44:26 PM, from Lou Jackson to Kathy Burkholder; Subject: RE: PIP |
| • | Email dated 1/28/2015, 4:45:36 PM, from Kathy Burkholder to Tim Parker; Subject: FW: PIP |
| • | Email dated 2/7/2015, 6:18:44 PM, from Kathy Burkholder to Lou Jackson; Subject: RE: MLR |

Exhibit III

| | |
|---|---|
| • | Email dated 4/5/2015, 8:27:42 PM, from John Bartle to Jared McCowan; Subject: Fw: MLR Calculation; Attachments: MLR 2012 001, MLR CALC 002, MLR CALC 003 |
| • | Affidavit of Kathleen Burkholder, dated April 14, 2015 (unsigned) |
| • | Combined Balance Sheet For the Period Ending March 31, 2014 |
| • | Retirement Center & Villas Combined Income Stmt For the Period Ending March 31, 2014 |
| • | Loan Closing Statement |
| • | Initial Order of Suspension |
| • | Tampa Bay Times Article |
| • | Annual Report of the WestPort Holdings Tampa LP |
| • | USAmeriBank statement |
| • | RC & Villas Balance Sheet |
| • | Complaint |
| • | Claim 92-1 |
| • | Complaint Objecting to Claim Nos. 91 & 92 |
| • | Notice of Opportunity to Object and Request for Hearing |
| • | Order Granting Motion to Approve Settlement |
| • | Expert Report of Louis E. Robichaux IV |
| • | Expert Report of Stanley A. Murphy |
| • | Expert Report of Meredith Benedict |

Case 8:20-ap-00007-CPM    Doc 441-7    Filed 11/15/23    Page 28 of 32

| | Oscher Solvency Analysis | | | | Murphy Solvency Analysis | | |
| | Report of Westport Holdings Tampa, L.P. to the OIR as of March 31, 2014 | Fair Value Adjustments | Assets Transferred to Westport Nursing | Oscher Solvency Analysis as of March 31, 2014 | Internal Balance Sheet as of March 31, 2014 | Murphy Adjustments | Murphy Solvency Analysis (Exhibit 2) as of March 31, 2014 |
|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | |
| Current Assets | $2,645,387 | - | - | $2,645,387 | $2,627,192 | ($2,186,345) | $440,847 |
| Non-Current Assets | | | | | | | |
| Land, Buildings and Equipment, net | 30,754,021 | 1,845,979 (1) | ($13,500,000) (1) | 19,100,000 | 31,637,612 | 14,452,388 | 46,090,000 |
| Assets limited as to use (MLR and other) | 4,749,438 | - | (3,000,000) (3) | 1,749,438 | 4,542,695 | - | 4,542,695 |
| Other Non-Current Assets | | | | | | | |
| Intangible assets, net | 46,208,752 | (39,718,752) (2) | (2,890,000) (2) | 3,600,000 | 46,208,751 | (46,208,751) | - |
| Deposits | 119,070 | - | - | 119,070 | 119,070 | - | 119,070 |
| Due from Affiliates | 7,129,374 | (7,129,374) (1) | - | - | 7,129,374 | (7,129,374) | - |
| Capmark Debt Service Reserve | - | - | - | - | 1,987,000 | - | 1,987,000 |
| Capitalized Loan Coasts | 905,744 | - | - | 905,744 | - | - | - |
| Capital Expenditure Reserve | 1,750,000 | - | - | 1,750,000 | - | - | - |
| Total Other Non-Current Assets | 56,112,940 | (46,848,126) | (2,890,000) | 6,374,814 | 55,444,195 | (53,338,125) | 2,106,070 |
| Total Assets | $94,261,786 | ($45,002,147) | ($19,390,000) | $29,869,639 | $94,251,694 | ($41,072,082) | $53,179,612 |
| | | | | | | | |
| **Liabilities** | | | | | | | |
| Current Liabilities | $2,504,211 | - | - | $2,504,211 | $3,754,270 | ($850,522) | $2,903,748 |
| Non-Current Liabilities | | | | | | | |
| Long-term debt, less current maturities | 24,553,358 | - | (15,000,000) (4) | 9,553,358 | 24,553,358 | - | 24,553,358 |
| Due to affiliates (Intercompany Liabilities) | 12,883,697 | - | - | 12,883,697 | 35,284 | - | 35,284 |
| Deferred revenue from entrance fees | 16,039,980 | - | - | 16,039,980 | 15,819,713 | (15,819,713) | - |
| Other Non-Current Liabilities | | | | | | | |
| Refundable entrance fees | 27,562,356 | - | - | 27,562,356 | 32,774,703 | (32,774,703) | - |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | - | 6,491,706 | 6,243,915 | - | 6,243,915 |
| Refundable Deposits Used - HCLOC | - | - | - | - | (3,951,992) | - | (3,951,992) |
| Other | - | - | - | - | 69,666 | (69,666) | - |
| Total Other Non-Current Liabilities | 34,054,062 | - | - | 34,054,062 | 35,136,292 | (32,844,369) | 2,291,923 |
| Total liabilities | $92,365,064 | - | (15,000,000) | 75,035,308 | 79,298,917 | (49,514,604) | 29,784,313 |
| | | | | | | | |
| Net Adjustment | | ($45,002,147) | ($4,390,000) | | | $8,442,522 | |
| | | | | | | | |
| Net Worth | $1,896,722 | | | ($45,165,669) | $14,952,777 | | $23,395,299 |

**Notes:**

(1) Adjustment of real property and furniture, fixtures and equipment to values determined by IRR and Cushman & Wakefield. The value of the minority interest is considered in the real property value of the villas and is therefore excluded for solvency.

(2) Adjustment of goodwill to intangible/business enterprise values determined by IRR and Cushman & Wakefield.

(3) MLR funds transferred from Regions Bank to Defendant.

(4) Extended by Defendant on March 31, 2014.

**Westport Holdings Tampa d/b/a University Village**
**Solvency Analysis March 31, 2014**

**Exhibit V**

| | Oscher Solvency Analysis | | | | Murphy Solvency Analysis | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Report of Westport Holdings Tampa, L.P. to the OIR as of March 31, 2014 | Fair Value Adjustments | Assets Transferred to Westport Nursing | Oscher Solvency Analysis as of March 31, 2014 | Internal Balance Sheet as of March 31, 2014 | Murphy Adjustments | Murphy Solvency Analysis (Exhibit 5) as of March 31, 2014 |
| **Assets** | | | | | | | |
| Current Assets | $2,645,387 | - | - | $2,645,387 | $2,627,192 | ($2,186,345) | $440,847 |
| **Non-Current Assets** | | | | | | | |
| Land, Buildings and Equipment, net | 30,754,021 | 1,845,979 (1) | ($13,500,000) (1) | 19,100,000 | 31,637,612 | 5,832,087 | 37,469,699 |
| Assets limited as to use (MLR and other) | 4,749,438 | - | (3,000,000) (3) | 1,749,438 | 4,542,695 | - | 4,542,695 |
| **Other Non-Current Assets** | | | | | | | |
| Intangible assets, net | 46,208,752 | (39,718,752) (2) | (2,890,000) (2) | 3,600,000 | 46,208,751 | (46,208,751) | - |
| Deposits | 119,070 | - | - | 119,070 | 119,070 | - | 119,070 |
| Due from Affiliates | 7,129,374 | (7,129,374) (1) | - | - | 7,129,374 | (7,129,374) | - |
| Capmark Debt Service Reserve | - | - | - | - | 1,987,000 | - | 1,987,000 |
| Capitalized Loan Coasts | 905,744 | - | - | 905,744 | - | - | - |
| Capital Expenditure Reserve | 1,750,000 | - | - | 1,750,000 | - | - | - |
| **Total Other Non-Current Assets** | 56,112,940 | (46,848,126) | (2,890,000) | 6,374,814 | 55,444,195 | (53,338,125) | 2,106,070 |
| **Total Assets** | $94,261,786 | ($45,002,147) | ($19,390,000) | $29,869,639 | $94,251,694 | ($49,692,383) | $44,559,311 |
| | | | | | | | |
| **Liabilities** | | | | | | | |
| Current Liabilities | $2,504,211 | - | - | $2,504,211 | $3,754,270 | ($3,712,270) | $42,000 |
| **Non-Current Liabilities** | | | | | | | |
| Long-term debt, less current maturities | 24,553,358 | - | (15,000,000) (4) | 9,553,358 | 24,553,358 | - | 24,553,358 |
| Due to affiliates (Intercompany Liabilities) | 12,883,697 | - | - | 12,883,697 | 35,284 | - | 35,284 |
| Deferred revenue from entrance fees | 16,039,980 | - | - | 16,039,980 | 15,819,713 | (15,819,713) | - |
| **Other Non-Current Liabilities** | | | | | | | |
| Refundable entrance fees | 27,562,356 | - | - | 27,562,356 | 32,774,703 | (32,774,703) | - |
| Personal Income Protection Program deposits, less current maturities | 6,491,706 | - | - | 6,491,706 | 6,243,915 | (6,243,915) | - |
| Refundable Deposits Used - HCLOC | - | - | - | - | (3,951,992) | - | (3,951,992) |
| Other | - | - | - | - | 69,666 | (69,666) | - |
| **Total Other Non-Current Liabilities** | 34,054,062 | - | - | 34,054,062 | 35,136,292 | (39,088,284) | (3,951,992) |
| **Total liabilities** | $92,365,064 | - | (15,000,000) | 75,035,308 | 79,298,917 | (58,620,267) | 20,678,650 |
| | | | | | | | |
| **Net Adjustment** | | ($45,002,147) | ($4,390,000) | | | $8,927,884 | |
| | | | | | | | |
| **Net Worth** | $1,896,722 | | | ($45,165,669) | $14,952,777 | | $23,880,661 |

**Notes:**

(1) Adjustment of real property and furniture, fixtures and equipment to values determined by IRR and Cushman & Wakefield. The value of the minority interest is considered in the real property value of the villas and is therefore excluded for solvency.

(2) Adjustment of goodwill to intangible/business enterprise values determined by IRR and Cushman & Wakefield.

(3) MLR funds transferred from Regions Bank to Defendant.

(4) Extended by Defendant on March 31, 2014.

# Westport Holdings Tampa d/b/a University Village
## Financial Ratio Analysis

**Exhibit VI**

**Based on 2013 Audited Financial Statements**

**LIQUIDITY**

| | NUMERATOR | DENOMINATOR | RATIO |
|---|---|---|---|
| **Days Cash on Hand** | | | |
| Cash and Equivalents | $771,300  (1) | | 24 |
| | | | |
| Medical Care | | $731,828  (2) | |
| General and Administrative | | 3,246,633  (2) | |
| General and Professional Liability Insurance | | 85,406  (2) | |
| Dining Service | | 1,896,693  (2) | |
| Plant Operations | | 2,445,417  (2) | |
| Laundry and Housekeeping | | 643,631  (2) | |
| Other Resident Care | | 577,697  (2) | |
| Management Fees | | 448,526  (2) | |
| Marketing | | 1,289,896  (2) | |
| Interest Expense | | 528,975  (2) | |
| Operating and Interest Expense | | 11,894,702 | |
| Divided by 365 | | ÷ 365 | |
| Denominator | | $32,588 | |
| | | | |
| **Cushion Ratio** | | | |
| Cash and Equivalents | $771,300  (1) | | 0.54 |
| | | | |
| Interest Expense | | $528,975  (2) | |
| Principal Payments on Long-term Debt | | 897,407  (3) | |
| Denominator | | $1,426,382 | |

**Footnotes:**

(1) Consolidated Balance Sheet as of December 31, 2013

(2) Consolidated Statement of Operations and Comprehensive Loss for the Year Ended December 31, 2013

(3) Consolidated Statement of Cash Flows for the Year Ended December 31, 2013

# Westport Holdings Tampa d/b/a University Village
## Financial Ratio Analysis

Exhibit VI

### Based on 2013 Audited Financial Statements

**CAPITAL STRUCTURE**

| | NUMERATOR | DENOMINATOR | RATIO |
|---|---|---|---|
| **Debt Service Coverage Ratio** | | | |
| Monthly Service Fees | $9,972,607  (2) | | 1.08 |
| Rent Income | 577,476  (2) | | |
| Investment Income | 9,935  (2) | | |
| Other Revenue (Reduction) | 582,910  (2) | | |
| Medical Care | (731,828)  (2) | | |
| General and Administrative | (3,246,633)  (2) | | |
| General and Professional Liability Insurance | (85,406)  (2) | | |
| Dining Service | (1,896,693)  (2) | | |
| Plant Operations | (2,445,417)  (2) | | |
| Laundry and Housekeeping | (643,631)  (2) | | |
| Other Resident Care | (577,697)  (2) | | |
| Management Fees | (448,526)  (2) | | |
| Personal Income Protection Program Discounts | (384,342)  (2) | | |
| Marketing | (1,289,896)  (2) | | |
| Provision for Bad Debts | (1,071,260)  (3) | | |
| Entrance Fees Received | 8,881,861 | | |
| Entrance Fees Refunded | (5,664,914) | | |
| Numerator | $1,538,546 | | |
| | | | |
| Interest Expense | | $528,975  (2) | |
| Principal Payments on Long-term Debt | | 897,407  (3) | |
| Denominator | | $1,426,382 | |

**Footnotes:**

(1) Consolidated Balance Sheet as of December 31, 2013

(2) Consolidated Statement of Operations and Comprehensive Loss for the Year Ended December 31, 2013

(3) Consolidated Statement of Cash Flows for the Year Ended December 31, 2013

### CAPITAL STRUCTURE

**Based on 2013 Audited Financial Statements**

| Debt Service Coverage - Revenue Basis Ratio | NUMERATOR | DENOMINATOR | RATIO |
|---|---|---|---|
| Monthly Service Fees | $9,972,607 (2) | | -0.91 |
| Rent Income | 577,476 (2) | | |
| Investment Income | 9,935 (2) | | |
| Other Revenue (Reduction) | 582,910 (2) | | |
| Medical Care | (731,828) (2) | | |
| General and Administrative | (3,246,633) (2) | | |
| General and Professional Liability Insurance | (85,406) (2) | | |
| Dining Service | (1,896,693) (2) | | |
| Plant Operations | (2,445,417) (2) | | |
| Laundry and Housekeeping | (643,631) (2) | | |
| Other Resident Care | (577,697) (2) | | |
| Management Fees | (448,526) (2) | | |
| Marketing | (1,289,896) (2) | | |
| Provision for Bad Debts | (1,071,260) (3) | | |
| Numerator | ($1,294,059) | | |
| | | | |
| Interest Expense | | $528,975 (2) | |
| Principal Payments on Long-term Debt | | 897,407 (3) | |
| Denominator | | $1,426,382 | |

**Footnotes:**

(1) Consolidated Balance Sheet as of December 31, 2013

(2) Consolidated Statement of Operations and Comprehensive Loss for the Year Ended December 31, 2013

(3) Consolidated Statement of Cash Flows for the Year Ended December 31, 2013