**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

Westport Holdings Tampa, LP and

Westport Holdings Tampa II, LP

    Debtors.

_____/

Jeffrey Warren, As Chapter 11 Liquidating Trustee,

    Plaintiff,

      v.

Valley National Bank, principal subsidiary to Valley National
BankCorp, as successor by merger to USAmeriBank,

    Defendant.

_____

CHAPTER 11

Case No. 8:16-bk-8167-MGW

(Jointly Administered)

Adv. Proc. No. 8:20-ap-00007-MGW

**Expert Report of Louis E. Robichaux IV**

*In Re*: Westport Holdings Tampa, LP and Westport Holdings Tampa, II, LP

Report Date: April 17, 2023



PLAINTIFF'S
EXHIBIT
191

**TABLE OF CONTENTS**

I.    PROFESSIONAL BACKGROUND AND QUALIFICATIONS OF LOUIS E. ROBICHAUX IV.................................................3

II.   SCOPE OF WORK ..............................................................................................................................4

III.  RELEVANT FACTUAL BACKGROUND .................................................................................................4

IV.  SUMMARY OF ALLEGATIONS..........................................................................................................5

V.   SUMMARY OF OPINIONS ................................................................................................................6

VI.  OPINION #1: IT IS NOT UNUSUAL FOR OPERATING RESERVE FUNDS TO BE USED AS COLLATERAL .......................6

VII. OPINION #2: DEFENDANT HAD GOOD FAITH BASIS TO BELIEVE THAT FLORIDA STATUTE 651.035 – MIMIMUM LIQUID RESERVE REQUIREMENT WAS NOT VIOLATED BY THE LOAN OR SECURITY PLEDGE .................................7

VIII. CONCLUSION .................................................................................................................................8

    APPENDIX A:   RESUME OF LOUIS E. ROBICHAUX IV

    APPENDIX B:   TESTIMONY EXPERIENCE

    APPENDIX C:   LIST OF DOCUMENTS CONSIDERED

## I.   PROFESSIONAL BACKGROUND AND QUALIFICATIONS OF LOUIS E. ROBICHAUX IV

I am a Senior Managing Director at Ankura Consulting Group, LLC ("**Ankura**"), where I maintain an office at 2021 McKinney Ave., Suite 340, Dallas, Texas 75201.  Ankura is a professional services firm that provides, among other things, chief restructuring officer, restructuring advisory, financial consulting, valuation and expert witness services to stakeholders involved in distressed business situations.

I have attained the following professional designations: (i) CFA® charterholder; (ii) Certified Insolvency and Reorganization Advisor; (iii) Certified Turnaround Professional; and (iv) Certification in Distressed Business Valuation.  I earned a Bachelor of Business Administration degree and a Master of Business Administration degree from Austin Peay State University and Texas A&M University, respectively.  I have authored numerous articles, lectured on bankruptcy and healthcare restructuring issues, and have provided expert testimony regarding, among other things, valuation, solvency and bankruptcy plan feasibility.

I have over thirty years of restructuring and industry experience.  The majority of my industry and consulting experience relates to the U.S. healthcare industry.  I have been involved in complex corporate restructuring and expert witness matters in both bankruptcy and out-of-court restructuring contexts.  As a Chief Restructuring Officer ("**CRO**") and restructuring advisor, I have been involved in engagements that involved complex mergers & acquisitions ("**M&A**") transactions in both bankruptcy and out-of-court restructuring contexts.  My professional experience includes, *inter alia*: (i) approximately twenty client engagements where I have served, or am currently serving, as CRO or an equivalent officer role; (ii) over thirty client engagements in which I led, oversaw or monitored a distressed M&A sale process, several of which were consummated out of court; and (iii) eleven client engagements in which I led, oversaw or monitored a non-sale debt restructuring / recapitalization transaction, five of which were consummated out of court.  My experience in fiduciary roles also includes serving as board members for nonprofit and for-profit organizations.  A more detailed description of my background and experience is attached hereto as **Appendix A**.  A detailed listing of my testimony experience is attached hereto as **Appendix B**.

In arriving at the opinions expressed in this report (the "**Report**"), I was assisted by other Ankura personnel working under my supervision.  A list of the documents that I considered in preparing this Report is attached hereto as **Appendix C**.[1]

---

[1] A list of documents considered by me and the Ankura personnel working under my supervision is set forth in Appendix C.

## II.    SCOPE OF WORK

I have been retained by the law firm of McGlinchey Stafford PLLC and Valley National Bank (the "**Defendant**") to evaluate specific actions by the Defendant taking a security interest in minimum liquid reserve funds (the "**MLR funds**") in connection with the March 31, 2014 loan transaction between the Defendant and the Debtors (defined herein).[2] Ankura may be asked to evaluate expert reports submitted by the Plaintiff and provide general litigation support services.  Ankura is compensated on an hourly basis for time incurred related to this matter.  Ankura is compensated at $975.00 per hour for my services in this matter and between $300.00 and $750.00 per hour for time incurred by other Ankura professionals involved in this matter. Ankura will also receive reimbursement for actual out-of-pocket expenses.  Ankura's fees reflect the normal and customary compensation currently received in similar matters and do not include any type of contingency fee, premium or sharing arrangements with any other individual or entity.  The amount of Ankura's compensation is not contingent upon the opinions expressed herein, nor the outcome of this matter.  I reserve the right to supplement and modify this Report. The remainder of this Report provides relevant factual background, and then explains my analysis and conclusions in detail.

## III.    RELEVANT FACTUAL BACKGROUND

The following summary is not intended to be a comprehensive history of this dispute, nor is it intended to represent any conclusion of fact or law relevant to this case.[3]

On March 31, 2014, the Debtors and Westport Nursing Tampa, LLC ("**WNT**") separately refinanced "**University Village**", a Continuing Care Retirement Community ("**CCRC**") consisting of: i) an independent living facility ("**ILF**") with roughly 446 apartments (Westport) and 46 villas (Westport II), and ii) a health center, owned by WNT and leased to unrelated parties, consisting of a 110-unit assisted living facility ("**ALF**") and a 120-bed skilled nursing facility ("**SNF**").

---

[2] The subject transaction was originally financed by USAmeriBank which was acquired by Valley National Bank on July 26, 2017.
[3] On March 17, 2020, Jeffrey W. Warren, as Chapter 11 Liquidating Trustee (the "**Plaintiff**" or the "**Trustee**") for the jointly administered Chapter 11 estates of Westport Holdings Tampa Limited Partnership ("**Westport**") and Westport Holdings Tampa II Limited Partnership ("**Westport II**") referred to collectively herein as the "**Debtors**", filed an amended adversary complaint (the "**Complaint**"), in the United States Bankruptcy Court Middle District of Florida Tampa Division against Valley National Bank, principal subsidiary to Valley National BankCorp, as successor merger to USAmeriBank.

The Defendant made a $15 million loan to WNT that was secured by a first mortgage on the ALF and SNF as well as a lien on a $3 million cash collateral account (the "**WNT loan**"). At the time of the closing the Debtors transferred roughly $3 million from the Debtor's MLR funds to the Defendant as collateral for the WNT loan.

Previously, the Debtors owed Horizon LP UV Lender ("**Horizon**") approximately $12.1 million. As part of the refinancing, the Debtors secured financing of $9.5 million from CPIF Lending, LLC ("**CPIF**"). The refinancing effectively reduced the Debtors' long-term debt by $2.6 million. In addition, the Debtors received $1.75 million in capital expenditure reserves.

The relationship between the two properties is that: i) they have common ownership, and ii) the health center associated with the Defendant's loan provides beds for residents that transition from the ILF to the health center in order to receive a necessary higher level of care. The health center also provides services to the general public. The Debtors and the ILF were financed by different lenders.

After the March 31, 2014 closing, the Debtors submitted applications with the Florida Department of Financial Services ("**DFS**") Office of Insurance Regulation Division ("**OIR**") to acquire University Village. The applications were ultimately denied. After several months of unresolved regulatory issues, including OIR's refusal to approve the Debtors' new equity owners, OIR's pending suspension of University Village's Certificate of Authority to operate a CCRC, and DFS' pending receivership filings, the Debtors filed petitions seeking bankruptcy protection on September 22, 2016. The Bankruptcy Court appointed Jeffery W. Warren as Debtors' Trustee on November 15, 2016.

## IV.   SUMMARY OF ALLEGATIONS

The Trustee, by and through his counsel, filed an amended complaint on March 17, 2020, alleging the following, among other things:

- Defendant aided and abetted the Debtors' breach of fiduciary duties by structuring, agreeing to, and facilitating the "spin off" of the Debtors' wholly owned subsidiary, WNT, and the corresponding transfer of $3 million of the Debtors' MLR funds to the Defendant as collateral for the WNT loan.[4]

This Report specifically addresses the Trustee's allegations relating to the $3 million MLR funds transfer.

---

[4] 006 2020.03.17 Amended Stipulation to Amend Complaint (amended complaint attached).pdf.

## V.    SUMMARY OF OPINIONS

Based on my education, training, professional experience, review and analysis of the relevant documents in this matter, and independent research, I have reached the following opinions:

- It is not unusual for operating reserve funds of this type (*e.g.*, the MLR) to be pledged as loan or bond collateral.
- Based on my reading of Florida State Statute 651.035 – the "Minimum Liquid Reserve" requirement for an entity regulated by the OIR under this statute does not seem to be violated by such entity pledging its MLR funds.

## VI.    OPINION #1: IT IS NOT UNUSUAL FOR OPERATING RESERVE FUNDS TO BE USED AS COLLATERAL

- Based on my professional experience, it is not unusual in the senior housing industry for lenders to be granted a security interest in an MLR fund or similarly constructed liquidity, construction or debt service reserve funds.
- WNT's assignment and pledge of the MLR was typical and customary for loans of this type in the senior housing industry.
- It is not unusual for a regulated CCRC operator to include MLR funds and similarly constructed liquidity and debt service reserve funds pledged to a lender on their balance sheets and to also include such funds in their statutory financial statements filed with regulatory agencies.
- From the evidentiary record that I have reviewed, the Defendant's actions regarding the MLR funds were taken in good faith as that term is understood and applied in accordance with general industry practice.
- Owners of businesses facing financial distress (such as imminent foreclosure) often seek alternative equity and debt investors and investment structures to provide for an enhanced out-of-court turnaround runway. Often these structures involve creating separate (*i.e.*, siloed) ownership and/or borrowing structures in the place of one consolidated ownership / borrower structure. This is frequently observed in the senior living / ALF / SNF industry, such as when "OpCo / PropCo" structures are implemented with separate investors / lenders. These out-of-court financial restructuring transactions are not always successful, but often provide critical time for a borrower to improve operational cash flow. As such, I do not believe that the presence of this type of restructuring transaction is, in and of itself, an indication of improprieties or questionable conduct.

Based on the record in this matter and my professional experience, granting of a security interest in MLR funds was typical and common.

**VII.    OPINION #2: DEFENDANT HAD GOOD FAITH BASIS TO BELIEVE THAT FLORIDA STATUTE 651.035 – MIMIMUM LIQUID RESERVE REQUIREMENT WAS NOT VIOLATED BY THE LOAN OR SECURITY PLEDGE[5]**

- When making loans in a regulated industry, it is customary for lenders to confirm with borrowers that, *inter alia*, consummation of such loans and the pledging of collateral will not violate any laws or regulations.  In this case, the Defendant followed that practice by obtaining a representation from WNT to that effect.[6]
- The Defendant was provided with, and relied upon, an opinion letter from borrowers' (WNT's) legal counsel opining to the propriety and good-faith conduct of the parties to the loan transaction.[7]
- The Debtors made similar representations in the loan agreement dated March 31, 2014, by and between Westport Holdings, Tampa Limited Partnership, Westport Holdings Tampa II, Limited Partnership and CPIF Lending, LLC. (the "**CPIF Loan Agreement**") that consummation of the loan (and, by extension, that the overall "quasi-integrated" refinancing transactions involving the Defendant) would not violate any laws or regulations.[8]
- Importantly, the Debtors expressly represented to CPIF that the Debtors would comply with Chapter 651 Florida Statutes, sections 651.033 – 651.035 pertaining to the MLR.[9]
- CPIF was also provided with, and relied upon, an opinion letter from borrowers' (Debtors') counsel opining to the propriety and good-faith conduct of the parties to the loan transaction.[10]
- Also important to my analysis is that the record in this matter includes evidence that on multiple occasions the OIR was made aware of the transfer of MLR funds from the Debtors to WNT and subsequently pledged to Defendant per the Assignment and Pledge of Deposit account.[11]
- Furthermore, the Defendant notified the OIR of the location, custody and amount of the MLR funds in a May 12, 2014 letter from the Defendant to the OIR.[12]

---

[5] https://www.flsenate.gov/laws/statutes/2018/651.035.

[6] See Section 3.6 of the loan agreement dated March 31, 2014 between Westport Nursing Tampa, LLC and USAmeriBank (the "**USAmeriBank Loan Agreement**") Bates #99432.1-#99432.52.

[7] See Opinion of Gary, Dytrych & Ryan, PA addressed to USAmeriBank, page three, items (i), (j), and (k) Bates #4036.1.

[8] See CPIF Loan Agreement, Section 3.1.4.

[9] See CPIF Loan Agreement, Section 6.2.

[10] See Opinion of Gary, Dytrych & Ryan, PA addressed to CPIF, page three, items (i), (j), and (k) Bates #99424.1.

[11] Evidence of the Debtors' multiple disclosures to OIR include, but are not limited to: (i) the March 31, 2014 letter to the OIR from Debtors' counsel, and (ii) January 21, 2015 pursuant to a letter from K. Burkholder (Debtors' CFO) informing the OIR of the MLR Fund balance, which included the WNT's pledged $3 million escrow account balance, (iii) deposition of K. Burkholder (p. 49) stating that OIR was aware that (and even approved) the Debtors including WNT's pledged MLR fund in the Debtors' reported MLR calculation, and (iv) MLR calculation for the Westport Holdings Tampa, Limited Partnership provided to the OIR for the period ended December 31, 2014.

[12] Bates #107150.1.

- In addition, from my review of the MLR calculation for the Westport Holdings Tampa, Limited Partnership provided to the OIR for the period ended December 31, 2014, the OIR was notified that $3 million of the MLR was going to be held by USAmeriBank, as predecessor to the Defendant.[13]  In addition, Carolyn Morgan testified that, on March 31, 2014, Mr. Wilhlem Rabke informed the OIR that the $3 million would continue to be considered a portion of the MLR required by the Florida Statue.[14]
- The Defendant acted in good faith when it reviewed and relied upon the WNT's and the Debtors' disclosures and transparency provided to the OIR regarding the loan transactions and MLR encumbrances related thereto.[15]
- Based on my review of the record, there is no indicia of bad faith by the Defendant respecting the Debtors' inclusion of the pledged $3 million MLR as part of its required reporting to the OIR.

The evidentiary record supports the conclusion that the Defendant had a good faith basis to believe that its loan to WNT and pledging of the MLR fund did not run afoul of regulatory requirements and was acceptable to the OIR.


## VIII.    CONCLUSION

Based on my review of the record available in this matter and having evaluated the Defendant's circumstances, I have concluded that the Defendant's actions respecting the security grant in the $3 million MLR funds were typical, not unusual or extraordinary and within the scope of good faith as these terms are viewed within the senior housing industry.

I reserve the right to supplement or modify this Report and the opinions expressed herein due to any new facts or relevant information that may become known to me.

_____
Louis E. Robichaux IV
April 17, 2023
Dallas, Texas

_____

[13] MLR calculation for the Westport Holdings Tampa, Limited Partnership provided to the OIR for the period ended December 31, 2014.
[14] Supplemental Affidavit of Carolyn Morgan dated July 16, 2015, p.8.
[15] Bates #1259255.1-#1259255.17.

**Appendix A**



## CONTACT

+1.214.200.3689 office
+1.214.924.1575 mobile
louis.robichaux@ankura.com

## EDUCATION

MBA, Mays Business School at Texas
A&M University
BBA, Austin Peay State University

## CERTIFICATIONS

CFA® charterholder
Certified Insolvency and
Restructuring Advisor (CIRA)
Certification in Distressed Business
Valuation (CDBV)
Certified Turnaround Professional (CTP)
Texas Licensed Nursing Facility
Administrator (inactive)

## AFFILIATIONS

- Turnaround Management Association
- American Bankruptcy Institute
- Association of Insolvency and
  Restructuring Advisors
- CFA Institute, DFW Society

# Louis E. Robichaux IV

## SENIOR MANAGING DIRECTOR
## DALLAS

Louis Robichaux is a Senior Managing Director based in Dallas, Texas.  He has 30 years of experience in the corporate restructuring and healthcare industries.  Mr. Robichaux provides restructuring, crisis management, financial advisory, and expert witness services to parties in a broad variety of distressed corporate settings, with a significant emphasis on the U.S. healthcare industry.  His current and former clients include providers, payors, secured creditors, unsecured creditor committees, governmental entities, trustees, and other parties in interest.

Mr. Robichaux currently serves as Interim Chief Financial Officer of Quorum Health, a national owner / operator of 23 hospitals.  In this role, Mr. Robichaux is responsible for leading all aspects of the company's financial reporting and capital structure activities.  Mr. Robichaux also recently served as CRO and restructuring advisor for Randolph Health, a 150-bed community nonprofit health system located in Asheboro, NC.  Mr. Robichaux led an extended solicitation process for a viable affiliation partner.  He also managed all stakeholder negotiations, including those with county and state officials that resulted in significant financial support through the passage of SB 681 - Rural Health Care Stabilization Act. Mr. Robichaux aided the client in successfully managing through the onslaught of the COVID-19 pandemic and ultimately completed a successful §363 sale transaction which preserved critical local healthcare.

Mr. Robichaux is nationally recognized for his work in healthcare corporate restructuring having received the M&A Advisor Restructuring Deal of the Year for 2014 ($10 million - $100 million), Turnaround Atlas Awards Pre-Pack Restructuring of the Year, the M&A Advisor Energy Deal of the Year ($100 million to $500 million) and was twice the Turnaround Management Association Non-Profit Transaction of the Year in 2016 and 2020.  His healthcare sector experience includes hospitals, HMO/managed care organizations, outpatient rehabilitation, independent physician practice associations (IPAs), physician practice management companies (PPMs), dental/orthodontic practice management companies (DPMs), ambulatory care clinics, skilled nursing care, continuing care retirement communities (CCRCs), home healthcare/home DME, and institutional pharmacies.

Prior to joining Ankura, Mr. Robichaux was a Principal at Deloitte where he led the healthcare corporate restructuring industry practice.  Prior to his role at Deloitte, Mr. Robichaux was Co-Managing Member and Managing Director at a national boutique crisis management and restructuring firm.  Prior to entering the corporate restructuring field, Mr. Robichaux served in both financial and operating capacities at Kaiser Permanente and the long-term care and senior living industries.

ankura ⬤ | 0

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Hospital Engagements:**

- **Randolph Health** – Retained as CRO and restructuring advisor for this 150-bed community NFP hospital located in Asheboro, NC. Oversaw and led an extended solicitation process for a viable affiliation partner. Led all stakeholder negotiations, including those with county and state officials that resulted in significant financial support through the passage of SB 681 - Rural Health Care Stabilization Act. This support was pivotal in securing a viable suitor. Planned and executed a consensual Chapter 11 bankruptcy filing. Successfully managed through the onslaught of the COVID-19 pandemic and ultimately completed a successful §363 sale transaction which preserved critical local inpatient and outpatient healthcare.

- **Tuomey Healthcare System** – Retained as CRO and restructuring advisor for this $200 million, 300-bed community NFP hospital located in Sumter, SC. The CRO is a key team member in connection with the client's efforts to settle a $237 million Department of Justice (DOJ) lawsuit, as well as assisting with the client's efforts to develop and implement a comprehensive operational performance improvement plan. Awarded the *Turnaround Management Association* Non-Profit Transaction of the Year in 2016.

- **Foundation Healthcare** – Retained as CRO and restructuring advisor for this distressed, publicly traded hospital owner/operator. Oversaw fill spectrum of restructuring services, including liquidity management, creditor negotiation, contingency planning, transaction advisory and bankruptcy preparation / execution.

- **Renaissance Health Systems Inc.** – Served as CRO and led the engagement team serving as restructuring advisors to this $75 million owner/operator of five community hospitals in Texas. Engagement included leading separate §363 sale processes encompassing all hospitals as going concerns.

- **Huntsville Memorial** – Retained by the Walker County Hospital District as its financial and transaction advisor regarding its interest in acquiring Huntsville Memorial Hospital. Provided critical advice and guidance to client and its legal counsel. Led all financial aspects of transaction negotiations. Guided and assisted client in forming an operating joint venture and acquiring the hospital through a Chapter 11 §363 sale.

- **Physician-owned Hospital in the Southwest** – Served as CRO and led the engagement team in connection with this distressed 26-bed specialty acute care facility. CRO was instrumental in reaching a successful resolution of its senior debt obligations and related physician guarantees via an out-of-court sale.

- **Physicians Specialty Hospital of El Paso, East L.P.** – Served as CRO and led the engagement team that served as interim chief financial officer (CFO) and restructuring advisor to this 40-bed specialty acute care facility. Engagement included managing the §363 sale process, as well as serving as post-confirmation plan agent.

- **Healthcare Partners Investments LLC** – Served as interim CFO and restructuring advisor to this operator of three hospitals, two ASCs, and other related health care businesses in Oklahoma City, Oklahoma. With the assistance of the engagement team, the company successfully completed an out-of-court turnaround and recapitalization (including a $20 million equity infusion).

- **Forum Health** – Served as restructuring advisor to the secured bondholder group in connection with the Chapter 11 proceedings of this $450 million three-hospital system based in Northeast Ohio. After a contentious multi-year engagement, assisted the client in achieving 100% recovery plus accrued interest.

- **Large Health System in Puerto Rico** – Retained as restructuring advisor and valuation expert by a large regional lending institution in connection with its ~$400 million senior secured loan to a privately-held health system in Puerto Rico. Engagement included extensive due diligence on the underlying operations, tax analysis, and an expert valuation report.

ank  e  | 1

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Hospital Engagements (continued):**

- **St. Francis' Hospital (Poughkeepsie, NY)** – Retained by the hospital to assist in negotiating a stalking horse bid, and to manage the §363 solicitation and auction process. Our team was awarded the *M&A Advisor* Restructuring Deal of the Year in 2014 ($10 million - $100 million) for this engagement.

- **Sumner Regional Health Systems Inc.** – Retained by Sumner County, Tennessee, to provide valuation and restructuring advisory services in connection with its involvement in the Chapter 11 bankruptcy of Sumner Regional Health Systems Inc. The engagement team's work was instrumental in a successful settlement for the client in respect to its property interest in the debtor's estate.

- **Osteopathic Medical Center of Texas** – Represented the secured bond insurer concerning valuation of the 200-bed hospital's assets, analysis of short-term liquidity, and monitoring of the organization's sale efforts.

- **300-Bed Community Hospital in Southern California** – Retained by the secured bond insurance company to undertake a business plan review, evaluate restructuring options, and monitor ongoing operations.

- **$3 Billion Diversified Inpatient Rehabilitation Company** – Engaged to undertake an extensive field operational review of billing, coding, and reimbursement practices.

- **Bon Secours and Canterbury Partnership for Care (Christ Hospital)** – Retained by state court judge to prepare a financial viability/debt capacity analysis of one of the partnership's two hospitals in connection with a dissolution agreement. Christ Hospital is a $250 million community nonprofit hospital located in Jersey City, New Jersey.

- **Large Hospital System in New Jersey** – Retained by the secured bond insurers in connection with the system's successful out-of-court operational restructuring and turnaround.

- **Large New Mexico Health System** – Retained by the system to perform a strategic assessment and operational turnaround.

- **Doctors Hospital/Houston** – Retained as financial advisor by the unsecured creditors' committee of this $100 million suburban hospital serving an economically/socially disadvantaged patient population.

- **25-Bed Critical Access Hospital** – Retained by this distressed UP Michigan hospital to prepare an operational / financial assessment and develop a series of strategic and restructuring recommendations. Our services and recommendations were critical in the client's successful affiliation and creditor resolution.

- **Dayton Community Hospital & Winnie Community Hospital** – Served as restructuring advisor to these 25-bed critical access hospitals located in Texas.

**Long-Term Care Engagements:**

- **Vencor (n.k.a Kindred Health Care)** – Retained as restructuring advisors prior to and during the company's Chapter 11 restructuring and provided a broad spectrum of restructuring services. Vencor was a $3 billion operator of long-term acute care hospitals and skilled nursing facilities.

- **Orianna Health Systems** – Retained as interim management and restructuring advisor to this operator of 41 skilled nursing facilities. Served as Interim President and CFO (pre-petition) and CRO (post-petition). Provided comprehensive restructuring advisory services, including preparing and executing a complex Chapter 11 bankruptcy filing. Assisted the client in lengthy and complex creditor / landlord negotiations which resulted in a successful confirmed plan and no closure of facilities.

ankura ●●  | 2

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Long-Term Care Engagements (continued):**

- **Senior Living Properties LLC** – Retained as CRO responsible for the financial and operational restructuring of the company, including overall responsibility for day-to-day operations. The organization was a $170 million operator of 80 skilled nursing facilities in Texas and Illinois.

- **Senior Management Services of America** – Served as CRO and led the engagement team, serving as restructuring advisor. Also served as post-confirmation plan agent. Organization was an $80 million operator of skilled nursing facilities in Texas.

- **Medicalodges Inc**. – Retained as turnaround advisor and successfully implemented an out-of-court turnaround and recapitalization, which included an engagement professional serving as interim chief operating officer (COO). Medicalodges is a $90 million operator of skilled nursing facilities and assisted living facilities based in Kansas.

- **Mason Health** – Retained as CRO responsible for the Chapter 11 sale/ creditor resolution for this five-facility owner/operator of skilled nursing facilities in Texas.

- **Oak Health & Rehab Centers** – Retained as restructuring advisor for this owner-operator of 23 skilled nursing facilities. Assisted client with restructuring contingency planning, as well as lender and landlord negotiations. Client successfully resolved its insolvency condition through an out-of-court restructuring.

- **Alterra Health Care Corporation** – Served as financial advisor to the official committee of unsecured creditors. Alterra was a 300-facility assisted living provider.

- **Heritage Health Care of America** – Retained by indenture trustee for $130 million of defaulted tax-exempt bonds. Heritage was a nonprofit operator of ten long-term care facilities.

- **Centennial Health Care Corporation** – Retained by secured lenders in connection with the company's Chapter 11 bankruptcy and ultimate sale. Centennial was a $400 million national operator of long-term care facilities.

- **ResCare** – Retained as an expert witness in connection with a state court civil litigation involving an allegation of Medicaid fraud. ResCare is a publicly-traded provider of mental health services.

**Continuing Care Retirement Community (CCRC) Engagements:**

- **Senior Quality Lifestyles Corporation** – Served as CRO and restructuring advisor for this non-profit operator of six Type A CCRCs. Led a comprehensive restructuring transaction across all communities that resulted in: (i) all communities being operated by top quality operators, (ii) all resident refund obligations being honored in full, and (iii) consensual resolution of ~ $600 million of tax-exempt bond obligations. Awarded the Turnaround Atlas Awards Pre-Pack Restructuring of the Year for the Stayton transaction. Awarded the Turnaround Management Association Non-Profit Turnaround of the Year Award in 2020 for the Stayton and Barrington transactions.

- **National Benevolent Association** – Retained as financial advisor to the official committee of resident/creditors. The National Benevolent Association was a nationwide nonprofit operator of CCRCs.

- **Sears Methodist Retirement System** – Retained as financial and restructuring advisors to the obligated group bondholders of this $77 million, 11-facility CCRC operator. Our team is providing comprehensive operational and financial assessment services in connection with SMRS's Chapter 11 restructuring.

- **Virginia United Methodist Homes of Williamsburg Inc.** – Retained as restructuring advisor prior to and during the company's Chapter 11 restructuring to assist and advise management of the debtor with its bondholder negotiations, financial forecasting, DIP financing negotiations, liquidity management, claims management, and broad-based bankruptcy administrative reporting.

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Continuing Care Retirement Community Engagements (continued):**

- **Vibrant Living Centers** – Retained as restructuring advisor to the secured lender. Vibrant Living is a Chicago-area nonprofit operator of a CCRC and an assisted living facility.

- **The Clare at Water Tower** – Retained as restructuring advisor to this 53-story luxury nonprofit high-rise CCRC located in downtown Chicago. Engagement included restructuring advisory, pre-petition creditor negotiations, cash flow forecasting, M&A due diligence support, broad bankruptcy administrative support, and serving as post-confirmation plan administrator.

- **Franciscan Communities St. Mary of the Woods** – Retained as restructuring advisors to this Ohio-based nonprofit CCRC operator. Engagement included restructuring advisory, pre-petition creditor negotiations, cash flow forecasting, M&A due diligence support, and broad bankruptcy administrative support.

**Managed Care/TPA Engagements:**

- **National Workers Compensation TPA** – Retained by a private equity firm to provide acquisition due diligence support.

- **National Managed Care Services Company** – Retained by a private equity firm to provide financial and operational due diligence in connection with potential acquisition.

- **Large Managed Care /TPA** – Retained by the company as expert witness in connection with a civil litigation.

- **National Health Care Benefits Management Company** – Retained by the company in connection with A/R exposure analysis and process improvement related to billing and collections.

**Home Health/DME Engagements:**

- **Large DME Company** – Retained as financial advisor in connection with settlement of a Medicare overpayment to prepare an "ability to pay" analysis.

- **$400 million Home DME Provider** – Retained by secured lender in connection with a workout of its $340 million credit facility.

- **$500 million Home Health Care Company** – Retained by the company in relation to the restructuring of its credit facility.

- **Specialty Home Health Finance Company** – Retained as financial advisor by a private equity firm in connection with potential acquisition.

**Physician, Life Sciences and Other Health Care Engagements:**

- **Specialty Pharmaceutical Mfg.** – Retained as restructuring advisor for this specialty manufacturer of medical aesthetic pharmaceuticals. Services included liquidity forecasting, restructuring planning and contingent bankruptcy preparations. With the assistance of outside restructuring professionals, the company successfully settled with its adverse stakeholders and avoided bankruptcy.

- **TriVascular** – Retained by the UCC of this medical device manufacturer. Provided expert valuation services and a range of restructuring services. Examined the proposed KERP and KEIP plans and provided expert testimony in support of the UCC's objections thereto. Served in a lead role in negotiations with the debtors and purchaser resulting in a consensual settlement and plan support agreement.

- **Ascent Group** – Retained as Debtor's transaction advisor to manage the §363 marketing and auction process. Based in Dallas, Texas, Ascent Group owned and operated a freestanding emergency room in an affluent suburban area. Our team was instrumental in the successful sale and conclusion to the Chapter 11 bankruptcy case.

- **Sage Physician Partners Inc.** d/b/a American Physician Housecalls – Served as financial advisor to sell the company's assets through a §363 auction process. Based in Dallas, Texas, Sage Physician Partners was a health care management company that provided mobile chronic disease management services in a physician-centric model.

ankura  4

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Physician, Life Sciences and Other Healthcare Engagements (continued):**

- **Genesis Physicians Practice Association** – Retained as financial advisor in connection with the organization's Chapter 11 bankruptcy. Genesis was a 900-physician IPA located in Dallas, Texas.

- **Large Oncology Physician Practice/Cancer Treatment Center** – Retained as financial expert to the company. Prepared a fraudulent transfer analysis in connection with the bankruptcy of its parent organization.

- **Heritage Southwest Medical Group** – Retained as a financial expert by the petitioning creditors to provide testimony in connection with an involuntary bankruptcy filing. The organization was an 1,800-physician IPA

- **Outpatient Rehabilitation Provide** – Retained by a prospective buyer of this SoCal-based 60-clinic provider of outpatient therapy services in connection with a potential acquisition.

- **Texas Cancer Clinic** – Retained as restructuring advisor to this state-of-the-art cancer treatment center. Texas Cancer Clinic was a six-provider cancer outpatient treatment center in San Antonio, Texas.

- **Large Dental Practice Management Company** – Retained as financial advisor to the special committee of the board of directors in connection with alleged management malfeasance and the company's financial distress.

- **Orthodontic Centers of America** – Retained as financial advisor to the secured lenders. The company was a $400 million publicly traded orthodontic practice management firm based in New Orleans, Louisiana.

- **MMH Medical Holdings Inc.** – Served as Interim CEO of this $25 million provider of oncology-focused continuing medical education and peer-reviewed medical journals.

**Representative Engagements from Other Industries:**

- **Collins & Aikman Litigation Trust** – Retained as solvency and valuation expert to the Chapter 7 Trustee of this leading Tier 1 automotive supplier. Prepared expert report and rendered expert testimony.

- **DSI Renal Holdings** – Retained by certain shareholders, directors and officers in connection with a broad avoidance action brought by a Chapter 7 trustee. Conducted an in-depth expert analysis of the circumstances surrounding the solvency, unsuccessful sale effort and subsequent recapitalization of the company. Prepared expert report and rendered expert testimony.

- **Retained to provide expert report and testimony regarding cram-down interest rate, feasibility, and plan terms in the following Chapter 11 matters:**
    1. Texas Grand Prairie Hotel Realty LLC
    2. Ahern Rentals Inc.
    3. Gardens of Grapevine LP
    4. Stafford Rhodes LLC
    5. Security National Properties Funding III LLC
    6. Rob Roy Hughitt
    7. Orion Care Services
    8. The Inn at Orchard Park

- **Venoco** – Retained as Debtors' restructuring advisor in connection with its Chapter 11 bankruptcy process. Our team assisted the Debtor with 13-week cash flow forecasting, liquidity management, support for first day motions, DIP reporting, SOFA / SOAL preparation and other required bankruptcy reporting. Our team and the other professionals involved in the matter were awarded M&A Advisor's Energy Deal of the Year ($100 million to $500 million).

- **Asarco Inc.** – Retained as restructuring advisor to the U.S. Department of Justice in connection with its multibillion environmental claims.

- **Lyondell Chemical** – Retained as restructuring advisor to the U.S. Department of Justice in connection with its multibillion environmental claims.

ank·e  5

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Representative Engagements from Other Industries (continued):**

- **Chemtura Corporation** – Retained as restructuring advisor to the U.S. Department of Justice in connection with its multibillion environmental claims.

- **Oakwood Homes Inc.** – Retained as restructuring advisor by this leading manufacturer and retailer of manufactured and modular homes in connection with its Chapter 11 restructuring.

- **Ruff Hewn** – Retained as restructuring advisor by the company in connection with its Chapter 11 restructuring. Ruff Hewn was a manufacturer/importer of fashion apparel.

- **Large Financial Services Firm** – Served as valuation expert to parent organization in connection with the carve-out and sale of its internal financial consulting business.

- **Manufacturer of Specialty Bicycle Equipment** – Retained as turnaround consultant.

- **Diversified Technology, Real Estate, and Financial Services Company** – Retained by the secured lender to perform due diligence in connection with covenant violations.

**Boards of Directors, Professional and Civic Activities:**

- City Council Member 2006 - 2014, City of Highland Village, Texas

- Past Board Member of Pivot Physical Therapy (Towson, MD)

- Past Board Member – Healthcare Partners Investments, LLC

- Board Member – Highland Village Parks Foundation

- Past president and board member, Dallas/Ft. Worth Chapter of the Turnaround Management Association

- Member, CFA Institute – Dallas/Ft. Worth Chapter

- Member, Association of Insolvency and Restructuring Advisors

- Member, American Bankruptcy Institute

- Member, Turnaround Management Association

**Publications and Presentations:**

- How Nonprofit Fiduciary Duties Impact Healthcare Restructuring; Journal of Corporate Renewal, Turnaround Management Association (September 2021).

- "The Intersection of Senior Housing Operators, their Landlords, and Lenders During COVID-19"; Panelist at the Association of Insolvency & Reorganization Advisors 19th Annual Advanced Restructuring and Plan of Reorganization Conference (November 2020 virtual).

- "Rescuing Hospitals From The Emergency Room: Buying And Selling Hospitals Through Bankruptcy"; Panelist at the 23rd Annual ABI Southeast Bankruptcy Workshop (July 2018)

- What's Happening with Long-Term Skilled Nursing Care Providers? Headwinds, Headaches and Help Wanted!, American Bankruptcy Institute Journal (July 2017).

- "Healthcare Restructuring: Business and Legal Drivers of the Next Wave" Panelist at the meeting of the New York City Bar Association, Bankruptcy and Corporate Reorganization Committee, New York City, NY (June 2017).

- "Healthcare Insolvency Trends," Panelist, Association of Insolvency and Restructuring Advisors, 33rd Annual Bankruptcy & Restructuring Conference, Las Colinas, TX (June 2017).

- "When Health Care Goes on Life Support: The Intersection Between Health Care and Bankruptcy Law"; Panelist at the ABI Southeast Bankruptcy Workshop, Amelia Island, FL (July 2015).

- "The 11's of Tomorrow: Industry Issues, Including Health Care, Retail and Alternative Energy"; Panelist at the ABI Southwest Bankruptcy Conference, Las Vegas, NV (September 2014).
- "Asset Sale Alternatives in the Health Care Space: §363 and Beyond"; Panelist at the ABI Midwestern Bankruptcy Workshop, Kansas City, MO (October 2014). Cram-down Interest Rates, A Survey of the Application of Till by the Federal Circuits in Chapter 11 and the Looming "Efficient Market" Debate; American Bankruptcy Institute Journal (July 2013).

# Louis E. Robichaux IV (continued)
## Senior Managing Director

**Publications and Presentations (continued):**

- CCRCs: Hypertension in the Golden Years, ABI Health Care Committee Newsletter, (January 2013).

- "How to Save a Dying Hospital"; Panelist:

    - Rural Health Association of Oklahoma; Oklahoma City, OK (September 2012).

    - Healthcare Financial Management Association – Oklahoma Chapter, Oklahoma City, OK (April 2012).

    - Healthcare Financial Management Association – Lone Star Chapter, Las Colinas, TX (January 2012).

- "So You Want to Be a CRO?"; Panelist at the 18th Northeast ABI Conference, Newport, RI (July 2011).

- On Life Support? Selling Health Care Assets in Chapter 11; American Bankruptcy Institute Journal (September 2009).

- "Early Intervention: The Uses (and Misuses) of the Turnaround Manager"; Panelist at the ABI Health Care Triage, Chicago (2009).

- "Gift Plans, Settlements and other Confirmation Strategies: Breaking the Rules or Just Making A Deal?"; Panelist at the ABI Winter Leadership Conference, Tucson, AZ (December 2008).

- Government Wears Many Hats in the Health Care Arena; Journal of Corporate Renewal (May 2008).

- Unique Cash-flow Issues Facing Health Care Companies; American Bankruptcy Institute Journal (June 2000)

- "Presented Advanced Topics in Health Care Restructurings"; Panelist at the ABI Southwest Conference, Las Vegas, NV (Summer 2001).

- "Health Care Industry Update"; Panelist at the Dallas/Ft. Worth TMA Conference, Dallas, TX (Spring 2003).

- "Health Care Industry Update"; Panelist at the Southwest Lender Forum, Dallas, TX (Fall 2002).

ank a  7

**LOUIS E. ROBICHAUX IV, CFA, CIRA, CTP, CDBV**

**Expert and Testimony Experience**

| Case | Court | Testimony Type | Issues Involved in Testimony |
|------|-------|----------------|------------------------------|
| In Re: The Inn at Orchard Park, Debtor | U.S. Bankruptcy Court; Eastern Dist. of Texas (04-43893-11) | • Expert Designation (valuation and interest rate expert) accepted by Court<br>• Courtroom testimony | Valuation, plan feasibility, cram-down terms and interest rate, healthcare operations |
| In Re: The National Benevolent Association of the Christian Church (Disciples of Christ), et al. | U.S. Bankruptcy Court; Western Dist. of Texas. (04-50948-11) | • Expert Designation (industry) proposed<br>• Deposition testimony | Financial reporting, management fees and industry standard overhead allocation practices |
| In Re: Heritage Southwest Medical Group, P.A., Alleged Debtor | U.S. Bankruptcy Court; Northern Dist. of Texas (01-30212-HCA-7) | • Expert Designation (industry) proposed<br>• Deposition testimony | Alleged Debtor's payment of debts as they become due and Alleged Debtor's processing of healthcare claims |
| In Re: Genesis Physician Practice Association, Debtor | U.S. Bankruptcy Court; Northern Dist. of Texas (399-35352-SAF-11) | • Expert Designation (industry) accepted by Court<br>• Courtroom testimony | Valuation of the Debtor's capitated medical service contracts, processing of the Debtor's healthcare claims |
| Chesser, et al v. Normal Life, Inc. | State District Court, Travis County, Texas | • Expert Designation (industry) accepted by Court<br>• Deposition and courtroom testimony | Analysis of costs, reimbursement and profitability of a single location of the Defendant's portfolio of facilities |

LOUIS E. ROBICHAUX IV, CFA, CIRA, CTP, CDBV

| Case | Court | Testimony Type | Issues Involved in Testimony |
|---|---|---|---|
| In Re: Physician Specialty Hospital of El Paso East, LP | U.S. Bankruptcy Court; Western Dist. of Texas (07-30633-11) | • Expert Designation (industry and restructuring expert) accepted by Court<br>• Courtroom testimony | Hospital budgeting, cash flow forecasting, need for DIP financing, plan of reorganization feasibility, resolution of disputed insider claims |
| In Re: Renaissance Hospital – Grand Prairie, Inc. d/b/a/ Renaissance Hospital - Grand Prairie | U.S. Bankruptcy Court; Northern Dist. of Texas (08-43775-11) | • Expert Designation (industry, healthcare A/R valuation and restructuring expert) accepted by Court<br>• Courtroom testimony | Hospital budgeting, cash flow forecasting, need for DIP financing, closure of hospitals, sales / marketing process for hospitals, hospital A/R valuation, plan of reorganization feasibility |
| In Re: Senior Management Services of Treemont, Inc. | U.S. Bankruptcy Court; Northern Dist. of Texas (07-30230-HDH-11) | • Expert Designation (industry and restructuring expert) accepted by Court<br>• Courtroom testimony | SNF budgeting, cash flow forecasting, need for DIP financing, sales / marketing process for skilled nursing facilities, settlement of insider avoidance actions, feasibility of plan of liquidation |
| In Re: Royal Manor Management, Inc. | U.S. Bankruptcy Court; Northern District of Ohio, Eastern Division (08-50421-MSS) | • Expert Designation (interest rate) accepted by Court<br>• Deposition and courtroom testimony | Cram-down terms and interest rate |
| In Re: Collins & Aikman Corporation, et al. | U.S. Bankruptcy Court, Eastern District of Michigan (05-55927) | • Expert Designation (valuation and solvency) proposed<br>• Deposition testimony | Valuation and solvency of the debtors within one year prior to the petition date |

LOUIS E. ROBICHAUX IV, CFA, CIRA, CTP, CDBV

| Case | Court | Testimony Type | Issues Involved in Testimony |
|---|---|---|---|
| Doctors Hospital 1997, LP, et. al. v Beazley Insurance Company, Inc. | U.S. District Court, Southern District of Texas (4:08-CV-03340) | • Expert Designation (industry) proposed<br>• Deposition testimony | Expert witness for the insured regarding business interruption loss |
| In Re: Texas Grand Prairie Hotel Realty, LLC | U.S. Bankruptcy Court; Northern Dist. of Texas (10-43242-RFN-11) | • Expert Designation (interest rate) accepted by Court<br>• Deposition and courtroom testimony | Cram-down terms and interest rate |
| In Re: The Gardens of Grapevine Development, L.P., The Gardens of Grapevine Development GP, LLC | U.S. Bankruptcy Court; Northern Dist. of Texas (11-43260-DML-11) | • Expert Designation (interest rate) accepted by Court<br>• Courtroom testimony | Cram-down terms and interest rate |
| In Re: Rob Roy Hughitt | U.S. Bankruptcy Court; Northern Dist. of Texas (12-40653-DML-11) | • Expert Designation (interest rate) accepted by Court<br>• Courtroom testimony | Cram-down terms and interest rate |
| In Re: Stafford Rhodes, LLC, et. al. | U.S. Bankruptcy Court; Middle Dist. Of Georgia (12-70859) | • Report only<br>• No testimony; matter settled prior to testimony | Cram-down terms and interest rate |
| In Re: Security National Properties Funding III, LLC | U.S. Bankruptcy Court; District of Delaware (11-13277) | • Report only<br>• No testimony; matter settled prior to testimony | Cram-down terms and interest rate |

LOUIS E. ROBICHAUX IV, CFA, CIRA, CTP, CDBV

| Case | Court | Testimony Type | Issues Involved in Testimony |
|---|---|---|---|
| In Re: Ahern Rentals, Inc. | U.S. Bankruptcy Court; District of Nevada (11-53860-BTB) | • Report only<br>• No testimony; matter settled prior to testimony | Cram-down terms and interest rate on second lien debt |
| In Re: Ascent Group, LLC | U.S. Bankruptcy Court; N. Dist. of Texas (16-34436-SGJ-11) | • Deposition and Courtroom testimony | Sufficiency of 363 sale solicitation, Debtor's business judgement |
| In Re: AC NW Retail Investment LLC, and Armstrong New West Retail LLC | U.S. Bankruptcy Court; S. Dist. of New York (16-23085 and 16-23086) | • Expert report issued July 2017<br>• Matter ongoing | Cram-down terms and interest rate on senior mortgage debt and mezzanine debt |
| In re: 4 West Holdings, Inc., et. al. | U.S. Bankruptcy Court; N. Dist. of Texas (18-30777 (HDH)) | • Deposition and Courtroom testimony | Testimony in support of first day motions, DIP financing, 9019 settlement motion, and 3019 motion |
| In re: DSI Renal Holdings, LLC, et al., Debtors.<br><br>Alfred T. Giuliano, As Chapter 7 Trustee, Plaintiff, v. Michael Schnabel, et al., Defendants. | U.S. Bankruptcy Court; District of Delaware (Case No. 11-11722 (KJC), Adv. Proc. No. 14-50356 (KJC) (Adv. D.I. 14, 15, 16, 17) | • Deposition testimony | Critical evaluation of the process undertaken by a Board of Directors' actions involving the sale process, subsequent termination of the sale process, and the restructuring process and transaction of a renal dialysis company |

LOUIS E. ROBICHAUX IV, CFA, CIRA, CTP, CDBV

| Case | Court | Testimony Type | Issues Involved in Testimony |
|---|---|---|---|
| In re: SQLC Senior Living Center at Corpus Christi, Inc. d/b/a Mirador | U.S. Bankruptcy Court; S. Dist. of Texas (19-20063) | • Courtroom testimony | Testimony in support of first day motions, DIP financing / cash collateral use, asset sale, and plan confirmation |
| In re: Mayflower Communities, Inc. | U.S. Bankruptcy Court; N. Dist. of Texas (19-30283 (HDH)) | • Courtroom testimony | Testimony in support of first day motions, cash collateral use, asset sale, and plan confirmation |
| In re: Tarrant County Senior Living Center, Inc. | U.S. Bankruptcy Court; N. Dist. of Texas (19-33756 (SGJ)) | • Courtroom testimony | Testimony in support of first day motions and confirmation of prepackaged plan of reorganization |
| In Re: Randolph Hospital, Inc. d/b/a Randolph Health | U.S. Bankruptcy Court; M. Dist. of N. Carolina (20-10247) | • Deposition testimony <br> • Courtroom testimony | Testimony in support of first day motions, contested professional retention, use of cash collateral, bidding / sale procedures, sale hearing, confirmation hearing, various status hearings and other misc. debtor relief |
| In Re: Trivascular Sales LLC, et. al. | U.S. Bankruptcy Court; N. Dist. of Texas (20-31840 (SGJ)) | • Deposition testimony <br> • Courtroom testimony | Expert testimony on management KEIP plans |
| In re: Little River Healthcare Holdings, LLC, et al. | U.S. Bankruptcy Court; W. Dist. of Texas (18-60526-RBK) | • Deposition testimony <br> • Matter ongoing | Opinion regarding financial condition and solvency of the debtors during a certain time period |

LOUIS E. ROBICHAUX IV, CFA, CIRA, CTP, CDBV

| Case | Court | Testimony Type | Issues Involved in Testimony |
|---|---|---|---|
| In re: Willow Tree Consulting Group, LLC, Liquidating Trustee Of The TH Liquidating Trust. | U.S. District Court, Dallas County of Texas (DC-21-01060) | • Expert report issued November 2022<br>• Matter ongoing | Critical evaluation of the approach taken by the company's Directors and Officers leading up to and involving the recapitalization process and subsequent actions leading up to the bankruptcy |
| In re: BSPV-Plano, LLC. | U.S. Bankruptcy Court; E. Dist. of Texas (22-40276-BTR) | • Expert report issued March 2023<br>• Courtroom testimony | Cram-down terms and interest rate |

**Appendix C - Documents Considered**

Bates Stamped Documents

#1259255.1 - #1259255.17 [Assignment and Pledge of Deposit Account]

#107150.1 [May 12, 2014 letter from the Defendant and the Debtors]

SUB_LANDRY_00008714 - SUB_LANDRY_00008719 [Westport Valley CPIF Closing Statement]

#99432.1- #99432.52 [Loan Agreement dated March 31, 2014 between Westport Nursing Tampa, LLC and USAmeriBank.]

#99440.1- #99440.7 [Westport_Holdings_Promissory_Note_Interest]

#286439.1- #286439.4 [Amendment to Loan Agreement dated March 31, 2014 between Westport Nursing Tampa, LLC and USAmeriBank.]

#1986.1 [Letter dated April 4, 2014 titled "USAmeriBank - $20,000,000 Loan - Westport Nursing Tampa, L.L.C."]

#99424.1 [Letter dated March 31, 2014 titled "Loan Agreement (the "Loan Agreement") made as of March 31, 2014, by and between Westport Nursing Tampa, L.L.C., a Florida limited liability company ("Borrower"), and USAmeriBank, a Florida state banking corporation ("Lender").]

#3972.1 [Letter dated March 31, 2014 from Gary, Dytrych & Ryan to USAmeriBank.]

#4036.1 [Letter dated March 31, 2014 from Gary, Dytrych & Ryan to CPIF Lending, LLC.]


Non-Bates Stamped Documents

Amended Complaint filed March 17, 2020.  File titled "006 2020.03.17 Amended Stipulation to Amend Complaint (amended complaint attached).pdf."

Minimum Liquid Reserve calculation of the Westport Holdings Tampa, Limited Partnership to the Office of Insurance Regulation of the State of Florida for the period ended December 31, 2014.

Supplemental Affidavit of Carolyn Morgan dated July 16, 2015.

Deposition of Kathleen Burkholder dated April 24, 2015.

Loan Agreement dated March 31, 2014 between Westport Holdings, Tampa Limited Partnership, Westport Holdings Tampa II, Limited Partnership and CPIF Lending, LLC.


Public Research

Florida Statue 651.035 at https://www.flsenate.gov/laws/statutes/2018/651.035.