# WILLIAMS MULLEN

Direct Dial: 804.420.6395
wrabke@williamsmullen.com

March 31, 2014

<u>FED-EX DELIVERY</u>

Office of Insurance Regulation
Specialty Product Administration
200 East Gaines Street
Tallahassee, FL   32399-0331

Re:    <u>University Village MLR Escrow Transfer</u>

To Whom It May Concern:

This letter is being delivered on behalf of Westport Holdings Tampa Limited Partnership, a Delaware limited partnership (the "ProviderLP"), and Westport Nursing Tampa, L.L.C., a Florida limited liability company (the "ProviderLLC") that is owned by the identical owners as the ProviderLP, which together with another affiliate operate the University Village Retirement Community, a residential continuing care retirement community located in Hillsborough County, Florida (the "Community").  The ProviderLP has been issued a certificate of authority from the State of Florida to provide continuing care at the Community.  The ProviderLP is required by Section 651.035, Florida Statutes (the "MLR Statute"), to establish an escrow account (the "MLR Escrow") in a Florida bank, a Florida savings and loan association, or a Florida trust company acceptable to the Office of Insurance Regulation of the State of Florida (the "Department").  Currently the ProviderLLC is a wholly-owned subsidiary of ProviderLP; however, the Community is undergoing a refinancing and restructuring (the "Restructuring") to cause the ProviderLLC to become a sister entity to the ProviderLP in lieu of it being a subsidiary. Upon the completion of the Restructuring, each of the ProviderLP and the ProviderLLC will maintain separate MLR Escrows under the MLR Statute.

Currently, the entire MLR Escrow of the ProviderLP is held by Regions Bank, pursuant to that certain Agreement for University Village Minimum Liquid Reserve Escrow dated June 22, 2004 (the "Existing MLR Agreement").  The ProviderLP is hereby providing notice as required by the MLR Statute, that as part of the Restructuring, it is moving $3,000,000 (the "Transferred Amount"), representing a portion of the ProviderLP MLR Escrow, from Regions Bank to USAmeriBank, a Florida state banking corporation ("USAB"), on behalf of the ProviderLLC. This move from Regions Bank to USAB is expected to be completed on or before March 31, 2014.  The Transferred Amount shall be held at USAB under the Westport Nursing Tampa LLC Escrow Account, identified as Account Number 500106000, pursuant to that Assignment and Pledge of Account (Cash Collateral Account) between the ProviderLLC and USAB, which is attached hereto as Exhibit A.  The Transferred Amount is a requirement for the funding of a mortgage loan (the "Mortgage Loan") by USAB, as evidenced by the promissory note (the "USAB Note") attached hereto as Exhibit B.  The USAB Note attached is not in final form, but this version is substantially final.

**EXHIBIT** $wk
12
4/15/23

**Exhibit Q**

Williams Mullen Center | 200 South 10th Street, Suite 1600 (23219) P.O. Box 1320 Richmond, VA  23218 | www.williamsmullen.com
T 804.420.6000 | F 804.420.6507 | DC NC VA | A Professional Corporation

# WILLIAMS MULLEN

Office of Insurance Regulation
March 31, 2014
Page 2

USAB, as a condition of the Mortgage Loan, is requiring principal, interest, fees, taxes and insurance in the amount of $3,000,000 to be escrowed at USAB for the term of said Mortgage Loan.  The transfer of the Transferred Amount shall satisfy this condition, and as such, the Transferred Amount shall continue to be considered a portion of the MLR Escrow pursuant to Section 1(b) of the MLR Statute that is now segregated between two different lenders for the Community.  The remainder of the MLR Escrow is remaining with Regions Bank under control of the Existing MLR Agreement.  Further details on the Restructuring and the debt allocation between the ProviderLP and the ProviderLLC will be provided in the Form OIR-A3-477 (rev. 07/03) to be filed with the Department by May 1.

If you have any questions about the matters describe in this letter, please call me at the number above.

Sincerely,

W. Wilhelm Rabke

25150532_3

# WILLIAMS MULLEN

## EXHIBIT A

**Assignment and Pledge of Account (Cash Collateral)**

[Attached]

### ASSIGNMENT AND PLEDGE OF DEPOSIT ACCOUNT
**(Cash Collateral Account)**

**THIS ASSIGNMENT AND PLEDGE OF DEPOSIT ACCOUNT (Cash Collateral Account)** (this "Assignment"), dated as of the _____ day of March, 2014, by **WESTPORT NURSING TAMPA, L.L.C.**, a Florida limited liability company ("Pledgor"), in favor of **USAMERIBANK**, a Florida banking corporation ("Lender").

### R E C I T A L S:

A.  Pledgor has requested a loan from Lender (the "Loan") evidenced by that certain Promissory Note of even date herewith by Pledgor, payable to Lender in the principal amount of $15,000,000.00 (including all amendments thereto and as the same may be hereafter amended, modified or extended, the "Note"). The Loan is also evidenced by a certain Loan Agreement between Pledgor and Lender of even date herewith (including all amendments thereto and as the same may be hereafter amended or modified, the "Loan Agreement") and by certain other Loan Documents (as defined in the Loan Agreement).

B.  Pursuant to the Loan Documents and as a condition to Lender making the Loan, Pledgor is required to deposit and maintain certain Cash Collateral (as defined in the Loan Documents) in an account established for such purpose and Pledgor is required to assign and pledge to Lender such account as additional collateral security for all payment and performance obligations with respect to the Loan (collectively, the "Loan Obligations"). This Assignment is therefore being provided by Pledgor for such purposes and as an inducement to Lender to make the Loan to Pledgor.

C.  The Cash Collateral Funds (as defined below) deposited by Pledgor hereunder shall be included in the Pledgor's reserve requirements as required under Section 651.035 of the Florida Statutes (the "MLR Statute"), as such Cash Collateral Funds meet the statutory uses allowed under Section 1(b) of the MLR Statute.

D.  The MLR Statute provides that the Office of Insurance Regulation of the State of Florida (the "Department") shall have information rights regarding the Cash Collateral Funds.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing recitals and other good and valuable consideration, the parties agree as follows:

1.  **Recitals.** The recitals hereto are true and correct.

2.  **Establishment of Cash Collateral Account.** Pursuant to the Loan Documents, Pledgor is required to establish a Cash Collateral Account for purposes of holding deposits of required Cash Collateral. Pledgor has agreed to make the required deposits in connection with closing of the Loan (all funds so deposited, together with interest from time to time earned thereon and together with moneys thereafter deposited with Lender

as Cash Collateral for the Loan, are referred to herein as the "Cash Collateral Funds"). All Cash Collateral Funds shall be maintained in one or more interest-bearing deposit accounts offered by Lender for such purpose (such deposits accounts, together with any additions, replacements or substitutions thereof, are herein collectively referenced as the "Deposit Collateral Account"). All interest which shall accrue on the Deposit Collateral Account shall remain in the Deposit Collateral Account and shall become a part of the Cash Collateral Funds. As of the date hereof, USAmeriBank Account No. 500106000 in the name of Pledgor has been set up to serve as the Deposit Collateral Account.

3.    **Control and Use of Cash Collateral Funds.** The Deposit Collateral Account shall at all times be under Lender's control. Pledgor shall have no access to, and shall not be permitted to make any withdrawals of, Cash Collateral Funds from the Deposit Collateral Account without Lender's prior consent.

4.    **Grant of Security Interest.** In order to secure the Loan Obligations, Pledgor hereby assigns, sells, transfers, pledges, sets over and delivers to the Lender and grants Lender a security interest in the Deposit Collateral Account and in the Cash Collateral Funds at any time held on deposit with the Lender in the Deposit Collateral Account, including all accrued interest thereon, together with all certificates or other writings now or hereafter issued by the Lender as evidence thereof.

5.    **Payment Upon Certain Defaults.** Upon the occurrence of any Event of Default under any of the Loan Documents, the Lender may, and is hereby authorized, in Lender's sole discretion, to apply all or any portion of the Cash Collateral Funds (including any interest which has accrued thereon) in full or partial payment of the Loan Obligations in such order and manner as Lender shall deem appropriate in its sole discretion.

6.    **Representations and Warranties.** Pledgor hereby represents and warrants that Pledgor has full power and authority to pledge the Deposit Collateral Account and the Cash Collateral Funds to the Lender, and that the Deposit Collateral Account is free and clear of all liens and encumbrances of any nature whatsoever (other than the assignment, pledge and security interest created hereby), and Pledgor will not further encumber the Deposit Collateral Account without Lender's prior written consent.

7.    **Termination of Assignment.** This is a continuing pledge and assignment, and this Assignment shall remain in full force and effect until such time as Pledgor pays in full all Loan Obligations, at which time this Assignment shall become null and void; otherwise, it shall remain in full force and effect until proper release thereof is made in writing by the Lender.

8.    **No Waivers or Releases by Lender to Affect Assignment.** The Lender may take or release any other security and may release any party primarily or secondarily liable for any obligations hereby secured, and may grant extensions, renewals, or indulgences of such obligations, or any of them, all without releasing or in any way affecting this Assignment. Lender may proceed under this Assignment without first resorting to any other collateral or making demand on any other party liable on the obligations hereby secured.

9.      **Severability.** The provisions of this Assignment are severable; inapplicability or unenforceability of any provision shall not limit or impair the operation or validity of any other provisions of this Assignment.

10.     **Successors and Assigns.** This Assignment and all representations and warranties, powers, and rights contained herein shall bind the successors and assigns of Pledgor and shall inure to the benefit of the Lender and its successors and assigns.

11.     **Notices.** All notices and other communications provided for hereunder shall be given at the address of Pledgor and Lender as set forth in the Loan Agreement and shall be deemed received in accordance with the provisions set forth in the Loan Agreement. When requested in writing by Pledgor, Lender shall provide account information on the Deposit Collateral Account to the Pledgor or the Department.

12.     **Tax Identification Number.** Interest accruing from time to time on the Deposit Collateral Account will be reported under the tax identification number of Pledgor to the Internal Revenue Service, and any disbursements to Pledgor will be subject to any applicable withholding requirements, notwithstanding anything to the contrary herein.

13.     **Further Assurances.** Pledgor will, at its expense, at any time and from time to time, promptly execute and deliver all further instruments and documents and take all further action that may be necessary or desirable or that the Lender may reasonably request in order (i) to perfect and protect the security interest created or purported to be created hereby; (ii) to enable the Lender to exercise and enforce its rights and remedies hereunder in respect of the Cash Collateral Funds.

14.     **Controlling Law.** THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS ASSIGNMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA.

15.     **Waiver of Jury Trial.** PLEDGOR AND LENDER HEREBY WAIVE ANY RIGHT THAT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS ASSIGNMENT OR THE LOAN, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR PLEDGOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS ASSIGNMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS ASSIGNMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. PLEDGOR AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS ASSIGNMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF PLEDGOR AND LENDER IRREVOCABLY TO WAIVE THEIR

RIGHTS TO TRIAL BY JURY AS AN INDUCEMENT OF LENDER TO CONTINUE TO MAKE THE LOAN AVAILABLE TO PLEDGOR AND TO MODIFY CERTAIN TERMS OF THE LOAN DOCUMENTS, AND THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN PLEDGOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF,** the parties have caused this Assignment to be executed and delivered as of the day and year first above written.

PLEDGOR:

**WESTPORT NURSING TAMPA, L.L.C.,**
a Florida limited liability company

By:   BHMSUNI, LLC
        a Delaware limited liability company,
        Its managing member

        By:   BHMS Investments, LP
                a Delaware limited partnership
                Its managing member

                By: _____
                      Kevin L. Angelis
                      Managing Partner

**STATE OF _____)**

**COUNTY OF _____)**

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by _____ as the Managing Partner of BHMS Investments, LP, a Delaware limited partnership, as managing member of BHMSUNI, LLC, a Delaware limited liability company, as managing member of Westport Nursing Tampa, L.L.C., a Florida limited liability company. He is personally known to me or has produced a driver's license as identification.

                                _____
                                  Notary Public

[SEAL]

                                My Commission Expires:_____

**LENDER:**

**USAMERIBANK,**
a Florida state banking corporation


By:   _____
             Trey Korhn
             Its Vice President


**STATE OF** _____ )

**COUNTY OF** _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by Trey Korhn as Vice President of USAmeriBank, a Florida banking corporation. He is personally known to me or has produced a driver's license as identification.



             _____
             Notary Public

[SEAL]

             My Commission Expires:_____

# WILLIAMS MULLEN

**EXHIBIT B**

**USAB Note**

[Attached]

## PROMISSORY NOTE

$15,000,000.00                                                    March _____, 2014

        **FOR VALUE RECEIVED**, the undersigned, **WESTPORT NURSING TAMPA, L.L.C.**, a Florida limited liability company ("Borrower") promises to pay to the order of **USAMERIBANK**, a Florida state banking corporation (hereinafter, together with any other holder of this Note, "Lender"), at 113 E. Whiting St., Tampa, FL 33602, Attn: Trey Korhn, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of **FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00)**, or such much thereof as may be advanced hereunder from time to time, together with interest on the unpaid principal amount from time to time outstanding at the rate hereinafter set forth, such principal and interest to be payable as set forth in this Note.

       1.    **Defined Terms.** As used herein, the following terms shall have the following meanings:

       **"Business Day"** shall have the meaning set forth in the Loan Agreement.

       **"Closing Date"** shall mean the date on which the initial advance of any of the principal amount of the Loan is made by Lender.

       **"Default Rate"** shall mean a per annum rate of interest equal to the lesser of (a) eighteen percent (18%), or (b) the maximum rate permitted under applicable law.

       **"Event of Default"** shall have the meaning set forth in Section 8 hereof.

       **"Fixed Rate"** means a fixed interest rate of 4.95% per annum.

       **"Loan Agreement"** shall mean that certain Loan Agreement of even date herewith between Borrower and Lender, as the same may hereafter be amended.

       **"Loan Obligations"** shall mean the aggregate of all principal and interest owing from time to time under the Note and all fees, premiums (if any), expenses, charges and other amounts from time to time owing under this Note or the other Loan Documents, and all covenants, agreements and other obligations from time to time owing to, or for the benefit of, Lender pursuant to the Loan Documents.

       **"Maturity Date"** means March _____, 2016.

       **"Monthly Debt Service Payment"** shall mean any payment of interest or principal and interest due on a Scheduled Payment Date hereunder.

       **"Person"** shall mean any individual, corporation, partnership, joint venture, association, trust, unincorporated organization, and any governmental authority.

20391638 v5

"**Scheduled Payment Date**" shall mean each date upon which a payment becomes due from Borrower to Lender under this Note.

*All other capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement.*

2.      **Advances of the Loan.**  An advance of the Loan to Borrower shall be made on the Closing Date, subject to the terms of the Loan Agreement.  No Advances of the Loan shall be permitted after the Closing Date, except as may otherwise expressly be permitted pursuant to the Loan Agreement.

3.      **Payment Terms.**  Principal and interest under this Note will be paid in installments as follows:

(a)      On May 1, 2014, and on the same day of each successive calendar month thereafter to and including March 1, 2016, Borrower shall make a payment or principal and interest to Lender equal to $98,579.51.

(b)      If not due earlier pursuant to the terms of this Note, Borrower shall pay to Lender all outstanding principal under this Note, together with all accrued and unpaid interest, on the Maturity Date.

Each payment hereunder shall be paid to Lender in immediately available funds on the applicable Scheduled Payment Date, except if such Scheduled Payment Date is not a Business Day, such payment shall then be due on the first Business Day after such Scheduled Payment Date.  Each payment received by Lender will be applied first to the payment of interest accrued at the applicable interest rate and then to the reduction of the unpaid principal balance of this Note.

4.      **Interest.**

(a)      Except as otherwise expressly provided herein, the outstanding principal balance of this Note will bear interest at the Fixed Rate.

(b)      Following the occurrence and during the pendency of an Event of Default, all outstanding Loan Obligations will bear interest at the Default Rate, and such Default Rate shall remain in full force and effect until the Event of Default is cured, and thereafter shall revert to the Fixed Rate hereunder.

(c)      All interest on the outstanding principal amount hereunder, whether accruing at the Fixed Rate or the Default Rate, shall be calculated on a simple interest basis for a 360-day year by multiplying the outstanding principal amount by the applicable per annum rate, multiplying the product thereof by the actual number of days elapsed between Scheduled Payment Dates, and dividing the product so obtained by 360.

5.    **Prepayments.**

(a)    Borrower may prepay principal hereunder in whole or in part, at any time and from time to time; provided, however, any prepayment of principal made on or prior to September _____, 2015 must be accompanied by a prepayment premium equal to one percent (1%) of the principal amount being prepaid.  No prepayment premium shall be payable for any prepayments of principal hereunder after September _____, 2015.

(b)    Any amounts prepaid may not be reborrowed.  Partial prepayments will be applied to principal installments due in their inverse order of maturity.

6.    **Late Charges; Interest on Overdue Installments; Collection Costs.**

(a)    Any Monthly Debt Service Payment due hereunder not received by Lender within ten (10) days of the Scheduled Payment Date will be subject to a late charge which shall be due from Borrower to Lender equal to the lesser of (i) five percent (5%) of the amount past due, or (ii) the maximum amount permitted by applicable law, provided, no late charges shall be applicable to the balloon principal payment due at maturity.

(b)    Lender shall be entitled to recover all costs of collecting, securing or attempting to collect or secure this Note, including, without limitation, court costs and reasonable attorneys' fees, including reasonable attorneys' fees for preparation of litigation and in any appellate or bankruptcy proceedings.

7.    **Security.**  This Note is evidenced and secured by the Loan Documents and the Collateral.

8.    **Events of Default.**  The occurrence of any of the following events shall constitute an "Event of Default" hereunder and under each of the other Loan Documents:

(a)    Failure by Borrower to make any payment of interest or principal or any other sum as and when due; or

(b)    The occurrence of any Event of Default under any other Loan Document which is not cured after any applicable notice and expiration of any applicable cure period.

9.    **Usury.**  In no event shall the amount of interest due or payable hereunder (including interest calculated at the Default Rate) exceed the maximum rate of interest allowed by applicable law, and in the event any such payment is inadvertently paid by Borrower or inadvertently received by Lender (or any subsequent holder hereof), then such excess sum shall be credited as a payment of principal, unless Lender (or any subsequent holder hereof) elects to have such excess sum refunded to Borrower forthwith, which refund Borrower hereby agrees to accept.  It is the express intent hereof that Borrower not pay and Lender (or any subsequent holder hereof) not receive, directly or indirectly, interest in excess of that which may be legally paid by Borrower under applicable law.

10.    **Relationship of Parties.**  Borrower and Lender agree that the relationship between them shall be solely that of debtor and creditor.  Nothing contained in this Note or in

20391638 v5

any other Loan Document shall be deemed to create a partnership, tenancy-in-common, joint tenancy, joint venture or co-ownership by or between Borrower and Lender. Lender (or any subsequent holder hereof) shall not be in any way responsible or liable for debts, losses, obligations or duties of Borrower with respect to any Collateral given as security for this Note or otherwise. Borrower, at all times consistent with the terms and provisions of this Note and the Loan Documents, shall be free to determine and follow their own policies and practices in the conduct of their business.

11. **Miscellaneous.**

(a) Borrower agrees that, as of the date hereof, there are no defenses, equities, or setoffs with respect to the obligations set forth herein.

(b) All amounts due hereunder shall be payable in lawful money of the United States of America.

(c) With respect to the amounts due under this Note, Borrower waives the following to the fullest extent permitted by law:

(i) All rights of exemption of property from levy or sale under execution or other process for the collection of debts under the Constitution or laws of the United States or any state thereof;

(ii) Except for any notices specifically required under the Loan Documents, demand, presentment, protest, notice of dishonor, notice of non-payment, diligence in collection, and all other requirements necessary to charge or hold the Borrower liable on any obligations hereunder; and

(iii) Receipt of any further notice from or acknowledgment by Lender of any collateral now or hereafter deposited as security for the obligations hereunder.

(d) Section headings are inserted for convenience of reference only and shall be disregarded in the interpretation of this Note.

(e) The provisions of this Note shall be construed without regard to the party responsible for the drafting and preparation hereof.

(f) Lender may, at its option, release any Collateral given to secure the indebtedness evidenced hereby, and no such release shall impair the obligations of Borrower to Lender.

(g) Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein.

(h) Lender shall not by any act, delay, omission, or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid unless in writing and signed by Lender. All rights and remedies of Lender under the terms of this Note,

20391638 v5

the other Loan Documents and applicable statutes or rules of law, shall be cumulative and may be exercised successively or concurrently.

(i)     The obligations of Borrower hereunder shall be binding upon and enforceable against Borrower and its respective successors and assigns.

(j)     Any provision in this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

12.     GOVERNING LAW.    THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA.

13.     JURISDICTION.    LENDER MAINTAINS AN OFFICE IN HILLSBOROUGH COUNTY, FLORIDA AND THE PROPERTY IS LOCATED IN HILLSBOROUGH COUNTY, FLORIDA, AND THEREFORE BORROWER ACKNOWLEDGES THAT THE SAME SHALL CONSTITUTE SUFFICIENT MINIMUM CONTACTS OF BORROWER WITH HILLSBOROUGH COUNTY AND THE STATE OF FLORIDA FOR THE PURPOSE OF CONFERRING JURISDICTION UPON THE FEDERAL AND STATE COURTS PRESIDING IN SUCH COUNTY AND STATE. BORROWER CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING ARISING HEREUNDER MAY BE BROUGHT IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA OR THE APPLICABLE UNITED STATES DISTRICT COURT FOR HILLSBOROUGH COUNTY, FLORIDA AND ASSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY SUCH COURT IN ANY ACTION OR PROCEEDING INVOLVING THIS NOTE.   NOTHING HEREIN, HOWEVER, SHALL LIMIT THE JURISDICTION OF ANY OTHER COURT.

14.     WAIVER OF JURY TRIAL.    BORROWER AND LENDER HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE, OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF THE BORROWER AND LENDER IRREVOCABLY TO WAIVE THEIR RIGHTS TO TRIAL BY JURY AS AN INDUCEMENT TO LENDER TO MAKE THE LOAN, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER

BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

15.  <u>Documentary Stamp Tax, Intangible Taxes and Mortgage Taxes</u>. Florida documentary stamp tax in the amount of $52,500.00 has been paid in connection with and affixed to the recorded Florida mortgage securing this Note pursuant to Section 201.08, Florida Statutes.  Florida non-recurring intangible tax in the amount of $30,000.00 has been paid in connection with the recording of such Florida mortgage pursuant to Section 199.33, Florida Statutes.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, Borrower has caused this instrument to be properly executed and delivered as of the date hereof under seal.

BORROWER:

**WESTPORT NURSING TAMPA, L.L.C.,**
a Florida limited liability company

By:    BHMSUNI, LLC
a Delaware limited liability company,
Its managing member

        By:    BHMS Investments, LP
a Delaware limited partnership
Its managing member

            By: _____
Kevin L. Angelis
Managing Partner

[SEAL]

20391638 v5

Promissory Note - Signature Page
Westport Nursing Tampa, LLC
19200-37