ORDERED.

Dated:  November 09, 2018

_Michael G. Williamson_
Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8167-MGW |
| WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8168-MGW |
| Debtors. | *Jointly Administered under Case No. 8:16-bk-8167-MGW* |

_____/

### FINAL ORDER GRANTING LIQUIDATING TRUSTEE'S EXPEDITED MOTION FOR AUTHORITY TO OBTAIN POST-CONFIRMATION FINANCING AND GRANT SENIOR LIENS, SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 364(c) AND (d) AND F.R.B.P. 4001

THESE CASES came on for a hearing on November 5, 2018 (the "**Hearing**") upon the

Expedited Motion for Authority to Obtain Post-Confirmation Financing and Grant Senior

Liens, Superpriority Administrative Expense Status, and Adequate Protection Pursuant to 11

U.S.C. §§ 364(c) and (d) and Federal Rule of Bankruptcy Procedure 4001 (Doc. No. 1171) (the

"**Motion**"), filed by Jeffrey W. Warren, Esq. as Liquidating Trustee (the "**Liquidating**

**Trustee**") for Westport Holdings Tampa, Limited Partnership ("**Westport I**") and Westport

Holdings Tampa II, Limited Partnership ("**Westport II**," and together with Westport I, the

1


DEFENDANT'S EXHIBIT
Bartle # 12
4.20.23 DK

"**Debtors**"), seeking the entry of an order authorizing and directing the Debtors and the Liquidating Trustee, on behalf of the Debtors and on behalf of Westport Nursing Tampa, L.L.C. ("**WNT**," and together with the Debtors, the "**Credit Parties**"), to, among other things:

(i) Obtain senior secured financing (the "**Post-Confirmation Financing**") in a maximum principal amount of up to $2 million (the "**Principal Amount**"), with an option to obtain an additional $500,000, from a post-confirmation lender (the "**Post-Confirmation Lender**"), in accordance with the terms of this Order, the Motion, and the Term Sheet attached to the Motion as Exhibit A (the "**Term Sheet**"), as modified on the record at the Hearing and herein, pursuant to sections 364(c)(1), 364(d), and 364(e) of the Bankruptcy Code and Rule 4001(c) of the Bankruptcy Rules;

(ii) Enter into, execute and deliver to the Post-Confirmation Lender certain financing agreements, documents and instruments required or requested by the Post-Confirmation Lender in order to memorialize and effectuate the Post-Confirmation Financing, including, without limitation, a credit agreement (the "**Post-Confirmation Credit Agreement**") executed by the Debtors; a guaranty executed by WNT (the "**WNT Guaranty**") guarantying the timely and full payment of all of the obligations of the Debtors under the Post-Confirmation Credit Agreement; one or more security agreements and mortgages executed by the Debtors encumbering all of the assets and properties of the Debtors, including without limitation all equity and membership interests of the Debtors in WNT, the Cash Collateral Account, the Liquidating Trustee Reserve Account, and all Causes of Action, whether now owned or hereafter acquired other than Avoidance Actions (as defined below) (the "**Debtor Collateral**");[1] one or more security agreements and mortgages executed by WNT encumbering all of the assets and properties of WNT (the "**WNT Collateral**");[2] and any other related financing agreements, documents and instruments executed by one or more of the Credit Parties, all in accordance with, and consistent

---

[1] For the avoidance of doubt, the Debtor Collateral includes all property and other collateral specifically described in any security agreements and mortgages executed by or on behalf of the Debtors.

[2] For the avoidance of doubt, the WNT Collateral includes all property and other collateral specifically described in any security agreements and mortgages executed by or on behalf of WNT.

with the Term Sheet, as modified on the record at the Hearing and herein (collectively, together with the Post-Confirmation Credit Agreement and the WNT Guaranty, the "**Post-Confirmation Financing Agreements**");

(iii)    Grant to the Post-Confirmation Lender automatically perfected, first priority, priming security interests in, and liens on the Debtor Collateral pursuant to section 364(d)(1) of the Bankruptcy Code, which liens shall not be subordinate to any other liens, claims, charges, encumbrances, security interests, or surcharges, including surcharges under section 506(c) or any other section of the Bankruptcy Code;

(iv)    Grant to the Post-Confirmation Lender automatically perfected security interests in, and liens on the WNT Collateral, which liens shall be subject and subordinate only to the extent of any valid, perfected and enforceable liens and security interests which exist as of the date hereof in the WNT Collateral in favor of USAmeriBank and its successor Valley National Bank ("**VN**") or CNH Finance Fund I, L.P. f/k/a SCM Specialty Finance Opportunities Fund, L.P. ("**CNH**") (such existing liens in the WNT Collateral are hereinafter referred to as the "**Existing WNT Liens**;" the obligations and liabilities of the Credit Parties owing to the Post-Confirmation Lender, including, without limitation, the Non-Financial Terms (as defined below), under the Post-Confirmation Financing Agreements are hereinafter referred to as the "**Post-Confirmation Obligations**;" the Debtor Collateral and the WNT Collateral, including, without limitation, any Sale Proceeds (as defined below), are hereinafter collectively referred to as the "**Post-Confirmation Collateral**;" and the liens and security interests of the Post-Confirmation Lender in the Post-Confirmation Collateral are hereinafter referred to as the "**Post-Confirmation Liens**");

(v)    Grant the Post-Confirmation Lender allowed super-priority administrative expense claims, pursuant to section 364(c)(1) of the Bankruptcy Code, in the amount of the Post-Confirmation Obligations;

(vi)     Use the proceeds of the Post-Confirmation Financing solely in accordance with the budget attached to the Motion as Exhibit B (the "**Budget**"), as such Budget may be modified from time to time in accordance with the terms of the Post-Confirmation Financing Agreements;

(vii)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the Post-Confirmation Financing, including permitting the Post-Confirmation Lender to exercise all rights under the Post-Confirmation Financing Agreements without further order of the Court;

(viii)   Waive any applicable stay as provided in the Bankruptcy Rules (expressly including Rule 6004) and permit immediate effectiveness of this Order; and

(ix)     Grant the Post-Confirmation Lender such other and further relief as the Court deems necessary, appropriate, equitable, proper and consistent with the terms of the Motion.

Having considered the Motion, the Term Sheet, the Declaration of Jeffrey W. Warren, as Liquidating Trustee, supporting the Motion (Doc. Nos. 1183, 1184), the objection to the Motion by CPIF Lending, LLC ("**CPIF**") (Doc. Nos. 1175, 1180) (the "**CPIF Objection**"), the objection to the Motion filed by VN (Doc. No. 1185) (the "**VN Objection**"), and the oral objection to the Motion made at the Hearing by SouthPoint Global Investments, LLC ("**SouthPoint**") (the "**SouthPoint Objection**"), all other pleadings filed in connection with the Motion, all arguments, proffers and any evidence presented at the Hearing, including but not limited to the Liquidating Trustee's announcement at the Hearing that CPIF had agreed to resolve the CPIF Objection to the Post-Confirmation Financing offered by Rosemawr Management LLC or its affiliated designee ("**Rosemawr**") by becoming the Post-Confirmation Lender on the same terms and conditions as proposed in the Motion and the Term Sheet as modified by a reduction of the Funding Fee (as defined in the Term Sheet) to 1% and the elimination of the Success Fee (as defined in the Term Sheet), as well as certain additional non-financial terms set forth in full below (the "**Non-Financial Terms**"), and determining that, in accordance with Rules 2002, 4001(b) and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), due and proper notice of the Motion and the Hearing was given under the

Case 8:10-bk-08167-CED Doc 1197 Filed 11/14/18 Page 5 of 20

circumstances, the Court hereby finds that approval of the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Credit Parties, is otherwise fair and reasonable, is in the best interests of the Credit Parties and their creditors, and is essential for the preservation of the value of the Credit Parties' assets. Accordingly,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. **Jurisdiction and Venue.** This Court has jurisdiction over the Motion, the parties and all property and assets affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue for these proceedings and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Motion include Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rule 4001.

B. **Notice.** Notice of the Motion, the Hearing, the form of the Post-Confirmation Credit Agreement (which may be modified by the Post-Confirmation Lender and the Credit Parties as necessary or appropriate to document the agreements approved herein), and the proposed form of this Order has been provided to the U.S. Trustee, SouthPoint and its counsel, CPIF and its counsel, VN and its counsel, CNH and its counsel, and all known holders of prepetition liens against the Credit Parties' property and assets, and all parties listed on the Local Rule 1007-2 Parties in Interest List for these cases. Under these urgent circumstances, requisite notice of the Motion and the relief requested thereby has been given in accordance with (i) Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, Sections 102(1), 363 and 364 of the Bankruptcy Code, and (ii) the Bankruptcy Rules and the Local Bankruptcy Rules, and no other notice need be given for the entry of this Order.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Case 8:20-bk-08167-CED Doc 1137 Filed 11/14/18 Page 6 of 20

C.     **Authority**.  Each of the Liquidating Trustee and the Credit Parties has all requisite power and authority to execute and deliver the Post-Confirmation Financing Agreements to which it is a party, to grant the Post-Confirmation Liens, and to perform its obligations thereunder.

D.     **Good Cause; Need for Post-Confirmation Financing**.  Good cause has been shown for the entry of this Order.  The ability of the Credit Parties to finance necessary capital expenditures and the Debtors' operations, to enhance, preserve, and maintain the value of their assets, and to maximize a return for all creditors requires the availability of funding in the form of the Post-Confirmation Financing, the absence of which would immediately and irreparably harm the Credit Parties, their assets, their creditors and the possibility for a sale of the Credit Parties' assets as a going concern or otherwise. The proposed Post-Confirmation Financing is in the best interests of the Credit Parties, their assets, and their creditors.

E.     **No Credit Available on More Favorable Terms**.  Despite sufficient and good faith efforts, the Liquidating Trustee has been unable to obtain for the Credit Parties (a) unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, (b) credit for money borrowed secured solely by a lien on property that is not otherwise subject to a lien, (c) credit for money borrowed secured by a junior lien on property which is subject to a lien, or (d) credit otherwise on more favorable terms and conditions than those provided in the Post-Confirmation Financing.  The Credit Parties are unable to obtain credit for borrowed money without granting to the Post-Confirmation Lender all of the protections provided in this Order.

F.     **Use of Proceeds of the Post-Confirmation Financing.**  Proceeds of the Post-Confirmation Financing (net of any amounts used to pay fees, costs and expenses under the Post-Confirmation Financing Agreements) are intended to allow the Credit Parties to make certain capital expenditures and to continue the operation of the University Village CCRC ("**University Village**") through the marketing and sale of the assets of the Credit Parties pursuant to the *Debtors' First Amended and Restated Mediated Joint Plan of Liquidation under Chapter 11 of*

*the United States Bankruptcy Code, as Modified* (Doc. No. 1012) (the "**Plan**"), which was confirmed and became effective May 10, 2018 pursuant to an order of this Court. (Doc. No. 1016.) Such proceeds are to be utilized by the Credit Parties until the Maturity Date (as defined below) strictly in accordance with the amounts, categories and timing set forth in the Budget, and in a manner consistent with the terms and conditions of the Post-Confirmation Financing Agreements.

G. **Priming of Existing Liens in the Debtor Collateral; Adequate Protection**. The Post-Confirmation Liens shall constitute priming liens and security interests under section 364(d) of the Bankruptcy Code in the Debtor Collateral, ranking prior to any existing liens and security interests of any other party in the Debtor Collateral, including any liens asserted by CPIF and SouthPoint, including, but not limited to, any liens granted by that certain *Final Order Granting Debtors' Emergency Motion For Authority To Obtain Postpetition Financing And Grant Junior Liens, Superpriority Administrative Expense Status, And Adequate Protection Pursuant To 11 U.S.C. §§ 364(c) and (d) and F.R.B.P. 4001*, dated May 2, 2018 (Doc. No. 1006). The Court finds and determines that, after granting the Post-Confirmation Liens, the interests of any and all parties in the Debtor Collateral, including, without limitation, CPIF, VN, and SouthPoint, are adequately protected within the meaning of Sections 361 and 364 of the Bankruptcy Code.

H. **Priority of Liens in WNT Collateral**. The Post-Confirmation Liens shall constitute first priority liens and security interests in the WNT Collateral, ranking prior to any existing liens and security interests of any other party in the WNT Collateral, except for the Existing WNT Liens.

I. **Sale Process and Sale Proceeds.** Pursuant to the Plan, the Liquidating Trustee is endeavoring to sell or dispose of the Post-Confirmation Collateral as a whole in one transaction. Pursuant to section 364(d) of the Bankruptcy Code, the Post-Confirmation Financing Agreements and applicable law, subject only to the Existing WNT Liens in the WNT Collateral, the Post-Confirmation Liens shall attach to the proceeds of any sale, lease or other disposition of

any nature of the Post-Confirmation Collateral (the "**Sale Proceeds**") as first priority liens and security interests.

J.      **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)      The terms and conditions of the Post-Confirmation Financing and the Post-Confirmation Financing Agreements, and the fees paid and to be paid thereunder are fair, reasonable and the best available under the circumstances, reflect the Liquidating Trustee's exercise of prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)      The Post-Confirmation Financing Agreements were negotiated in good faith and at arms' length between the Liquidating Trustee and the Post-Confirmation Lender;

(iii)      The loan proceeds to be advanced under the Post-Confirmation Financing will be advanced in good faith, and for valid business purposes and uses; and

(iv)      The Post-Confirmation Lender has acted and is acting in good faith with respect to the Post-Confirmation Financing and the terms and conditions of the Post-Confirmation Financing Agreements. The Post-Confirmation Lender's claims, superpriority administrative claims, security interests and liens and other protections granted pursuant to this Order and the Post-Confirmation Financing Agreements will not be affected or avoided by any subsequent reversal or modification of this Order, as provided in section 364(e) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.      **Motion Granted.** The Motion is **GRANTED** on a final basis in accordance with the terms and conditions set forth in this Order.

2.      **Objections Overruled.** The CPIF Objection is **OVERRULED** as moot, and the VN Objection and the SouthPoint Objection are **OVERRULED**.

3.      **Approval of Entry into Post-Confirmation Financing Agreements.** The Liquidating Trustee, on behalf of the Credit Parties, is authorized, empowered and directed to

execute and deliver the Post-Confirmation Financing Agreements to the Post-Confirmation Lender and to incur and to perform the Post-Confirmation Obligations in accordance with, and subject to, the terms of this Order and the Post-Confirmation Financing Agreements. As announced on the record at the Hearing, the Liquidating Trustee and CPIF have agreed to the following Non-Financial Terms as part of the Post-Confirmation Obligations:

a. The Post-Confirmation Financing is separate from CPIF's existing loan facility, and is not subject to any claims or defenses (*e.g.*, the Post-Confirmation Financing is, and shall be, separate and apart from the claims asserted by the Liquidating Trustee in the adversary proceeding styled *Liquidating Trustee v. CPIF Lending, LLC*, 8:18-ap-00102-MGW (M.D. Fla. Bankr. 2018) (the "**Adversary Proceeding**");

b. By no later than December 1, 2018, the Liquidating Trustee shall engage a real estate broker to market and sell University Village unless a signed term sheet for the acquisition of the entire University Village campus with a bona fide and qualified entity has been executed and presented to this Court for approval. If a broker is engaged, prior to the execution of the engagement, the Liquidating Trustee shall have the right to identify specific names of groups with whom the Liquidating Trustee has been negotiating and, if a sale to such entities is consummated, the broker will not be entitled to a commission for procuring that sale. The broker shall be agreed to by the Liquidating Trustee, CPIF, and VN, provided CPIF and VN have entered into forbearance agreements with the Liquidating Trustee as provided below. In the event forbearance agreements are not in place and a broker is required to be engaged, the Liquidating Trustee shall select the broker, subject to this Court's approval, and CPIF, VN, and any party in interest shall have standing to object to such engagement;

c.    CPIF and VN shall be provided with full access to the broker during the sale process, and shall be provided with regular updates;

d.    CPIF and VN shall be provided with the same monthly reporting as that which was to be provided to Rosemawr per the Term Sheet;

e.    The Liquidating Trustee shall provide CPIF and VN with regular monthly updates on the performance of University Village, and shall respond to CPIF's and VN's reasonable requests for information concerning University Village's performance;

f.    The Liquidating Trustee will guaranty that no further requests shall be made to prime CPIF's position with respect to its collateral unless such request is supported by the broker;

g.    The Adversary Proceeding shall be immediately abated pending negotiation of a dismissal with prejudice based upon the execution of a forbearance or other agreement that will govern the repayment of all agreed obligations of the Debtors to CPIF (other than the Post-Confirmation Financing which is governed by this Order); and

h.    The Liquidating Trustee will deliver to CPIF and VN proposed forbearance agreements executed by the Liquidating Trustee no later than November 9, 2018 (which date may be extended by the parties). To the extent that the terms of the proposed forbearance agreements are not accepted by CPIF and VN, counterproposals of forbearance agreements executed by CPIF and VN shall be delivered to the Liquidating Trustee no later than November 13, 2018 (which date may be extended by the parties). If the counterproposals of CPIF and VN are not acceptable to the Liquidating Trustee, the Liquidating Trustee shall identify the unacceptable terms and the parties will submit those issues to a mediation with a mediator selected by CPIF and, if applicable, VN to be conducted

and completed before December 1, 2018 (which date is subject to the availability of the mediator and may be extended by the parties). If the mediation does not resolve all issues, the parties agree to present the unresolved issues to the mediator to provide an advisory opinion on the disputed issues. If, after this process is completed, the matters are not fully settled, the abatement shall end and the parties shall proceed to a final resolution. During the abatement, all discovery and case deadlines in the Adversary Proceeding shall be abated and the presentations to a mediator will be based on proffers supported by documentary evidence and legal arguments.

4. **Authorization to Borrow and Direction to Pay and Take All Other Required Actions**.

a. Prior to the Maturity Date, and subject to the terms and conditions of this Order and the Post-Confirmation Financing Agreements, the Credit Parties are hereby authorized to borrow up to a total amount of $2 million (the "**Principal Amount**") under the Post-Confirmation Financing Agreements, subject to an accordion feature as provided in the Post-Confirmation Credit Agreement which may allow the Credit Parties to borrow an additional $500,000 upon further Court approval.

b. The Liquidating Trustee is authorized and directed to cause WNT to enter into and perform the WNT Guaranty and all other Post-Confirmation Financing Agreements requested by the Post-Confirmation Lender.

c. The Credit Parties are directed to pay all principal and interest accruing under the Post-Confirmation Financing when due, including non-default interest at the fixed rate of 12% per annum, and default interest at the fixed rate of 17% per annum, and all principal and accrued interest on the Maturity Date.

d. The Credit Parties are directed to pay when due all fees required to be paid under the Post-Confirmation Financing Agreements, including, without limitation,

11

Case 8:20-bk-03167-CED    Doc 413    Filed 11/14/23    Page 12 of 20

     i.      Funding Fee:  At the closing of the Post-Confirmation Financing, the Credit Parties are directed to pay a funding fee of one percent (1.0%) of the Principal Amount, which may be deducted from the loan proceeds; and

     ii.      Closing Fees and Costs of Collection:  The Credit Parties are directed to pay (x) at the time of the closing of the Post-Confirmation Financing, all closing costs, recording costs, and reasonable legal fees and expenses incurred by the Post-Confirmation Lender in connection with the drafting, negotiating, and closing of the Post-Confirmation Financing and the recording of the Post-Confirmation Liens, (y) any fees or costs incurred by the Post-Confirmation Lender in connection with any repayment, refinancing, amendment, or permitted assignment of the Post-Confirmation Financing, and (z) immediately upon demand, any reasonable fees and expenses incurred by the Post-Confirmation Lender in connection with the occurrence of an Event of Default or the collection of the Post-Confirmation Obligations.  The Closing Fee shall include the reasonable and documented fees, expenses and disbursements of Squire Patton Boggs (US) LLP, as counsel to the Post-Confirmation Lender.  No attorney or advisor to the Post-Confirmation Lender shall be required to file an application with the Court seeking approval of compensation for services or reimbursement of expenses.

e.     The Credit Parties are directed to pay for all other expenses, costs of collection, indemnities and other amounts described in the Post-Confirmation Financing Agreements, as such amounts become due and payable, without the need to obtain further Court approval, whether or not such fees arose before or after the date of this Order.

f.     The Liquidating Trustee and the Credit Parties are authorized and directed to take any other actions that may be necessary or appropriate to effectuate the Post-Confirmation Financing, all to the extent provided in this Order or the Post-Confirmation Financing Agreements.

5.     **Conditions Precedent.**  The Post-Confirmation Lender shall have no obligation to make any advance under the Post-Confirmation Financing unless the conditions precedent to

making such advance as set forth in the Post-Confirmation Financing Agreements have been satisfied in full or waived by the Post-Confirmation Lender in its sole discretion.

6. **Granting of Post-Confirmation Liens.** Effective immediately upon the entry of this Order, the Post-Confirmation Lender shall be and is hereby granted the Post-Confirmation Liens, which shall immediately be valid, binding, permanent, continuing, enforceable, perfected and non-avoidable liens and security interests on the Post-Confirmation Collateral; provided, that, the Post-Confirmation Liens shall be subject and subordinate to any Existing WNT Liens, and the Post-Confirmation Collateral shall not include the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance or similar actions under the Bankruptcy Code or similar state law (the "**Avoidance Actions**").

7. **Priority of Post-Confirmation Liens.** The Post-Confirmation Liens shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be first priority priming liens and security interests on the Debtor Collateral, ranking prior to all other liens, claims and encumbrances on the Debtor Collateral, and shall prime all other liens and security interests on the Debtor Collateral, including any liens and security interests in existence on the date of this Order, and any other current or future liens granted on the Debtor Collateral. The Post-Confirmation Liens shall constitute first priority liens and security interests on the WNT Collateral, ranking prior to all other liens, claims and encumbrances on the WNT Collateral, except that the priority of the Post-Confirmation Liens in the WNT Collateral shall be subject and subordinate to any Existing WNT Liens. Without limiting the foregoing, the Post-Confirmation Liens shall not be made subject to, subordinate to, or *pari passu* with any lien or security interest by any court order heretofore or hereafter granted in these cases other than any Existing WNT Liens.

8. **Enforceable Obligations.** The Post-Confirmation Financing Agreements shall constitute and evidence valid and binding obligations of the Credit Parties, which obligations shall be enforceable against the Credit Parties and any successors thereto, including any

successor bankruptcy trustee, and their creditors or representatives thereof, in accordance with their terms.

9.  **Use of Proceeds Only in Accordance with Budget.** The Debtors shall use the proceeds of the Post-Confirmation Financing only for the purposes specifically set forth in the Post-Confirmation Credit Agreement and this Order and in strict compliance with the amounts, categories and timing set forth in the Budget (subject to any variances thereto permitted by the Post-Confirmation Credit Agreement).

10.  **Superpriority Administrative Claim.** In addition to all other rights and benefits conferred upon the Post-Confirmation Lender, all Post-Confirmation Obligations shall constitute an allowed superpriority administrative expense claim (the "**Post-Confirmation Superpriority Claim**") with priority over all other administrative expense claims under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and over all unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. The Post-Confirmation Superpriority Claim shall be payable from and have recourse to all unencumbered property of the Credit Parties and all proceeds thereof. Without limiting the foregoing, the Post-Confirmation Superpriority Claim shall not be made subject to, subordinate to, or *pari passu* with any other administrative claim in these cases.

11.  **Attachment of Post-Confirmation Liens to Sale Proceeds.** Pursuant to section 364(d) of the Bankruptcy Code and the Post-Confirmation Financing Agreements, the Post-Confirmation Liens shall attach as first priority liens and security interests in the Sale Proceeds, subject only to any Existing WNT Liens.

12.  **Evidence of Perfection of Post-Confirmation Liens.** This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Post-

Confirmation Liens, without the necessity of filing or recording any financing statements, deeds of trust, mortgages or other instruments or documents which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or obtaining possession of any possessory collateral) to validate or perfect the Post-Confirmation Liens, or to entitle the Post-Confirmation Liens to the priorities granted herein. Notwithstanding and without limiting the foregoing, the Post-Confirmation Lender may file such financing statements, mortgages, deeds of trust, notices of liens and other similar documents as it deems appropriate, and it is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, deeds of trust, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of this Order. The Credit Parties shall execute and deliver to the Post-Confirmation Lender all such financing statements, mortgages, deeds of trust, deposit account control agreements, notices and other documents as the Post-Confirmation Lender may request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Post-Confirmation Liens granted herein. Any such financing statements, mortgages, deeds of trust, deposit account control agreements, notices and other documents shall be considered Post-Confirmation Financing Agreements. The Post-Confirmation Lender, in its discretion, may file a certified copy of this Order as a financing statement with any recording officer designated to accept the filing of financing statements or with any registry of deeds or similar office in any jurisdiction in which any Credit Party has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Order.

13. **Exemption from Document and Recording Taxes and Fees.** Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by this Order or the Post-Confirmation Financing Agreements shall not be subject to any document recording tax, stamp tax, conveyance fee,

Case 8:20-bk-03167-CED   Doc 413-3   Filed 11/14/23   Page 16 of 20

intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents or Governmental Units shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

14.     **Proceeds of Subsequent Financing**.  If the Credit Parties or the Liquidating Trustee shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d), or in violation of the Post-Confirmation Financing Agreements at any time prior to the indefeasible repayment in full of all Post-Confirmation Obligations, then all cash proceeds derived therefrom shall immediately be paid over to the Post-Confirmation Lender to be applied to the Post-Confirmation Obligations.

15.     **Indemnification**. The Debtors shall indemnify and hold harmless the Post-Confirmation Lender in accordance with the terms and conditions of the Post-Confirmation Financing Agreements.

16.     **Right to Credit Bid**.  The Post-Confirmation Lender shall have the right, but not the obligation, to "credit bid" the Post-Confirmation Obligations during any sale of the Post-Confirmation Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or the Plan.

17.     **Limitation of Use of Proceeds**.  Neither the Liquidating Trustee nor the Credit Parties shall use any portion of the proceeds of the Post-Confirmation Financing for the purpose of initiating or prosecuting any claims, causes of action, adversary proceedings, or other litigation against the Post-Confirmation Lender, including, without limitation, the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (i) invalidating, setting aside, disallowing, avoiding, challenging or subordinating, in whole or in part, the Post-Confirmation Obligations or the Post-Confirmation Liens, (ii)

preventing, hindering or delaying, whether directly or indirectly, the Post-Confirmation Lender's assertion or enforcement of their liens or security interests or realization upon any Post-Confirmation Collateral, or (iii) prosecuting the Adversary Proceeding or the claims asserted therein.

18.  **Section 506(c) Claims; Equities of the Case**.  Nothing contained in this Order shall be deemed a consent by the Post-Confirmation Lender to any charge, lien or claim against the Post-Confirmation Collateral under Section 506(c) of the Bankruptcy Code or otherwise. The Liquidating Trustee shall not assert or enforce any claim under Section 506(c) of the Bankruptcy Code senior to or *pari passu* with the Post-Confirmation Liens for costs or expenses of preserving or disposing of any of the Post-Confirmation Collateral.  Effective upon entry of this Final Order, (a) the Liquidating Trustee irrevocably waives and is prohibited from asserting the "equities of the case" exception under Section 552(b) with respect to the proceeds, products, offspring, or profits of any of the Post-Confirmation Collateral, (b) the Post-Confirmation Lender is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and (c) the "equities of the case" exception under Section 552(b) shall not apply to the Post-Confirmation Lender with respect to the proceeds, products, offspring, or profit of the Post-Confirmation Collateral.

19.  **Maturity Date.**  The "**Maturity Date**" shall be the earlier of (i) the date of the acceleration of the Post-Confirmation Obligations in accordance with the terms of the Post-Confirmation Financing Agreements, including, without limitation, on account of the occurrence of a breach, event of default, or sale of any portion of the Post-Confirmation Collateral, and (ii) the first anniversary of the closing of the Post-Closing Financing.  Upon the Maturity Date, all Post-Confirmation Obligations owing to the Post-Confirmation Lender shall be immediately due and payable without notice or demand to the Credit Parties, and the Debtors' authority to request advances under the Post-Confirmation Financing and to use the proceeds of the Post-Confirmation Financing shall cease.

20.  **Rights and Remedies Upon Event of Default.**

Case 8:19-bk-08167-CED   Doc 2193   Filed 11/14/23   Page 18 of 20

a.      Any otherwise applicable automatic stay is hereby modified so that after the occurrence of any event of default under the Post-Confirmation Financing Agreements, and at any time thereafter during the continuance of such event of default, the Post-Confirmation Lender shall be entitled to exercise its rights and remedies with respect to the Credit Parties and the Post-Confirmation Collateral as provided in the Post-Confirmation Financing Agreements and by applicable law, including, without limitation, foreclosing on and selling the Post-Confirmation Collateral, without the need for further court approval or the consent of any other party.

b.      Nothing contained herein shall prejudice, impair, or otherwise limit or affect the Post-Confirmation Lender's rights to seek any other or supplemental relief in respect of the Post-Confirmation Lender's rights.

21.     **No Lender Liability**.  Nothing in this Order, any of the Post-Confirmation Financing Agreements, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Post-Confirmation Lender of any liability for any claims arising from any activities by the Liquidating Trustee or the Credit Parties in the operation of their businesses or in connection with the administration of these bankruptcy cases. The Post-Confirmation Lender shall not, solely by reason of having made loans under the Post-Confirmation Financing, be deemed in control of the operations of the Credit Parties or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Credit Parties (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Nothing in this Order or the Post-Confirmation Financing Agreements shall in any way be construed or interpreted to impose or allow the imposition upon the Post-Confirmation Lender of any liability for any claims arising from the activities of the Liquidating Trustee or any of the Credit Parties.

22.     **Insurance Proceeds and Policies**.  As of the entry of this Order and to the fullest extent provided by applicable law, the Post-Confirmation Lenders shall be, and shall be deemed

to be, without any further action or notice, named as additional insured and as lender's loss payee on any and all policies of insurance maintained by the Credit Parties, with the priority as to all rights and remedies as set forth herein and in the Post-Confirmation Credit Agreement.

23.     **Binding Effect**. The provisions of this Order shall be binding upon and inure to the benefit of the Post-Confirmation Lender, the Liquidating Trustee, the Credit Parties, all other Parties in Interest, and all creditors, and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Credit Parties or with respect to the property of the estates of the Debtors) whether in these bankruptcy cases, any successor cases, or upon dismissal of any such bankruptcy cases.

24.     **No Waiver**. The failure of the Post-Confirmation Lender to seek relief or otherwise exercise its rights and remedies under the Post-Confirmation Financing Agreements, this Order or otherwise, shall not constitute a waiver of the Post-Confirmation Lender's rights hereunder, thereunder, or otherwise.

25.     **No Third Party Rights**. This Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

26.     **No Marshaling**. The Post-Confirmation Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Post-Confirmation Collateral.

27.     **Amendment.** The Credit Parties and the Post-Confirmation Lender may amend or waive any provision of the Post-Confirmation Financing Agreements upon notice filed with the Bankruptcy Court; provided, that, no such notice shall be required if such amendment or waiver is immaterial or is required to correct an error in the Post-Confirmation Financing Agreements. Without prejudice to the effectiveness of any such amendment or waiver, any party in interest shall have the right to file a motion objecting to such amendment or waiver. Nothing in this Order shall authorize the Post-Confirmation Lender to increase the amount of the Post-Confirmation Financing, increase the interest rate, or extend the Maturity Date. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of

the Post-Confirmation Financing Agreements shall be effective unless set forth in writing, signed on behalf of the Credit Parties and the Post-Confirmation Lender, and, if material, approved by the Court.

28.    **Survival of Order.**  The provisions of this Order and any actions taken pursuant hereto shall survive any breach or default of the terms of the Plan, any modification of the Plan, or any sale or other disposition of the Post-Confirmation Collateral, and the rights and benefits granted to the Post-Confirmation Lender hereunder shall maintain their priority as provided by this Order until all of the Post-Confirmation Obligations have been indefeasibly paid in full in cash.

29.    **Enforceability**.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry of this Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

Attorney Adam Lawton Alpert is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.

20

695149302.DOCX