Filing # 45237846 E-Filed 08/15/2016 04:08:47 PM

IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH FLORIDA
CIRCUIT CIVIL DIVISION

TIMOTHY PARKER and
KATHY BURKHOLDER,

     Plaintiffs,

v.

WESTPORT HOLDINGS TAMPA, LP
d/b/a University Village,

     Defendant.

_____/

## C O M P L A I N T

**COMES NOW**, Plaintiffs, TIMOTHY PARKER and KATHY BURKHOLDER, by and

through their undersigned counsel, and sues the Defendant, WESTPORT HOLDINGS TAMPA, LP

d/b/a University Village, and in support thereof, state as follows:

### JURISDICTION AND VENUE

1. This is an action for damages which exceed Fifteen Thousand Dollars ($15,000.00).

2. Venue lies within Hillsborough County because a substantial part of the events giving rise to

this claim arose in this Judicial District.

### PARTIES

3. Plaintiff, TIMOTHY PARKER (Parker), is a resident of Hillsborough County, Florida.

4. Plaintiff, KATHY BURKHOLDER (Burkholder), is a resident of Pinellas County, Florida.

5. Defendant, WESTPORT HOLDINGS TAMPA, LP dba University Village (Westport Tampa

I or University Village) is a foreign corporation licensed and authorized to conduct business in the

State of Florida an doing business within Hillsborough County.

6. University Village is a Continuing Care Retirement Community (CCRC), regulated by the



PLAINTIFF'S EXHIBIT
Burkholder # 96
4.15.23 DK
PENGAD 800-631-6989

Florida Office of Insurance Regulation (OIR) pursuant and subject to Florida Statutes Chapter 651.

**FACTS**

7. University Village is a continuing care retirement community (CCRC) in Hillsborough County, Florida. A CCRC offers shelter, care, and services for residents upon payment on an entrance fee pursuant to continuing care contracts under Florida Statute § 651.011(2).

8. Continuing care contracts, also referred to as "entrance agreements," are between the resident and the CCRC provider and establish the terms and conditions of the residents' care while at the CCRC. Such terms include the entrance fee to be paid, the amount of monthly fees, future levels of care through advanced aging, including assisted living and skilled nursing, and any refund to be paid by the provider to the resident or their estate upon exit from the CCRC. Entrance fees typically range from $10,000 to $2 million. The refund due upon exist from the CCRC is a percentage of the entrance fee and, accordingly, can also be substantial.

9. University Village houses 446 apartments and 46 duplexes as an Independent Living Facility (ILF), and a Health Center containing 120 beds as a Skilled Nursing Facility (SNF), and 110 beds as an Assisted Living Facility (ALF) with a memory care wing. All tolled, University Village contains a total of 492 independent living units and 230 beds in the Health Center, housing and caring for over 600 Residents.

10. In April 2014, University Village owner, Larry Landry, sold the limited partnership/minority interest in University Village to John Bartle. Landry intended to sell the general partnership/controlling interest to Bartle at a later date.

11. Landry and Bartle represented to the OIR that the management and control of University Village remained with Landry, and that when the Bartle acquired the controlling interest of University Village they would file the required application for acquisition with the OIR pursuant to

2

statute.

12.     However, it became almost immediately apparent that John Bartle and his affiliates, primarily his wife and other family members, were controlling the day-to-day operations of University Village, and had essentially taken over, without permission from the OIR.

13.     On or about January 31, 2015, Rebecca Bartle, John Bartles wife, sent notice to the employees of University Village, advising them that effective January 26, 2015, she held the controlling interest in University Village through a corporation she exclusively owned and operated. However, as of this date, no one had submitted an application to OIR for approval to acquire University Village, as required by Florida Statutes § 651.024 and § 628.4615.

14.     On or about February 13, 2015, having still not received a completed application for approval to acquire University Village from the Bartles, the OIR filed an Initial Order of Suspension, requiring University Village to show cause why the OIR should not permanently suspend or revoke University Village's Certificate of Authority to do business as a CCRC in the State of Florida.

15.     Since March 2014, John and Rebecca Bartle, and their affiliates, had taken over day-to-day operations, management, and personnel decisions, directing capital for improvements, changing policy and procedure of the facility, approving contracts, directing when and if vendors were paid, and managing the monetary accounts related to University Village, all without the authority of the OIR.[1]

16.     John Bartle continued calling the shots at University Village, despite the OIR's repeated warnings that Bartle and his affiliates must comply with the statutory requirements. By this time, the OIR was aware that John Bartle, was associated with Skyline Manor, a CCRC in Nebraska, which

---

1 As an example, in or around April 2014, Jared McCowan began giving plaintiff, Burkholder, instructions regarding what vendors to pay and when to pay them. This was a function over which she exercised independence and discretion previously.

was driven into bankruptcy. Although Skyline Manor remained as a debtor in possession during the bankruptcy proceedings, the presiding Judge appointed a receiver to operate the facility based upon a finding that the management provided by Bartle and his associates was grossly incompetent. In fact, in its Application for Order to Show Cause, the Florida Department of Financial Services stated, "given this [John Bartle's mismanagement and bankruptcy of Skyline Manner], it is hardly surprising that [Bartle] has failed to provide the biographical information required of an applicant seeking to acquire controlling interest in a CCRC by sections 628.4615 and 651.024, Florida Statutes."

17.    On or about February 10, 2015, the OIR began an investigation into their concerns at University Village. The OIR has the right to access and inspect any records of a CCRC under Fla. Stat. 651.105(2). Fla. Stat. 651.106, 631.051(4) and 631.391 require that University Village, its subsidiaries, and affiliates cooperate with State inspectors.

18.    However, staff at University Village had been instructed by John Bartle not to communicate with the investigators or answer any of their questions.

19.    Early in their investigation, investigators began asking questions of Plaintiffs, Parker and Burkholder. Parker had been the Executive Director at University Village since June 1996, and Burkholder had held various Accounting Department roles over the years, including Accounting Director and, most recently, CFO. As instructed, they told investigators that they were not permitted to answer their questions.

20.    Out of concern for the events that had been unfolding and the apparent impending demise of the CCRC, Parker and Burkholder began cooperating with investigators and answering their questions.

21.    Parker's deposition was taken on April 24, 2015; during his examination, Parker confirmed and expanded upon many of the statutory violations that had taken place, and were still taking place,

at University Village at the direction of the Bartles and their affiliates, including misappropriation of funds in the Minimum Liquid Reserve (MLR) Account.

22.    The MLR is required by statute to maintain adequate funds for operational emergencies. Not only must it be maintained at the required amount, but withdrawals can only be taken after written approval of the State. Parker knew, and provided evidence to OIR investigators, not only was money being inappropriately transferred from the MLR, causing it to be unfunded, but that the Bartles, as well as the new, self-proclaimed general partner, Eli Freiden,[2] were intentionally misrepresenting the amount in the MLR to the OIR, and that they had encumbered the money in the MLR by posting is as collateral to a loan they received, also in violation of Florida Statutes.

23.    Just days after his deposition, Parker was formally disciplined for being seen communicating with an OIR investigator "behind closed doors," and for "providing specific MLR documents to the OIR" without University Village's approval. Reprimand is attached hereto as Exhibit "A."

24.    During this disciplinary meeting with Eli Freiden and the Human Resources Director, Sandra Dinero, Parker admitted to speaking to the investigator, and that it was clear to him that violations of Florida Statutes Chapter 651 had taken place, and continued to take place, at University Village, and stated that he intended to cooperate fully with the investigation.

25.    Parker further refused to participate in violations of Florida Statutes Chapter 651 when Freiden instructed Parker to sign off on an MLR submission form required by the OIR representing that the MLR had $3 million more than it did. When Parker refused to sign the document, telling Freiden that it was untruthful, Freiden encouraged Parker to sign in and let the attorneys deal with that later. Parker steadfastly refused.

26.    Around this same time (April 2015), Burkholder similarly refused to submit a report, as

_____

2 Freiden claimed to own the general partnership/majority interest in University Village in or around March, 2015, also without OIR approval, and began participating in operational decisions and directing the work of University

instructed by Freiden and Bartle, misrepresenting the amount of funds in the MLR to the OIR, and told Freiden and Bartle she would not participate in deceiving the State because she knew that the MLR was underfunded. Then, in May 2015, Freiden instructed Burkholder to represent to the State on its annual report that University Village owed a bank $1 million less than it actually did. Burkholder refused to provide false information to the State.

27. Burkholder was also required to give deposition testimony, at which time she testified that in her estimation, as of May 9, 2015, University Village would not be able to pay their refund obligations due to lack of funds.

28. In or around May 2015, control of entrance fees and refunds was taken away from Parker and Burkholder. Freiden told Parker that if anyone asked about refunds, to tell them that refunds cannot be issued during the OIR inspection period, which is untrue. University Village began failing to meet its refund obligations to residents, defaulting on residents' continuing care contracts.

29. In or around July 2015, Freiden instructed Burkholder to only reply to the investigators once a month, and to tell them that she is too busy to gather the documents they request any more frequently than that. However, the OIR investigators stated that they needed the documents immediately, and Burkholder continued cooperating and complying with their requests in a timely fashion as, opposed to once a month as instructed.

30. On or about August 17, 2015 Parker and Burkholder were informed that they were being suspended from University Village effective immediately, pending a "review of operations" by the Freiden. They were instructed to turn in keys and computer, and to stay off University Village property and not communicate in any way with University Village employees, suppliers, financial institutions, residents, or any other person affiliated with University Village. Notice of suspension is

---

Village Staff, including Parker and Burkholder.

attached hereto as Exhibit "B."

31. Around the same time, Parker's Executive Assistant of twenty (20) years was terminated for "poor performance"; however, as her supervisor, Parker had given her nothing but excellent reviews.

32. After extending her suspension at the end of the initial two weeks, HR Director Sandra Dinero informed Burkholder via email on September 7, 2015, that Burkholder's position was being eliminated.

33. After similarly extending his suspension at the end of the initial two weeks, Parker was formally terminated from University Village on September 25, 2015, after almost twenty (20) years of service. Parker was not given a reason for his termination. Notice of termination is attached hereto as Exhibit "C."

## COUNT I
### Florida's Private Whistleblower's Act

34. Plaintiffs reallege and adopt, as if fully set forth herein, the allegations stated in paragraphs one (1) through thirty-three (33).

35. This is an action for damages pursuant to Florida's Private Whistleblower Act, Florida Statutes § 448.101 et seq.

36. Defendant is an employer as defined by the Act and employed Plaintiffs at all relevant times.

37. Defendant retaliated against Plaintiffs as set forth because they objected to and/or refused to participate in violations of laws, rules, or regulations.

38. Plaintiffs' terminations were in retaliation for their objections to and/or refusal to participate in said violations of laws, rules or regulations.

39. The retaliatory actions of Defendant violate the Florida Private Whistleblower Act.

40. As a result of the retaliatory actions of Defendant, Plaintiffs have suffered, and will continue to suffer, damages.

WHEREFORE, Plaintiffs , Timothy Parker and Kathy Burkholder, demand judgment against Defendant, Westport Holdings Tampa, LP d/b/a University Village, and for back pay and benefits; interest on back pay; front pay and/or lost earning capacity; compensatory damages; costs and attorneys' fees; and for such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED THIS 15th day of August, 2016.

**FLORIN, ROEBIG, P.A.**

/s/Wolfgang M. Florin
**Wolfgang M. Florin**
Primary E-mail address:wmf@florinroebig.com
Florida Bar No.: 907804
**Christopher D. Gray**
cdg@florinroebig.com
Florida Bar No.: 902004
**Lindsey C. Kofoed**
lck@florinroebig.com
Florida Bar No.: 63956
Secondary E-Mail Addresses:
 LABOR_efiling@florinroebig.com
tsm@florinroebig.com
777 Alderman Road
Palm Harbor, FL 34683
Telephone No.: (727) 786-5000
Facsimile No.: (727) 772-9833
Attorneys for Plaintiff(s)

**Employee File Note for: Timothy Parker, Executive Director**

On Tuesday, April 28, 2015, you were seen behind closed doors in your office conversing with a representative from OIR by Eli Freiden. During this conversation two residents were waiting outside your office without being acknowledged while you were conversing with an OIR representative. Previously you had been instructed by the attorneys for Westport Holdings and Eli Freiden, General Partner not to converse or hand over any documents to OIR due to continued litigation with the OIR and that all correspondence and documents should go through the attorney, Wendy Weiner.

Additionally, you have been found to be insubordinate by providing, specific MLR documents to the OIR without the attorney's approval.

In the future, you will refrain from all conversations with the OIR or provide any documentation unless directed by the attorneys for Westport Holdings or Eli Freiden, General Partner.

Further occurrences may result in further disciplinary action.

By signing below you agree that these incidents occurred.

_____        _____

_____        _____

Exhibit "□"



## UNIVERSITY
### V I L L A G E

## Live Better Longer!

University Village Retirement Center
12401 North 22nd Street
Tampa, FL 33612

Monday, August 17, 2015

Tim,

I am writing to advise you that you are hereby suspended with pay for two weeks, effective immediately, pending a review of the operations by the general partner.

Before leaving the property you must turn in all keys and any computer equipment owned by University Village.

During this period of suspension, you shall not attend your place of work.  Nor shall you contact any other employees, suppliers, financial institutions, residents, etc., or any other person affiliated with University Village via phone or email.

Once our investigation is complete you will be contacted with the results.  Please make sure we have your current contact information.

Sincerely,

Sandra Dinero, PHR
Human Resources Director
University Village

### Exhibit "B"

12401 N. 22nd Street • Tampa, FL 33612
(800) 524-5020 • (813) 975-5009 • Fax (813) 975-5476



# UNIVERSITY
## V I L L A G E

### Live Better Longer!

University Village Retirement Center
12401 North 22nd Street
Tampa, FL 33612

Friday, September 25, 2015

Tim,

This letter constitutes the right of University Village to terminate employment under the Florida Employment at Will doctrine. Under this doctrine the company may terminate the employment relationship at anytime, with or without cause, with or without notice.

As of this date, the company has decided to terminate your employment effective immediately. We will consider the time for your paid suspension as four (4) weeks of severance; therefore, we will not pay out any additional hours or PTO (paid time off bank).

All insurances will be cancelled as of September 30, 2015 at which time you may elect COBRA. You will be contacted by the company's third party administrator with information on this program.

*For those 40 years old or older* (It is understood and agreed: 1) the acceptance of the above program is in full accord and satisfaction of any claim you may have which may be available to you through or as a result of the Age Discrimination of Employment Act (ADEA), and 2) University village's delivery of the above program is not to be construed in any way as an admission of liability on the part of University Village.

If you have any questions, please contact me.

Sincerely,

Sandra Dinero, PHR
Human Resources Director
University Village                              Exhibit "C"

12401 N. 22nd Street • Tampa, FL 33612
(800) 524-5020 • (813) 975-5009 • Fax (813) 975-5476
www.universityvillage.net