**From:** "Rabke, W. Wilhelm" <wrabke@williamsmullen.com>
**To:** "Price, Jay" <jprice@burr.com>
**Cc:** "Kevin L. Angelis" <kevin.angelis@bhmsinvestments.com>, "'Trey Korhn' (TKorhn@usameribank.com)" <TKorhn@usameribank.com>
**Subject:** RE: Westport MLR OIR Notice Letter
**Date:** Thu, 27 Mar 2014 17:00:01 +0000
**Importance:** Normal
**Attachments:** Assignment_Deposit_Account_(Cash_Collateral)_--_Westport_Nursing_([WMv1].DOC
**Inline-Images:** ~WRD000.jpg

---

Jay,

Call me if there are concerns with this mark-up.

Thanks,

Will

---

**Will Rabke**
**Williams Mullen**

**804.420.6395**

**From:** Price, Jay [mailto:jprice@burr.com]
**Sent:** Thursday, March 27, 2014 12:31 PM
**To:** Rabke, W. Wilhelm; 'Trey Korhn' (TKorhn@usameribank.com)
**Cc:** Kevin L. Angelis
**Subject:** RE: Westport MLR OIR Notice Letter
**Importance:** High

I want to make sure we are on the same page.  I thought this MLR account had something to do with funds other than the $3,000,000 that was being pledged by the borrower to the bank as cash collateral.  As currently set up, based on prior conversations, I have the bank funding $15,000,000, but $3,000,000 coming into the cash collateral account.  The cash collateral account is to be a separate account in which only the bank has rights.  I want to make sure this is not some joint account where the State has certain special requirements or any interest therein.  It was my understanding that we were talking about using this MLR account for amounts above and beyond the $3,000,000, but this states that it applies only to the $3,000,000 with the remainder still being held at Regions.  We need to discuss this in the call.  I need to make sure the bank understands.  The last emails talked about assuming the bank would want accounts above and beyond the cash collateral account and that is what the MLR issue related to.

Joel (Jay)  A. Price, Jr.  • *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203
direct 205-458-5147 • fax 205-244-5699 • main 205-251-3000
jprice@burr.com • www.burr.com



EXHIBIT
Rabke 7
8-24-23 kt



ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

Circular 230 Notice - Regulations adopted by the Internal Revenue Service require us to inform you that any federal tax advice contained in this communication (including attachments) (I) is not intended or written by Burr & Forman LLP to be used, and cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer, and (II) is not written to support the promotion or marketing of any transaction(s) or matter(s) addressed in this communication.

**From:** Rabke, W. Wilhelm [mailto:wrabke@williamsmullen.com]
**Sent:** Thursday, March 27, 2014 11:23 AM
**To:** 'Trey Korhn' (TKorhn@usameribank.com); Price, Jay
**Cc:** Kevin L. Angelis
**Subject:** FW: Westport MLR OIR Notice Letter

Jay and Trey,

Attached is the first draft on the MLR Notice Letter.  Jay, Trey and Kevin have discussed this.

I need an unlocked version of the account agreement, so I can add required language.

Thanks,

Will

**Will Rabke**
**Williams Mullen**

**804.420.6395**

**From:** Rabke, W. Wilhelm
**Sent:** Thursday, March 27, 2014 12:20 PM
**To:** philip.notopoulos@hklaw.com; John Bartle (jbartle6081@yahoo.com); Dane Starbuck; Kevin L. Angelis
**Cc:** Hungate-Noland, Beth
**Subject:** Westport MLR OIR Notice Letter

All,

I am circulating this notice letter to all parties simultaneously, so please pass along questions.  Separately I will forward it to Ameribank's counsel for their review.

Let me know any comments.  The Note will be pulled out of the loan docs.  We think it makes more sense to only attach the Note as opposed to the entire Loan Agreement.  The new agreement with USAB is a work in progress, because I need a form that we can edit from the bank.

Thanks,

Will

W. Wilhelm Rabke (Will)
Williams Mullen
A Professional Corporation
200 South 10th Street
Richmond, Virginia 23219
Tel:   804.420.6395
Fax:  804.420.6507
Email:  wrabke@williamsmullen.com
www.williamsmullen.com

**CONFIDENTIALITY NOTICE:** Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality.  If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

**IRS CIRCULAR 230 DISCLOSURE:**  To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## ASSIGNMENT AND PLEDGE OF DEPOSIT ACCOUNT
### (Cash Collateral Account)

THIS ASSIGNMENT AND PLEDGE OF DEPOSIT ACCOUNT (Cash Collateral Account) (this "Assignment"), dated as of the _____ day of March, 2014, by WESTPORT NURSING TAMPA, L.L.C., a Florida limited liability company ("Pledgor"), in favor of USAMERIBANK, a Florida banking corporation ("Lender").

### R E C I T A L S:

A.      Pledgor has requested a loan from Lender (the "Loan") evidenced by that certain Promissory Note of even date herewith by Pledgor, payable to Lender in the principal amount of $15,000,000.00 (including all amendments thereto and as the same may be hereafter amended, modified or extended, the "Note").  The Loan is also evidenced by a certain Loan Agreement between Pledgor and Lender of even date herewith (including all amendments thereto and as the same may be hereafter amended or modified, the "Loan Agreement") and by certain other Loan Documents (as defined in the Loan Agreement).

B.      Pursuant to the Loan Documents and as a condition to Lender making the Loan, Pledgor is required to deposit and maintain certain Cash Collateral (as defined in the Loan Documents) in an account established for such purpose and Pledgor is required to assign and pledge to Lender such account as additional collateral security for all payment and performance obligations with respect to the Loan (collectively, the "Loan Obligations"). This Assignment is therefore being provided by Pledgor for such purposes and as an inducement to Lender to make the Loan to Pledgor.

C.      The Cash Collateral Funds (as defined below) deposited by Pledgor herunder shall be included in the Pledgor's reserve requirements as required under Section 651.035 of the Florida Statutes (the "MLR Statute"), as such Cash Collateral Funds meet the statutory uses allowed under Section 1(b) of the MLR Statute.

D.      The MLR Statute provides that the Office of Insurance Regulation of the State of Florida (the "Department") shall have information rights regarding the Cash Collateral Funds.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the parties agree as follows:

1.      **Recitals.**  The recitals hereto are true and correct.

2.      **Establishment of Cash Collateral Account.**   Pursuant to the Loan Documents, Pledgor is required to establish a Cash Collateral Account for purposes of holding deposits of required Cash Collateral.  Pledgor has agreed to make the required deposits in connection with closing of the Loan (all funds so deposited, together with interest from time to time earned thereon and together with moneys thereafter deposited with Lender

20394206 v4

as Cash Collateral for the Loan, are referred to herein as the "Cash Collateral Funds"). All Cash Collateral Funds shall be maintained in one or more interest-bearing deposit accounts offered by Lender for such purpose (such deposits accounts, together with any additions, replacements or substitutions thereof, are herein collectively referenced as the "Deposit Collateral Account"). All interest which shall accrue on the Deposit Collateral Account shall remain in the Deposit Collateral Account and shall become a part of the Cash Collateral Funds. As of the date hereof, USAmeriBank Account No. 500106000 in the name of Pledgor has been set up to serve as the Deposit Collateral Account.

3. **Control and Use of Cash Collateral Funds.** The Deposit Collateral Account shall at all times be under Lender's control. Pledgor shall have no access to, and shall not be permitted to make any withdrawals of, Cash Collateral Funds from the Deposit Collateral Account without Lender's prior consent.

4. **Grant of Security Interest.** In order to secure the Loan Obligations, Pledgor hereby assigns, sells, transfers, pledges, sets over and delivers to the Lender and grants Lender a security interest in the Deposit Collateral Account and in the Cash Collateral Funds at any time held on deposit with the Lender in the Deposit Collateral Account, including all accrued interest thereon, together with all certificates or other writings now or hereafter issued by the Lender as evidence thereof.

5. **Payment Upon Certain Defaults.** Upon the occurrence of any Event of Default under any of the Loan Documents, the Lender may, and is hereby authorized, in Lender's sole discretion, to apply all or any portion of the Cash Collateral Funds (including any interest which has accrued thereon) in full or partial payment of the Loan Obligations in such order and manner as Lender shall deem appropriate in its sole discretion.

6. **Representations and Warranties.** Pledgor hereby represents and warrants that Pledgor has full power and authority to pledge the Deposit Collateral Account and the Cash Collateral Funds to the Lender, and that the Deposit Collateral Account is free and clear of all liens and encumbrances of any nature whatsoever (other than the assignment, pledge and security interest created hereby), and Pledgor will not further encumber the Deposit Collateral Account without Lender's prior written consent.

7. **Termination of Assignment.** This is a continuing pledge and assignment, and this Assignment shall remain in full force and effect until such time as Pledgor pays in full all Loan Obligations, at which time this Assignment shall become null and void; otherwise, it shall remain in full force and effect until proper release thereof is made in writing by the Lender.

8. **No Waivers or Releases by Lender to Affect Assignment.** The Lender may take or release any other security and may release any party primarily or secondarily liable for any obligations hereby secured, and may grant extensions, renewals, or indulgences of such obligations, or any of them, all without releasing or in any way affecting this Assignment. Lender may proceed under this Assignment without first resorting to any other collateral or making demand on any other party liable on the obligations hereby secured.

9.    **Severability.**  The provisions of this Assignment are severable; inapplicability or unenforceability of any provision shall not limit or impair the operation or validity of any other provisions of this Assignment.

10.    **Successors and Assigns.**   This Assignment and all representations and warranties, powers, and rights contained herein shall bind the successors and assigns of Pledgor and shall inure to the benefit of the Lender and its successors and assigns.

11.    **Notices.**  All notices and other communications provided for hereunder shall be given at the address of Pledgor and Lender as set forth in the Loan Agreement and shall be deemed received in accordance with the provisions set forth in the Loan Agreement.  When requested in writing by Pledgor, the Lender shall provide information on this Deposit Collateral Account to the Pledgor or the Department.

12.    **Tax Identification Number.**   Interest accruing from time to time on the Deposit Collateral Account will be reported under the tax identification number of Pledgor to the Internal Revenue Service, and any disbursements to Pledgor will be subject to any applicable withholding requirements, notwithstanding anything to the contrary herein.

13.    **Further Assurances.**  Pledgor will, at its expense, at any time and from time to time, promptly execute and deliver all further instruments and documents and take all further action that may be necessary or desirable or that the Lender may reasonably request in order (i) to perfect and protect the security interest created or purported to be created hereby; (ii) to enable the Lender to exercise and enforce its rights and remedies hereunder in respect of the Cash Collateral Funds.

14.    **Controlling    Law.**    THE    VALIDITY,    INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS ASSIGNMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA WHERE THE DEPOSIT COLLATERAL ACCOUNT IS DEEMED LOCATED.

15.    **Waiver of Jury Trial.**  PLEDGOR AND LENDER HEREBY WAIVE ANY RIGHT THAT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS ASSIGNMENT OR THE LOAN, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR PLEDGOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS ASSIGNMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS ASSIGNMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  PLEDGOR AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS ASSIGNMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR

AGREEMENT OF PLEDGOR AND LENDER IRREVOCABLY TO WAIVE THEIR RIGHTS TO TRIAL BY JURY AS AN INDUCEMENT OF LENDER TO CONTINUE TO MAKE THE LOAN AVAILABLE TO PLEDGOR AND TO MODIFY CERTAIN TERMS OF THE LOAN DOCUMENTS, AND THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN PLEDGOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

**IN WITNESS WHEREOF,** the parties have caused this Assignment to be executed and delivered as of the day and year first above written.

**PLEDGOR:**

**WESTPORT NURSING TAMPA, L.L.C.,**
a Florida limited liability company

By:  BHMSUNI, LLC
       a Delaware limited liability company,
       Its managing member

       By:  BHMS Investments, LP
            a Delaware limited partnership
            Its managing member

            By: _____
               Kevin L. Angelis
               Managing Partner

**STATE OF** _____ )

**COUNTY OF** _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by _____ as the Managing Partner of BHMS Investments, LP, a Delaware limited partnership, as managing member of BHMSUNI, LLC, a Delaware limited liability company, as managing member of Westport Nursing Tampa, L.L.C., a Florida limited liability company. He is personally known to me or has produced a driver's license as identification.

                         _____
                         Notary Public

[SEAL]

                         My Commission Expires:_____

**LENDER:**

**USAMERIBANK**,
a Florida state banking corporation

By: _____
              Trey Korhn
              Its Vice President

**STATE OF** _____)

**COUNTY OF** _____)

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by Trey Korhn as Vice President of USAmeriBank, a Florida banking corporation. He is personally known to me or has produced a driver's license as identification.

_____
Notary Public

[SEAL]

My Commission Expires:_____

20394206 v4         6         Assignment Deposit Account (Cash Collateral)
                                                    19200-37

**From:** "Price, Jay" <jprice@burr.com>
**To:** "Rabke, W. Wilhelm" <wrabke@williamsmullen.com>, Trey Korhn <TKorhn@usameribank.com>
**Cc:** "Kevin L. Angelis" <kevin.angelis@bhmsinvestments.com>
**Subject:** RE: Westport MLR OIR Notice Letter
**Date:** Thu, 27 Mar 2014 17:25:44 +0000
**Importance:** Normal
**Attachments:** BLACKLINE_20609989v1_DRAFT_with_revision_Assignment_Deposit_Account_(Cash_Collateral)_--_Westport_Nursing_([WMv1]_-_20394206v4_Assignment_Deposit_Account_(Cash_Collateral)_--_Westport_Nursing_(20610005)_(1).PDF
**Inline-Images:** image001.jpg

---

Here is a comparison of my current version (same version number sent out for signature) and your revisions. I had some minor changes. See if this will work assuming everyone is in agreement. Thanks.

**From:** Rabke, W. Wilhelm [mailto:wrabke@williamsmullen.com]
**Sent:** Thursday, March 27, 2014 12:12 PM
**To:** Price, Jay; Trey Korhn
**Cc:** Kevin L. Angelis
**Subject:** RE: Westport MLR OIR Notice Letter

Jay,

Correct with your response.

Thanks!

Will Rabke
Williams Mullen

804.420.6395

**From:** Price, Jay [mailto:jprice@burr.com]
**Sent:** Thursday, March 27, 2014 1:10 PM
**To:** Trey Korhn; Rabke, W. Wilhelm
**Cc:** Kevin L. Angelis
**Subject:** RE: Westport MLR OIR Notice Letter

I think I've cleared this up with Will and I don't think we need a separate DACA agreement that is unlocked. I think we can fix this in the current assignment of pledge account. The account will be subject to potential reporting (as far as confirming the liquidity required by state statute), but under statute it can be used as a cash collateral account and it is not an account that the state has any interest in.

**From:** Trey Korhn [mailto:TKorhn@usameribank.com]
**Sent:** Thursday, March 27, 2014 12:07 PM
**To:** Price, Jay; Rabke, W. Wilhelm
**Cc:** Kevin L. Angelis
**Subject:** RE: Westport MLR OIR Notice Letter

Yes, we definitely need to have separation between these two accounts.  My understanding is the same that the MLR account is for the funds over and above the $3,000M in cash collateral and held in a separate account for which this separate agreement will apply.

Will, I'm trying to locate an unlocked version of the DACA internally and will send it if successful.  Thanks.

Trey

---

**From:** Price, Jay [mailto:jprice@burr.com]
**Sent:** Thursday, March 27, 2014 12:31 PM
**To:** Rabke, W. Wilhelm; Trey Korhn
**Cc:** Kevin L. Angelis
**Subject:** RE: Westport MLR OIR Notice Letter
**Importance:** High

I want to make sure we are on the same page.  I thought this MLR account had something to do with funds other than the $3,000,000 that was being pledged by the borrower to the bank as cash collateral.  As currently set up, based on prior conversations, I have the bank funding $15,000,000, but $3,000,000 coming into the cash collateral account.  The cash collateral account is to be a separate account in which only the bank has rights.  I want to make sure this is not some joint account where the State has certain special requirements or any interest therein.  It was my understanding that we were talking about using this MLR account for amounts above and beyond the $3,000,000, but this states that it applies only to the $3,000,000 with the remainder still being held at Regions.  We need to discuss this in the call.  I need to make sure the bank understands.  The last emails talked about assuming the bank would want accounts above and beyond the cash collateral account and that is what the MLR issue related to.



Joel (Jay)  A. Price, Jr.  •  *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203
direct 205-458-5147 • fax 205-244-5699 • main 205-251-3000
jprice@burr.com • www.burr.com

ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

---

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

Circular 230 Notice - Regulations adopted by the Internal Revenue Service require us to inform you that any federal tax advice contained in this communication (including attachments) (I) is not intended or written by Burr & Forman LLP to be used, and cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer, and (II) is not written to support the promotion or marketing of any transaction(s) or matter(s) addressed in this communication.

**From:** Rabke, W. Wilhelm [mailto:wrabke@williamsmullen.com]
**Sent:** Thursday, March 27, 2014 11:23 AM
**To:** 'Trey Korhn' (TKorhn@usameribank.com); Price, Jay
**Cc:** Kevin L. Angelis
**Subject:** FW: Westport MLR OIR Notice Letter

Jay and Trey,

Attached is the first draft on the MLR Notice Letter.  Jay, Trey and Kevin have discussed this.

I need an unlocked version of the account agreement, so I can add required language.

Thanks,

Will

**Will Rabke**
**Williams Mullen**

**804.420.6395**

---

**From:** Rabke, W. Wilhelm
**Sent:** Thursday, March 27, 2014 12:20 PM
**To:** philip.notopoulos@hklaw.com; John Bartle (jbartle6081@yahoo.com); Dane Starbuck; Kevin L. Angelis
**Cc:** Hungate-Noland, Beth
**Subject:** Westport MLR OIR Notice Letter

All,

I am circulating this notice letter to all parties simultaneously, so please pass along questions.  Separately I will forward it to Ameribank's counsel for their review.

Let me know any comments.  The Note will be pulled out of the loan docs.  We think it makes more sense to only attach the Note as opposed to the entire Loan Agreement.  The new agreement with USAB is a work in progress, because I need a form that we can edit from the bank.

Thanks,

Will

W. Wilhelm Rabke (Will)
Williams Mullen
A Professional Corporation
200 South 10th Street
Richmond, Virginia 23219
Tel:   804.420.6395
Fax:  804.420.6507
Email:  wrabke@williamsmullen.com
www.williamsmullen.com

**CONFIDENTIALITY NOTICE:** Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality.  If the recipient of this transmission is not the named addressee, the recipient should immediately notify

the sender and destroy the information transmitted without making any copy or distribution thereof.

**IRS CIRCULAR 230 DISCLOSURE:**  To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**NOTICE:** Pursuant to the Electronic Communications Privacy Act, 18 18 U.S.C. §§ 2510-2522, the contents of this e-mail and the attachments hereto (if any) are confidential, privileged, and/or otherwise exempt from disclosure and are intended only for disclosure to and use by the intended recipient of this message. If you are not the intended recipient of this message, the receipt of this message is not intended to and does not waive any applicable confidentiality or privilege and you are hereby notified that any dissemination, distribution, printing, or copying of the contents of this e-mail is strictly prohibited. If you are not the intended recipient, please notify us by telephone or e-mail and delete this e-mail from your system. Further, e-mail transmissions are not guaranteed to be secure or error-free because information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. WE THEREFORE EXPRESSLY DISCLAIM ANY REPRESENTATION OR WARRANTY REGARDING THE SAFETY AND INTEGRITY OF THIS E-MAIL AND FOR ANY ERRORS OR OMISSIONS IN THE CONTENTS OF THIS E-MAIL THAT ARISE AS A RESULT OF THIS TRANSMISSION OR ANY SUBSEQUENT RE-TRANSMISSION

-----

This message has been scanned for viruses and content by McAfee.

## ASSIGNMENT AND PLEDGE OF DEPOSIT ACCOUNT
### (Cash Collateral Account)

**THIS ASSIGNMENT AND PLEDGE OF DEPOSIT ACCOUNT (Cash Collateral Account)** (this "Assignment"), dated as of the _____ day of March, 2014, by **WESTPORT NURSING TAMPA, L.L.C.,** a Florida limited liability company ("Pledgor"), in favor of **USAMERIBANK**, a Florida banking corporation ("Lender").

### R E C I T A L S:

A.      Pledgor has requested a loan from Lender (the "Loan") evidenced by that certain Promissory Note of even date herewith by Pledgor, payable to Lender in the principal amount of $15,000,000.00 (including all amendments thereto and as the same may be hereafter amended, modified or extended, the "Note"). The Loan is also evidenced by a certain Loan Agreement between Pledgor and Lender of even date herewith (including all amendments thereto and as the same may be hereafter amended or modified, the "Loan Agreement") and by certain other Loan Documents (as defined in the Loan Agreement).

B.      Pursuant to the Loan Documents and as a condition to Lender making the Loan, Pledgor is required to deposit and maintain certain Cash Collateral (as defined in the Loan Documents) in an account established for such purpose and Pledgor is required to assign and pledge to Lender such account as additional collateral security for all payment and performance obligations with respect to the Loan (collectively, the "Loan Obligations"). This Assignment is therefore being provided by Pledgor for such purposes and as an inducement to Lender to make the Loan to Pledgor.

C.      The Cash Collateral Funds (as defined below) deposited by Pledgor hereunder shall be included in the Pledgor's reserve requirements as required under Section 651.035 of the Florida Statutes (the "MLR Statute"), as such Cash Collateral Funds meet the statutory uses allowed under Section 1(b) of the MLR Statute.

D.      The MLR Statute provides that the Office of Insurance Regulation of the State of Florida (the "Department") shall have information rights regarding the Cash Collateral Funds.

### AGREEMENT

**NOW, THEREFORE,** in consideration of the foregoing recitals and other good and valuable consideration, the parties agree as follows:

1.      **Recitals.** The recitals hereto are true and correct.

2.      **Establishment of Cash Collateral Account.** Pursuant to the Loan Documents, Pledgor is required to establish a Cash Collateral Account for purposes of holding deposits of required Cash Collateral. Pledgor has agreed to make the required deposits in connection with closing of the Loan (all funds so deposited, together with interest from time to time earned thereon and together with moneys thereafter deposited with Lender

20394206 v4

as Cash Collateral for the Loan, are referred to herein as the "Cash Collateral Funds"). All Cash Collateral Funds shall be maintained in one or more interest-bearing deposit accounts offered by Lender for such purpose (such deposits accounts, together with any additions, replacements or substitutions thereof, are herein collectively referenced as the "Deposit Collateral Account"). All interest which shall accrue on the Deposit Collateral Account shall remain in the Deposit Collateral Account and shall become a part of the Cash Collateral Funds. As of the date hereof, USAmeriBank Account No. 500106000 in the name of Pledgor has been set up to serve as the Deposit Collateral Account.

3.      **Control and Use of Cash Collateral Funds.** The Deposit Collateral Account shall at all times be under Lender's control. Pledgor shall have no access to, and shall not be permitted to make any withdrawals of, Cash Collateral Funds from the Deposit Collateral Account without Lender's prior consent.

4.      **Grant of Security Interest.** In order to secure the Loan Obligations, Pledgor hereby assigns, sells, transfers, pledges, sets over and delivers to the Lender and grants Lender a security interest in the Deposit Collateral Account and in the Cash Collateral Funds at any time held on deposit with the Lender in the Deposit Collateral Account, including all accrued interest thereon, together with all certificates or other writings now or hereafter issued by the Lender as evidence thereof.

5.      **Payment Upon Certain Defaults.** Upon the occurrence of any Event of Default under any of the Loan Documents, the Lender may, and is hereby authorized, in Lender's sole discretion, to apply all or any portion of the Cash Collateral Funds (including any interest which has accrued thereon) in full or partial payment of the Loan Obligations in such order and manner as Lender shall deem appropriate in its sole discretion.

6.      **Representations and Warranties.** Pledgor hereby represents and warrants that Pledgor has full power and authority to pledge the Deposit Collateral Account and the Cash Collateral Funds to the Lender, and that the Deposit Collateral Account is free and clear of all liens and encumbrances of any nature whatsoever (other than the assignment, pledge and security interest created hereby), and Pledgor will not further encumber the Deposit Collateral Account without Lender's prior written consent.

7.      **Termination of Assignment.** This is a continuing pledge and assignment, and this Assignment shall remain in full force and effect until such time as Pledgor pays in full all Loan Obligations, at which time this Assignment shall become null and void; otherwise, it shall remain in full force and effect until proper release thereof is made in writing by the Lender.

8.      **No Waivers or Releases by Lender to Affect Assignment.** The Lender may take or release any other security and may release any party primarily or secondarily liable for any obligations hereby secured, and may grant extensions, renewals, or indulgences of such obligations, or any of them, all without releasing or in any way affecting this Assignment. Lender may proceed under this Assignment without first resorting to any other collateral or making demand on any other party liable on the obligations hereby secured.

9.      **Severability.**  The provisions of this Assignment are severable; inapplicability or unenforceability of any provision shall not limit or impair the operation or validity of any other provisions of this Assignment.

10.     **Successors and Assigns.**  This Assignment and all representations and warranties, powers, and rights contained herein shall bind the successors and assigns of Pledgor and shall inure to the benefit of the Lender and its successors and assigns.

11.     **Notices.**  All notices and other communications provided for hereunder shall be given at the address of Pledgor and Lender as set forth in the Loan Agreement and shall be deemed received in accordance with the provisions set forth in the Loan Agreement.  When requested in writing by Pledgor, ~~the~~ Lender shall provide account information on th~~is~~e Deposit Collateral Account to the Pledgor or the Department.

12.     **Tax Identification Number.**  Interest accruing from time to time on the Deposit Collateral Account will be reported under the tax identification number of Pledgor to the Internal Revenue Service, and any disbursements to Pledgor will be subject to any applicable withholding requirements, notwithstanding anything to the contrary herein.

13.     **Further Assurances.**  Pledgor will, at its expense, at any time and from time to time, promptly execute and deliver all further instruments and documents and take all further action that may be necessary or desirable or that the Lender may reasonably request in order (i) to perfect and protect the security interest created or purported to be created hereby; (ii) to enable the Lender to exercise and enforce its rights and remedies hereunder in respect of the Cash Collateral Funds.

14.     **Controlling Law.** THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS ASSIGNMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA.

15.     **Waiver of Jury Trial.** PLEDGOR AND LENDER HEREBY WAIVE ANY RIGHT THAT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS ASSIGNMENT OR THE LOAN, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR PLEDGOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS ASSIGNMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS ASSIGNMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.  PLEDGOR AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS ASSIGNMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF PLEDGOR AND LENDER IRREVOCABLY TO WAIVE THEIR

RIGHTS TO TRIAL BY JURY AS AN INDUCEMENT OF LENDER TO CONTINUE TO MAKE THE LOAN AVAILABLE TO PLEDGOR AND TO MODIFY CERTAIN TERMS OF THE LOAN DOCUMENTS, AND THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN PLEDGOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

[Remainder of Page Intentionally Left Blank]

**IN WITNESS WHEREOF,** the parties have caused this Assignment to be executed and delivered as of the day and year first above written.

**PLEDGOR:**

**WESTPORT NURSING TAMPA, L.L.C.,**
a Florida limited liability company

By:     BHMSUNI, LLC
        a Delaware limited liability company,
        Its managing member

        By:     BHMS Investments, LP
                a Delaware limited partnership
                Its managing member

                By: _____
                    Kevin L. Angelis
                    Managing Partner

**STATE OF** _____ )

**COUNTY OF** _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by _____ as the Managing Partner of BHMS Investments, LP, a Delaware limited partnership, as managing member of BHMSUNI, LLC, a Delaware limited liability company, as managing member of Westport Nursing Tampa, L.L.C., a Florida limited liability company. He is personally known to me or has produced a driver's license as identification.

_____
Notary Public

[SEAL]

My Commission Expires:_____

**LENDER:**

**USAMERIBANK,**
a Florida state banking corporation

By:   _____
        Trey Korhn
        Its Vice President

**STATE OF** _____)

**COUNTY OF** _____)

The foregoing instrument was acknowledged before me this _____ day of _____, 2014, by Trey Korhn as Vice President of USAmeriBank, a Florida banking corporation. He is personally known to me or has produced a driver's license as identification.

_____
Notary Public

[SEAL]

My Commission Expires:_____

Document comparison by Workshare Compare on Thursday, March 27, 2014 12:23:53 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS/Active/20609989/1 |
| Description | #20609989v1<Active> - DRAFT with revision Assignment Deposit Account (Cash Collateral) -- Westport Nursing_([WMv1] |
| Document 2 ID | interwovenSite://DMS/Active/20394206/4 |
| Description | #20394206v4<Active> - Assignment Deposit Account (Cash Collateral) -- Westport Nursing |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 7 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 9 |

**From:** Trey Korhn <TKorhn@usameribank.com>
**To:** "Rabke, W. Wilhelm" <wrabke@williamsmullen.com>, "Price, Jay" <jprice@burr.com>
**Cc:** "Kevin L. Angelis" <kevin.angelis@bhmsinvestments.com>
**Subject:** RE: Westport MLR OIR Notice Letter
**Date:** Thu, 27 Mar 2014 17:29:07 +0000
**Importance:** Normal
**Attachments:** USAB___Deposit_Account_Control_Agreement_MARKUP.DOC
**Inline-Images:** image001.jpg

---

Attached is an unlocked version

---

**From:** Rabke, W. Wilhelm [mailto:wrabke@williamsmullen.com]
**Sent:** Thursday, March 27, 2014 1:00 PM
**To:** Price, Jay
**Cc:** Kevin L. Angelis; Trey Korhn
**Subject:** RE: Westport MLR OIR Notice Letter

Jay,

Call me if there are concerns with this mark-up.

Thanks,

Will

---

**Will Rabke**
**Williams Mullen**

**804.420.6395**

---

**From:** Price, Jay [mailto:jprice@burr.com]
**Sent:** Thursday, March 27, 2014 12:31 PM
**To:** Rabke, W. Wilhelm; 'Trey Korhn' (TKorhn@usameribank.com)
**Cc:** Kevin L. Angelis
**Subject:** RE: Westport MLR OIR Notice Letter
**Importance:** High

I want to make sure we are on the same page. I thought this MLR account had something to do with funds other than the $3,000,000 that was being pledged by the borrower to the bank as cash collateral. As currently set up, based on prior conversations, I have the bank funding $15,000,000, but $3,000,000 coming into the cash collateral account. The cash collateral account is to be a separate account in which only the bank has rights. I want to make sure this is not some joint account where the State has certain special requirements or any interest therein. It was my understanding that we were talking about using this MLR account for amounts above and beyond the $3,000,000, but this states that it applies only to the $3,000,000 with the remainder still being held at Regions. We need to discuss this in the call. I need to make sure the bank understands. The last emails talked about assuming the bank would want accounts above and beyond the cash collateral account and that is what the MLR issue related to.

Joel (Jay) A. Price, Jr. • *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203
direct 205-458-5147 • fax 205-244-5699 • main 205-251-3000
jprice@burr.com • www.burr.com

ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

Circular 230 Notice - Regulations adopted by the Internal Revenue Service require us to inform you that any federal tax advice contained in this communication (including attachments) (I) is not intended or written by Burr & Forman LLP to be used, and cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer, and (II) is not written to support the promotion or marketing of any transaction(s) or matter(s) addressed in this communication.

**From:** Rabke, W. Wilhelm [mailto:wrabke@williamsmullen.com]
**Sent:** Thursday, March 27, 2014 11:23 AM
**To:** 'Trey Korhn' (TKorhn@usameribank.com); Price, Jay
**Cc:** Kevin L. Angelis
**Subject:** FW: Westport MLR OIR Notice Letter

Jay and Trey,

Attached is the first draft on the MLR Notice Letter.  Jay, Trey and Kevin have discussed this.

I need an unlocked version of the account agreement, so I can add required language.

Thanks,

Will

**Will Rabke**
**Williams Mullen**

**804.420.6395**

**From:** Rabke, W. Wilhelm

**Sent:** Thursday, March 27, 2014 12:20 PM
**To:** philip.notopoulos@hklaw.com; John Bartle (jbartle6081@yahoo.com); Dane Starbuck; Kevin L. Angelis
**Cc:** Hungate-Noland, Beth
**Subject:** Westport MLR OIR Notice Letter

All,

I am circulating this notice letter to all parties simultaneously, so please pass along questions. Separately I will forward it to Ameribank's counsel for their review.

Let me know any comments. The Note will be pulled out of the loan docs. We think it makes more sense to only attach the Note as opposed to the entire Loan Agreement. The new agreement with USAB is a work in progress, because I need a form that we can edit from the bank.

Thanks,

Will

W. Wilhelm Rabke (Will)
Williams Mullen
A Professional Corporation
200 South 10th Street
Richmond, Virginia 23219
Tel:  804.420.6395
Fax:  804.420.6507
Email:  wrabke@williamsmullen.com
www.williamsmullen.com

**CONFIDENTIALITY NOTICE:** Information contained in this transmission to the named addressee is proprietary information and is subject to attorney-client privilege and work product confidentiality. If the recipient of this transmission is not the named addressee, the recipient should immediately notify the sender and destroy the information transmitted without making any copy or distribution thereof.

**IRS CIRCULAR 230 DISCLOSURE:** To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**NOTICE:** Pursuant to the Electronic Communications Privacy Act, 18 18 U.S.C. §§ 2510-2522, the contents of this e-mail and the attachments hereto (if any) are confidential, privileged, and/or otherwise exempt from disclosure and are intended only for disclosure to and use by the intended recipient of this message. If you are not the intended recipient of this message, the receipt of this message is not intended to and does not waive any applicable confidentiality or privilege and you are hereby notified that any dissemination, distribution, printing, or copying of the contents of this e-mail is strictly prohibited. If you are not the intended recipient, please notify us by telephone or e-mail and delete this e-mail from your system. Further, e-mail transmissions are not guaranteed to be secure or error-free because information can be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. WE THEREFORE EXPRESSLY DISCLAIM ANY REPRESENTATION OR WARRANTY REGARDING THE SAFETY AND INTEGRITY OF THIS E-MAIL AND FOR ANY ERRORS OR OMISSIONS IN THE CONTENTS OF THIS E-MAIL THAT ARISE AS A RESULT OF THIS TRANSMISSION OR ANY SUBSEQUENT RE-TRANSMISSION

-----

This message has been scanned for viruses and content by McAfee.

## DEPOSIT ACCOUNT CONTROL AGREEMENT

**THIS DEPOSIT ACCOUNT CONTROL AGREEMENT** (the "**Control Agreement**") is dated as of        , is entered into by and among        ("**Debtor**"),        ("**Secured Party**"), and USAMERIBANK, ("**Bank**"), and is delivered pursuant to the [Credit Agreement (as amended, modified, restated, or supplemented at any time or from time to time, the "**Credit Agreement**")], dated as of        , [among/between] [Debtor and Secured Party/Debtor, Secured Party and the other Loan Parties (as such term is defined in the Credit Agreement)].  Initially capitalized or capitalized terms used but not defined herein shall have the meaning assigned to said terms in the Credit Agreement.  All references herein to the "**UCC**" shall mean the Uniform Commercial Code as in effect in the State of        .

Section 1.    **Establishment of Deposit Account(s)**.  Bank hereby confirms and agrees that Bank has established the following accounts (each such account and any successor account are individually referred to herein as a "**Deposit Account**" and collectively as the "**Deposit Accounts**"):

| Account Number(s): | Account Title(s): |
|---|---|
|  |  |

Section 2.    **Access, Maintenance and Control of Deposit Account(s)**.

(a)    Debtor Access to Deposit Accounts. Notwithstanding anything else contained in this Agreement, Secured Party agrees that Debtor will be allowed access to the Deposit Accounts until Bank receives, and has had a reasonable opportunity to act on, an executed Notice of Sole Control in substantially the form set forth as Exhibit A hereto (a "Notice of Sole Control").

(b)    Notice of Sole Control.  If at any time Secured Party delivers to Bank a Notice of Sole Control, Bank agrees that after receipt of such notice, and unless and until such time as Bank receives an executed Notice of Termination substantially in the form attached hereto as Exhibit B (a "Notice of Termination"), Bank shall comply with instructions with respect to the Deposit Account(s) (including, without limitation, instruction directing the disposition of funds in the Deposit Account(s)) solely from Secured Party, without further consent by Debtor or any other person or entity.  If Debtor is otherwise entitled to issue instructions and such instructions conflict with any instructions issued by Secured Party, Bank shall follow the instructions issued by Secured Party.

(c)    Lockboxes. To the extent items deposited to a Deposit Account have been received in one or more post office lockboxes maintained for Debtor by Bank (each a "Lockbox") and processed by Bank for deposit, Debtor acknowledges that Debtor has granted Secured Party a security interest in all such items (the "Remittances"). Debtor agrees that after Bank receives a Notice of Sole Control, Debtor will have no further right or ability to instruct Bank regarding the receipt, retrieval, processing or deposit of Remittances, and that Secured Party alone will have the right and ability to so instruct Bank.

(d)    Statements and Confirmations.  At Debtor's expense, Bank will send copies of all statements, confirmations and other correspondence concerning the Deposit Account(s) simultaneously to each of Debtor and Secured Party at the address for each set forth in Section 10 of this Control Agreement; and

(e)    Tax Reporting. All interest, if any, relating to the Deposit Account(s), shall be reported to the Internal Revenue Service and all state and local taxing authorities under the name and taxpayer identification number of Debtor.

Section 3.    **Subordination of Lien; Returned Items; Settlement Item Amounts; Bank Fees.**

(a)    Subordination. In the event that Bank has or subsequently obtains by agreement, by operation of law or otherwise a security interest in the Deposit Account(s) or any funds credited thereto, Bank hereby agrees that such security interest shall be subordinate to the security interest of Secured Party except as provided in this Agreement, including, without limitation, following proviso; provided, however, that Secured Party hereby acknowledges and agrees that nothing herein subordinates or waives, and that Bank expressly reserves and retains, all of its present and future rights (whether described as rights of setoff, banker's lien, security interest, chargeback or otherwise), and whether available to Bank under the law (whether now existing or hereafter enacted), under this Control Agreement or under any other agreement between Bank and Secured Party or Debtor concerning the Deposit Account, or otherwise with respect to: (i) Returned Items (as defined below), (ii) Settlement Item Amounts (as defined below), or (iii) Bank Fees (as defined below).

(b)    Returned Items. Secured Party and Debtor understand and agree that the face amount ("Returned Item Amount") of each Returned Item will be paid by Bank debiting the Deposit Account to which the Returned Item was originally credited, without prior notice to Secured Party or Debtor. As used in this Agreement, the term "Returned Item" means (i) any item deposited to a Deposit Account and returned unpaid, whether for insufficient funds or for any other reason, and without regard to timeliness of the return or the occurrence or timeliness of any drawee's notice of non-payment; (ii) any item subject to a claim against Bank of breach of transfer or presentment warranty under the Uniform Commercial Code (as adopted in the applicable state) or Regulation CC (12 C.F.R. §229), as in effect from time to time; (iii) any automated clearing house ("ACH") entry credited to the Deposit Account and returned unpaid or subject to an adjustment entry under applicable clearing house rules, whether for insufficient funds or for any other reason, and without regard to timeliness of the return or adjustment; (iv) any credit to the Deposit Account from a merchant card transaction, against which a contractual demand for chargeback has been made; and (v) any credit to a Deposit Account made in error. Debtor agrees to pay all Returned Item Amounts immediately on demand, without setoff or counterclaim, to the extent there are not sufficient funds in the applicable Deposit Account to cover the Returned Item Amounts on the day Bank attempts to debit them from the Deposit Account.

(c)    Settlement Items. Secured Party and Debtor understand and agree that the face amount ("Settlement Item Amount") of each Settlement Item will be paid by Bank debiting the applicable Deposit Account, without prior notice to Secured Party or Debtor. As used in this Agreement, the term "Settlement Item" means (i) each check or other payment order drawn on or payable against any controlled disbursement account or other deposit account at any time linked to any Deposit Account by a zero balance account connection or other automated funding mechanism (each a "Linked Account"), which Bank cashes or exchanges for a cashier's check or official check in the ordinary course of business prior to receiving a Notice of Sole Control and having had a reasonable opportunity to act on it, and which is presented for settlement against the Deposit Account (after having been presented against the Linked Account) after Bank receives the Notice of Sole Control, (ii) each check or other payment order drawn on or payable against a Deposit Account, which, on the day Bank receives an Notice of Sole Control, Bank cashes or exchanges for a cashier's check or official check in the ordinary course of business after Bank's cutoff time for posting, (iii) each ACH credit entry initiated by Bank, as originating depository financial institution, on behalf of Debtor, as originator, prior to Bank having received an Notice of Sole Control and having had a reasonable opportunity to act on it, which ACH credit entry settles after Bank receives an Notice of Sole Control, and (iv) any other

SLK_TAM:#1643663v3

payment order drawn on or payable against a Deposit Account or any Linked Account, which Bank has paid or funded prior to receiving an Notice of Sole Control and having had a reasonable opportunity to act on it, and which is first presented for settlement against the Deposit Account in the ordinary course of business after Bank receives the Notice of Sole Control and has transferred Collateral Account Funds to Secured Party under this Control Agreement. Debtor agrees to pay all Settlement Item Amounts immediately on demand, without setoff or counterclaim, to the extent there are not sufficient funds in the applicable Deposit Account to cover the Settlement Item Amounts on the day they are to be debited from the Deposit Account

(d)   Bank Fees. Debtor agrees to pay all Bank's fees and charges for the maintenance and administration of the Deposit Accounts and for the treasury management and other account services provided with respect to the Deposit Accounts and any Lockboxes (collectively "Bank Fees"), including, but not limited to, the fees for (a) Balance Reports provided on the Deposit Collateral Accounts, (b) funds transfer services received with respect to the Deposit Accounts, (c) lockbox processing services, (d) Returned Items, (e) funds advanced to cover overdrafts in the Deposit Accounts (but without Bank being in any way obligated to make any such advances), and (f) duplicate bank statements. The Bank Fees will be paid by Bank debiting the Deposit Accounts on the day that the Bank Fees are due, without notice to Secured Party or Debtor. If there are not sufficient funds in the Deposit Accounts to cover fully the Bank Fees on the day Bank attempts to debit them from the Deposit Accounts, such shortfall or the amount of such Bank Fees will be paid by Debtor to Bank, without setoff or counterclaim, within five (5) days after demand from Bank. Secured Party agrees to pay any Bank Fees which accrue after Bank receives a Notice of Termination, within fifteen (15) days after demand, without setoff or counterclaim, to the extent such Bank Fees are not paid in full by Debtor within five (5) days after demand on Debtor by Bank.

Section 4.   **Choice of Law; Venue**. This Control Agreement shall each be governed by the laws of the State of        , *excepting, however*, its laws or principles regarding conflicts of laws or choice of laws.  Regardless of any provision in any other agreement, for purposes of the UCC,        shall be deemed to be Secured Party's jurisdiction (within the meaning of Section 9-304 of the UCC) and the Deposit Account(s) shall be governed by the laws of the State of Florida. Venue for any legal action arising under or related to this Control Agreement will be the state courts of Hillsborough County, Florida, and the federal courts of the Middle District of Florida, Tampa Division.

Section 5.   **Bank's Responsibility; Limitation of Liability.**

(a)   Bank shall have no responsibility or liability to Debtor for complying with instructions concerning the Deposit Accounts originated by Secured Party, and shall have no responsibility to investigate the appropriateness of any such instruction or the right or authority of Secured Party to give any such instruction, even if Debtor notifies Bank that Secured Party is not legally entitled to originate any such instruction.;

(b)   This Control Agreement does not create any obligation of Bank except for those expressly set forth in this Control Agreement. In particular, Bank need not investigate whether Secured Party is entitled under Secured Party's agreements with Debtor to issue any instructions regarding the Deposit Accounts. In acting or performing under this Control Agreement, Bank may rely on any papers, documents, notices and communications it reasonably believes are given, signed or sent by the appropriate party or its authorized representative;

(c)   Bank will not have any liability to Debtor or Secured Party for claims, losses, liabilities or damages suffered or incurred by Debtor or Secured Party as a result of or in connection with this Control Agreement;

SLK_TAM:#1643663v3

(d)     The parties agree that substantial compliance by Bank with the terms of this Control Agreement and the agreements entered into with Secured Party from time to time with respect to the Deposit Accounts, as they may be amended from time to time, shall be deemed to constitute the exercise of ordinary and reasonable care. In the event that Bank is liable to Debtor or Secured Party under this Control Agreement, Bank's liability shall be limited to the actual direct and provable amount of money damages suffered by the claiming party; and

(e)     In no event shall Bank have any liability to Debtor or Secured Party for (1) any consequential, special, punitive or exemplary damages, indirect loss or damage or any lost profits, whether or not any claim for such damages is based on tort or contract or an allegation that Bank knew or should have known the likelihood of such damages in any circumstances, (2) any failure to perform Bank's responsibilities under this Control Agreement if such failure is due to strikes, lockouts or other labor disturbances, riots or civil commotions, fire or other casualty, earthquakes, floods, windstorms, lightning or other acts of God, epidemics, sabotage, insurrection, war, civil disorders, hostilities, expropriation or confiscation of properties, equipment failures or malfunctions, power failures, failures of or delays by carriers or other third parties, interference by civil or military authorities, or any other cause or condition beyond Bank's control, (3) any act or failure to act by Debtor or Secured Party, or (4) acting pursuant to a court order, subpoena, garnishment, tax levy or similar process in regard to any account or service covered by this Control Agreement.

Section 6.     **Indemnification of Bank**.  Debtor and Secured Party hereby agree that Debtor and Secured Party shall, jointly and severally, indemnify and hold harmless Bank, its directors, officers, shareholders, agents and employees against any and all claims, causes of action, liabilities, lawsuits, demands and damages incurred, sustained or payable by Bank (including without limitation, any and all court costs and reasonable attorney's fees), in any way related to or arising out of or in connection with this Control Agreement or any action taken or not taken pursuant hereto.

Section 7.     **Representations and Warranties**. Each of Debtor, Bank and Secured Party represents and warrants that the execution, delivery, and performance of this Control Agreement (i) is within such party's powers, (ii) has been duly authorized, executed and delivered by such party, and (iii) does not conflict with nor constitute a breach of any provision contained in any material agreement by which such party is bound.

Section 8.     **Conflict with Other Agreements**. In the event of any conflict between this Control Agreement (or any portion thereof) and any other agreement now existing or hereafter entered into, the terms of this Control Agreement shall prevail.  No amendment or modification of this Control Agreement  shall be binding on any party hereto unless it is in writing and is signed by all of the parties hereto; and

Section 9.     **Successors; Assignment**.  The terms of this Control Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.  Neither Secured Party not Debtor may assign its rights hereunder without the prior written consent of Bank.

Section 10.     **Notices**.  Any notice, request or other communication required or permitted to be given under this Control Agreement shall be in writing and deemed to have been properly given when delivered in person, or when sent by electronic mail, telecopy or other electronic means and electronic confirmation of error free receipt is received or two (2) days after being sent by certified or registered United States mail, return receipt requested, postage prepaid, addressed to the party at the address set forth below.

SLK_TAM:#1643663v3

Debtor:                            Name:
Address:
Attention:
Phone:
Fax:
Email:

Secured Party:                Name:
Address:
Attention:
Phone:
Fax:
Email:

Bank:                             USAmeriBank
4700 140th Avenue, North
Clearwater, FL 33762
Attention: Chief Operating Officer
Phone: 727-260-6455
Fax: 727-260-6600

Any party may change its address for notices in the manner set forth above.

Section 11.     **Termination**. The obligations of Bank to Secured Party pursuant to this Control Agreement shall continue in effect until the earlier of Bank delivering notice of the termination of this Control Agreement to Secured Party or Secured Party notifying Bank of such termination by delivering a Notice of Termination in substantially the form of Exhibit B hereto to Bank. The termination of this Control Agreement shall not terminate the Deposit Account(s) or alter the obligations of Bank to Debtor pursuant to any other agreement with respect to the Deposit Account(s).

Section 12.     **Counterparts**. This Control Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Control Agreement by signing and delivering one or more counterparts. Receipt of a copy of an executed signature page to this Control Agreement by facsimile or other electronic transmission shall constitute effective delivery of thereof. Electronic or digitally stored records of this Control Agreement maintained by Secured Party shall be deemed to be originals.

Section 13.     **Attorneys' Fees**. In the event of any litigation arising out of or relating to this Control Agreement or the breach, termination, validity, or enforcement of this Control Agreement, the prevailing party shall be entitled to recover all costs and reasonable attorneys' fees incurred, including, without limitation, costs and attorneys' fees incurred in any investigations, trial, bankruptcies, and appeals.

Section 14.     **Jury Waiver**. THE DEBTOR AND THE SECURED PARTY EACH HEREBY WAIVES THEIR RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS CONTROL AGREEMENT, ANY RIGHTS, REMEDIES, OBLIGATIONS, OR DUTIES HEREUNDER, OR THE PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF.

**[Remainder of Page Intentionally Blank]**

SLK_TAM:#1643663v3

**IN WITNESS WHEREOF**, the parties hereto have caused this Control Agreement to be executed as of the day and year first above written.

,
as Debtor

By: _____
Name:
Title:

,
as Secured Party

By: _____
Name:
Title:

**USAmeriBank**
as Bank

By: _____
Name:
Title:

**EXHIBIT "A"**
**TO DEPOSIT ACCOUNT CONTROL AGREEMENT**

[Letterhead of Secured Party]

[Date]

USAmeriBank
4700 140th Avenue, North
Clearwater, FL 33762
Attention: [●]

Re: Notice of Sole Control

Ladies and Gentlemen:

As referenced in the Deposit Account Control Agreement dated as of [●] among you (as the **"Bank"**), [●] (the **"Debtor"**), and the undersigned (a copy of which is attached), we hereby give you notice of our sole control over deposit account number(s) [●] (the **"Deposit Account(s)"**) and all financial assets credited thereto. You are hereby instructed not to accept any direction, instructions or entitlement orders with respect to the Deposit Account(s) or the financial assets credited thereto from any person other than the undersigned, unless otherwise ordered by a court of competent jurisdiction.

You are instructed to deliver a copy of this notice by facsimile transmission to Debtor.

Very truly yours,

[●], as Secured Party

By: _____
Name:
Title:

**EXHIBIT "B"**
**TO DEPOSIT ACCOUNT CONTROL AGREEMENT**

[Letterhead of Secured Party]

[Date]

USAmeriBank
4700 140th Avenue, North
Clearwater, FL  33762
Attention: [●]

Re:  Termination of Deposit Account Control Agreement

You are hereby notified that the Deposit Account Control Agreement dated as of [●] among you (as the "**Bank**"), [●] ("**Debtor**"), and the undersigned (a copy of which is attached) is terminated with respect to the undersigned and you have no further obligations to the undersigned thereunder. Notwithstanding any previous instructions to you, you are hereby instructed to accept all future directions with respect to account no(s). [●] from Debtor.  This notice terminates any obligations you may have to the undersigned with respect to such accounts; however nothing contained in this notice shall alter any obligations which you may otherwise owe to Debtor pursuant to any other agreement.

You are instructed to deliver a copy of this notice by facsimile transmission to Debtor.

Very truly yours,

[●], as Secured Party

By:  _____
Name:
Title:

SLK_TAM:#1643663v1                                           3