## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HORIZON LP UV LENDER, LLC.,
a Delaware Limited Liability Company,

    Plaintiff,

v.                                  CASE NO.

BVM UNIVERSITY VILLAGE, LLC,
a Florida Limited Liability Company, and
BVM MANAGEMENT, INC., an Indiana
Corporation,

    Defendants.

_____/

### COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff HORIZON LP UV LENDER, LLC ("Horizon"), by its undersigned attorneys, hereby brings the following Complaint against Defendants BVM UNIVERSITY VILLAGE, LLC, and BVM MANAGEMENT, INC., (collectively, "BVM") for Declaratory Relief, Tortious Interference, Abuse of Process, and Slander of Title, and in support thereof states as follows:

### BACKGROUND

1.    Plaintiff Horizon is a Delaware limited liability company with its principal place of business in Carlsbad, California. Horizon is the holder of certain notes (the "Notes") reflecting indebtedness owed to it by Westport Holdings Tampa LP, Westport Holdings Tampa II LP, and Westport Nursing Tampa, LLC. The corporate parent of these entities, Westport Senior Living Investment Fund, LP (the "Investment Fund"), has provided certain guaranties with respect to the Notes. Investment Fund and its affiliates pledged all of the limited partnership interests and general partnership interests of Westport Holdings Tampa LP and

29221489.2



CONFIDENTIAL

VNB_072060

Westport Holdings Tampa II, L.P. as additional security for the notes. Westport Holdings Tampa LP, Westport Holdings Tampa II LP, Westport Nursing Tampa, LLC, Westport Holdings University Village, LLC, and Investment Fund, when referred to collectively, will be referred to herein as the "Westport Entities".

2. Defendant BVM Management, Inc. is an Indiana nonprofit corporation that owns and/or manages one or more senior living communities in Indiana and Florida, and Defendant BVM University Village, LLC, is a Florida limited liability company. The principals and members of both companies are John Bartle and Robert L. Rynard, Sr. Messrs. Bartle and Rynard have portrayed "BVM Management/Westport Holdings, L.P." to be a limited partnership, but this entity (or the fictitious name) does not appear on the database of the Florida Division of Corporations and is potentially merely an alter ego of BVM Management, Inc. BVM University Village, LLC, and/or Messrs. Bartle and Rynard. When referred to collectively, the Defendants will be referred to herein as "BVM" or Defendants.

3. As set forth in greater detail below, Defendants -- would-be purchasers of the Westport Entities' interest in University Village – have misused Florida's court system to impair Horizon's right to foreclose on its interests pursuant to the Notes. Defendants have done so by filing a complaint and lis pendens in Hillsborough County Circuit Court in which they falsely represented to the court that BVM possessed a legal right to the University Village real property such that Horizon's closing should be enjoined. Though the complaint was dismissed, it was dismissed without prejudice, the action remains open, and BVM is in the process of preparing a new complaint.

4. In the interim, as a result of the pending action, Horizon has been unable to complete the closing, and the status of the already-struggling University Village nursing facility

29221489.2                    2

CONFIDENTIAL

VNB_072061

remains in limbo. For that reason, Horizon seeks a declaration from this Court that any legal right the Defendants may have had in the real property of University Village has been extinguished, as well as damages for Defendants' tortious interference, abuse of process, and slander of title.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    This Court has personal jurisdiction over BVM University Village, LLC and BVM Management, Inc. pursuant to Fla. Stat. § 48.193 because both are operating, conducting, or carrying on a business venture in this state, and both have committed tortious acts within this state. Moreover, BVM University Village, LLC is a Florida resident.

7.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial amount of the events giving rise to these claims occurred in the Middle District of Florida, Tampa Division, and BVM University Village, LLC conducts business within this district.

8.    All conditions precedent have occurred or have been waived.

## GENERAL ALLEGATIONS

9.    The Westport Entities own and operate a continuing care retirement community known as "University Village". University Village is located in Tampa, Florida, and is comprised of 446 independent living apartments, 46 detached independent living villas, and a

29221489.2                                              3

CONFIDENTIAL

VNB_072062

health center known as "The Inn at University Village" which contains 110 assisted living units and 120 skilled nursing units. At present, approximately 550 seniors live at University Village.[1]

10.    The Notes held by Horizon are secured by mortgages encumbering: (i) all of the University Village real property and improvements (the "University Village Property"); (ii) by a senior security interest in all of the assets of Westport Holdings Tampa LP, Westport Holdings Tampa II LLC, and Westport Nursing Tampa, LLC, and; (iii) by a pledge of all of the general partnership interests and limited partnership interests in Westport Holdings Tampa, LP and Westport Holdings Tampa II, LP.

11.    The Notes matured on January 15, 2013. During the first nine months of 2013, Horizon and the Westport Entities entered into successive loan extension agreements to extend the term of the loan.

12.    In mid-2012, the Westport Entities retained a veteran broker who, for nearly 30 years, has specialized in brokering the sale of Continuing Care Retirement Communities ("CCRCs"). This Broker broadly shopped University Village to all known and active buyers of such properties for approximately six months in 2012. This effort resulted in a single prospect interested in buying the community: BVM.

13.    Since at least October 2012, and continuing throughout 2013, the Westport Entities were in negotiations to sell University Village to BVM and its principal John Bartle, who purported to represent BVM Management, Inc. Mr. Bartle repeatedly assured the Westport

---

[1] University Village is an "Entrance Fee" community, meaning new prospective residents pay a substantial entrance fee (typically over $200,000) to obtain the right to occupy the community. The new entry fees are the source of repayment for departing residents, which can be significant. These are mandatory refund obligations by contract and under regulatory law by the Florida Office of Insurance Regulation. Failure to meet these refund obligations requires a statutory appointment of a receiver by the OIR.

CONFIDENTIAL                                                              VNB_072063

Entities that he could secure investors or loans to enable him to purchase University Village and pay all amounts owed to Horizon under the Notes.

14.     On March 26, 2013, one or more of the Defendants, doing business as "BVM Management/Westport Holdings, L.P.", entered into the first of two agreements with Investment Fund whereby Investment Fund agreed to sell to BVM the partnership interests in Westport Holdings Tampa, L.P. and Westport Holdings Tampa II, L.P. for $2,500,000. Those partnership interests are part of the collateral for the Notes, and as such the agreement required BVM to pay off Horizon as part of the transaction. This agreement was later terminated and the earnest money refunded because BVM could not secure financing for the purchase price or to repay Horizon.

15.     Having failed to perform under the first contract, during August and September of 2013, Mr. Bartle continued to negotiate with the Westport Entities to enter into another agreement to purchase the limited partnership interests in Westport Holdings Tampa, L.P. and Westport Holdings Tampa II, L.P.

16.     In the meantime, the Notes matured without extension on September 15, 2013. At that time, Horizon had the legal right to declare the loan in default and pursue its foreclosure and other rights under the loan documents.

17.     Nonetheless, in order to give the Westport Entities additional time to try to sell University Village and pay off the Notes to the only bidding party interested (BVM), Horizon agreed to enter into a final Loan Extension Agreement, dated September 27, 2013, attached as **Exhibit A** (the "Deed In Lieu Agreement").

18.     Section 9 of the Deed In Lieu Agreement specifically contemplates a proposed transaction with BVM. It states that Horizon and the Westport Entities "acknowledge and agree

29221489.2                                                5

CONFIDENTIAL

VNB_072064

that it is in the interest of [Horizon and the Westport Entities] to induce BVM to close such a purchase quickly, in order to preserve the value of the Collateral, and that a lengthy acquisition process would be disruptive to the Community and delay needed changes and improvements to the operation of the Community."

19.    Because of these considerations, the Deed In Lieu Agreement required that any purchase agreement between BVM and the Westport Entities must (a) provide for a purchase price sufficient to repay the Notes; (b) provide for a closing date of no later than December 15, 2013; (c) require a nonrefundable earnest money deposit of $250,000 by October 4, 2013; and (d) require an additional nonrefundable earnest money deposit of $250,000 by November 1, 2013. The Deed In Lieu Agreement further required that the $500,000 earnest money deposit be applied toward the amounts due Horizon if BVM failed to close its transaction by December 15, 2013.

20.    The Deed In Lieu Agreement further provided that if the full amount owed under the Notes was not repaid by December 15, 2013, the Westport Entities agreed to surrender University Village to Horizon in a carefully negotiated deed in lieu of foreclosure transaction. In that transaction, Horizon would not only release the Westport Entities of their outstanding obligations to Horizon of approximately $20,000,000 (including the guaranty of the Investment Fund), Horizon would allow the Westport Entities to retain their cash on hand (which, as collateral for the Notes, would ordinarily belong to Horizon) and Horizon would actually supply additional cash to enable the Westport Entities to pay certain unsecured creditors and costs of closing.

21.    Further, Horizon agreed to assume all obligations to the seniors living at University Village. This includes approximately $9,000,000 owed to those residents under debt

29221489.2                                              6

CONFIDENTIAL

VNB_072065

instruments similar to certificates of deposit sold to the residents by the Westport Entities over the years, as well as the Westport Entities' obligation to refund the residents' entrance fees as they came due. Thus, the total consideration in cash, debt relief, and debt assumption to be paid by the Westport Entities under the Deed In Lieu Agreement was to be well in excess of $30,000,000, without even taking into account the obligation to refund entrance fees.

22. On or about October 2, 2013, with full knowledge of Horizon's rights to require a deed in lieu of foreclosure if its loans were not repaid by December 15, which were an integral part of the Deed in Lieu Agreement, BVM signed a "Limited Partnership Purchase Agreement," a copy of which is attached as **Exhibit B**. The Agreement contemplated a purchase by BVM of Investment Fund's partnership interest in University Village. On or about October 4, 2013, BVM transferred the first $250,000 installment of earnest money to the Westport Entities, and on or about November 1, 2013, BVM transferred the second $250,000 installment to the Westport Entities.

23. Up until approximately December 13, 2013, BVM asserted that it would be able to close on the purchase of the limited partnership interests on December 15, 2013, as required by the Limited Partnership Purchase Agreement and the Deed In Lieu Agreement. At the eleventh hour, on December 14, 2013, BVM revealed that it would be unable to close the transaction, and the Westport Entities requested that Horizon provide yet another extension.

24. At this point, Horizon declined to extend the Notes, and exercised its rights to require the Westport Entities to go forward with the deed in lieu of foreclosure transaction, as outlined in a letter dated December 16, 2013, a copy of which is attached as **Exhibit C**.

25. From December 16, 2013 until February 13, 2013, Horizon and the Westport Entities worked cooperatively to consummate the transactions contemplated by the Deed In Lieu

29221489.2

7

CONFIDENTIAL

VNB_072066

Agreement. During this time, BVM continued to negotiate with the Westport Entities in an attempt to find some way to acquire control of University Village, despite the fact that its purchase agreement had expired on December 15, 2013 and it had failed to perform its requirements or renegotiate any new agreement in which to affect the purchase. Indeed, as of the date of this Complaint *no such agreement exists*.

26. In light of BVM's continued efforts, the Westport Entities made several requests that Horizon extend the loan. In the spirit of cooperation, Horizon made several offers to extend the loan, but BVM and the Westport Entities were unable or unwilling to agree to Horizon's terms. Horizon made a final offer to extend the loan, on very generous terms (in particular, no extra consideration was required of BVM), in a letter dated January 31, 2014, attached as **Exhibit D**. BVM and Westport, however, refused the terms offered in the January 31, 2014 letter.

27. In early February 2014, Horizon and the Westport Entities negotiated and finalized all documents and instruments necessary for the closing of the deed in lieu transaction, and on February 12, 2014 Horizon wired funds in excess of $1,320,000 to its legal counsel to fund its obligations to the Westport Entities under the Deed In Lieu Agreement. As of February 13, 2014, Horizon was not aware of any material obstacles to the closing of the Deed in Lieu Agreement, and expected to take ownership of University Village on February 14, 2014.

28. During this transitional period, Horizon hired Life Care Services, LLC ("Life Care"), the largest operator of CCRC's in the country, to manage University Village on its behalf. Life Care sent a large team of personnel, at Horizon's expense, to University Village. Life Care's personnel conducted a comprehensive ownership and management transition process during the week of February 10-14, 2014. This process involved interviewing all employees of

CONFIDENTIAL

VNB_072067

University Village for employment by the new owners, multiple meetings with residents, and copious due diligence work – all undertaken in the expectation that Horizon would own University Village as of February 14, 2014. The cost of this process was substantial, both in actual cash outlays and in the disruption it caused to the University Village residents and staff.

29.     On Thursday, February 13 – on the eve of the closing – Defendants filed an action in Hillsborough County Circuit Court (the "BVM Action"). A copy of the complaint filed in that action (the "BVM Complaint") is attached as **Exhibit E**. Along with the Complaint, Defendants filed a lis pendens encumbering the title to the University Village real property.

30.     The BVM Complaint is rife with inaccuracies and outright misrepresentations. For example, BVM alleged that it "paid the consideration for the acquisition of said 99% ownership interest in the Westport LPs ...." and that Defendants were acting "as purchaser of 99% ownership of the Westport LPs". These statements are patently untrue in several respects. First, due to Horizon's pre-existing senior lien in the partnership interests, Defendants could not acquire good title to the partnership interests without either repaying Horizon in full or obtaining Horizon's consent, neither of which ever occurred. Second, and most importantly, Defendants never "paid the consideration for the acquisition" of any limited partnership interests – rather, as is clear on the face of the October 2, 2013 Limited Partnership Purchase Agreement – Defendants failed to close the deal in the time specified therein and failed to deliver the agreed-upon consideration for the partnership interests.

31.     The BVM Action was filed with the sole purpose of delaying the agreed-upon closing of the Deed In Lieu transaction between Horizon and the Westport Entities, an objective that Defendants accomplished.

CONFIDENTIAL                                                                          VNB_072068

32.     As an immediate and direct result of the filing of Defendants' frivolous action, the Westport Entities refused to execute the agreed-upon closing documents and consummate the transactions contemplated by the Deed In Lieu Agreement.   Furthermore, Horizon's title insurance company refused to insure title to the University Village Property.  Horizon was forced to extend the closing date of the Deed In Lieu Agreement.  Horizon was also forced to announce to the employees and elderly residents of University Village, who had just been through a disruptive week of activity in the expectation of having a new owner for the community, that the transaction was delayed due to the lawsuit.

33.     The injuries to Horizon as a result of BVM's actions are numerous.  In addition to damages caused by the delayed closing, the expensive work conducted by Life Care was wasted. Defendants' frivolous complaint also placed a cloud of uncertainty over University Village, potentially resulting in lost sales.  Finally, Horizon was forced to expend substantial sums in attorneys' fees defending against the frivolous claim and pursuing alternative arrangements for closing on University Village.

34.     In response to Defendants' complaint, Horizon, through counsel, informed Defendants' counsel that Horizon would seek remuneration from both BVM and its professionals in the event BVM went forward with the BVM Action.  Defendants withdrew their lis pendens on February 19, 2014, and filed a voluntary dismissal, without prejudice, of their complaint on February 27, 2014.  However, in an email to Horizon's principals dated March 2, 2014 – a copy of which is attached as **Exhibit F** – Mr. Bartle has threatened that BVM intends to file a new complaint.

35.     The mere withdrawal of the complaint cannot undo the significant actual damages incurred by Horizon due to Defendants' actions.  Indeed, the fact that Defendants dismissed the

CONFIDENTIAL                                                VNB_072069

claim without prejudice and has made a clear threat to re-file means that the BVM Action continues to cloud title to the University Village Property, and Horizon's title insurance companies, as of the filing of this Complaint, refuse to provide title insurance coverage without an exception for Defendants' claims. Horizon is therefore exposed to an ongoing risk that Defendants will revive their frivolous lawsuit, potentially delaying a future planned closing of the Deed In Lieu Agreement and inflicting additional injury to Horizon.

## COUNT I – DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

36. Plaintiff realleges the allegations of Paragraphs 1 through 35 as if fully set forth herein.

37. When Defendants failed to close the transaction contemplated in the Limited Partnership Purchase Agreement on or before December 15, 2013, any rights it may have had in the Westport Entities' partnership interests in Westport Holdings Tampa LP or Westport Holdings Tampa II, L.P., or the University Village Property, were extinguished. Nevertheless, Defendants caused to be filed the BVM Action in which they falsely claim that they have legal rights to the University Village Property.

38. Horizon has a bona fide need for a declaration that Defendants have no legal right in the University Village Property, because absent such a declaration it cannot close on the deed in lieu transaction.

39. Defendants are the only parties to have an antagonistic interest in the subject matter of this declaration, and they are before this Court.

WHEREFORE, Plaintiff, pursuant to 28 U.S.C. § 2201, seeks a declaration of Defendants' legal rights to the University Village Property and/or the Defendants' interest in the

29221489.2                                    11

CONFIDENTIAL

VNB_072070

Westport Entities' partnership interest in the University Village property; specifically, Plaintiff seeks an order from this Court indicating that any such rights have been extinguished.

## COUNT II – TORTIOUS INTERFERENCE

40.     Plaintiff realleges the allegations of Paragraphs 1 through 35 as if fully set forth herein.

41.     There exists a business relationship between Horizon and the Westport Entities as reflected in the Notes and Deed In Lieu Agreement.

42.     Defendants knew of the contractual relationship between the Westport Entities and Horizon; indeed, the Limited Partnership Purchase Agreement between BVM and the Westport Entities specifically contemplated the payment by BVM of the Westport Entities' obligations to Horizon under the Notes as part of the transaction, and BVM was aware of the terms of the Deed in Lieu Agreement.

43.     Defendants intentionally interfered with that relationship when they filed the BVM Action and lis pendens and falsely claimed in the BVM Complaint that Defendants had rights to the University Village Property and/or partnership interests in the Westport Entities owning University Village.  Defendants continue to interfere by refusing to dismiss the BVM Action with prejudice, and threatening to file a new complaint.

44.     As a result of this interference, the Westport Entities did not close on the Deed In Lieu Agreement and Horizon, in turn, has suffered – and continues to suffer – damages, including but not limited to a continued cloud on the title and a detrimental impact on the operations of University Village and, in turn, its value.

29221489.2                                     12

CONFIDENTIAL                                                      VNB_072071

WHEREFORE, Plaintiff demands entry of an order awarding Plaintiff's damages incurred as a result of Defendants' actions, and any and all further relief as this Court may deem appropriate.

## COUNT III – ABUSE OF PROCESS

45. Plaintiff realleges the allegations of Paragraphs 1 through 35 as if fully set forth herein.

46. In the BVM Complaint, Defendants falsely claimed an interest in the University Village Property and/or partnership interests in the Westport Entities owning University Village.

47. Defendants filed the BVM Complaint and lis pendens with the ulterior motive of infringing on Horizon's rights in the University Village Property and inhibiting the closing of the deed in lieu transaction.

48. The BVM Action misuses the power of the court, and Horizon has been damaged as a result.

WHEREFORE, Plaintiff demands entry of an order awarding Plaintiff's damages incurred as a result of Defendants' actions, and any and all further relief as this Court may deem appropriate.

## COUNT IV – SLANDER OF TITLE

49. Plaintiffs reallege the allegations of Paragraphs 1 through 35 as if fully set forth herein.

50. When Defendants filed the BVM Action and lis pendens, it communicated to third persons – namely, potential title insurance providers – a statement disparaging Horizon's title to the University Village property.

CONFIDENTIAL

VNB_072072

51.    When Defendants failed to close the Limited Partnership Purchase Agreement on or before December 15, 2013, any rights it may have had in the University Village Property and/or partnership interests in the Westport Entities owning University Village were extinguished. BVM's Complaint, which is premised on a right that plainly does not exist, is untrue in this regard.

52.    The BVM Action has impaired Horizon's right to foreclose on its interest in the University Village property, and has caused other damages to Horizon.

WHEREFORE, Plaintiff demands entry of an order awarding Plaintiffs damages – including actual damages, special damages, and punitive damages – incurred as a result of Defendants' actions, and any and all further relief as this Court may deem appropriate.

Respectfully Submitted,

/s/Christopher M. Sacco

Christopher M. Sacco
Florida Bar No.: 557420
Donald R. Kirk
Florida Bar No. 105767
CARLTON FIELDS JORDEN BURT, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, FL 33607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Email: dkirk@cfjblaw.com (primary)
       csacco@cfjblaw.com (primary)
       kthompson@cfjblaw.com (secondary)
       cstreb@cfjblaw.com (secondary)
       tpaecf@cfdom.net (secondary)

*Counsel for Plaintiff Horizon LP UV Lender, LLC*

29221489.2                              14

CONFIDENTIAL

VNB_072073