Filing # 41086077 E-Filed 05/04/2016 03:34:53 PM

IN THE CIRCUIT COURT OF THE
SECOND JUDICIAL CIRCUIT, IN AND
FOR LEON COUNTY, FLORIDA

STATE OF FLORIDA, ex rel., the
DEPARTMENT OF FINANCIAL SERVICES
OF THE STATE OF FLORIDA,

    Relator,

v.

                                  CASE NO. 2015-CA-000585

WESTPORT HOLDINGS TAMPA,
LIMITED PARTNERSHIP d/b/a
UNIVERSITY VILLAGE, a Delaware limited
partnership licensed as a continuing care
retirement community in the State of Florida,

    Respondent.

_____/

## RESPONDENT'S MOTION FOR FINAL SUMMARY JUDGMENT ON CLAIM OF STATUTORY IMMUNITY FROM RECEIVERSHIP

### (PROMPT HEARING REQUESTED)

Respondent Westport moves for final summary judgment under Fla. Stat. § 651.114(8), that receivership and all other remedial actions by OIR must be dismissed, to allow a reasonable opportunity for workout with assistance of lender banks (the "*Devonshire*" exemption), and says:

### Procedural History Leaves this Issue Unresolved

Westport previously raised this issue by a motion to dismiss, which Judge Dempsey denied. Her written order did not state reasons, but at the oral argument she stated that the issue should not be raised for trial by affirmative defense (as in the *Devonshire* case) not by motion to dismiss. Thus her denial of the motion to dismiss was without prejudice to the issue being properly heard.

Westport filed a petition for writ of quo warranto or prohibition in the First District Court of Appeal to assert this issue as jurisdictional. The DCA initially issued a show cause order but

1

PLAINTIFF'S
EXHIBIT
57

after full briefing, issued an order stating simply "Denied." This is not a preclusive ruling and allows Westport to raise the issue again, by affirmative defense supported by evidence (as Judge Dempsey ruled). *See Topps v. State*, 865 So. 2d 1253, 1258 and n. 6 (Fla. 2004) (unelaborated denial of extraordinary writ petition, without words "with prejudice" or "on the merits," does not bar further litigation of issue). *Accord, Niles v. State*, 120 So. 3d 658, 663 (Fla. 1st DCA 2013).

Westport has now raised the issue as its First Defense in its Amended Response to the Amended Show Cause Order. The Court must now address this issue on the merits and should grant summary judgment based on the undisputed facts.

### Undisputed Material Facts

1.       There are two mortgage lenders on the University Village Campus property. One is a $ 9.5 million loan from CPIF Holding Tampa L.P., to Westport, secured by a mortgage on the independent living facility (ILF). The CPIF amended loan agreement provides that:

> Resident Rights, pursuant to Section 651.114, Florida Statutes, Borrower and Lender agree that the rights of each Resident of University Village, under the terms of the Residency Agreement will be honored and will not be disturbed by a foreclosure under the Financing Documents or a conveyance in lieu thereof, as long as the Resident is (a) current in the payment of all monetary obligations required by the Residency Agreement, (b) is in compliance and continues to comply with all of the non-monetary terms of the Residency Agreement, and (c) has asserted no claim inconsistent with the rights of the Borrower or Lender.

*See* notarized (self-authenticating) amendment to loan agreement at section 11.3, copy attached as Exh. 1.

2.       The other mortgage secures a $15 million loan from USAmeriBank to Westport Nursing LLC, an affiliated entity (sibling owned by the same owners as Westport) that owns the contiguous parcel of land on which the assisted living and skilled nursing facilities (ALF and SNF) that are contractually bound to serve the ILF residents are located. The USAmeriBank loan agreement as amended provides:

2

> As set forth herein above, upon an Event of Default, Lender shall have exclusive rights to pursue remedies as set forth in this Loan Agreement and the other Loan Documents, provided however, in the course of exercise of any such remedies, the rights of the residents under a continuing care or continuing care at home contract will be honored and will not be disturbed by a foreclosure or conveyance in lieu thereof as long as the resident (a) is current in the payment of all monetary obligations required by the contract, (b) is in compliance and continues to comply with all provisions of the contract, and (c) has asserted no claim inconsistent with the rights of the Lender.

*See* notarized (self-authenticating) amendment to the loan agreement, as extended, copy attached as Exh. 2.

3. Each of the mortgage lenders has agreed, by amendment to its loan agreement, to subordinate its own rights to the rights of residents. The lender commitments enable Westport to take advantage of the opportunity for a private workout, as authorized in Fla. Stat. 651.114(8), by suspension of OIR's and DFS's remedial powers and dismissal of receivership and disciplinary proceedings to enable cure by private action.

### Argument

### Introduction

Appointment of a receiver is never a matter of right. It is a drastic remedy causing the owners to be dispossessed of their private property and business rights. It should be "exercised with great caution" only when "absolutely necessary." *Recarey v. Rader*, 320 So. 2d 28, 30 (Fla. 3d DCA 1975). A receiver should not be appointed unless "no other protection to the applicants can be devised by the court. . . . the appointment of a receiver for a going corporation is a last-resort remedy, and should not be employed when another adequate remedy is available." *Id.*

Receivership is a "drastic matter that constitutes a taking of property and should not be exercised except in cases of necessity," *Electro Mech. Products, Inc. v. Bonrona*, 324 So. 2d 638, 639 (Fla. 3d DCA 1975) (receivership order reversed, "purposes sought to be accomplished

3

could have been achieved in other ways"); *Barnett Bank v. Steinberg*, 632 So. 2d 233, 234 (Fla. 1st DCA 1994) (receivership is in derogation of the legal owner's fundamental right to possession of property, order denying receiver affirmed); *Alafaya Square Ass'n, Ltd. v. Great W. Bank*, 700 So. 2d 38, 40 (Fla. 5th DCA 1997) (same, receivership order reversed). The same caution applies when the state seeks receivership. *See* 1 *Couch on Insurance* (3d ed. 2015) § 5:9 (to seek and secure judicial receivership, "The commission[er] must ... show that more limited statutory remedies are or can reasonably be expected to be inadequate").

In judicial receivership proceedings the courts do not defer to DFS's interpretation of law. *See Fla. Dep't of Insurance v. Cypress Ins. Co.*, 660 So. 2d 1177, 1182-83 (Fla. 1st DCA 1995).

### I.   Statutory exemption applies to Westport

While DFS and OIR have authority to seek receivership in appropriate cases, their authority is limited by Fla. Stat. § 651.114(8)(a), which provides that the authority to proceed under various statutes, including § 631.051, the insurer rehabilitation statute which includes receivership, is subordinate to the rights of a lender (and necessarily the owner) if the lender agrees that residents' rights under continuing care contracts will be honored and not disturbed by a foreclosure or conveyance in lieu thereof, as long as the residents pay obligations under and comply with the continuing care contract.

Section 651.114(8)(a) unequivocally directs that DFS and OIR powers are:

> The rights of the office described in this section are subordinate to the rights of a trustee or lender pursuant to the terms of a ... loan agreement, indenture of trust, mortgage, ... or other instrument creating or securing bonds or notes issued to finance a facility, and the office, subject to the provisions of paragraph (c), shall not exercise its remedial rights provided under this section and ss. 651.018, 651.106, 651.108, and 651.116 with respect to a facility that is subject to a lien, mortgage, lease, or other encumbrance or trust indenture securing bonds or notes issued in connection with the financing of the facility, if the trustee or lender, by inclusion or by amendment to the loan documents or by a separate contract with the office, agrees that the rights of residents under a continuing care or continuing

4

care at-home contract will be honored and will not be disturbed by a foreclosure or conveyance in lieu thereof [as long as residents are current in their payment obligations and compliant with the resident contracts and not asserting claims inconsistent with the lender's rights].

The phrase "the rights of the office described in this section" includes all rights listed in § 651.114(8) itself, and also the rights listed under other provisions of the statute, particularly subsection (5), which refer to:

(5) ... rehabilitation, liquidation, conservation, reorganization, seizure, or summary proceedings of an insurer as set forth in ss. 631.051, 631.061, and 631.071, ... or ... such other relief as is afforded in part I of chapter 631. ...

Thus the rights suspended under subsection (8)(a) include OIR actions under § 651.106 (suspension or revocation of certificate of authority); § 651.018 (administrative supervision); and § 651.108 (administrative fines), and the right to seek rehabilitation proceedings under § 631.051 (authority for receivership and other actions).

The phrase "shall not exercise" in subsection (8) is prohibitive and allows no discretion.

Section 651.114(8)(a) is designed to accommodate practical realities. Receivership is a financial life-or-death struggle for the provider, who is forced to vigorously oppose the claim. The resulting litigation can easily become a self-fulfilling prophecy, by depleting the provider's assets and destroying its credit, goodwill, and ability to fill vacancies with new residents. The mortgage lender, although a nonparty, stands to substantially diminish the value of its security, and thus normally has the most to lose in a receivership or bankruptcy.

There is no basis to deny Westport's right of immunity under paragraph (8)(a). As the described lender terms are shown, the statute leaves no authority for DFS and OIR or discretion for the Court to proceed with a receivership action.

The only exception allowed is under paragraph (8)(c) of the statute. OIR or DFS may proceed only if "during the suspension of its remedial rights," it determines that the "lender is not

5

4818-7411-2561.1
50583-0001

in compliance with paragraph (a)," and if OIR gives the lender notice in writing of its determination setting forth its reasons and specifying those remedial rights which it will reinstate. This exception applies only after the suspension for workout (immunity from remedial actions) is in effect, and if OIR makes a determination that the lender is not complying and notifies the lender of the basis for this finding.

As this is the only exception to the immunity conferred by paragraph (8)(a), the *expressio unius* rule (mention of one thing precludes others) prohibits DFS from making additional exceptions. *See Dep't of Prof. Reg. v. Pariser*, 483 So. 2d 28 (Fla. 1st DCA 1985) (applying rule).

In *Devonshire at PGA Nat'l, LLC v. State ex rel. Dep't of Fin. Services*, 103 So. 3d 1060 (Fla. 1st DCA 2013), the trial court upon an evidentiary record held the provider was insolvent and that further transaction of insurance business was hazardous to residents, but did not apply the statutory exemption. The appellate court reversed the latter ruling, and required dismissal of rehabilitation proceedings. The Court's discussion of this issue merits quotation at length:

> This case involves the statutory authority of the State of Florida, through its regulatory agents, to intervene and act as receiver over an insolvent continuing care retirement community (CCRC) for the benefit of its residents. We reverse the order below, holding *the State is without this authority* under the circumstances of this case.... *Id.* at 1061 (e.s.). \*\*\*
>
> ... section 651.114(8)(a) ... carves out circumstances where OIR, and by implication DFS, *must suspend its exercise of statutory powers* when certain requirements related to trustees or lenders are met. ... Subsection (8)(a) subordinates the offices [sic] broad remedial rights to the rights of a lender if the terms of an instrument used to finance a facility include the lender's agreement that it will honor the rights of CCRC residents under their at-home contracts.... *Id.* at 1063 (e.s.).\*\*\*
>
> ...OIR referred Devonshire to DFS due to its finding that Devonshire "is insolvent or is about to become insolvent" because it "will not have sufficient assets to pay off all outstanding obligations." OIR also concluded that Devonshire's further operation is "presently or prospectively hazardous to its residents, policyholders, creditors, stockholders, or the public" and "poses a serious danger to [their] financial safety[.]" OIR recommended that DFS initiate

6

delinquency proceedings and petition for receivership. By law, a "delinquency proceeding pursuant to [Chapter 631] constitutes the sole and exclusive method of liquidating, rehabilitating, reorganizing, or conserving an insurer." § 631.021(3), Fla. Stat. (2011).

On May 14, 2012, DFS applied for a show cause order...which the trial court collectively granted on May 31, 2012. It found that: DFS made a prima facie showing for its appointment as receiver; Devonshire defaulted on the loan and failed to submit a plan to repay the loan, or to refinance or extend the loan; Devonshire's liabilities exceed its assets; Devonshire is insolvent or about to become insolvent; and Devonshire's continued operation was hazardous to its residents, creditors, policyholders, stockholders, or the public.

On July 2, 2012, Devonshire responded by challenging OIR's authority to refer Devonshire to DFS under section 651.114(8).... *Id.* at 1064.

We agree with the trial court's conclusion that Devonshire is insolvent ...*we disagree that OIR and DFS have the authority to act* under the circumstances due to the exemption in section 651.114(8)(a).... *Id.* at 1065 (e.s.). **\***

One might be apprehensive that the mere inclusion in the loan document of rote statutory language from subsection (8)(a) can short-circuit the broad remedial powers of DFS and OIR under the circumstances. But that is what the statute says; we are not in a position to second-guess the legislature on the matter. Having "by inclusion" inserted its written assurance in the "loan documents" that it will honor and protect the CCRC contracts at issue, *the Lender has done all the legislature has required to suspend the powers of DFS and OIR under the statute.* *Id.* at 1067 (e.s.).**\***

...(T)he suspension of the remedial rights of OIR and DFS allows a lender (who typically is the most financially exposed overall) to ensure the continued operation of the CCRC and the protection of residents without the complications that direct government intervention and control can engender. It provides breathing space, if only temporarily, to see whether the facility can be operationally salvaged and the debt reworked (and bankruptcy avoided). *Id.* at 1067-68.

Although the statute on its face protects lenders, the Court held the facility owner could assert rights under this law. *Id.* at 1068 n. 11. The lender's assurance gives residents a way to assure that all obligations to them are met. The presumption is that a lender that makes this commitment will have means and incentive to resolve any problem, whether its mortgage is in default or not. Alternatives to a private workout – receivership or bankruptcy – are less likely to

7

4818-7411-2561.1
50583 0001

produce good results. In any case, DFS still has a remedy under paragraph 8(c) if it can show that the lender upon reasonable opportunity and notice failed to comply.

Westport's loan modifications match the terms of the statute, and there is no allegation that the lenders are in any way noncompliant, so there is no basis to deny Westport's motion.

## II. DFS contrary arguments are unsupported

### A. Residents are protected by private workout

DFS has argued that an opportunity for a private remedy interferes with OIR's ability to protect facility residents. But receivership is not an end in itself, but just one means to an end, to restore the facility's operational health or minimize losses. Receivership is a drastic solution and the last resort. *See* cases cited above.

Section 651.114(8) serves the higher remedial purpose to enable facilities facing receivership to enlist lenders to work out solutions that can protect residents as well or better than state receivership or bankruptcy. The law promotes maximum access to private remedial assistance. Only if receivership and OIR disciplinary proceedings are dismissed, can lenders (or investors) advance additional funds, work out new financing, and commit aid and resources to assure resolution that they could never commit with receivership pending. A pending receivership shuts out new funding, so lenders cannot exercise any practical leverage or remedy. *Devonshire* referred to government intervention as "complications," because if private lenders are willing to make this commitment, then DFS's continued pressure for receivership impedes, rather than assists, the remedial goals. Thus the statute serves a remedial purpose. *See generally Bruner v. GC-GW, Inc.*, 880 So. 2d 1244 (Fla. 1st DCA 2004) (remedial provisions should be liberally construed).

4818-7411-2561.1
50583-0001

But if a private remedy does not materialize, *i.e.*, the lender does not comply with its commitment within a reasonable time, DFS and OIR can still use paragraph (8)(c) as a safety valve to reinstate a receivership or other remedial case. Paragraph (8)(c) is their exclusive means to revive their powers, if, after those powers are suspended and the private remedy has a reasonable chance to work, DFS and OIR show the private remedy is noncompliant.

B.      Statutory exemption applies regardless of which provider obligations are unpaid

DFS has argued that § 651.114(8) applies only if the facility is in default on its mortgage, but not if there is a default or arrearage in paying unsecured creditors. Nothing in the statute itself supports such a limitation, and this argument is contrary to *Devonshire*, which rejected DFS's argument there that the facility must default on its mortgage, or that the mortgage lender must have instituted foreclosure, or taken control of, a facility, to qualify for immunity under paragraph (8)(a). *Id.* at 1068.

DFS's proffered distinction has no practical or logical basis and leads to absurd results. There is no reason why facilities that default on secured obligations should have more rights than those that default on unsecured obligations. Ch. 651 defines "insolvency" by reference to "all outstanding obligations." Thus for purposes of determining insolvency, all facility obligations are treated the same, and aggregated without preference or distinction as to whether they are secured or not. Indeed, *Devonshire* approved DFS's argument that, in determining a facility's insolvency, it is irrelevant whether the facility defaulted on two or more small debts, or on one large debt. *Id.*, 103 So. 3d at 1065-66 (dismissing facility's argument for this distinction as an "odd result"). If a receivership is imposed for any reason, that would be a default on the mortgage and allow a foreclosure. It would be arbitrary and absurd to give immunity to facilities that default on secured obligations and prefer (pay) unsecured creditors; but not to other facilities that pay their

9

secured creditors but not their unsecured creditors. Therefore, the fact that Westport paid its mortgage debt and not unsecured creditors does not create any reason to deny its right to statutory immunity. DFS's interpretation is contrary to the plain words of the statutory exemption and does not serve the purpose for state regulation, to protect residents, *Devonshire* at 1062-63, not general unsecured creditors.[1]

### C. Statutory exemption suspends all receivership claims

DFS also argued that the statutory exemption applies only if receivership case is based on claims of insolvency, but not to receivership cases based on other claims. This distinction has no support in the text of the statute, because the statute suspends any and all receivership cases, as well as other actions, such as license suspension or revocation, which can be based on many types of claimed deficiencies, not just insolvency.

### D. Miscellaneous unsupported DFS arguments

DFS argued that the statutory exemption applies only if the original mortgage terms provide for resident protection, but not if these terms are added by later amendment. The statute itself allows these terms to be added "by inclusion or by amendment to the loan documents." This argument makes no sense because an amendment is just as enforceable as original terms. Owners and mortgage lenders may not foresee the need to protect themselves in this way at the outset, but are allowed to do so by amendment, if and when the need arises.

DFS argued that the *Devonshire* opinion refers to the "circumstances of this case." However, the only relevant "circumstances" are those described in the statute, i.e., the mortgage lender's agreement to subordinate its rights. See *Devonshire* 103 So. 3d at 1066 n. 11 ("Instead,

---

[1] DFS's interpretation would seem to require providers to prefer general unsecured creditors to secured creditors, which may violate secured creditors' contracts and incite actions to set aside preferential payments, which hardly seems to further the State's goals.

<div align="center">10</div>

we read the subsection as a limitation on the authority of OIR to act in the circumstances described by the legislature"). If the mortgage lender meets the requirements of paragraph (8)(a), and DFS has not found it noncompliant under the limited authority and process of paragraph (8)(c), no other "circumstance" is relevant under the statute. Nothing in *Devonshire* purports to judicially amend the statute to impose additional, unstated conditions to limit the statutory remedy.

## Conclusion

Consistent with the general rule of receivership law to impose receivership only as a last resort, § 651.114(8) prefers a private workout to a state forced takeover, which is less likely to produce optimal results for either the residents as a whole or other stakeholders. *Devonshire* recognized that a provider in Westport's position is entitled to breathing space to work with its lenders "without the complications that direct government intervention and control can engender," "to see whether the facility can be operationally salvaged and the debt reworked (and bankruptcy avoided)." *Devonshire, LLC*, 103 So. 3d at 1069. Therefore DFS is not allowed to force a receiver if a lender's commitment to cover obligations to residents is shown.

Prompt hearing is requested so Westport, its lenders and residents can have the advantage of the statutory exemption, and continue normal operations with the assistance of the lenders, without interference from DFS and OIR proceedings.

WHEREFORE, the Court should dismiss this receivership case without prejudice; and order OIR to dismiss all other proceedings to suspend or discipline of Westport's license, so that Westport and its lenders and residents can have a reasonable opportunity for private workout.

4818-7411-2561.1
50583-0001

Respectfully submitted this 4th day of May, 2016.

<div style="margin-left:40%;">

s/ David K. Miller
STEPHEN TURNER, P.A.
Florida Bar No. 0095691
sturner@broadandcassel.com
sfogarty@broadandcassel.com
DAVID K. MILLER, P.A
Florida Bar No. 0213128
dmiller@broadandcassel.com
mubieta@broadandcassel.com
FRANK E. SHEFFIELD, ESQ.
Florida Bar No. 0144041
fsheffield@broadandcassel.com
charrelson@broadandcassel.com
BROAD AND CASSEL
215 South Monroe Street, Suite 400 (32301)
P.O. Drawer 11300
Tallahassee, FL  32302
Tel 850.681.6810; Fax 850.681.9792
Attorneys for Westport

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served by E-mail through the

Court's E-Filing Portal system on counsel listed below, this 4th day of May, 2016.

Timothy L. Newhall, Chief Attorney
tim.newhall@ myfloridacfo.com
Conor J. McLaughlin, Senior Attorney
conor.mclaughlin2@myfloridacfo.com
Florida Department of Financial Services
Division of Rehabilitation and Liquidation
2020 Capital Circle SE, Suite 310
Tallahassee, FL 32301

<div style="margin-left:40%;">

s/ David K. Miller
Attorney

</div>

12

4818-7411-2561.1
50583/0001

# Exh. 1

INSTRUMENT#: 2015340031, O BK 23514
PG 853-862 09/01/2015 at 10:29:55 AM,
DEPUTY CLERK: SWALKER Pat Frank, Clerk
of the Circuit Court Hillsborough County

## AMENDMENT NO. 2
## TO
## LOAN AGREEMENT

This Amendment No. 2 to Loan Agreement (this "Amendment") is made and entered into effective as of August 10, 2015, by and among CPIF Lending, LLC, a Washington limited liability company ("Lender"), and Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership, each a Delaware limited partnership (individually and jointly and severally, the "Borrower"), BVM Management, Inc., an Indiana non-profit corporation ("BVM"), and IMH Healthcare, LLC, a Delaware limited liability company ("IMH").

## RECITALS

A.      Lender and Borrower entered into that certain Loan Agreement dated March 31, 2014, as amended by that certain Amendment No. 1 to Loan Agreement dated August 25, 2014 (as amended, the "Loan Agreement") pursuant to which Lender made a Loan to Borrower secured by the Property. Any capitalized term not otherwise defined herein shall have the meaning given under the Loan Agreement.

B.      On December 29, 2014, Westport Holdings University Village, L.L.C. resigned as General Partner of Westport Holdings Tampa, Limited Partnership and Westport Holdings Hidden Springs, L.L.C. resigned as General Partner of Westport Holdings Tampa II, Limited Partnership.

C.      On January 26, 2015, Compliance Concepts, LLC, an Indiana limited liability company, was elected as the General Partner of each Borrower.

D.      On March 2, 2015, Compliance Concepts, LLC resigned as General Partner of each Borrower.

E.      On March 2, 2015, IMH was elected as General Partner of each Borrower.

F.      Borrower has requested that Lender agree to amend the Loan Agreement to approve the election of IMH as General Partner of each Borrower by Lender.

G.      On or about June 30, 2015, BHMSILF, LLC, a Delaware limited liability company ("BHMS"), transferred all of its equity ownership interest in Borrower to JF Consultants, LLC, a Delaware limited liability company (the "BHMS Transfer").

H.      Borrower has requested that Lender agree to amend the Loan Agreement to add the following:

> "Resident Rights, pursuant to Section 651.114, Florida Statutes, Borrower and Lender agree that the rights of each Resident of University Village, under the terms of the Residency Agreement will be honored and will not be disturbed by a foreclosure under the Financing Documents or a conveyance in lieu thereof, as long as the Resident is (a) current in the payment of all monetary obligations required by the Residency Agreement, (b) is in compliance and continues to comply with all of the non-monetary terms of the Residency Agreement, and (c) has asserted no claim inconsistent with the rights of the Borrower or Lender."

I.      Lender is willing to agree to such amendment on the terms and conditions of this Amendment.

1

## AGREEMENT

NOW THEREFORE, in consideration of the covenants contained herein and other valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Members covenant and agree as follows:

1.  Amendments

    a.  Section 2.1.18 of the Loan Agreement is amended and restated in its entirety as follows: "Guarantor(s): BVM Management, Inc., an Indiana non-profit corporation, and, as provided under Article 12, IMH Healthcare, LLC, a Delaware limited liability company.

    b.  Section 9.18 of the Loan Agreement is amended and restated in its entirety as follows:

        "Authorized Representative. Borrower hereby appoints IMH Healthcare, LLC, as its Authorized Representative for purposes of dealing with Lender on behalf of Borrower in respect of any and all matters in connection with this Agreement, the other Loan Documents, and the Loan. The Authorized Representative shall have the power, in his discretion, to give and receive all notices, monies, approvals, and other documents and instruments, and to take any other action on behalf of Borrower. All actions by the Authorized Representative shall be final and binding on Borrower. Lender may rely on the authority given to the Authorized Representative until actual receipt by Lender of a duly authorized resolution removing the Authorized Representative or substituting a different person as the Authorized Representative."

    c.  A new Section 11.3 is added to the Loan Agreement as follows:

        "Resident Rights, pursuant to Section 651.114, Florida Statutes, Borrower and Lender agree that the rights of each Resident of University Village, under the terms of the Residency Agreement will be honored and will not be disturbed by a foreclosure under the Financing Documents or a conveyance in lieu thereof, as long as the Resident is (a) current in the payment of all monetary obligations required by the Residency Agreement, (b) is in compliance and continues to comply with all of the non-monetary terms of the Residency Agreement, and (c) has asserted no claim inconsistent with the rights of the Borrower or Lender."

    d.  Article 12 of the Loan Agreement is amended and restated in its entirety as follows:

        "ARTICLE 12 TRANSFER OF BORROWER GENERAL PARTNERSHIP INTERESTS TO IMH HEALTHCARE, LLC

        12.1    Permitted Transfer. Lender consents to the transfer of Borrowers' 1% general partnership interests from Westport Holdings University Village, L.L.C. (as to Westport Holdings Tampa, Limited Partnership) and Westport Holdings Hidden Springs, L.L.C. (as to Westport Holdings Tampa, Limited Partnership) to Compliance Concepts, LLC and subsequent transfer to IMH Healthcare, LLC (the "IMH Transfer"), subject to the following covenants and conditions:

2

12.1.1 Borrower shall provide Lender written notice of any provisional and final approvals from any governmental authority for the IMH Transfer within three (3) business days of receiving such approval;

12.1.2 Borrower shall provide Lender with written notice of closing of the IMH Transfer, including copies of Borrowers' proposed amended limited partnership agreements for Lender's review and approval;

12.1.3 Borrower shall deliver a Guaranty and Pledge Agreement, each in a form acceptable to Lender in its sole discretion, fully executed by IMH;

12.1.4 Borrower shall cause to be delivered to Lender an opinion from counsel covering the execution and delivery and enforceability of the Guaranty and Pledge Agreement.

12.2    [Intentionally deleted.]

12.3    Limitation of Liability. Notwithstanding anything herein to the contrary, no general partner of Borrower, nor any officer, director, employee, shareholder, partner or member of said general partner (individually and collectively, the "GP Party(ies)") shall have any personal liability under this Agreement or any of the Loan Documents except to the extent of liability, if any, with respect to: (i) this Agreement or any Loan Document to which such GP Party is a party in its own capacity, provided that no GP Party shall be deemed a party on account of executing this Agreement or any Loan Document on behalf of any limited partnership or any other person or entity; or (ii) any intentional act, under the control of the GP Party and not approved, in writing, by the limited partners of Borrower related to:

12.3.1 A sale or transfer of any interest in the Property by such GP Party; except as expressly provided in the Organizational Documents and/or the Loan Documents;

12.3.2 Any intentional or grossly negligent physical waste at the Property committed or permitted by such GP Party;

12.3.3 Any fraud or intentional misrepresentation committed or made by such GP Party;

12.3.4 Any willful misconduct by such GP Party (including any litigation or other legal proceeding initiated by such person in bad faith that delays, opposes impedes, obstructs, hinders, enjoins or otherwise interferes with or frustrates the efforts of Lender to exercise any rights and remedies available to Lender as provided herein and in the Loan Documents);

12.3.5 The commission of a criminal act by such GP Party that diminishes the value of the Property; or

12.3.6 The misappropriation or misapplication by such GP Party of any funds derived from the Property or received from Lender, in violation of the Organizational Documents and/or the Loan Documents."

3

2.     BHMS Transfer. Lender acknowledges and approves the BHMS Transfer under the Loan Documents.

3.     Incorporation. The Recitals to this Amendment are hereby incorporated by reference, as if fully set forth in the body of this Amendment.

4.     Continuing Security. The Loan Agreement and the other Loan Documents, as hereby amended, are, and shall continue to be, secured by the Mortgage and the Pledge Agreements and any reference to the Loan Agreement in the Mortgage and the Pledge Agreements shall be deemed to include the Loan Agreement as hereby amended.

5.     Binding Obligations. The Loan Agreement and the other Loan Documents, are, and shall remain, the binding obligations of Borrower and Guarantor, and all of the provisions, terms, stipulations, conditions, covenants and powers contained therein shall stand and remain in full force and effect, except only as the same are herein and hereby expressly and specifically varied or amended, and the same are hereby ratified and confirmed, and Lender reserves unto itself all rights and privileges granted thereunder.

6.     Reaffirmation; Authority. Borrower and Guarantor hereby reaffirm all representations, warranties, covenants and agreements recited in the Loan Agreement and the other Loan Documents as of the date hereof, and the same are hereby adopted as representations, warranties, covenants and agreements of Borrower and Guarantor herein. Each of Borrower and Guarantor further represents and warrants that it is not in default under any of its obligations under the Loan Documents, and that it has full power and authority to execute and deliver this Amendment, and that the execution and delivery hereof has been duly authorized, and that all necessary and proper acts have been performed or taken.

7.     Signatures. This Amendment may be signed in counterparts. A fax transmission of a signature page will be considered an original signature page. At the request of a party, the other party will confirm a fax-transmitted signature page by delivering an original signature page to the requesting party.

8.     Complete Agreement. This Amendment, together with the Loan Agreement and the other Loan Documents, constitutes the complete agreement among the parties with respect to the matters set forth herein and therein and incorporates any prior oral or written agreements and representations.

9.     Statutory Notices:

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

[SIGNATURE PAGE FOLLOWS]

4

IN WITNESS WHEREOF, the undersigned have executed and delivered this Amendment effective as of the date first set forth above.

LENDER:

CPIF LENDING, LLC,
a Washington limited liability company

By:    CPIF Holdings, LLC, its manager
By:    Columbia Pacific Income Fund II, L.P., its manger
By:    Columbia Pacific Income Fund II GP, LLC, its general partner
By:    Columbia Pacific Advisors, LLC, its manager

By:_____
Name: Alex Washburn
Its: Manager

BORROWER:

WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP

By: Westport Holdings University Village, L.L.C., its general partner
By: Westport Advisors, Ltd, its manager
By: IMH Healthcare, LLC, its general partner

By:_____
Name: Eli Freiden
Title: Manager

WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP

By: Westport Holdings Hidden Springs, L.L.C., its general partner
By: Westport Advisors, Ltd, its manager
By: IMH Healthcare, LLC, its general partner

By:_____
Name: Eli Freiden
Title: Manager

CHRISTIE LEIGH PEREZ
Notary Public - State of Florida
My Comm. Expires Apr 16, 2018
Commission # FF 113794

GUARANTORS:

BVM MANAGEMENT, INC.,
an Indiana non-profit corporation

By:_____
Name:
Title:

IMH HEALTHCARE, LLC,
a Delaware limited liability company

By:_____
Name: Eli Freiden
Title: Manager

5

State of _Florida_

County of _Hillsborough_

The foregoing instrument was acknowledged before me this _31st_ day of _August_ 2015, by _Eli Freiden_ . S/he is personally known to me or has produced a driver's license identification.

_Christine Leigh Perez_

Signature of Notary Public

Print Name: _Christie Perez_

IN WITNESS WHEREOF, the undersigned have executed and delivered this Amendment effective as of the date first set forth above.

LENDER:

CPIF LENDING, LLC,
a Washington limited liability company

By: CPIF Holdings, LLC, its manager
By: Columbia Pacific Income Fund II, L.P., its manger
By: Columbia Pacific Income Fund II GP, LLC, its general partner
By: Columbia Pacific Advisors, LLC, its manager

By:_____
Name: Alex Washburn
Its: Manager

BORROWER:

WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP

By: Westport Holdings University Village, L.L.C., its general partner
By: Westport Advisors, Ltd, its manager
By: IMH Healthcare, LLC, its general partner

By: _____
Name: Eli Freiden
Title: Manager

WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP

By: Westport Holdings Hidden Springs, L.L.C., its general partner
By: Westport Advisors, Ltd, its manager
By: IMH Healthcare, LLC, its general partner

By: _____
Name: Eli Freiden
Title: Manager

CHRISTIE LEIGH PEREZ
Notary Public - State of Florida
My Comm. Expires Apr 16, 20:E
Commission # FF 113794

GUARANTORS:

BVM MANAGEMENT, INC.,
an Indiana non-profit corporation

By:_____
Name:_____
Title:_____

IMH HEALTHCARE, LLC,
a Delaware limited liability company

By:_____
Name: Eli Freiden
Title: Manager

5

State of _Florida_

County of _Hillsborough_

The foregoing instrument was acknowledged before me this 31ˢᵗ day of _August_, 2015, by _John Bartle_. S/he is ⟨personally known to me⟩ or has produced a driver's license identification.

_Christie Leigh Perez_ (signature)

**Signature of Notary Public**

Print Name: _Christie Perez_

IN WITNESS WHEREOF, the undersigned have executed and delivered this Amendment effective as of the date first set forth above.

**LENDER:**

CPIF LENDING, LLC,
a Washington limited liability company

By:   CPIF Holdings, LLC, its manager
By:   Columbia Pacific Income Fund II, L.P., its manger
By:   Columbia Pacific Income Fund II GP, LLC, its general partner
By:   Columbia Pacific Advisors, LLC, its manager

By: _____
Name: Alex Washburn
Its: Manager

**BORROWER:**

WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP

By: Westport Holdings University Village, L.L.C., its general partner
By: Westport Advisors, Ltd, its manager
By: IMH Healthcare, LLC, its general partner

By: _____
Name: Eli Freiden
Title: Manager

WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP

By: Westport Holdings Hidden Springs, L.L.C., its general partner
By: Westport Advisors, Ltd, its manager
By: IMH Healthcare, LLC, its general partner

By: _____
Name: Eli Freiden
Title: Manager



CHRISTIE LEIGH PEREZ
Notary Public - State of Florida
My Comm. Expires Apr 16, 2016
Commission # FF 113794

**GUARANTORS:**

| | |
|---|---|
| BVM MANAGEMENT, INC.,<br>an Indiana non-profit corporation | IMH HEALTHCARE, LLC,<br>a Delaware limited liability company |
| By: _____<br>Name:<br>Title: | By: _____<br>Name: Eli Freiden<br>Title: Manager |

# Exh. 2

## AMENDMENT TO LOAN AGREEMENT

THIS AMENDMENT TO LOAN AGREEMENT (this "Agreement"), dated as of the 22nd day of March, 2016, between WESTPORT NURSING TAMPA, L.L.C., a Florida limited liability company (the "Borrower"), BVM MANAGEMENT, INC., an Indiana non-profit corporation (the "Guarantor"), and USAMERIBANK, a Florida state banking corporation (the "Lender").

### RECITALS

A.    Borrower is indebted to Lender for a certain loan (the "Loan") in the original principal amount of $15,000,000.00 evidenced by a certain Loan Agreement between Borrower Lender dated March 31, 2014 (together with any amendments thereto, the "Loan Agreement") and the other Loan Documents (as defined in the Loan Agreement). *Capitalized terms used herein and not otherwise defined shall have the meanings given to such terms in the Loan Agreement.*

B.    In connection with the Loan, Guarantor executed that certain Guaranty Agreement dated March 31, 2014 in favor of Lender (together with any amendments thereto, the "Guaranty").

C.    Borrower, Guarantor and Lender now mutually desire to amend the Loan Agreement as hereinafter provided.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the parties agree as follows:

1.    The recitals hereto are true and correct.

2.    The Loan Agreement is hereby amended to add the following paragraph as the final paragraph of Article VI (i.e., following Section 6.2(g) thereof):

> As set forth herein above, upon an Event of Default, Lender shall have exclusive rights to pursue remedies as set forth in this Loan Agreement and the other Loan Documents; provided, however, in the course of the exercise of any such remedies, the rights of the residents under a continuing care or continuing care at home contract will be honored and will not be disturbed by a foreclosure or conveyance in lieu thereof as long as the resident (a) is current in the payment of all monetary obligations required by the contract, (b) is in compliance and continues to comply with all provisions of the contract, and (c) has asserted no claim inconsistent with the rights of the Lender.

24503324 v4

3.      Except as hereby expressly modified and amended, the Loan Agreement shall remain in full force and effect, and the Loan Agreement, as so amended, is hereby ratified and affirmed in all respects.

4.      No rights of Lender with respect to the Loan Agreement or other Loan Documents (including without limitation, the Guaranty) are or will be in any manner released, destroyed, diminished, or otherwise adversely affected by this Agreement, except as expressly provided herein. Borrower and Guarantor each confirm that neither of them have any defenses or setoffs with respect to its respective obligations pursuant to any of the Loan Documents to which it is a party.

5.      All signatories to this Agreement are duly authorized to sign this Agreement on behalf of its respective party thereto.

6.      This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their respective successors and assigns.

7.      This Agreement may be executed in counterparts, each of which shall be an original, but all of which when taken together shall constitute one and the same instrument.

[Remainder of Page Intentionally Left Blank]

24503324 v4                                              2

IN WITNESS WHEREOF, the parties have caused this Agreement to be properly executed and delivered as of the day and year first above written.

**BORROWER:**

**WESTPORT NURSING TAMPA, L.L.C.,**
a Florida limited liability company

By:   IMH Healthcare, LLC,
a Delaware limited liability company
Its Managing Member

By: _____
Eli Freiden
Its Sole and Managing Member

STATE OF Florida            )

COUNTY OF Palm Beach )

The foregoing instrument was acknowledged before me this 23RD day of March, 2016, by Eli Freiden as the Sole and Managing Member of IMH Healthcare, LLC, a Delaware limited liability company, the Managing Member of Westport Nursing Tampa, L.L.C., a Florida limited liability company. He is personally known to me or has produced a driver's license as identification.

_____
Signature of Notary Public
Print name: Ingrid Nieves
My Commission Expires: _____

INGRID NIEVES
MY COMMISSION #EE874502
EXPIRES: FEB 18, 2017
Bonded through 1st State Insurance

AFFIX NOTARY SEAL / STAMP

[Signatures Continue on Following Page]

24503324 v4                              3

GUARANTOR:

**BVM MANAGEMENT, INC.,**
an Indiana non-profit corporation

By: _John Bartle_
Print Name: _John Bartle_
Its: _Pres_

STATE OF _Indiana_    )

COUNTY OF _Marion_    )

The foregoing instrument was acknowledged before me this _22_ day of _March_, 2016, by _John Bartle_ as the _Guarantor_ of BVM Management, Inc., an Indiana non-profit corporation. He is personally known to me or has produced a driver's license as identification.



_Gerri M Long_
Signature of Notary Public
Print name: _Gerri Long_
My Commission Expires: _6.12.2016_

AFFIX NOTARY SEAL / STAMP

[Signatures Continue on Following Page]

24503324 v4                         4

**LENDER:**

**USAMERIBANK,**
a Florida state banking corporation

By: _____
Print Name: _____ Trey Korhn _____
Its: _____ SVP _____

STATE OF Florida )
COUNTY OF Hillsborough )

The foregoing instrument was acknowledged before me this 24 day of March _____, 2016, by Trey Koehn as the _____ SVP _____ of USAmeriBank, a Florida state banking corporation. He is personally known to me or has produced a driver's license as identification.

CHRISTINA L. ADAMS
MY COMMISSION # FF 153869
EXPIRES: December 21, 2018
Bonded Thru Notary Public Underwriters

Signature of Notary Public
Print name: Christina Adams
My Commission Expires: _____

AFFIX NOTARY SEAL / STAMP

2450.3324 v4                              5