

**FILED**

MAR 11 2016

OFFICE OF
INSURANCE REGULATION
Docketed by: _____ SAB



OFFICE OF INSURANCE REGULATION

KEVIN M. MCCARTY
COMMISSIONER

IN THE MATTER OF:

IMH HEALTHCARE, LLC.
Acquisition of Westport Holdings Tampa, LP d/b/a
University Village, a Continuing Care Retirement Community

CASE NO. 185730-16

## FINAL ORDER

THIS CAUSE came on before the undersigned, for consideration and final agency action.

Between the dates of January 2, 2015, and March 2, 2015, three (3) different parties applied to acquire Westport Tampa Holdings, LP (hereinafter referred to as Westport LP), which is the entity holding the certificate of authorization for the Continuing Care Retirement Community (hereinafter referred to as CCRC) in University Village, in Tampa, Florida.

The application process began on January 2, 2015, when the Office of Insurance Regulation (hereinafter referred to as Office or Respondent) received a 5-day notification of the acquisition application filing from an entity named BHMSILFGP, LP, which offered itself as the proposed new general partner of Westport LP, and at the same time requested a waiver of the formal application. The Office denied the requested waiver, and BHMSILFGP, LP, was never made general partner.



PLAINTIFF'S
EXHIBIT Silver
14

On February 9, 2015, the Office received a very incomplete application from an entity named Compliance Concepts, LLC (Compliance), to which the Office issued a very lengthy 30-day clarification letter requesting additional information on seventy-four separate items.

Before submitting a response to the 30-day letter, Compliance withdrew as general partner. By letter dated March 2, 2015, the Office was informed that IMH Healthcare, LLC (hereinafter referred to as IMH or Petitioner) had been elected as the new general partner of Westport LP and the pending application would be updated and supplemented to reflect the change. After full review of the application and the responses to the 30-day clarification letters, staff at the Office recommended that the application be denied.

On March 27, 2015, the Office issued its notice of denial of acquisition application (hereinafter referred to as the Application) to IMH. The notice provided that the denial was based on IMH's failure to meet the requirements for approval set forth in section 628.4615(8)(a), (8)(b), and (8)(d)-(i), Florida Statutes.

On April 16, 2015, IMH filed its "Request for Hearing Pursuant to Section 120.57(1) Florida Statutes before the Division of Administrative Hearings," by which IMH disputed the bases for the Office's notice of proposed agency action.

On May 4, 2015, the Office referred the petition to the Division of Administrative Hearings. The final hearing was held on November 12, 13, and 16, 2015.

After consideration of the evidence, argument, and testimony presented at the hearing, the Administrative Law Judge (ALJ) issued a Recommended Order on January 26, 1016. (Attached hereto as Exhibit "A".) The ALJ offered a binary, either/or recommendation:

On February 9, 2015, the Office received a very incomplete application from an entity named Compliance Concepts, LLC (Compliance), to which the Office issued a very lengthy 30-day clarification letter requesting additional information on seventy-four separate items.

Before submitting a response to the 30-day letter, Compliance withdrew as general partner. By letter dated March 2, 2015, the Office was informed that IMH Healthcare, LLC (hereinafter referred to as IMH or Petitioner) had been elected as the new general partner of Westport LP and the pending application would be updated and supplemented to reflect the change. After full review of the application and the responses to the 30-day clarification letters, staff at the Office recommended that the application be denied.

On March 27, 2015, the Office issued its notice of denial of acquisition application (hereinafter referred to as the Application) to IMH. The notice provided that the denial was based on IMH's failure to meet the requirements for approval set forth in section 628.4615(8)(a), (8)(b), and (8)(d)-(i), Florida Statutes.

On April 16, 2015, IMH filed its "Request for Hearing Pursuant to Section 120.57(1) Florida Statutes before the Division of Administrative Hearings," by which IMH disputed the bases for the Office's notice of proposed agency action.

On May 4, 2015, the Office referred the petition to the Division of Administrative Hearings. The final hearing was held on November 12, 13, and 16, 2015.

After consideration of the evidence, argument, and testimony presented at the hearing, the Administrative Law Judge (ALJ) issued a Recommended Order on January 26, 1016. (Attached hereto as Exhibit "A".) The ALJ offered a binary, either/or recommendation:

(a)    … that the Department of Financial Services, Office of Insurance Regulation, enter a final order determining that IMH Healthcare, LLC's, acquisition of the one-percent general partner ownership interest in Westport Holdings Tampa, L.P., was insufficient to meet the threshold requirement for an acquisition application pursuant to section 628.4615(2), Florida Statutes, and that the March 27, 2015, notice of denial of acquisition application be DISMISSED; or,

(b)    … that if it is determined that an acquisition application is required when a one-percent general partner ownership interest in a CCRC is acquired, the Department of Financial Services, Office of Insurance Regulation, enter a final order determining that IMH Healthcare, LLC, failed to meet its burden of proving entitlement to the approval of the acquisition application, and that the application should therefore be DENIED.

Both the Office and IMH filed exceptions to the Recommended Order. Based upon a complete review of the record, the Recommended Order, the exceptions and relevant statutes, rules and case law, I find as follows:

## RULINGS ON IMH'S EXCEPTIONS

Section 120.57(1)(l), Florida Statutes, sets forth the standard an agency must use when reviewing the Recommended Order of the administrative law judge. As it relates to exceptions to findings of fact, it provides in pertinent part:

> The agency may adopt the recommended order as the final order of the agency. … The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.

IMH's exceptions begin with an introduction titled *Introduction and Exceptions Applicable to Findings and Conclusions Generally*, wherein IMH declares the ALJ's conclusions of law in paragraphs 149 and 154 are "legally unsupportable" and provides roughly three pages that identify neither disputed portions of the recommended order nor citations to the record. I will not address these general exceptions as IMH properly addresses these specific conclusions later in IMH's filing.

## RULINGS ON SPECIFIC EXCEPTIONS TO FINDINGS OF FACT

1.     IMH purports to except the first clause of the second sentence of paragraph 33 of the ALJ's findings, in that the "spin-off" of Westport Nursing, LLC was not reported to Respondent. There is evidence that the OIR received a letter that mentions a future event whereby Westport Nursing, LLC, would become a sister-entity to Westport Holdings Tampa, LP. (hereinafter referred to as Westport LP) (Petitioner's Exhibit 3) The subject matter of the letter dated March 31, 2014, from the Williams Mullen law firm sent to the Office on behalf of Westport LP, concerned the transfer of $3 million of MLR from Westport LP, to Westport Nursing, LLC (after the restructuring), to serve as "cash collateral" for a $15 million loan by USAmeriBank. Therefore, the Exception is approved and the first clause of the second sentence of this finding shall be corrected in this regard.

2.     In paragraph 35, IMH takes exception to the ALJ's finding that $3 million "cash collateral" for USAmeriBank's $15 million loan "was not contributed by BVM or the new limited partners." (BVM refers to John Bartle's company, BVM, which is, hereinafter referred to as BVM)

Petitioner's Exhibit 3, referenced in the previous Ruling, details with specificity how the $3 million was taken from Westport LP and then used to obtain the $15 million loan.

Additionally, Respondent's Exhibit 9 (fifteen million U.S. Dollars ($15,000,000) Loan Closing Statement) demonstrates that of the total loan amount, a total of fourteen million five hundred fifty-seven thousand one hundred forty-five U.S. Dollars and eighty-nine cents ($14,557,145.89) was used to pay off notes held by GEMSA Loan Services, LP, and Horizon, LP UV Lender, LLC. (Respondent's Exhibit 9 , pp. 2 & 3) The remaining four hundred forty-two thousand eight hundred fifty-four U.S. Dollars and eleven cents ($442,854.11) was used to pay USAmeribank, Gary Dytrych & Ryan, P.A. and Burr & Forman, LLP for closing costs, and Green Circle Capital Group a broker's fee. Id. at 1-3. There is no competent substantial evidence of any cash contribution by the limited partners.

This Exception is denied.

3.      IMH takes exception to paragraph 39 for the same reason stated in its exception to paragraph 35. However, Respondent's Exhibit 9 (fifteen million U.S. Dollars ($15,000,000) Loan Closing Statement) and Respondent's Exhibit 9A (nine million five hundred thousand U.S. Dollars ($9,500,000) Loan Closing Statement) corroborate the ALJ's findings. This Exception is denied on the same grounds as stated above.

4.      In paragraph 55, IMH takes exception to the ALJ's finding that Compliance Concepts, LLC, filed an acquisition application with the Office "on or about February 9, 2015." Petitioner would replace the ALJ's active finding with the passive "OIR was sent a paper copy of the acquisition application on or about January 29, 2015." There is evidence the application was signed and notarized on January 29, 2015, (Respondent's Exhibit 1, p. 7) but there is no evidence as to when the application was actually sent. There is evidence the Office received the application on February 9, 2015. (Respondent's Exhibit 1, pp. 280-289). This Exception is denied.

5.    IMH takes exception to paragraph 68, in that the revised (IMH) acquisition application contained no financial information regarding Mr. Freiden or IMH. IMH attempts to rebut this finding by referring to a letter from Ark Real Estate Group, LLC, to Mr. Freiden, which indicated that Ark Real Estate Group, LLC, "has the capacity to provide up to $5,000,000.00 (Five Million Dollars) in capital or subordinated debt to ensure that [IMH] has sufficient liquidity to support its role as limited partner. If you would like a formal term sheet for this commitment, please advise." There was no evidence in the record regarding Ark Real Estate Group's financial stability, its ability to provide funding, or whether the IMH requested a formal term sheet. (Hearing Transcript, p. 449:8-13)

This Exception is denied.

6.    IMH takes exception to paragraph 83, in which the ALJ made a finding that the education and experience of one applying to acquire, operate, and run a CCRC facility – generally referred to as one's background - necessarily must relate to the subject matter for the license applied. In its argument to reject this Finding, IMH avers that section 628.4615, Florida Statutes, does not "expressly require that an applicant for an ownership share must have education or experience in insurance." (IMH Healthcare, LLC's Exceptions to Recommended Order (hereinafter referred to as IMH's Exceptions), p.6) For support, Petitioner cites section 628.4615(8)(d) & (f), Florida Statutes.

Section 628.4615(8), Florida Statutes, directs the Office to approve an acquisition application if, on the basis of the filed application, the Office finds the applicant demonstrated compliance with all substantive conditions listed in paragraphs (a) through (j), therein. In this case, the record abounds with what IMH failed to submit in its application, despite myriad requests.    (Hrg. Tr. Vol. III 334:2-335:21; 336:23-337:10; 339:11-340:24; 340:24-341:11;

351:17-352:2; 355:3-21; 372:22-376:23; 382:7-384:20; 398:6-19; Hrg. Tr. Vol. IV 446:10-449:13; 450:19-451:3; 451:14-452:22; 459:14-460:9). The Office reviewed all that IMH submitted, but was unable to make such a determination.

Regarding Petitioner's citation to paragraph (d) of section 628.4615, Florida Statutes; IMH, as the sole General Partner and a Limited Partner, would occupy a position to control the operation of the specialty insurer. It is the Office's statutory responsibility to determine whether IMH's qualifications are such that its approval of the application would be "in the best interest of the insureds of the insurer and in the public interest." § 628.4615(8)(d), Fla. Stat. IMH's failure to provide supporting documentation in the application process prevented the Office from making such a determination.

Finally, paragraph (f) of section 628.4615, Florida Statutes, lists "partners" among those entities "…to be employed after the acquisition…" who are required to have "…sufficient insurance experience and ability to assure reasonable promise of successful operation." § 628.4615(8)(f), Fla. Stat. Mr. Freiden as the solitary General Partner of IMH admits he lacks an educational background in healthcare administration and insurance, (Hrg. Tr. Vol.II 169:9 – 170:4).

The ALJ is allowed latitude to make factual findings and make reasonable inferences that flow therefrom. The law is well established that an agency is bound to honor a hearing officer's [now ALJ's] findings of fact unless they are not supported by competent, substantial evidence. McDonald v. Department of Banking & Fin., 346 So.2d569, 578 (Fla. 1st DCA 1977). It is the hearing officer's function to consider all the evidence, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence; the agency is not authorized to perform these

337:23-339:15; 379:12-380:2) Had IMH timely raised the issue, the ALJ could have ruled on the challenge. See, §§ 120.56(4); 120.57(1)(e), Fla. Stat.

The Exceptions to paragraphs 86 and 87 are denied.

8.    IMH takes exception to the ALJ's Finding in paragraph 88, that funding for the purchase of the limited partnership interest was accomplished through loans secured by Westport's existing facilities, and guaranteed by BVM. The ALJ's Finding is supported by competent substantial evidence in the record. (Respondent's Exhibit 1, p. 11; Hearing Transcript, pp. 448:23-450:18)

This exception is denied.

9.    IMH takes exception to paragraph 89, wherein the ALJ characterizes the letter to IMH from Ark Real Estate Group, LLC, as "vague." This is related to IMH's Exception to the ALJ's Finding in paragraph 86, the argument and ruling thereof is incorporated here by reference. The ALJ is allowed latitude to make factual findings and reasonable inferences that flow therefrom. This exception is denied.

10.    IMH takes exception to the ALJ's Finding in paragraph 90 that the information provided in the revised (IMH's) acquisition application was insufficient to establish the financial condition of Petitioner. The ALJ is allowed latitude to make factual findings and reasonable inferences that flow therefrom. There is competent, substantial evidence in the record that IMH failed to provide financial information sufficient for the Office to make an affirmative determination regarding IMH's financial condition. See, § 628.4615(8)(b), Fla. Stat. (Hearing Transcript, pp. 372:22-376:23; 398:6-19; Vol. IV 448:23-449:20)

Instead of addressing the ALJ's specific Finding in paragraph 90, IMH argues that no CCRC resident did without "services to which they are entitled." (Hearing Transcript, pp.

161:21-162:17) The insureds' access to "entitled services" is important and arguably the very least IMH can do pursuant to its contracts with residents. The record demonstrates, however, that the residents may not have been receiving all of their entitled services. In April 2014, BVM, as guarantor of the debt for University Village, contracted for a Physical Needs Assessment that identified over two million five hundred thousand U.S. Dollars ($2,500,000) worth of capital improvements needed for repairs to roofs, HVAC systems, guttering, and the facilities' chillers. (Hearing Transcript, p. 63:2-16) During 2014, over one million six hundred thousand U.S. Dollars ($1,600,000) was spent remodeling 106 units to make them ready to rent to new clients. (Hearing Transcript, p. 65:15-21) Of that amount, nothing ($0.0) was spent repairing the items identified in the Physical Needs Assessment. (Hearing Transcript, p. 110:12-25) Rather than ensure the comfort and safety of existing residents, the focus of those seeking to acquire Westport LP was to bring in new money.

In addition, there was testimony that the Office received complaints from residents regarding slow-to-repair air conditioner malfunctions, the presence of mold in some units, and a resident-run periodical being subject to management scrutiny and pre-approval before dissemination. (Hearing Transcript, pp. 455:19-456:12:22) There was nearly three million U.S. Dollars ($3,000,000) owed as exit refunds to those who left the facility. (Hearing Transcript, p. 456:13-22) Finally, and as some indicia of the entity's financial condition, over one million U.S. Dollars ($1,000,000) of vendors' invoices were going unpaid; many of which were past 60 days overdue. (Hearing Transcript, pp. 119:7-16; 244:3-12; 461:4-20) Notwithstanding the lack of financial information submitted during the application process, Westport LP's financial condition was well documented and discussed. (Respondent's Exhibit 1, p. 11; Hearing

Transcript, pp. 446:17-447:4; 448:23-449:7). The ALJ is allowed latitude to make factual findings and make reasonable inferences that flow therefrom.

This exception is denied.

11. IMH takes exception to the ALJ's Finding in paragraph 93 that Westport LP failed to respond to the Office's inquiries and had not provided access to requested information during the targeted financial examination. There is evidence that Westport produced over one hundred documents, (Hearing Transcript, pp. 111:23-112:11) however, as the ALJ stated in this Finding, the preponderance of the evidence indicates otherwise. (Hearing Transcript, pp. 111:23-112:11; 179:11-180:21; 471:12-473:10)

This exception is denied.

12. IMH takes exception to the ALJ's Finding in paragraph 100 that the Office sought background information on Mr. Bartle "as a person indirectly involved with the management of an acquiring entity." Petitioner asserts section 628.4615, Florida Statutes, did not entitle the Office to John Bartle's background information.

Mr. Bartle was, and continued to be, intimately involved with the operation of University Village. Beginning in 2013, he first sought to acquire Westport LP, and its CCRC certificate, for himself and his company, BVM (Hearing Transcript, pp. 45:12-25; 49:2-15), and by year's end the financial condition of Westport LP was totally dependent upon BVM; (Hearing Transcript, pp. 448:23-450:18) While four separate limited liability companies assumed various percentages of Westport LP's 99 percent limited partnership shares, BVM was the guarantor for loans totaling over twenty-four million U.S. Dollars ($24,000,000) that were secured by the University Village campus. Thereafter, Mr. Bartle contributed to the management of University Village, agreeing to contract with NOVUM for management services, (Hearing Transcript, pp. 227:8-

228:6) and by participating in meetings between University Village and the Agency for Healthcare Administration, as well as meetings between University Village and the Office. (Hearing Transcript, p. 229:3-13) The record is clear that Mr. Bartle and BVM were involved in the control and operation of Westport LP, yet he provided no information of any kind in response to the Office's requests for same. (Hearing Transcript, pp. 451:14-452:22)

This exception is denied.

13. IMH takes exception to paragraph 103, "insofar as [the ALJ] finds NOVUM's experience as indefinite." IMH's Exceptions, p. 9. It is clear the ALJ took copious notes and checked the hearing transcripts as his findings were taken directly from the NOVUM's CEO's testimony. (Hearing Transcript, pp. 221:23-226:1)

This exception is denied.

14. IMH takes exception to paragraph 108, in which the ALJ finds that NOVUM, LLC, is performing managerial duties for University Village, as described in Florida Administrative Code Rule 69O-193.002(13) (Continuing Care Contracts). Pursuant to the rule, a "manager" or "management company" is defined as "a person who, pursuant to a written contract with a provider, agrees to administer the day-to-day business operations of a facility for a provider, subject to the policies, directives, and oversight of the provider. IMH avers the written contract between it and NOVUM does not provide for services as a "manager" that administers the day-to-day business operations of a facility for the provider." IMH claims that the contract between it and NOVUM precludes such activities; NOVUM consults only. (Petitioner's Exhibit 5) This is not strictly accurate because the consulting agreement between Petitioner and NOVUM provides the catch-all phrase "includes, but is not limited to," before a list of eight, general, evaluative responsibilities and duties. The contract anticipates additional,

unspecified duties. Regarding Mr. Freiden's testimony at hearing, he and NOVUM employees/principals consulted "daily, weekly, every second" on matters of accounting, marketing, sales, housekeeping, and plant operations, (Hearing Transcript, pp. 158:3-21; 159:10-24) but Mr. Freiden also testified that he and the four to five NOVUM principals and employees were, at any given time, interchangeable with regard to the role of chief operational officer. (Hearing Transcript, p. 165:15-20) Mr. Freiden admitted that he was not on campus every day; however, NOVUM was on campus daily, (Hearing Transcript, pp. 184:1-185:5) therefore, for convenience sake, Mr. Freiden even assigned signature authority to NOVUM for Westport LP bank accounts. NOVUM employees were given authority to sign checks, even to NOVUM, itself. It is clear NOVUM acted beyond the scope of consultant.

Accordingly, this exception is denied.

15.    IMH takes exception to paragraph 110, in which the ALJ finds no evidence that Petitioner, Westport, or NOVUM, LLC, has made the requisite demonstration that NOVUM, LLC, meets the requirements of section 651.022. There is competent substantial evidence in the record that NOVUM operated as a manager. For the reasons and evidence cited in the Ruling to Petitioner's Exception to paragraph 108, which is adopted herein by this reference, this exception is denied.

## RULINGS ON IMH's EXCEPTIONS TO CONCLUSIONS OF LAW

16.    IMH takes exception to the ALJ's Conclusion of Law in paragraph 144 that IMH did not meet the requirements of section 628.4615(8)(a), Florida Statutes, which provides:

> Upon completion of the acquisition, the *specialty insurer* will be able to satisfy the requirements for the issuance of a license or certificate to write the line of insurance for which it is presently licensed or certificated. *Italics added.*

In its argument to reject this conclusion IMH erroneously assigns the role of *specialty insurer* in paragraph (a) to Westport LP, which held then, and continues to hold, the CCRC license. By doing so, there is no statutory requirement to be met. IMH's reasoning would be sound only if Westport LP filed an application to acquire itself. IMH itself is the specialty insurer in paragraph (a), and Petitioner's argument succinctly, circuitously, makes clear why Westport LP cannot be assigned this role; such an interpretation of paragraph (a) would render it meaningless. IMH applied to acquire Westport LP, which holds a CCRC license. Therefore, IMH must demonstrate that it meets the same requirements as the original holder. (Hearing Transcript, p. 447:5-18)

There is competent substantial evidence in the record demonstrating IMH's failure to provide adequate documentation to the Office and satisfy the requirements for the issuance of the license. (Hearing Transcript, pp. 334:2-335:21; 336:23-337:10; 339:11-340:24; 340:24-341:11; 351:17-352:2; 355:3-21; 372:22-376:23; 382:7-384:20; 398:6-19; 446:10-449:13; 450:19-451:3; 459:14-460:9)

This exception is denied.

17. IMH takes exception to the ALJ's Conclusion of Law in paragraph 145 that Petitioner failed to submit information regarding its financial condition, so as to prevent the Office from drawing a meaningful conclusion regarding IMH's financial condition. Section 628.4615(8)(b), Florida Statutes, provides as follows:

> The financial condition of the acquiring person or persons will not jeopardize the financial stability of the specialty insurer or prejudice the interests of its insureds or the public.

The record is replete with IMH's failure to provide financial information sufficient enough to allow the Office to make such a determination. (Hearing Transcript, pp. 372:22-376:23; 398:6-19; 448:23-449:20)

This Conclusion of Law clearly explicates the ALJ's reasoning, construction and application of the law to the facts as presented at the hearing, which were supported by competent and substantial evidence.

This exception is denied.

18.    IMH takes exception to paragraph 146, in which the ALJ concluded that Petitioner failed to meet its burden, required by section 628.4615(8)(c), Florida Statutes, to show that the changes to Westport's corporate structure or management is fair and free of prejudice to its residents or the public. IMH states it met this standard when it notified the Office that it had no plans or proposals for major changes. (Respondent's Exhibit 1, p. 9 – Form OIR-CI-448, and p. 195 - letter from Rebecca Bartle, one-time applicant and sole, managing member for Compliance Concepts, LLC). Hearing testimony and numerous exhibits prove otherwise. There was a four to six-week period of time in which the Office received no fewer than four org-charts, each telling a different story. (Hearing Transcript, pp. 438:16-440:15; 445: 3-18) There are a total of five org-charts in the record. (Respondent's Exhibit I, pp. 150, 499, 514, 525, and 530) The ongoing involvement of Mr. Bartle and his company, BVM, in the management of Westport, LP, as well as the management activities of NOVUM, discussed at length in my Rulings to IMH's Exceptions to paragraphs 100 and 108, which are incorporated herein by this reference, tell a different story. The ALJ's Conclusion of Law clearly explicates his reasoning, construction and application of the law to the facts as presented at the hearing, which were supported by competent and substantial evidence.

This exception is denied.

19.    IMH takes exception to the ALJ's Conclusions of Law in paragraphs 147 & 148. The ALJ found insufficient evidence to demonstrate that Mr. Freiden has the requisite degree of

competence and experience in the field of insurance or healthcare facility management generally, or CCRC operation and management specifically. Section 628.4615(8)(d), Florida Statutes requires the applicant demonstrate that "the competence, experience, and integrity of those persons who will control directly or indirectly the operation of the specialty insurer indicate that the acquisition is in the best interest of the insureds of the insurer and in the public interest."

IMH argues the statute does not require a specific type of experience and competence, but such a reading is contrary to a rule of statutory interpretation to construe the statute as a whole. See, Lamar Outdoor Advertising Lakeland v. Florida Dep't of Transp., 17 So.3d 799, 802 (Fla. 1st DCA 2009) (a subsection "must be read within the context of the entire section in order to ascertain legislative intent for the provision and each statute must be read as a whole"). The words "competence," "experience" and "ability" are in a statute regarding the acquisition of specialty insurers. The only reasonable conclusion is that those terms must refer to the applicant's expertise with the specialty insurance being issued and the business being conducted under the license or certificate of authority of the entity sought to be acquired.

To the extent IMH avers the Office's application of the specialty insurer acquisition statute to the specific instance of a CCRC applicant is an unadopted rule, this argument is untimely for the same reasons set forth in the Office's Response to Exceptions to Findings of Fact 86 & 87, which is incorporated herein by this reference.

This Conclusion of Law clearly explicates the ALJ's reasoning, construction and application of the law to the facts as presented at the hearing, which were supported by competent and substantial evidence.

This Exception is denied.

20.     IMH takes exception to the ALJ's Conclusion of Law in paragraph 149,

regarding Petitioner's failure to satisfy the requirements in section 628.4615(8)(e), Florida Statutes. This Exception relies on arguments made in IMH's Exception to Findings of Fact 86 & 87, the Rulings to both which are incorporated herein by this reference. This Conclusion clearly explicates the ALJ's reasoning, construction and application of the law to the facts as presented at the hearing, which were supported by competent and substantial evidence.

This Exception is denied.

21.    IMH takes exception to the ALJ's Conclusion of Law in paragraph 150, regarding Petitioner's failure to satisfy the requirements of section 628.4615(8)(f), Florida Statutes. For this Exception, IMH relies on arguments previously made in its Exceptions to Conclusions of Law in paragraphs 147 & 148, the Rulings to which are incorporated herein by this reference. Mr. Freiden's lack of relevant experience is discussed in the ALJ's Finding of Fact in paragraph 82, to which Petitioner did not file an exception.

This Exception is denied.

22.    IMH takes exception to the ALJ's Conclusion of Law in paragraph 151, regarding Petitioner's failure to satisfy the requirements of section 628.4615(8)(g), Florida Statutes. IMH objects to any requirement to prove Mr. Freiden requires more than general managerial experience to run a CCRC. As was demonstrated in my Ruling on IMH's Exception to Conclusions of Law in paragraphs 147 and 148, which Ruling is incorporated herein by this reference, it is axiomatic that an applicant for a specialty insurer must have competence and experience relative to the license applied.

This Exception is denied.

23.    IMH takes Exception to the ALJ's Conclusions contained in paragraph 152. With regard to IMH's failure to provide adequate documentary information in the acquisition

application process, my Ruling on IMH's Exception to Conclusion of Law in paragraph 146 is incorporated herein by this reference.

Regarding the management activities of NOVUM, and the continued participation of BVM and Mr. Bartle in the management of Westport LP, my Ruling on Petitioner's Exception to Finding of Fact in paragraph 108, and my Ruling on Petitioner's Exceptions to the ALJ's Conclusion of Law in paragraph 146 are incorporated herein by the reference. Finally, this Ruling references Findings of Fact in paragraphs 96-99 and 101, to which Petitioner filed no Exceptions.

This Exception is denied.

24.     IMH takes Exception to the ALJ's Conclusion in paragraph 153, in which IMH failed to satisfy the requirements of section 628.4615(8)(h), Florida Statutes, providing that "the management of the specialty insurer after the acquisition shall not include any person who has directly or indirectly through ownership, control, reinsurance transactions, or other insurance or business relations unlawfully manipulated the assets, accounts, finances, or books of any insurer or otherwise acted in bad faith with respect thereto." From the telltale absence of adequate documentation from the applicant, the ever-changing org-charts, to Mr. Freiden and his "four to five" chief operational officers, it was obvious to the ALJ that IMH could not possibly satisfy this statutory requirement, let alone permit the Office to make a reasonable finding. My Rulings to IMH's Exceptions to Findings of Fact in paragraphs 100 and 108, and my Ruling to Petitioner's Exception to Conclusion of Law in paragraph 146, are incorporated herein by this reference.

This Exception is denied.

25.    IMH takes exception to the ALJ's Conclusion in paragraph 154, to which my Ruling to Petitioner's Exceptions to Findings of Fact 86 & 87, is incorporated herein by this reference.

This Exception is denied.

26.    IMH takes Exception to the ALJ's Conclusions in Endnote No. 3 and argues the Office cannot raise the issue of whether the limited partners of Westport Holdings Tampa, LP must file an application for acquisition. The Office's legal arguments posited in its Response to Exceptions, filed February 22, 2016, are incorporated herein by this reference as my Ruling on the Petitioner's Exception to Endnote 3.

This Exception is denied.

### RULINGS ON THE OFFICE'S EXCEPTIONS TO FINDINGS OF FACT

27.    The Office takes exception to the ALJ's finding in the fourth sentence of paragraph 35, which reads as follows: "The [USAmeriBank]loan was also used to fund $3 million of 'minimum liquid reserve' (MLR) for University Village, which was then pledged as cash collateral to secure the loan."  As demonstrated by Respondent's Exhibit 9 (Loan Closing Statement) at pp. 2 and 3, and Petitioner's Exhibit 3, no portion of the loan was used to fund the three million U.S. Dollars ($3,000,000) minimum liquid reserve for University Village. The Ruling to Petitioner's Exception to Finding of Fact in paragraph 35 is incorporated herein by this reference.

This Exception is approved, and the fourth sentence of Finding of Fact 35 shall be modified as follows: "TAs part of the loan process, was also used to fund $3 million of the existing 'minimum liquid reserve' (MLR) for University Village held in a Regions Bank account maintained by Westport Holdings Tampa, LP was transferred to an escrow account

maintained by Westport Nursing, LLC at USAmeribank, where it ~~which~~ was then pledged as cash collateral to secure the loan."

## RULINGS ON THE OFFICE'S EXCEPTIONS TO CONCLUSIONS OF LAW

The Office takes Exception to the Conclusions of Law in paragraphs 118, 126-131, 133-137, and 139-142, all of which relate to the ALJ's conclusions that an entity filing an application to acquire the general partnership interest of a limited partnership that holds a certificate of authority as a continuing care retirement community (CCRC) provider is not legally required to file an application for acquisition under section 628.4615, Florida Statutes, and the ALJ's recommendation that the Office's letter of denial be dismissed.

An agency may reject or modify conclusions of law over which it has substantive jurisdiction under specified circumstances.

> When rejecting or modifying such conclusions of law or interpretation or administrative rule, the agency must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact.

§ 120.57(1)(l), Fla. Stat.

The Office has substantive jurisdiction over the statute applicable to the acquisition of specialty insurers, section 628.4615, Florida Statutes, and may reject or modify conclusions of law regarding it under the above standard.

28.     The Office's Exception to the ALJ's Conclusion of Law in paragraph 118 relates to the "manner" in which the ALJ addressed the issue. The issue of the threshold criteria – whether Petitioner was required to file an application pursuant to Section 628.4615, Florida Statutes upon becoming general partner of Westport LP - was first presented in the Joint Pre-

Hearing Statement, filed November 6, 2015, and afterward as a Motion for Dismissal by Tribunal, filed by IMH at the beginning of the Final Hearing. After a hearing on the Motion, the ALJ decided that the Motion to Dismiss would be addressed in the Recommended Order, but permitted the parties to file memoranda of law on the threshold criteria issue along with their Proposed Recommended Orders. In the Preliminary Statement of the Recommended Order, the ALJ denied the Motion to Dismiss. The OIR takes exception to the ALJ avoiding an express ruling on "the obvious admission from Petitioner; that is, it seeks dismissal of its Request for Hearing based on an argument that its own allegations regarding jurisdiction were not well-founded when filed." With regard to Respondent's Exception to Conclusion of Law in paragraph 118, there does not seem to be any legal requirement for an ALJ to explain his or her ruling. This Exception is denied.

29.     More critical, however, and germane to the Office's Exceptions to Conclusions of Law in paragraphs 126-131, 133-137, 139-142, was the manner in which the ALJ framed the threshold criteria in paragraph 118:

> Before proceeding with an analysis of the extent to which substantive criteria for the acquisition of Westport by Petitioner were met, a determination must be made as to whether Petitioner's succession to the "1% general partnership interest" in Westport meets the threshold criteria for requiring the submission of an acquisition application.

Here, the ALJ would have been better served to establish the foundation for his analysis by using the language that IMH and the Office crafted together in their Joint Pre-Hearing Statement, referenced above: *Whether Petitioner was required to file an application pursuant to section 628.4615, Florida Statutes upon becoming general partner of Westport Holdings Tampa, LP.* Unfortunately, and inexplicably, the ALJ used IMH's argument from the denied Motion to Dismiss, and established the focal point of *one-percent (1%) partnership interest* as the

triggering event. That faulty foundation skewed the ALJ's analysis of the acquisition statute in this case, confusing *ownership* of the target entity with *control* of the target entity, by uncomfortably shoe-horning the measurement of stock corporation ownership onto a limited partnership.

With regard to the Office's Exceptions to Conclusions of Law 126-131, 133-137, 139-142, the Office's argument on this legal issue as set forth in "Respondent's Memorandum of Law" filed with the Division of Administrative Hearings on December 18, 2015, is attached hereto as Exhibit B and incorporated by this reference herein, as the Office's Rulings thereto.

I therefore find that the substituted conclusions of law is as or more reasonable that that which was rejected or modified.

The Office's Exceptions to Conclusions of Law 126-131, 133-137, 139-142, are approved.

IT IS THEREFORE ORDERED:

1.      The Findings of Fact of the ALJ, except as modified herein, are adopted in full as the Office's Findings of Fact.

2.      The Conclusions of Law of the ALJ, except as modified herein, are adopted in full as the Office's Conclusions of Law.

3.      The Recommendation of the ALJ is accepted as modified in accord with this Order.

Based on the foregoing Findings of Fact and Conclusions of Law, the Office finds that it is the general partner - not the limited partner(s) - of a limited partnership that controls the limited partnership's operation, management, and assets; therefore, the general partner is required to obtain the Office's approval pursuant to section 628.4615, Florida Statutes,

before obtaining control over the CCRC provider's assets. Any other reading of section 628.4615, Florida Statutes, would undermine the legislative intent and the Office's ability and duty to protect the CCRC provider's residents. Therefore, since an acquisition application is required when a general partner ownership interest in a CCRC is acquired, and IMH Healthcare, LLC, having failed to meet its burden of proving entitlement to the approval of acquisition application, the Application filed by IMH Healthcare, LLC is DENIED.

DONE and ORDERED this _11th_ day of March, 2016.



Kevin M. McCarty, Commissioner
Office of Insurance Regulation

## NOTICE OF RIGHTS

Any party to these proceedings adversely affected by this Order is entitled to seek review of this Order pursuant to Section 120.68, Florida Statutes, and Rule 9.110, Florida Rules of Appellate Procedure. Review proceedings must be instituted by filing a petition or notice of appeal with the General Counsel, acting as Agency Clerk, 200 East Gaines Street, 612 Larson Building, Tallahassee, Florida 32399-0333 and a copy of the same and filing fee, with the appropriate District Court of Appeal within thirty (30) days of rendition of this Order.

COPIES FURNISHED TO:

M. Stephen Turner Wendy
Russell Wiener Broad and
Cassel
215 S. Monroe Street, Ste. 400
Tallahassee, FL 32301 (eServed)

Shaw P. Stiller,
Chief Assistant General Counsel
C. Timothy Gray Alyssa
Lathrop Patrick
Flemming
Assistant General Counsels
Office of Insurance Regulation
Legal Services Office
200 East Gaines Street,
Tallahassee, FL 32399-4206 (eServed)

Anoush Brangaccio, Agency Clerk
Office of Insurance Regulation
200 East Gaines Street,
Tallahassee, FL 32399-4206 (eServed)

Anoush Brangaccio, General Counsel Office of
Insurance Regulation Legal Services Office
200 East Gaines Street, Tallahassee,
FL 32399-4206 (eServed)

Kevin McCarty, Commissioner
Office of Insurance Regulation
200 East Gaines Street,
Tallahassee, FL 32399-4206 (eServed)

The Hon. E. Gray Early
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida 32399-3060
(Hand delivered)