West's Florida Statutes Annotated
  Title XXXVII. Insurance (Chapters 624-651) (Refs & Annos)
    Chapter 651. Continuing Care Contracts (Refs & Annos)

This section has been updated. Click here for the updated version.

West's F.S.A. § 651.055

651.055. Continuing care contracts; right to rescind

Effective: July 7, 2011 to September 30, 2015

(1) Each continuing care contract and each addendum to such contract shall be submitted to and approved by the office before its use in this state. Thereafter, no other form of contract shall be used by the provider until it has been submitted to and approved by the office. Each contract must:

(a) Provide for the continuing care of only one resident, or for two persons occupying space designed for double occupancy, under appropriate regulations established by the provider, and must list all properties transferred and their market value at the time of transfer, including donations, subscriptions, fees, and any other amounts paid or payable by, or on behalf of, the resident or residents.

(b) Specify all services that are to be provided by the provider to each resident, including, in detail, all items that each resident will receive, whether the items will be provided for a designated time period or for life, and whether the services will be available on the premises or at another specified location. The provider shall indicate which services or items are included in the contract for continuing care and which services or items are made available at or by the facility at extra charge. Such items include, but are not limited to, food, shelter, personal services or nursing care, drugs, burial, and incidentals.

(c) Describe the terms and conditions under which a contract for continuing care may be canceled by the provider or by a resident and the conditions, if any, under which all or any portion of the entrance fee will be refunded in the event of cancellation of the contract by the provider or by the resident, including the effect of any change in the health or financial condition of a person between the date of entering a contract for continuing care and the date of initial occupancy of a living unit by that person.

(d) Describe the health and financial conditions required for a person to be accepted as a resident and to continue as a resident, once accepted, including the effect of any change in the health or financial condition of the person between the date of submitting an application for admission to the facility and entering into a continuing care contract. If a prospective resident signs a contract but postpones moving into the facility, the individual is deemed to be occupying a unit at the facility when he or she pays the entrance fee or any portion of the fee, other than a reservation deposit, and begins making monthly maintenance fee payments. Such resident may rescind the contract and receive a full refund of any funds paid, without penalty or forfeiture, within 7 days after executing the contract as specified in subsection (2).

(e) Describe the circumstances under which the resident will be permitted to remain in the facility in the event of financial difficulties of the resident. The stated policy may not be less than the terms stated in s. 651.061.



(f) State the fees that will be charged if the resident marries while at the designated facility, the terms concerning the entry of a spouse to the facility, and the consequences if the spouse does not meet the requirements for entry.

(g) Provide that the contract may be canceled by giving at least 30 days' written notice of cancellation by the provider, the resident, or the person who provided the transfer of property or funds for the care of such resident. However, if a contract is canceled because there has been a good faith determination that a resident is a danger to himself or herself or others, only such notice as is reasonable under the circumstances is required.

1. The contract must also provide in clear and understandable language, in print no smaller than the largest type used in the body of the contract, the terms governing the refund of any portion of the entrance fee.

2. For a resident whose contract with the facility provides that the resident does not receive a transferable membership or ownership right in the facility, and who has occupied his or her unit, the refund shall be calculated on a pro rata basis with the facility retaining up to 2 percent per month of occupancy by the resident and up to a 5 percent processing fee. Such refund must be paid within 120 days after giving the notice of intention to cancel.

3. In addition to a processing fee, if the contract provides for the facility to retain up to 1 percent per month of occupancy by the resident, it may provide that such refund will be paid from the proceeds of the next entrance fees received by the provider for units for which there are no prior claims by any resident until paid in full or, if the provider has discontinued marketing continuing care contracts, within 200 days after the date of notice.

4. Unless subsection (5) applies, for any prospective resident, regardless of whether or not such a resident receives a transferable membership or ownership right in the facility, who cancels the contract before occupancy of the unit, the entire amount paid toward the entrance fee shall be refunded, less a processing fee of up to 5 percent of the entire entrance fee; however, the processing fee may not exceed the amount paid by the prospective resident. Such refund must be paid within 60 days after giving notice of intention to cancel. For a resident who has occupied his or her unit and who has received a transferable membership or ownership right in the facility, the foregoing refund provisions do not apply but are deemed satisfied by the acquisition or receipt of a transferable membership or an ownership right in the facility. The provider may not charge any fee for the transfer of membership or sale of an ownership right.

(h) State the terms under which a contract is canceled by the death of the resident. These terms may contain a provision that, upon the death of a resident, the entrance fee of such resident is considered earned and becomes the property of the provider. If the unit is shared, the conditions with respect to the effect of the death or removal of one of the residents must be included in the contract.

(i) Describe the policies that may lead to changes in monthly recurring and nonrecurring charges or fees for goods and services received. The contract must provide for advance notice to the resident, of at least 60 days, before any change in fees or charges or the scope of care or services is effective, except for changes required by state or federal assistance programs.

(j) Provide that charges for care paid in one lump sum may not be increased or changed during the duration of the agreed upon care, except for changes required by state or federal assistance programs.

(k) Specify whether the facility is, or is affiliated with, a religious, nonprofit, or proprietary organization or management entity; the extent to which the affiliate organization will be responsible for the financial and contractual obligations of the provider; and the provisions of the federal Internal Revenue Code, if any, under which the provider or affiliate is exempt from the payment of federal income tax.

(2) A resident has the right to rescind a continuing care contract and receive a full refund of any funds paid, without penalty or forfeiture, within 7 days after executing the contract. A resident may not be required to move into the facility designated in the contract before the expiration of the 7-day period. During the 7-day period, the resident's funds must be held in an escrow account unless otherwise requested by the resident pursuant to s. 651.033(3)(c).

(3) The contract must include or be accompanied by a statement, printed in boldfaced type, which reads: "This facility and all other continuing care facilities in the State of Florida are regulated by chapter 651, Florida Statutes. A copy of the law is on file in this facility. The law gives you or your legal representative the right to inspect our most recent financial statement and inspection report before signing the contract."

(4) Before the transfer of any money or other property to a provider by or on behalf of a prospective resident, the provider shall present a typewritten or printed copy of the contract to the prospective resident and all other parties to the contract. The provider shall secure a signed, dated statement from each party to the contract certifying that a copy of the contract with the specified attachment, as required pursuant to this chapter, was received.

(5) Except for a resident who postpones moving into the facility but is deemed to have occupied a unit as described in paragraph (1)(d), if a prospective resident dies before occupying the facility or, through illness, injury, or incapacity, is precluded from becoming a resident under the terms of the continuing care contract, the contract is automatically canceled, and the prospective resident or his or her legal representative shall receive a full refund of all moneys paid to the facility, except those costs specifically incurred by the facility at the request of the prospective resident and set forth in writing in a separate addendum, signed by both parties, to the contract.

(6) In order to comply with this section, a provider may furnish information not contained in his or her continuing care contract through an addendum.

(7) Contracts to provide continuing care, including contracts that are terminable by either party, may include agreements to provide care for any duration.

(8) Those contracts entered into after July 1, 1977, and before the issuance of a certificate of authority to the provider are valid and binding upon both parties in accordance with their terms. Within 30 days after receipt of a letter from the office notifying the provider of a noncompliant residency contract, the provider shall file a new residency contract for approval that complies with Florida law. Pending review and approval of the new residency contract, the provider may continue to use the previously approved contract.

(9) A prospective resident, resident, or resident's estate is not entitled to interest of any type on a deposit or entrance fee unless interest is specified in the continuing care contract. This subsection is remedial in nature and clarifies existing law.

(10) The provisions of this section control over any conflicting provisions contained in part II of chapter 400 or in part I of chapter 429.

**Credits**

Laws 1977, c. 77-323, § 1; Laws 1981, c. 81-292, § 9; Laws 1982, c. 82-148, § 20; Laws 1983, c. 83-328, § 10; Laws 1985, c. 85-321, § 45; Laws 1986, c. 86-209, § 5; Laws 1987, c. 87-136, § 8; Laws 1991, c. 91-98, § 8; Laws 1992, c. 92-56, § 9; Laws 1993, c. 93-22, § 6. **Amended by** Laws 1997, c. 97-102, § 511, eff. July 1, 1997; Laws 1997, c. 97-229, § 11, eff. Oct. 1, 1997; Laws 2003, c. 2003-261, § 1679, eff. June 26, 2003; Laws 2006, c. 2006-197, § 102, eff. July 1, 2006; Laws 2010, c. 2010-202, § 8, eff. July 1, 2010; Laws 2011, c. 2011-193, § 9, eff. July 7, 2011.

West's F. S. A. § 651.055, FL ST § 651.055

Current with laws, joint and concurrent resolutions and memorials through July 4, 2023, in effect from the 2023 Special B Session and the 2023 first regular session. Some statute sections may be more current, see credits for details. The statutes are subject to change as determined by the Florida Revisor of Statutes. (These changes will be incorporated later this year.)

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.