### _First 2014 Amendment of Limited Partnership Agreement_
### _(Tampa II)_

This amendment made as of this 31st day of March, 2014 by and among Westport Holdings Hidden Springs, L.L.C., a Delaware limited liability company ("General Partner"), Westport Senior Living Investment Fund, L.P., a Delaware limited partnership ("Withdrawing Limited Partner"); BVM University Village, LLC, a Florida limited liability company ("BVM"), BHMSILF, LLC, a Delaware limited liability company ("BHMS"); IMH Healthcare, LLC, a Delaware limited liability company ("IMH"); and JF Consultants LLC, a Delaware limited liability company ("JF").

WHEREAS, the General Partner is the general partner of a Delaware limited partnership known as Westport Holdings Tampa II Limited Partnership (the "Partnership") established pursuant to a limited partnership agreement dated as of October 23, 2000 (the "Partnership Agreement"), and

WHEREAS, the Withdrawing Limited Partner has sold and conveyed its 99% interest limited partnership interest to BVM, and

WHEREAS, BVM intends to transfer a portion of its 99% interest limited partnership interest to BHMS, IMH and JF (collectively, BVM, BHMS, IMH and JF, the "Substituted Limited Partners"), and

WHEREAS, the parties desire to consent to the Partnership entering into the Loan Agreement (as defined below) and its related documentation (collectively, the "Loan Documents"), and the Withdrawing Limited Partners and Substituted Limited Partners desire to authorize the General Partner to execute the Loan Documents, and

WHEREAS, the parties desire to confirm the admission of the BVM, BHMS and IMH as Substitute Limited Partners of the Partnership and to make other amendments to the Partnership Agreement,

NOW, THEREFORE, the parties agree as follows:

1.  Initially BVM is hereby admitted as a Substitute Limited Partner in accordance with Article 8 of the Partnership Agreement, and then, BHMS, IMH and BVM are each admitted as Substitute Limited Partners in accordance with Article 8 of the Partnership Agreement.

2.  Section 1.06 is hereby amended by replacing the existing definisitions of the defined terms listed below with the following definitions:

"Lender" means CPIF Lending, LLC, a Washington limited liability company.

 

PLAINTIFF'S EXHIBIT 238

EXHIBIT Plf 238 Landry
gv 11/7/23

SUB_LANDRY_00014524

"Loan Agreement" means the Loan Agreement, dated March 31, 2014, between the Partnership and the Lender.

"Loan" means the loan in the principal sum of $9,500,000 made by Lender to the Partnership as of the date hereof.

"Mortgage" means the Mortgage, Assignment of Rents, Security Agreement and Fixture Filing executed by the Partnership for the benefit of Lender.

"Note" means the Promissory Note, dated as of March 31, 2014, in the principal amount of the Loan payable by the Partnership to the order of the Lender.

3.      Section 2.01 of the Partnership Agreement is deleted and there is inserted in place the following new Section 2.01:

"The purpose and business of the Partnership is to acquire, own, manage, operate, lease, sell, and otherwise transaction business related to real, tangible, and intangible property, specifically including (but not limited to) property related to the management, ownership, leasing, operation, or financing of retirement housing and health care facilities, and to engage in all activities incidental thereto and all other activities for which a limited partnership may be organized under the laws of Delaware and the United States of America; provided however, that until the Loan Obligations have been paid in full, the purpose of the Partnership shall be limited to (i) owning, operating and maintaining the Facility; and (ii) activities incidental thereto."

4.      Section 6.01 of the Partnership Agreement is deleted and there is inserted in place the following new Section 6.01:

"Subject to the terms hereof, including without limitation Section 6.02, the General Partner shall have full, exclusive, and complete discretion in the management and control of the affairs of the Partnership, shall make all decisions affecting Partnership affairs, and shall have all of the rights, powers, and obligations of a general partner of a limited partnership under Delaware law and otherwise as provided by law.  Except as expressly provided in this Agreement, the General Partner is hereby granted the right, power, and authority to do on behalf of the Partnership those actions described below, which, in its sole judgment, are necessary or appropriate to manage the Partnership's affairs and to fulfill the purposes of the Partnership:

(a)     To make all expenditures permitted by this Agreement;

2

25064663_3

SUB_LANDRY_00014525

(b)    To maintain one or more bank accounts for the Partnership in such bank or banks that the Partnership has relationships with as of the date hereof or as directed by Limited Partners holding at least 79% of the Partnership Interests (the "Majority-in-Interest of the Partners");

(c)    To the extent that funds of the Partnership are available, to pay all expenses, debts, and obligations of the Partnership;

(d)    To the extent that funds of the Partnership are available, to make distributions periodically to the Partners in accordance with the provisions of Article V;

(e)    To establish and maintain the books and records of the Partnership in accordance with Article XIII; and

(f)    To perform all normal functions, and otherwise operate and manage the business and affairs of the Partnership, in accordance with and as limited by this Agreement."

5.    Section 6.02(a) of the Partnership Agreement is deleted and there is inserted in place the following new Section 6.02(a):

"(a)    Without the written consent or ratification of the Majority-in-Interest of the Partners, the General Partner shall not have the authority to:

(i)    Do any act in contravention of this Agreement;

(ii)    Do any act that would make it impossible to carry on the ordinary business of the Partnership;

(iii)    Confess a judgment against the Partnership;

(iv)    Possess Partnership property or assign its rights in specific Partnership property for other than a Partnership purpose;

(v)    Admit a person as a General Partner, except as provided in this Agreement;

(vi)    Admit a person as a Limited Partner, except as provided in this Agreement;

(vii)    Continue the business of the Partnership or use Partnership property after the removal or Incapacity of the General Partner, except as provided in this Agreement; or

(viii)    Take any of those actions described in Sections 1.05, 3.03(b), 3.04(b), 4.01, 5.01, 6.03(c), 6.03(d), 9.01(a)(v), 9.02, 11.01, or 12.04."

3

25064663_3

SUB_LANDRY_00014526

6.     Section 6.02(c) of the Partnership Agreement is deleted and there is inserted in place the following new Section 6.02(c):

"(c)     Without Lender's prior written consent, the Partnership:

(i)     Shall not engage either directly or indirectly, in any business other than the ownership, management and operation of the Property;

(ii)     Shall not own any asset other than (i) the Property, and (ii) incidental personal property necessary for the operation of the Property;

(iii)     Shall not liquidate or dissolve (or suffer any liquidation or dissolution), or enter into any transaction of merger or consolidation or acquire by purchase or otherwise all or substantially all the business or assets of, or any stock or other evidence of beneficial ownership of any entity;

(iv)     Shall not incur any debt, secured or unsecured, direct or contingent (including, but not limited to, guaranteeing any obligation), other than: (a) the Loan; (b) advances or trade payables or accrued expenses that will be unsecured; (c) equipment or vehicle financing or lease arrangements where the outstanding balance of any amounts financed thereunder does not at any time exceed $50,000 individually or $100,000 in the aggregate; and (d) loans to Partnership from its partners to meet the working capital needs of the Property, which loans are subordinate to the Loan pursuant to the terms hereof;

(v)     Shall not amend, modify or otherwise change its partnership certificate, partnership agreement, or other formation agreement or document, as applicable, in any material term or manner, or in a manner which adversely affects Partnership's existence as a single purpose entity, nor shall any partner, limited or general, member or shareholder thereof, as applicable take any such action; and

(vi)     Shall not institute proceedings to be adjudicated bankrupt or insolvent; or consent to the institution of bankruptcy or insolvency proceedings against it; or file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy; or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of Partnership, or a substantial part of Partnership's property; or make any assignment for the benefit of creditors; or admit in writing its inability to pay its debts generally as they become due or declare or effectuate a moratorium on payments of its obligation; or take any action in furtherance of any such action;

And the Partnership:

4

25064663_3

SUB_LANDRY_00014527

(vii)   Shall maintain correct and complete financial statements, accounts, books and records and other entity documents separate from those of any Affiliate or any other person or entity;

(viii)   Shall maintain its own separate bank accounts, payroll and correct, complete and separate books of account;

(ix)   Shall file or cause to be filed its own separate tax returns;

(x)   Shall hold itself out to the public (including any of its Affiliates' creditors) under Partnership's own name and as a separate and distinct entity and not as a department, division or otherwise of any Affiliate of same;

(xi)   Shall observe all customary formalities regarding the existence of Partnership as may be applicable to its partnership agreement, including holding meetings and maintaining current and accurate minute books separate from those of any Affiliate;

(xii)   Shall hold title to its assets in its own name and act solely in its own name and through its own duly authorized officers and agents;

(xiii)   Shall not guarantee, pledge or assume or hold itself out or permit itself to be held out as having guaranteed, pledged or assumed any liabilities or obligations or any partner, member, or shareholder, as applicable, or any Affiliate of Partnership, nor shall it make any loan;

(xiv)   Shall remain solvent at all times;

(xv)   Shall separately identify, maintain and segregate its assets. Partnership's assets shall at all times be held by or on behalf of Partnership and if held on behalf of the Partnership by another entity, shall at all times be kept identifiable (in accordance with customary usages) as assets owned by Partnership. This restriction requires, among other things, that (a) Partnership funds shall be deposited or invested in Partnership's name, (b) Partnership funds shall not be commingled with the funds of any Affiliate or other person or entity, (c) Partnership shall maintain all accounts in its own name and with its own tax identification number, separate from those of any Affiliate or other person or entity, and (d) Partnership funds shall be used only for the business of Partnership;

(xvi)   Shall maintain its assets in such a manner that it is not costly or difficult to segregate, ascertain or identify its individual assets from those of any Affiliate or other person or entity;

5

SUB_LANDRY_00014528

(xvii) Shall pay or cause to be paid its own liabilities and expenses of any kind, including but not limited to salaries of its employees, only out of its own separate funds and assets

(xviii) Shall at all times be adequately capitalized to engage in the transactions contemplated at its formation;

(xix) Shall not do any act which would make it impossible to carry on the ordinary business of Partnership;

(xx) Shall reflect Partnership's ownership interest in all data and records (including computer records) used by Partnership or any Affiliate in the collection and administration of any loan;

(xxi) Shall not invest any of Partnership's funds in securities issued by, nor shall Partnership acquire the indebtedness or obligation of, any Affiliate;

(xxii) Shall maintain an arm's length relationship with each of its Affiliates and may enter into contracts or transact business with its Affiliates only on commercially reasonable terms that are no less favorable to Partnership than is obtainable in the market from a person or entity that is not an Affiliate; and

(xxiii) Shall correct any misunderstanding that is known by Partnership regarding its name or separate identity."

7.    Section 6.07(b) of the Partnership Agreement is deleted and there is inserted in place the following new Section 6.07(b):

"(b)    The Limited Partners, With the written consent or ratification of the Majority-in-Interest of the Partners, shall have the following approval rights:

(i)    The right to approve or disapprove the appointment of a successor General Partner, pursuant to Section 7.05; and

(ii)    The right to dissolve the Partnership pursuant to Section 9.01(a)(iii); and

(iii)    The right to amend this Agreement pursuant to Section 10.02."

8.    Section 10.02(a) of the Partnership Agreement is deleted and there is inserted in place the following new Section 10.02(a):  "Except as otherwise provided in Section 10.01, this agreement may be amended from time to time only with a

6

25064663_3

SUB_LANDRY_00014529

consent of the Majority-in-Interest of the Partners, provided that no such amendment shall be in contravention of the Delaware limited partnership act or in any way increase the liability of the General Partner."

9.    Article XII of the Partnership Agreement is amended and there is inserted following Section 12.04, the new Section 12.05 as follows:

"12.05 Interests and Certificates.

(a)    Interests. Each partnership interest in the Partnership shall constitute and shall remain a "security" within the meaning of (i) Section 8-102(a)(15) of the Uniform Commercial Code as in effect from time to time in the State of Delaware and (ii) the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995. Notwithstanding any provision of this Agreement to the contrary, to the extent that any provision of this Agreement is inconsistent with any non-waivable provision of Article 8 of the Uniform Commercial Code as in effect in the State of Delaware (6 Del C. § 8-101, et. seq.) (the "UCC"), such provision of Article 8 of the UCC shall be controlling.

(b)    Certificates.

(i)    Upon the issuance of partnership interests in the Partnership to any Person in accordance with the provisions of this Agreement, without any further act, vote or approval of any Partner, or any Person, the Partnership shall issue one or more certificates in the name of such Person substantially in the form of Exhibit A hereto (a "Certificate"), which evidences the ownership of the partnership interests in the Partnership of such Person. Each such Certificate shall be denominated in terms of the percentage of the partnership interests in the Partnership evidenced by such Certificate and shall be signed by the General Partner or an Officer, if any have been appointed on behalf of the Partnership.

(ii)    Without any further act, vote or approval of any Partner or any Person, the Partnership shall issue a new Certificate in place of any Certificate previously issued if the holder of the partnership interests in the Partnership represented by such Certificate, as reflected on the books and records of the Partnership:

(A)    makes proof by affidavit, in form and substance satisfactory to the Partnership, that such previously issued Certificate has been lost, stolen or destroyed;

7

25064663_3

SUB_LANDRY_00014530

(B)    requests the issuance of a new Certificate before the Partnership has notice that such previously issued Certificate has been acquired by a purchaser for value in good faith and without notice of an adverse claim;

(C)    if requested by the Partnership, delivers to the Partnership a bond, in form and substance satisfactory to the Partnership, with such surety or sureties as the Partnership may direct, to indemnify the Partnership against any claim that may be made on account of the alleged loss, destruction or theft of the previously issued Certificate; and

(D)    satisfies any other reasonable requirements imposed by the Partnership.

(iii)    Upon a Partner's transfer in accordance with the provisions of this Agreement of any or all partnership interests in the Partnership represented by a Certificate, the transferee of such partnership interests in the Partnership shall deliver such Certificate to the Partnership for cancellation (executed by such transferee on the reverse side thereof), and the Partnership shall thereupon issue a new Certificate to such transferee for the percentage of partnership interests in the Partnership being transferred and, if applicable, cause to be issued to such Partner a new Certificate for that percentage of partnership interests in the Partnership that were represented by the canceled Certificate and that are not being transferred.

(c)    Registration of Partnership Interests. The Partnership shall maintain books for the purpose of registering the transfer of partnership interests. Notwithstanding any provision of this Agreement to the contrary, a transfer of partnership interests requires delivery of an endorsed Certificate and shall be effective upon registration of such transfer in the books of the Partnership."

10.    The percentages of partnership interest are as follows:  (a) 1% General Partner, and (b) 99% Limited Partners proportioned as follows:

| | |
|---|---|
| BVM University Village, LLC | 39.6% |
| BHMSILF, LLC | 26.4% |
| IMH Healthcare, LLC | 19.8% |
| JF Consultants LLC | 13.2%. |

8

25064663_3

11. The parties hereto have determined that the Loan Documents and the other transactions contemplated thereby are in the best interest and necessary and convenient to the conduct, promotion and attainment of the business and activities of the Company, and are hereby authorized and approved. By executing this agreement, the Withdrawing Limited Partner and the Substituted Limited Partners hereby authorize the Company to execute, deliver and perform (i) the Loan Documents to which the Company is a party and (ii) any certificates, agreements or any other documents as may be necessary or appropriate to give effect to, or for the Company to perform its obligations under, such Loan Documents. The General Partner is hereby authorized, empowered and directed to negotiate, execute, deliver and perform, on behalf of the Company, any and all Loan Documents to which the Company is a party (in each case, with such changes thereto as the General Partner deems necessary, desirable or appropriate) and any and all further documents relating to the transactions contemplated in such Loan Documents and to take such further actions on behalf of the Company as the General Partner deems necessary or appropriate in its discretion to carry out the purposes of the foregoing resolutions (such determination being evidenced conclusively, but not exclusively, by any the General Partner's taking of such actions or execution and delivery of such documents).

12. Except as amended hereby, the Partnership Agreement is hereby ratified and confirmed in full force and effect.

[signature pages to follow]

25064663v3

9

SUB_LANDRY_00014532

SUBSTITUTED LIMITED PARTNERS:

IMH HEALTHCARE, LLC

By: _Eli Freiden_

Name: Eli Freiden

Title: Manager

JF CONSULTANTS, LLC

By: _____

Name: Shabse Fuchs

Title: Manager

BHMSILF, LLC

By: BHMS Investments, LP, its

    managing member

By: _____

Name: Kevin L. Angelis

Title: Managing Partner

BVM UNIVERSITY VILLAGE, LLC

By: _____

Name: Rebecca J. Bartle

Title:  Secretary

*[Additional Signatures Attached]*

[Signature Page to First 2014 Amendment to the Westport Holdings Tampa II Limited Partnership
Limited Partnership Agreement]

SUB_LANDRY_00014533

SUBSTITUTED LIMITED PARTNERS:

IMH HEALTHCARE, LLC

By: _____
Name: Eli Freiden
Title: Manager

JF CONSULTANTS, LLC

By: _____
Name: Shabse Fuchs
Title: Manager

BHMSILF, LLC
By: BHMS Investments, LP, its
    managing member

By: _____
Name: Kevin L. Angelis
Title: Managing Partner

BVM UNIVERSITY VILLAGE, LLC

By: _____
Name: Rebecca J. Bartle
Title:  Secretary

*[Additional Signatures Attached]*

[Signature Page to First 2014 Amendment to the Westport Holdings Tampa II Limited Partnership
Limited Partnership Agreement]

SUB_LANDRY_00014534

SUBSTITUTED LIMITED PARTNERS:

IMH HEALTHCARE, LLC

By: _____
Name: Eli Freiden
Title: Manager

BHMSILF, LLC
By: BHMS Investments, LP, its
      managing member

By: _____
Name: Kevin L. Angelis
Title: Managing Partner

JF CONSULTANTS, LLC

By: _____
Name: Shabse Fuchs
Title: Manager

BVM UNIVERSITY VILLAGE, LLC

By: _____
Name: Rebecca J. Bartle
Title:   Secretary

*[Additional Signatures Attached]*

[Signature Page to First 2014 Amendment to the Westport Holdings Tampa II Limited Partnership
Limited Partnership Agreement]

SUB_LANDRY_00014535

SUBSTITUTED LIMITED PARTNERS:

IMH HEALTHCARE, LLC

BHMSILF, LLC
By: BHMS Investments, LP, its
managing member

By: _____
Name: Eli Freiden
Title: Manager

By: _____
Name: Kevin L. Angelis
Title: Managing Partner

JF CONSULTANTS, LLC

BVM UNIVERSITY VILLAGE, LLC

By: _____
Name: Shabse Fuchs
Title: Manager

By: _____
Name: Rebecca J. Bartle
Title:  Secretary

[*Additional Signatures Attached*]

[Signature Page to First 2014 Amendment to the Westport Holdings Tampa II Limited Partnership
Limited Partnership Agreement]

SUB_LANDRY_00014536

WITHDRAWING LIMITED PARTNER:

Westport Senior Living Investment Fund, L.P.,

By: Westport Advisors, Ltd, its General Partner:

By: Westport Asset Management, L.L.C., its General Partner

By: Double L Investment, Inc., its Manager

By: _____
Lawrence L. Landry, President

GENERAL PARTNER

Westport Holdings Hidden Springs, L.L.C.,

By: Westport Advisors, Ltd., as its Manager

By: Westport Asset Management, L.L.C., its General Partner

By: Double L Investment, Inc., its Manager

By: _____
Lawrence L. Landry, President

[Signature Page to First 2014 Amendment to the Westport Holdings Tampa II Limited Partnership Limited Partnership Agreement]

SUB_LANDRY_00014537

## EXHIBIT A

CERTIFICATE FOR PARTNERSHIP INTERESTS IN
WESTPORT HOLDINGS TAMPA II LIMITED PARTNERSHIP

THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER THE SECURITIES OR BLUE SKY LAWS OF ANY STATE. THE HOLDER OF THIS CERTIFICATE, BY ITS ACCEPTANCE HEREOF, REPRESENTS THAT IT IS ACQUIRING THIS SECURITY FOR INVESTMENT AND NOT WITH A VIEW TO ANY SALE OR DISTRIBUTION HEREOF. ANY TRANSFER OF THIS CERTIFICATE OR ANY PARTNERSHIP INTEREST REPRESENTED HEREBY IS SUBJECT TO THE TERMS AND CONDITIONS OF THE PARTNERSHIP AGREEMENT (AS DEFINED BELOW).

Certificate Number 001                                      ____% Percentage
Interest

WESTPORT HOLDINGS TAMPA II LIMITED PARTNERSHIP, a Delaware limited partnership (the "Partnership"), hereby certifies that _____(together with any assignee of this Certificate, the "Holder"), is the registered owner of _____ percent (___%) of the [limited/general] partnership interests in the Partnership. The rights, powers, preferences, restrictions and limitations of the partnership interests in the Partnership are set forth in, and this Certificate and the partnership interests in the Partnership represented hereby are issued and shall in all respects be subject to the terms and provisions of, the Limited Partnership Agreement of the Partnership, as the same may be further amended or restated from time to time (the "Partnership Agreement"). By acceptance of this Certificate, and as a condition to being entitled to any rights and/or benefits with respect to the partnership interests evidenced hereby, the Holder is deemed to have agreed to comply with and be bound by all the terms and conditions of the Partnership Agreement. The Partnership will furnish a copy of the Partnership Agreement to the Holder without charge upon written request to the Partnership at its principal place of business. Transfer of any or all of the partnership interests in the Partnership evidenced by this Certificate is subject to certain restrictions in the Partnership Agreement and can be effected only after compliance with all of those restrictions and the presentation to the Partnership of the Certificate, accompanied by an assignment in the form appearing on the reverse side of this Certificate, duly completed and executed by and on behalf of the transferor in such Transfer, and an application for transfer in the form appearing on the reverse side of this Certificate, duly completed and executed by and on behalf of the transferee in such Transfer.

Each partnership interest in the Partnership shall constitute a "security" within the meaning of (i) Section 8-102(a)(15) of the Uniform Commercial

SUB_LANDRY_00014538

Code as in effect from time to time in the State of Delaware and (ii) the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995 (and each partnership interest in the Partnership shall be treated as such a "security" for all purposes, including, without limitation perfection of the security interest therein under Article 8 of each applicable Uniform Commercial Code).

This Certificate and the partnership interests evidenced hereby shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of laws.

IN WITNESS WHEREOF, the Partnership has caused this Certificate to be executed as of the date set forth below.

WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP,
a Delaware limited partnership

GENERAL PARTNER

Westport Holdings Hidden Springs, L.L.C.,

By: Westport Advisors, Ltd., as its Manager

By: Westport Asset Management, L.L.C., its General Partner

By: Double L Investment, Inc., its Manager

By:_____
Lawrence L. Landry, President

Date: _____

*[PARTNERSHIP INTEREST CERTIFICATE CONTINUES ON NEXT PAGE]*

SUB_LANDRY_00014539

FOR VALUE RECEIVED, the party named below hereby sells, assigns and transfers unto _____ the partnership interests represented by the forgoing Partnership Interest Certificate and do hereby irrevocably constitute and appoint _____ as Attorney to transfer the said partnership interests on the books of the foregoing named Partnership with full power of substitution in the premises.

**Limited Partner:**

_____

By:          _____
Name:      _____
Title:       _____

Dated:     _____

SUB_LANDRY_00014540