**<u>EXHIBIT COVER SHEET</u>**

Party Submitting:     <u>VALLEY NATIONAL BANK</u>     Exhibit # _____

Admitted:     _____

Debtor(s):     <u>WESTPORT HOLDINGS TAMPA LIMITED PARTNERSHIP</u>
     <u>WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP</u>

Case No.:     8:16-bk-08167-CED

Adv. Pro. No.:     8:20-ap-00007-CPM

Nature of Trial/Doc. #     _____

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA**

Dated:     _____

By:     _____
     Deputy Clerk

1

**IN UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

IN RE:

WESTPORT HOLDINGS TAMPA,          Case No.: 8:16-bk-08167-CED
LIMITED PARTNERSHIP,              Chapter 11

WESTPORT HOLDINGS TAMPA II,       Case No.: 8:16-bk-08168-CED
LIMITED PARTNERSHIP,

                                  Jointly Administered Under
              Debtors.            Case No.: 8:16-bk-08167-CED
_____/

JEFFREY W. WARREN, LIQUIDATING
TRUSTEE FOR WESTPORT HOLDINGS
TAMPA, LIMITED PARTNERSHIP and
WESTPORT HOLDINGS II, LIMITED
PARTNERSHIP,

          Plaintiff,             Adv. Pro. No.:
v.                               8:20-ap-00007-CPM
VALLEY NATIONAL BANK, principal
subsidiary to VALLEY NATIONAL
BANKCORP, a New Jersey domestic
profit corporation, as successor
by merger to USAMERIBANK,

          Defendant.
_____/-

**RULE 30(b)(6)**
**DEPOSITION OF VALLEY NATIONAL BANK**

DEPOSITION OF:      Corporate Representative
                    VERNON F. KORHN, III

DATE:               April 7, 2023

TIME:               3:12 p.m. to 5:15 p.m.

PLACE:              Bush Ross
                    1801 North Highland Avenue
                    Tampa, Florida 33602

REPORTED BY:        Jean M. Wilkes, RPR-CP
                    Notary Public
                    State of Florida at Large

2

**APPEARANCES:**

**KEITH T. APPLEBY, ESQUIRE**
Appleby Law, P.A.
4916 West Melrose Avenue South
Tampa, Florida 33629-5420
(813) 435-0396 PHONE
keithtappleby@icloud.com
    Attorney for Plaintiffs

**EDMUND S. WHITSON, III, ESQUIRE**
McGlinchey Stafford, PLLC
100 South Ashley Drive
Suite 600
Tampa, Florida 33602
(813) 310-0733 PHONE
(904) 212-1465 FAX
ewhitson@mcglinchey.com
    Attorney for Defendant

**ADINA L. POLLAN, ESQUIRE**
(via speakerphone)
        - and -
**KIM H. ISRAEL, ESQUIRE**
(via speakerphone)
McGlinchey Stafford, PLLC
10407 Centurion Parkway North
Suite 200
Jacksonville, Florida 32256
(904) 224-4485 PHONE
(904) 224-4486 PHONE
(904) 212-1465 FAX
apollan@mcglinchey.com
nreid@mcglinchey.com
kisrael@mcglinchey.com
cgipson@mcglinchey.com
    Attorney for Defendant

**ALSO PRESENT:**

**JEFFREY W. WARREN, ESQUIRE**
Bush Ross
1801 North Highland Avenue
Tampa, Florida 33602
(813) 224-9255 PHONE
(813) 204-6423 DIRECT
(813) 223-9620 FAX
jwarren@bushross.com

3

**I N D E X**

<u>VERNON F. KORHN, III</u>
<u>Corporate Representative</u>
<u>Rule 30(b)(6) VALLEY NATIONAL BANK</u>

|                                        | PAGE |
|----------------------------------------|------|
| **Direct Examination by Mr. Appleby**  | 7    |
| **CERTIFICATE OF OATH**                | 56   |
| **CERTIFICATE OF REPORTER**            | 57   |
| **SIGNATURE PAGE/ERRATA SHEET**        | 58   |

4

**PLAINTIFF'S EXHIBITS**

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Number 68 | Plaintiff's Third Amended Notice of Rule 30(b)(6) - Deposition of Valley National Bank (As to Date Only) | 8 |
| Number 69 | Letter dated March 28, 2014, from Jay Price to Alys Daniels and Larry Smith, Bates Numbers VNB_072033 through VNB_072047 | 8 |
| Number 70 | Promissory Note dated March 31, 2014, in the amount of $15,000,000.00, Bates Numbers Sub_Landry_00018782 through Sub_Landry_00018788 | 9 |
| Number 71 | Guaranty Agreement for BVM Management, Inc., dated March 31, 2014; Bates Numbers Sub_Landry_00001063 through Sub_Laundry_00001072 | 10 |
| Number 72 | Mortgage and Security Agreement between Westport Nursing Tampa, LLC and USAmeriBank dated March 31, 2014 Bates Numbers Sub_Landry_00002828 through Sub_Landry_00002854 | 11 |
| Number 73 | Assignment of Leases and Rents dated March 31, 2014, Bates Numbers Sub_Landry_00010189 through Sub_Landry_00010199 | 12 |
| Number 74 | Assignment of Licenses, Permits and Contracts dated March 31, 2014 Bates Numbers Sub_Landry_00001057 through Sub_Landry_00001062 | 12 |

5

**PLAINTIFF'S EXHIBITS** (continued)

DESCRIPTION

| **EXHIBIT** | | **PAGE** |
|---|---|---|
| Number 75 | Subordination to Management Agreements and Releases dated March 31, 2014, Bates Numbers Sub_Landry_00001104 through Sub_Landry_00001110 | 13 |
| Number 76 | Subordination of Management Agreement, Bates Numbers Sub_Landry_00001091 through Sub_Landry_00001103 | 13 |
| Number 77 | Subordination, Attornment and Non-Disturbance Agreement, Bates Numbers Sub_Landry_00001111 through Sub_Landry_00001123 | 15 |
| Number 78 | Environmental Indemnity Agreement Bates Numbers Sub_Landry_00001073 through Sub_Landry_00001080 | 15 |
| Number 79 | Agreement to Amend or Comply Bates Numbers Sub_Landry_00002855 through Sub_Landry_00002859 | 15 |
| Number 80 | Post-Closing Agreement, Bates Numbers Sub_Landry_00001158 through Sub_Landry_00001162 | 16 |
| Number 81 | Managing Partner's Certificate Bates Numbers VNB_071916 through VNB_071959 | 17 |
| Number 82 | Officer's Certificate dated March 31, 2014; Bates Numbers VNB_071960 through VNB_072030 | 18 |
| Number 83 | Amended Complaint, Adv. Pro. No.: 8:20-ap-00007-MGW; Jeffrey W. Warren vs. Valley National BankCorp | 19 |

**PLAINTIFF'S EXHIBITS (continued)**

**EXHIBIT**                 DESCRIPTION                                    **PAGE**

Number 84    Valley National Bank's Third Amended
             Answer and Affirmative Defenses to
             Liquidating Trustee's Amended Complaint
             Adv. Pro. No. 8:20-ap-00007-MGW
             IN RE:  Jeffrey W. Warren vs.
             Valley National BankCorp                           19

Number 85    Email dated May 14, 2014, from
             Kevin Angelis to Trey Korhn                        21

Number 86    Letter dated May 12, 2014, to
             Desmond Wilson, Bureau Life and
             Health Financial Oversight                         22

Number 87    Letter dated May 12, 2014, to
             Desmond Wilson, Bureau Life and
             Health Financial Oversight
             executed by bank                                   23

Number 88    Tampa Bay Times article
             entitled *State looks into*
             *alleged financial problems at*
             *Tampa retirement community* dated
             Friday, February 13, 2015 5:59 pm                  28

Number 89    WFLA News Channel 8 story entitled
             *Money issues follow head of*
             *University Village nursing home*                  29

Number 90    Deposition of Eliyahu Freiden
             taken September 16, 2016; RE:
             The Department of Financial
             Services of the State of Florida
             versus Westport Holdings Tampa,
             Limited Partnership                                31

Number 91    Westlaw printout, IN RE:
             John W. Bartle, Debtor-Appellant
             560 F.3d 724                                       32

Number 92    Appraisal Report of:  The Inn
             at University Village; Effective
             Date:  February 21, 2014                          54

7

P R O C E E D I N G S

THE COURT REPORTER:  Would you raise your right hand?

Do you solemnly swear the testimony you're about to give in this cause will be the truth, the whole truth, and nothing but the truth?

MR. KORHN:  I do.

THE COURT REPORTER:  Thank you.

VERNON F. KORHN, III, being first duly sworn to testify the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. APPLEBY:

Q.   Mr. Korhn, I know we've spent a lot of time together at this point, but at the same time we're starting a new record, so if you wouldn't mind stating your name for the record.

A.   Sure.  Vernon F. Korhn, III.

Q.   And what is -- what is your job title, Mr. Korhn?

A.   Commercial Real Estate Division Head, Senior Vice President for Valley Bank.

Q.   Are you here today as the designated representative of Valley National Bank as successor

by merger to USAmeriBank in response to a notice of Rule 30(b)(6) deposition?

A.   Yes.

(The document was marked as Plaintiff's Exhibit Number 68 for identification.)

BY MR. APPLEBY:

Q.   Mr. Korhn, have you seen this document before?

A.   Yes.

Q.   If you wouldn't mind, flip in to -- page 4 is the Schedule A and its title is *Subject Matters of Examination*.  Have you gone through this section to review what we're going to be talking about today?

A.   Yes.

Q.   Are you authorized to speak on behalf of the bank?

A.   Yes.

MR. WHITSON:  Off the record real quick.

(Discussion off the record.)

MR. WHITSON:  Did you want to mark the notice as an exhibit?

MR. APPLEBY:  I did, as Exhibit 68.

MR. WHITSON:  68.  Okay.  I'm sorry. I didn't hear you.

(The document was marked as Plaintiff's Exhibit Number 69 for identification.)

9

BY MR. APPLEBY:

Q. Mr. Korhn, I've given you what I've marked as Exhibit 69. It is a letter from Burr Forman addressed to Alys Daniels and Larry Smith with Gary, Dytrych & Ryan, P.A. Can you tell me who Gary, Dytrych & Ryan, P.A. is?

A. Not with certainty, no.

Q. Okay. Do you recall who the closing or the title agent was for the March 31, 2014, loan made to Westport Nursing?

A. Not offhand, by name, no.

Q. Okay. Have you seen this document that I have marked as Exhibit 69?

A. I honestly don't recall with 100 percent certainty.

Q. Okay. What I've handed you I've marked as Exhibit 70.

(The document was marked as Plaintiff's Exhibit Number 70 for identification.)

BY MR. APPLEBY:

Q. This is a promissory note dated March 31, 2014, for $15 million. Mr. Korhn, do you recognize this document?

A. Yes.

Q. Is this the relevant promissory note to

the loan made to Westport Nursing Tampa, LLC?

A.   Yes.  It appears so, yes.

Q.   I've marked this document as Exhibit 71.

(The document was marked as Plaintiff's Exhibit Number 71 for identification.)

BY MR. APPLEBY:

Q.   This is a Guaranty -- a Guaranty Agreement for BVM Management, Inc.  Mr. Korhn, do you recognize this document?

A.   Yes.

Q.   Can you tell me what the purpose of this document is in a loan package?

MR. WHITSON:  Object to the form.

A.   It outlines the guaranty structure, you know, for the person or entity that's providing the loan guaranty.

BY MR. APPLEBY:

Q.   Okay.  And, in layman's terms, can you tell me what a guaranty is for a loan such as this?

MR. WHITSON:  Object to the form.

A.   A guaranty (sic), generally speaking, is another obligated party that guarantees, you know, repayment of obligations of the borrower.

BY MR. APPLEBY:

Q.   Okay.  Did the borrower ever go -- fall into

default on this loan?

A. Yes.

Q. Okay. When did you become aware of the -- and, again, just to be very clear, now I'm asking questions in your capacity as Valley National Bank, not individually. But when did the bank become aware of the default with this borrower?

A. Just for -- I mean, the borrower under the note, not the guarantor?

Q. Yes, the borrower under the loan.

A. Okay. I don't remember the exact date.

Q. Subsequent to the borrower falling into default, did the bank ever exercise on its rights under this Guaranty Agreement?

MR. WHITSON: Object to the form.

A. I can't say with certainty if the rights under the guaranty were exercised or not.

BY MR. APPLEBY:

Q. So you don't know whether the bank ever did or -- yes or no?

A. That's correct.

(The document was marked as Plaintiff's Exhibit Number 72 for identification.)

BY MR. APPLEBY:

Q. Mr. Korhn, do you recognize this document?

(Discussion off the record.)

THE WITNESS:  Yes.  It appears to be the Mortgage and Security Agreement for the loan.

BY MR. APPLEBY:

Q.   Okay.  I've marked this document as Exhibit 73.

(The document was marked as Plaintiff's Exhibit Number 73 for identification.)

BY MR. APPLEBY:

Q.   Do you recognize this document, Mr. Korhn?

A.   Yeah.  Other than one page looks incomplete, it appears to be the Assignment of Leases and Rents.

Q.   I'm not sure if it's jammed, but aside -- apart from the one portion that somehow didn't scan or copy correctly, does this appear to be the relevant Assignment of Leases and Rents that would have been included in the loan package to Westport Nursing?

A.   With that caveat, yes.

Q.   I've marked this as Exhibit 74.

(The document was marked as Plaintiff's Exhibit Number 74 for identification.)

BY MR. APPLEBY:

Q.   It's the Assignment of Licenses, Permits and Contracts.  Can you confirm whether you recognize this

document?

A.   Yes.

Q.   And, once again, do you believe this is a true and accurate copy of the document that would have been included in the loan package to the borrower?

A.   Yes, it appears to be.

Q.   Okay.  I've marked this as Exhibit 75.

(The document was marked as Plaintiff's Exhibit Number 75 for identification.)

BY MR. APPLEBY:

Q.   This is the Subordination to Management Agreements and Releases.  Can you confirm whether you recognize this document?

A.   Yes.

Q.   Do you believe this is a true and accurate copy of the original document that was included in the loan package to the borrower?

MR. WHITSON:  Object to the form.

A.   It appears to be, yes.

BY MR. APPLEBY:

Q.   I've marked the Subordination of Management Agreement as Exhibit 76.

(The document was marked as Plaintiff's Exhibit Number 76 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you recognize this document?

A.   Do you know what the source is of this one versus the prior one?

Q.   Well, there's a -- there's a Bates label on the bottom right that's named --

A.   Yeah.

MR. WHITSON:   They're different.  It's not the same document.

THE WITNESS:   Okay.  That's -- I didn't want to go -- read for word.  They're just similarly titled?

MR. WHITSON:   Yes, they are.

BY MR. APPLEBY:

Q.   It's confusing.

A.   Oh, okay.  Then --

Q.   If you look at the parties, it kind of shows you what's going on.

A.   That's where I was going.

Q.   Yeah.

A.   Okay.  I didn't -- yeah.  It appears to be, yes.

Q.   I've marked this document as Exhibit 77.

(The document was marked as Plaintiff's Exhibit Number 77 for identification.)

BY MR. APPLEBY:

Q.   This is a Subordination, Attornment and Non-Disturbance Agreement.   Can you confirm whether you recognize this document?

A.   Yes.

Q.   Does it appear to be a fair and accurate copy of the document that would have been included in the loan package to the borrower?

A.   It appears to be, yes.

Q.   This is an Environmental Indemnity Agreement I've marked as Exhibit 78.

(The document was marked as Plaintiff's Exhibit Number 78 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you recognize this document?

A.   Yes.

Q.   And does this document appear to be a fair and accurate copy of the Environmental Indemnity Agreement that would have been included in the loan package?

A.   It appears to be, yes.

Q.   This is an Agreement to Amend or Comply I've marked as Exhibit 79.

(The document was marked as Plaintiff's Exhibit Number 79 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you recognize this document?

A.   Yes.

Q.   Does this Agreement to Amend or Comply appear to be a fair and accurate copy of the document that would have been included in the loan package?

A.   Yeah.  The only thing I question is the edit on the last page but otherwise it appears to be the bank's signature.

MR. WHITSON:  Yeah.  It looks like Jay initialed it, though.

THE WITNESS:  Yeah, that's --

MR. WHITSON:  Yeah.  And the bank wouldn't sign it anyway.

THE WITNESS:  Okay.

BY MR. APPLEBY:

Q.   This document is a Post-Closing Agreement I have marked as Exhibit 81 -- or, excuse me -- Exhibit 80.

(The document was marked as Plaintiff's Exhibit Number 80 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you recognize this document?

A.   Yes.

Q.   Does it appear to be a fair and accurate copy of the Post-Closing Agreement that would be included in the loan closing package?

A.   It appears to be, yes.

Q.   This document is a Managing Partner's Certificate.  I've marked it as Exhibit 81.

(The document was marked as Plaintiff's Exhibit Number 81 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you recognize this document?

A.   No, I don't, offhand.

Q.   Do you have any reason to think that this was not the Manager's Partner Certificate that would have been included in the loan package?

A.   I mean, I felt familiarity of it.  It feel like I would be speculating to -- I feel like it would be speculation.

Q.   This document -- I've marked it as Exhibit 81 -- is the Officer's Certificate.  Do you recognize this document?

MR. WHITSON:  82?

MR. APPLEBY:  81.

MR. WHITSON:  Is it 81 or 82?

THE COURT REPORTER:  It's 82.  Did you say 81?

MR. APPLEBY:  Oh, I'm sorry.

THE COURT REPORTER:  Yeah, it's 82.

MR. APPLEBY:  Yes.  I apologize.  82.

(The document was marked as Plaintiff's Exhibit Number 82 for identification.)

A.   No.  This isn't something I'm familiar with.

BY MR. APPLEBY:

Q.   I'm sorry?  You are not familiar with it?

A.   I'm not familiar with, no.

Q.   Do you have any reason to think that this would not have been included in the loan closing package?

A.   Again, I'd be speculating.

Q.   As the representative of the bank, did you review this loan prior to today's deposition?

A.   I did, yes.

Q.   Okay.  Did you review all of the documents that would have been in the loan package?

A.   Yeah.  I mean, I went through the file pretty thoroughly over the last, you know, few months.

Q.   What I've just handed you is an Amended Complaint, which I will submit as Plaintiff's Exhibit 83.

(The document was marked as Plaintiff's Exhibit Number 83 for identification.)

BY MR. APPLEBY:

Q.    This Complaint was filed as an adversary proceeding within the Bankruptcy Court Case Number 20-ap-00007 and was filed on March 17, 2020.

This case -- the Plaintiff is Jeffrey Warren, as Liquidating Trustee for Westport Holdings Tampa, Limited Partnership, and Westport Holdings II, Limited Partnership, as Plaintiff, versus Valley National Bank, principal subsidiary to Valley National BankCorp, a New Jersey domestic profit corporation, as successor by merger to USAmeriBank.

Can you confirm whether you recognize this document?

A.    Yes, I do.

Q.    Have you reviewed this document in preparation for today's deposition?

A.    Yes.

Q.    I've marked this document as Exhibit 84.

(The document was marked as Plaintiff's Exhibit Number 84 for identification.)

BY MR. APPLEBY:

Q.    This is Valley National Bank's Third Amended Answer and Affirmative Defenses to Liquidating Trustee's

Amended Complaint, which was filed in the adversary case at Document Number 184 on September 20th, 2022.  Can you confirm whether you recognize this document?

A.   Yes.

Q.   Does this appear to be a true and accurate copy of the original that was filed in the adversary case?

A.   Yes, it does.

Q.   I'm going to suggest that -- we're going to bounce, sort of -- not really bounce but refer to three different documents for a moment, so --

A.   Can we refer to a break?

MR. APPLEBY:  Oh, yes.  Absolutely.

(There was a recess.)

BY MR. APPLEBY:

Q.   Okay.  I mentioned we're going to jump through, kind of, three different documents but it'll make sense in just a moment.

If you could get the notice, the 30(b)(6) notice, the Amended Complaint and the Answer.

A.   Let me make sure I'm looking at the right ones.  This one (indicating)?

MR. WHITSON:  Yes.  That's the notice.

Then you got all three right there.  You're way ahead of me.

BY MR. APPLEBY:

Q.   And, again, if I -- if I'm confusing with my questions, please stop me and I'll do my best to make sure we're all on the same page of the same document.

(Discussion off the record.)

BY MR. APPLEBY:

Q.   I have already told you the story, and so let me look at a couple other documents before we go into this.  I think it'll make more sense.

Okay.  This is an email that I've documented -- excuse me -- marked as Exhibit 85.

(The document was marked as Plaintiff's Exhibit Number 85 for identification.)

BY MR. APPLEBY:

Q.   This is an email dated May 14, 2014. The subject line of it's *OIR Form* and there was an attachment.  This is an email from Kevin Angelis to Trey Korhn at USAmeriBank.  Can you confirm whether you recognize this document, Mr. Korhn?

A.   I mean, not offhand from that long ago.

Q.   If you would read the text of it, can you tell me what the context or what this email would have -- would apply to?

MR. WHITSON:  Object to form.

A.   I mean, it references an attachment, so if

we -- without the attachment, it'll be tough.

BY MR. APPLEBY:

Q.   And what I've just handed you, marked as Exhibit 86, is what I believe is the attachment to this email.

(The document was marked as Plaintiff's Exhibit Number 86 for identification.)

BY MR. APPLEBY:

Q.   It's a letter dated May 12, 2014, addressed to Desmond Wilson, Insurance Examiner II, Bureau of Life and Health Financial Oversight, CCRC Section.  Can you confirm whether you recognize this document?

A.   Yeah.  It looks familiar, yes.

Q.   What is your recollection what this document was going to be used for?

MR. WHITSON:  Object to form.

A.   Honestly, I don't -- I don't recall the purpose of it, other than, you know, it looks like it reports the balance, you know, and the account reference, which I'm relatively certain was the collateral account.

BY MR. APPLEBY:

Q.   Do you recall whether this was ever signed by the bank?

A.   I don't offhand.

23

Q.    Mr. Korhn, what I've just handed you is a copy of the same document, but this one appears to be completed with the bank's signature.  I've marked this as Exhibit 87.

(The document was marked as Plaintiff's Exhibit Number 87 for identification.)

BY MR. APPLEBY:

Q.    Can you confirm whether you recognize this document?

A.    Yeah.  It looks like the same document.

Q.    But do you recognize this document in and of itself with your signature?

A.    Yeah.  It appears to be a signed version, yeah.

Q.    Okay.  Is that your signature on this document?

A.    It appears to be, yes.

Q.    Okay.

MR. WHITSON:  Keith, can I ask a question?

MR. APPLEBY:  Yes, sir.

MR. WHITSON:  On the last three exhibits, 85, 86 and 87, I don't see any Bates numbers.  Is it the same --

MR. APPLEBY:  I think it's the same issue

we've talked about earlier.

MR. WHITSON:  Okay.

MR. APPLEBY:  But maybe we can locate --

MR. WHITSON:  All right.

MR. APPLEBY:  -- where they -- where they came from, but -- I'll work on that.

BY MR. APPLEBY:

Q.   Mr. Korhn, at the top this letter is dated May 12, 2014.  The email that we just referred to was dated May 14.  Do you know when this letter would have actually been signed?

A.   I have no idea.

Q.   For the addressee, a Desmond Wilson, do you know -- would Mr. Wilson be considered part of the OIR?

MR. WHITSON:  Object to form.

A.   Yeah.  I have no idea of who Desmond Wilson is other than, you know, whatever is referenced in the signature line if that is, in fact, accurate.

BY MR. APPLEBY:

Q.   Okay.  Under the R-E line, it references, *Provider:  Westport Holdings Tampa, LP*.  Is Westport Holdings Tampa, LP, a borrower with USAmeriBank?

A.   No.

Q.   Are they an account holder?

A.   Not to my recollection, no.

Q.   Okay.   Below that, it has a Company Number: 88104.   Do you know what that company number means or references?

A.   I do not, no.

Q.   Just below that, the Subject -- under *RE*, the subject line would appear to be, *MLR Debt Service Reserve Approval Request and Certification*.

So, once again, I'll ask you:  You signed this document on behalf of the bank.  Why would the bank have signed this?

MR. WHITSON:  Object to form.

A.   Yeah.  I -- I do not -- no, I do not, you know, recall signing it.  I -- you know, it, you know, references this statute, and what-have-you.  My assumption is, I would have relied on, you know, counsel to review, on our behalf --

BY MR. APPLEBY:

Q.   I'm sorry.  I didn't mean to interrupt.

A.   No.

Q.   Underneath, *Dear Mr. -- Dear Mr. Desmond Wilson*, and it says:

*We do hereby certify that account 500106000 has been established and is held in the custody of the Florida office of the Trustee located in USAmeriBank, Florida, and has a required balance of $3,000,616.50 as*

*of May 12, 2014, as evidenced by the attached statement to comply with Section 651.035(1)(b), Florida Statutes.*

The account number referenced above, the 500106000, are you familiar with that account number?

A.    Not offhand, no.

Q.    Do you know what the account number for the cash collateral or pledged account is?

A.    Not by memory.  I'd have to go check the record.

Q.    Do you have any reason to believe that that account number is not the pledged account?

A.    Again, without verifying, I can't say with 100 percent certainty but --

Q.    Without searching for the pledge agreement and other documents related to it, I'll assert to you that that is the same account number that the pledge account uses to hold $3 million.  This also, again, refers to a deposit balance of $3,000,616.50.  Again, you indicated you don't believe that Westport Holdings Tampa is an account holder with USAmeriBank.

Farther down, in the second paragraph, it says, *We certify the entire balance of this account will be used in accordance with Section 4.20 of the Loan Agreement dated as of March 31, 2014.*  Could you tell me who the borrower is for the loan referenced

here?

A.   Do we have that loan agreement?  I thought that was part of this (indicating).

I don't see that loan agreement or a loan agreement --

Q.   Well, if you look -- yeah.  Let me look.  In the stack that you're looking at, towards the beginning, you probably have a promissory note and a mortgage that lists your borrower.

A.   Right.  But I guess -- can you repeat your question?  The question --

Q.   Well, there's a reference to a loan agreement dated as of March 31st, 2014.  I'm just trying to confirm who -- who is this referring to?  What is the -- who is the loan agreement with?  Who is the borrower?

A.   The loan agreement for our loan was with Westport Nursing Tampa.  And the reason I was looking for the loan agreement was to reference Section 420.

Q.   Okay.  Can you show me anywhere on this document where there's a reference to Westport Nursing Tampa?

A.   No.  I do not see it -- see one.

Q.   Are you aware if there was ever a loan made to Westport Holdings Tampa, LP?

A.   I'm not aware, no.

Q.   Was the bank ever -- or at some point after closing the loan, was the bank ever aware of any financial problems related to University Village or any of its affiliate entities?

MR. WHITSON:  Object to the form.

A.   I mean, can you be more specific on *financial problems* or --

BY MR. APPLEBY:

Q.   Well, previously you had indicated in your individual deposition that you had seen some newspaper articles or other things that indicated there may be some trouble at University Village.

A.   Again, I saw --

Q.   Do you recall making that statement?

A.   Yes.  I saw some articles, yeah.

Q.   I'm handing you a printout of an article from the *Tampa Bay Times* dated February 13, 2015.  I've marked this document as Exhibit 88.

(The document was marked as Plaintiff's Exhibit Number 88 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you have read this news article or have seen this document before?

A.   Yes.  This appears to be one that I read.

Q.   What was the bank's response to learning of

these allegations?

A.   I don't recall specifically what the immediate response was.

Q.   When did the bank learn that John Bartle had issues in other locations, such as a bankruptcy in -- let's see -- a bankruptcy in -- as an assisted living facility that he was associated with in Nebraska?

MR. WHITSON:   Object to form.

A.   Yeah.   I don't recall when -- when the bank learned that.

BY MR. APPLEBY:

Q.   I'm handing you another article that I've marked as Exhibit 89.

(The document was marked as Plaintiff's Exhibit Number 89 for identification.)

BY MR. APPLEBY:

Q.   This appears to be a printout from the WFLA Channel 8 website concerning a story.   It's titled *Money issues follow head of University Village nursing home.*

(The document was marked as Plaintiff's Exhibit Number 89 for identification.)

BY MR. APPLEBY:

Q.   Can you confirm whether you recognize this article or remember this story being on the news?

A.   I don't recall this one, honestly.  I can't say that I do recall this one.

Q.   Was the bank aware that John Bartle had owed more than $7.5 million in taxes that were withheld from employees' wages?

MR. WHITSON:  Object to the form.

A.   Yeah.  I have no idea if the bank was aware of, you know, those specific allegations if that is, you know, in fact, the case.

BY MR. APPLEBY:

Q.   Was the bank aware that, in certain court documents, that Bartle had -- it's alleged that Bartle concealed over a million dollars in income in violation of a court order requiring him to submit monthly sworn statements of his income?

MR. WHITSON:  Object to form.

A.   I mean, again, like I noted, I don't recall reading this.  I don't know if the bank was aware of that or if any -- you know, if this article is factual.

BY MR. APPLEBY:

Q.   When did the bank become aware that Eliyahu Freiden or Eli Freiden testified in the case of State of Florida -- The Department of Financial Services of the State of Florida versus Westport Holdings Tampa, Limited Partnership d/b/a University Village?

A.   I --

MR. WHITSON:  I'll object to form.

A.   Yeah.  When was the bank aware?  I don't know if and when.

BY MR. APPLEBY:

Q.   Is the bank aware that Mr. -- I apologize.

Is the bank aware that Mr. Freiden did testify in that case?

A.   Which case?

Q.   This is a Circuit Court for the Second Judicial Circuit in Leon County, Florida, Case 2015-CA-585.  It is the State of Florida, Department of Financial Services versus Westport Holdings Tampa, Limited Partnership d/b/a University Village?

MR. WHITSON:  Do you have a copy of that?

A.   Yeah.  I don't --

MR. APPLEBY:  Yeah, I do.

MR. WHITSON:  Thank you.

MR. APPLEBY:  We'll mark it as Exhibit 90.

(The document was marked as Plaintiff's Exhibit Number 90 for identification.)

THE WITNESS:  So what is the -- what is the question?

BY MR. APPLEBY:

Q.   I'm sorry.  One second, please.

Was the bank aware that Mr. Freiden testified in the case that I referenced?

A.   No, not to my knowledge.  I don't have any knowledge of this case or deposition.

Q.   Was the bank aware that Mr. Freiden pled the Fifth in his testimony?

A.   Again, I don't have any knowledge of this case or a deposition or pleadings with Mr. Freiden.

Q.   Is the bank aware of a case named IN RE: John W. Bartle, Debtor, that was entered in the United States Court of Appeals, the Seventh Circuit, on April 10, 2008?  I've marked a case, the West -- a Westlaw case printout as Exhibit 91.

(The document was marked as Plaintiff's Exhibit Number 91 for identification.)

BY MR. APPLEBY:

Q.   Can you tell me whether you've ever seen this document before?

A.   No.  Not to my knowledge, no.

Q.   When the bank is making loans, does it conduct any due diligence on the individual owners of its borrowers?

MR. WHITSON:  Object to form.

A.   Yes.

BY MR. APPLEBY:

Q.    What due diligence or review did the bank conduct on John W. Bartle?

MR. WHITSON:   Object to form.

A.    Yeah.   I don't recall offhand.   I recall that he was not an owner.   I don't recall specifically if any due diligence was done on him.

BY MR. APPLEBY:

Q.    Okay.   If we could, go back to Exhibit 68, 83 and 84.   This would be the notice --

A.    Which ones?   Which?

Q.    Exhibit 68 is the Plaintiff's Third Amended Notice of Rule 30(b)(6) Deposition of Valley National Bank.

A.    Okay.

Q.    Exhibit 83 is the Amended Complaint.   And Exhibit 84 is the Valley National Bank's Third Amended Answer and Affirmative Defenses to Liquidating Trustee's Amended Complaint.

A.    Okay.

Q.    In Exhibit 68 -- again, this is the notice -- if you could, look to page 6, "6" being numbered right in the center of the bottom of the page.

MR. WHITSON:   Which number are you referring to?

MR. APPLEBY:   Well, I just want to get to

34

page 6 first.

THE WITNESS:  Okay.

BY MR. APPLEBY:

Q.    Tell me -- tell me the bank's knowledge of the insolvency experience of Mr. Bartle, John Bartle, or any of the special purpose entities owned or controlled by John Bartle.

A.    The bank did not have the -- you know, knowledge of insolvency experience, you know, as far as I am aware.

Q.    Did the bank, at the time that this loan was made, use any service to report any bankruptcies for its account holders, whether they be depositors or borrowers?

A.    When you say *services* or -- maybe you can clarify or --

Q.    Well, some banks -- some banks have entities that will notify them if any of their borrowers have filed bankruptcy.

A.    I don't believe so, no.

Q.    Okay.

A.    But he wasn't a borrower.

Q.    What was the bank's knowledge of the value exchanged for the $3 million transfer to USAmeriBank within the meaning of Florida Statute, Section

726.105(1)(b)?

MR. WHITSON:   Object to the form.

A.   Yeah.   I don't -- I can't, you know, say within statute.

BY MR. APPLEBY:

Q.   Well, what was the value that the bank gave to the borrower in exchange for $3 million?

A.   The value was the loan transaction that -- it was a condition of the loan transaction, you know, commercially reasonable arm's length loan transaction that reduced refinanced debt that was, you know, subject to a deed in lieu.   It's clear value.

Q.   Okay.   Again, I will apologize for the method here.   But, if we could, we're going to look across three documents.

At Number 4 of the notice there's a reference to the Complaint and the Answer by Valley Bank.

At paragraph 33 of the Complaint it states, *Bartle, CPIF, and UAmeriBank failed to seek and obtain the required regulatory pre-approval for the changes in ownership contemplated under the leveraged buyout, which placed University Village (and its residents) at an extraordinary and intolerable risk of the debtors being investigated, audited, placed under supervision, and ultimately being the subject of a delinquency proceeding*

*and possible receivership and potential shut-down by state authorities, including the Florida Office of Insurance Regulation (the "OIR").*

In its Answer, *Valley denies the allegations contained in paragraph 33.*

What is the basis for the denial by the bank?

A.    The bank was not required to seek regulatory pre-approval to make a real estate loan, number one. And the bank and its borrower were not governed by the Florida Office of Insurance Regulation.

Q.    However, just a few moments ago we went through a letter that was sent to the Florida OIR by the bank, which indicated that the bank was holding funds related to the MLR.  If the bank had no requirement or responsibility to the State OIR, why would they correspond with them and confirm that they were holding funds?

MR. WHITSON:  Object to the form.

A.    Yeah.  Again, the bank has no required obligation or, you know, pre-approval for changes in ownership.  And the bank's borrower that owned real estate is not governed by the OIR.

BY MR. APPLEBY:

Q.    Paragraph 59 of the Complaint states, *The Debtors orchestrated the March 30, 2014, leveraged*

*buyout transaction with the intention and for the purpose of hindering, delaying, and defrauding residents and other creditors of the Debtors, as evidenced by, among others, the following badges of fraud:*

*a)   The leveraged buyout transaction benefited insiders;*

*b)   The Debtors did not receive reasonably equivalent value in exchange for the transactions;*

*c)   The Debtors were insolvent at the time of or were rendered insolvent by the transaction; and*

*d)   The Debtors were grossly undercapitalized.*

At Valley National Bank's Answer, at Number 59, they state, *Valley denies that the Debtors did not receive reasonably equivalent value in exchange for the transaction, that Debtors were insolvent or rendered insolvent, and that the Debtors were grossly undercapitalized.*

What is the basis for Valley's denial?

A.   Again, the -- Valley made a $15 million loan, secured by a property, and $3 million in cash collateral on market terms, an arm's length commercially acceptable -- accepted transaction that paid off $15 million in debt that was subject to a deed in lieu; so, again, provided value.

Q.    Paragraph 63 of the Complaint alleges, *The Debtors did not receive reasonably equivalent value in exchange for the USAmeriBank MLR transfer.*

Valley's Answer states that Valley denies the allegation in the Complaint.

What is the basis for this?

MR. WHITSON:  Object to the form.

A.    Where is *MLR transfer*?  Is that a defined term?

MR. WHITSON:  It's not in your definitions.

MR. APPLEBY:  Well --

MR. WHITSON:  It's not defined in the notice that I can see.  So I'll object to the form of the question.  It refers to a defined term and it's not defined.

BY MR. APPLEBY:

Q.    If you'd refer back to page 10 of the Complaint, there's a chart.  On the right side of that it refers to *USAB Loan,* in the middle box.

It states that *$3 million of Westport's statutory required minimum liquid reserves -- the* "MLR Funds," defined -- *which generally were derived from a portion of the IED paid by the residents, was transferred from Westport's existing escrow account, where the MLR Funds were maintained, and pledged as*

39

*collateral to secure the USAB Loan.* Then the term is defined as *USAB MLR Transfer.*

So I'll go back and read paragraph 63 of the Complaint again. *The Debtors did not receive reasonably equivalent value in exchange for the USAmeriBank MLR transfer.*

A.   What is that -- what paragraph, again?

Q.   63.

A.   So -- I mean, I think, to start, you know, it's alleged that $3 million came from this account and, as discussed, the source of those dollars came from the title company as part of closing.

Q.   Just to be clear, you've referred to funds coming from the title company.  Is the bank's position that the title company put up this money?

A.   No.  The title company, acting as closing agent, confirms it has sources of funds to close the transaction as outlined by the closing statement and disburses, upon receipt from the various parties the funds, in accordance with the closing instructions, of which the bank was to receive $3 million in cash collateral for Westport Nursing Tampa loan closing and collateral account.

So, you know, that's the bank's position on the $3 million, number one.

Q.   Well, let me -- let me make sure I understand what you're saying.  The bank's position on the 3 million is, because it came from a title agency, it could not be part of an MLR?

A.   The bank's position is that the borrower provided $3 million to the title company as a condition of the loan closing, of which the bank does not have verification of whether those funds came from an MLR account somewhere else, a borrower's personal account, other equity source, or otherwise.

Q.   Okay.  So, again, just to make sure I'm understanding, the bank's position is that it did receive reasonably equivalent value in exchange for the $3 million that was transferred to it at closing?

MR. WHITSON:  Object to the form.  You're saying *did*.  Could you be clear about what you're referring to?  You said, *the bank received* -- it sounds like you're saying the bank received $3 million.

BY MR. APPLEBY:

Q.   The bank -- when the bank received $3 million, its position is that it did receive reasonably equivalent value in exchange for the USAB MLR transfer?

MR. WHITSON:  The question is whether the bank received reasonably equivalent value?

MR. APPLEBY:  The debtors.

MR. WHITSON:  Right.  The word *did*, I think, is unclear in that question.

MR. APPLEBY:  Yes.  I appreciate it.  Yes. Let me restate the question.

BY MR. APPLEBY:

Q.   Is the bank's position that the debtors received reasonably equivalent value in exchange for the bank receiving the $3 million of USAB MLR transfer funds?

A.   The bank's position is that Westport Nursing Tampa received reasonably equivalent value in exchange for a $15 million loan to pay off a loan that was subject to deed in lieu and in exchange for $3 million in cash collateral, yes.

Q.   In paragraph 66 of the Complaint, *At the time of the USAB MLR Transfer and at all times since, there were actual creditors of the Debtors holding unsecured claims allowable within the meaning of Section 502 and 544(b) of the Bankruptcy Code that could have been avoided by transfers -- excuse me -- that could have avoided the transfers and obligations described herein pursuant to Florida Statutes, Section 726.105(1)(b).*

The bank's response in its Answer was, *Valley denies the allegations of paragraph 66 of the Amended*

42

*Complaint.*

So the question is:  What is the bank's basis for making that denial?

THE WITNESS:  Where are those defined terms?

MR. WHITSON:  Well, you got terms that are defined in the Complaint and there are terms that are defined in the notice.

THE WITNESS:  That is what I was looking for.

Okay.  Can you repeat that?

BY MR. APPLEBY:

Q.   The question was:  What is the basis for Valley National Bank's denial contained in paragraph 66?

A.   Again, same response in regards to the $3 million.  Again, that was provided to the bank as cash collateral for Westport Nursing Tampa.  And the bank is not aware of, you know, unsecured creditors and, you know, claims of Westport Holdings Tampa and Westport Holdings Tampa II as Debtors.

Q.   Bear with me one second.

Paragraph 69 of the Complaint says, *At the time of the USAB MLR Transfer, the Debtors' total liabilities exceeded the fair value of their assets.*

The bank denied the allegations of paragraph 69 in its Answer.  What is the -- well, excuse me.

43

Yeah.  What is the basis for the denial?

A.    You know, at the time of the closing, the bank had net $12 million in net loan amount secured by property that was worth substantially more than that, as appraised for the bank.

Q.    Well, the question here is not about the borrower.  It's about the debtors in the bankruptcy case.

A.    The bank does not have knowledge of the total liabilities that exceeded the assets of the Debtors.

Q.    So their denial is incorrect in their response?  It should have been something different?

MR. WHITSON:  Object to the form.

A.    No, I don't think -- I think just denying based on not having knowledge of the two entities that weren't party to our transaction.

BY MR. APPLEBY:

Q.    Okay.  I understand what you're saying. That's not what the Answer says.  It just says, *Denies the allegations*.

A.    That's right.

Q.    At paragraph 70 of the Complaint, *At the time of the USAB MLR Transfer, the Debtors were generally not paying their debts as they became due.*

Valley's response was that it was without

44

knowledge of the allegations contained in paragraph 70 of the Amended Complaint and denies them.

So the bank's position was that it was unaware of any debts not being paid at the time it made the loan?

A.   Again, it's referencing Westport Holdings Tampa and Westport Holdings Tampa II, which were not party to the bank's loan transaction.  So the answer is, we were without knowledge.  We didn't know.  We were without knowledge.

Q.   In Valley Bank's Answer at -- there's a section at page 9 of 14, Affirmative Defenses.

In its Second Affirmative Defense, Valley alleges that it *took in good faith*.  What is the basis for that statement?

MR. WHITSON:  Object to the form.

A.   So Valley's loan transaction was in good faith, as noted, based on terms, consideration, and frankly benefited by providing a solution to refinance debt that was subject to a deed in lieu of foreclosure had it not been refinanced.

BY MR. APPLEBY:

Q.   In Valley Bank's Third Affirmative Defense, they allege that they *acted in good faith*.  What is the basis for this statement?

MR. WHITSON:  Object to the form.

A.   Right.  Again, Valley provided a commercially reasonable arm's length third-party transaction to refinance a liability subject to a hostile situation and a deed in lieu of foreclosure.

BY MR. APPLEBY:

Q.   Valley's Fourth Affirmative Defense states that, *To the extent Plaintiff and/or Debtor suffered any damages or losses, they were caused by and are the responsibility of persons, parties, and/or entities other than the Defendant, including the Debtors.*

What is the basis for the Fourth Affirmative Defense and the identity of persons, parties and/or entities other than the Defendant that caused Plaintiff and/or Debtor to suffer damages or losses?

MR. WHITSON:  Object to the form.

A.   Yeah, I don't -- you know, it's to the extent Plaintiff or Debtor suffered any damages.  So the denial is based on Valley, again, providing a solution by refinancing debt on favorable, commercially reasonable terms.

To the extent that there was any damages suffered, it wasn't caused by Valley.

BY MR. APPLEBY:

Q.   Valley's Fifth Affirmative Defense is a claim

of *in pari delicto*.  What is the basis for Valley's statement under their Fifth Affirmative Defense?

A.   Yeah --

MR. WHITSON:  Object to the form.

A.   This is, you know, a legal defense that -- you know, basically, as I understand, legally, you know, the Trustee, now in the shoes of the Debtors, and John Bartle -- that legally, because of that doctrine, it's a breach of duty to --

MR. WHITSON:  Hold on one second.  I'm getting a call from 904.  Let me see if they're disconnected.

Are you-all still there?  Kim?  Adina?

MS. ISRAEL:  I'm here.  Kim.

MS. POLLAN:  I'm here.

MR. WHITSON:  Okay.  I just got a call from a 904 Area Code.  I didn't know if you'd been disconnected or not.

MS. ISRAEL:  No, we're here.

MS. POLLAN:  Yes, we're here.

MR. WHITSON:  Okay.  Sorry.

THE WITNESS:  -- that, in that capacity, because of that doctrine, cannot recover against the Defendant.

BY MR. APPLEBY:

Q.   Okay.  In that statement it says, *The Debtors were owned, controlled and dominated by Bartle and that Bartle was the principal of the Debtors and their affiliates through which Bartle engaged in various acts of wrongdoing.*

Isn't this the same Bartle that owns, controls and dominated the borrower?

A.   When you're referring to *borrower* --

Q.   Westport Nursing.

A.   As I recall, he, John Bartle, had no ownership in Westport Nursing.

Q.   Is the bank's position also that Bartle was not the principal of the borrower?

A.   Define *principal*.

Q.   Well, these are the bank's words on here.  I'm just trying to understand.  The bank has alleged that *in pari delicto* relates to the Debtors, but everything in this paragraph could be said -- could be said by the bank as it refers to the borrower --

MR. WHITSON:  Object to the form.

BY MR. APPLEBY:

Q.   -- Westport Nursing.

A.   This is referencing the Debtors, not the bank's borrower.

Q.   Right.  I'm asking you if John Bartle is

48

also the same individual who owned, controlled and dominated Westport Nursing and was a principal of Westport Nursing.

A.   So, as I recall, John Bartle did not own Westport Nursing.  Please define *dominated, controlled, principal*, and all the other words you used.

Q.   They're the bank's words.  I don't need to define them.

Okay.  Let's move on.  The Sixth Affirmative Defense is *Estoppel*.  What is the basis for the bank's position of estoppel?

MR. WHITSON:  Object to the form.

Well, I'll object to that question in the sense that the Trustee twice moved to strike these defenses and they were amended to conform with the terms of the order.

And when they moved to strike it again, she denied the objection.  So whatever is stated there is deemed legally sufficient as the basis for the Affirmative Defense.

THE WITNESS:  Are we legally sufficient then?

MR. WHITSON:  The objection, it speaks for itself.

MR. APPLEBY:  Okay.  Let's take a couple-minute break because I think at this

point Mr. Warren actually has a commitment that he needs to go to.

(There was a recess.)

BY MR. APPLEBY:

Q.   Mr. Korhn, the bank's Seventh Affirmative Defense was *Direct and Indirect Benefit*.  And *because WNT was a wholly-owned subsidiary of the Debtors and the Debtors and WNT owned and operated the ILF and the Health Center as integral and necessary component parts of the CCRC.  Moreover, WNT provided health and skilled nursing care to the residents of the ILF thus conferring an economic benefit to the Debtors and enabled the Debtors to offer the Life Care Contracts . . .*

Well, rather than me read the rest of that in there, again, could you tell me more about the basis for the bank's Eighth Affirmative Defense?

MR. WHITSON:  Again, I'll object to the form of the question and, further, that the reason why there's so much factual detail in that Affirmative Defense is because the Trustee twice moved to strike these defenses.  They were amended and the Court found these allegations to be sufficient. They speak for themselves.  But, you know, you can still answer the question.

A.   I mean, I think it's pretty straightforward

that Westport Nursing Tampa and the tenants thereof provided services for residents of the independent living facility; you know, that that benefited those residents and the properties and ultimately the Debtors by providing that service and the ability to continue to sell those contracts.

BY MR. APPLEBY:

Q.   What is the basis for the bank's Eighth Affirmative Defense, *Identity of Interests*?

MR. WHITSON:  Again, I'll just interpose the same objection and refer to the two motions to strike and the Court's order on them.

A.   Again, it appears very clear.  But, again, the services provided by tenants at the Westport Nursing Tampa owned property provided benefit to the Debtors and their assets by continuing to allow them to operate and sell care contracts.

BY MR. APPLEBY:

Q.   In this -- in this Affirmative Defense, the statement -- the text is that *The identity of interest doctrine recognizes that the facts may suggest that a corporate group (such as the Debtors and WNT) has purposely availed itself to the benefits of an enterprise (such as the University Village CCRC) and*

51

*should be treated as one borrowing unit even though*

*each member of the enterprise is a separate entity.*

Can you tell me, if the identity of interest

benefits, why would -- why would the opposite of this

also -- why wouldn't the opposite also be true, in

the sense that debts and obligations of the group

-- why wouldn't those same obligations apply?  Same

requirements for the MLR and those types of things,

why wouldn't those apply as well to Westport Nursing?

MR. WHITSON:  Object to the form of the

question.

A.    I'm not sure I'm clear on the question.

MR. WHITSON:  I mean, I don't want him

to -- it's really asking for a legal opinion.

THE WITNESS:  Right.

MR. WHITSON:  And I just think -- I think

it's beyond the scope of the 30(b)(6).  It's beyond

the knowledge of the entity.

MR. APPLEBY:  Well, the -- yeah.  The

Affirmative Defense says *Identity of Interests for*

*conferring of benefit*.  The question is simple.

If there is an identity of interest, why wouldn't

the MLR requirement apply across the board on --

MR. WHITSON:  Your question is conjectural,

though.  It's argumentative in the sense that

52

why wouldn't an argument apply to something else?

Well, he's not in a position to testify to that.

I mean, that's not why he's here.  That's not why

he's designated.  It's not -- speculation is not

part of the topics.  So I think it's inappropriate.

MR. APPLEBY:  I'll move on.

MR. WHITSON:  I mean, I want to get done.

I don't want to keep fighting with you on this

stuff, but, I mean --

BY MR. APPLEBY:

Q.    Tell me about the -- what, if any, knowledge

the bank has involving the following cases with OIR.

There's Case Number 15-1535, Division of Administrative

Hearings, and this is listed under sub (a) of the last

page.  And, rather than read all these, I'll just simply

say, tell me what the bank -- what the bank's knowledge,

if any, is as it relates to any of these proceedings.

A.    Are -- are you referencing in the --

Q.    I'm sorry.  Page 8 of the --

MR. WHITSON:  He's referring to these cases.

Wait a minute.  You're referring to the notice

itself.  Right?

MR. APPLEBY:  Oh, yes.  I'm sorry.

MR. WHITSON:  Yeah.

MR. APPLEBY:  I apologize for not being clear.

53

A.   I don't have any detailed knowledge of these cases.  I would have to defer to bank counsel, if they did, but --

BY MR. APPLEBY:

Q.   So the bank's position, though, is -- did you have -- were you aware that there were administrative claims and hearings that were taking place as it related to Westport Holdings Tampa or any other University Village affiliate?

A.   The bank was aware --

MR. WHITSON:  Object to the form of the question.

A.   The bank was aware, you know, after closing the loan transaction, that there was litigation; but, again, doesn't know the details, as we weren't party to.

BY MR. APPLEBY:

Q.   Did the bank -- did the bank ever request an appraisal of the real property, subject of the loan?

A.   Yes.  We would have required one, as standard for all real estate loans.

Q.   Okay.  Again, because this is sizable, I'm going to tell you that I have marked an Appraisal Report that's titled *The Inn at University Village, 12250 North 22nd Street, Tampa, Florida, 33612*.  It indicates that it was prepared for USAmeriBank.  It has a Client

Number, an IRR Number and an Effective Date of February 21, 2014.  I've marked it as Exhibit 92.

(The document was marked as Plaintiff's Exhibit Number 92 for identification.)

BY MR. APPLEBY:

Q.   I'm going to hand you this copy.  And the question is simply:  Do you recognize this appraisal as the appraisal that the bank requested?

A.   Yeah.  It appears to be.

Q.   To the best of your knowledge, is that a true and accurate copy of the appraisal presented to the bank?

MR. WHITSON:  I'll object to the form of the question.  This is a very voluminous document, so I mean --

MR. APPLEBY:  Yeah.

THE WITNESS:  I mean, without -- yeah. It's 200-plus pages.  But without reviewing every page, it appears to be.

MR. APPLEBY:  Okay.  I believe that is all the questions I have for the bank.

THE COURT REPORTER:  Questions, Ed?

MR. WHITSON:  No questions.

THE COURT REPORTER:  No questions.

MR. WHITSON:  He'll read.

55

THE COURT REPORTER:  And he'll read and sign.

And are you ordering it, Keith?

MR. APPLEBY:  Yes.

THE COURT REPORTER:  And a copy, Ed?

MR. WHITSON:  Please.

(The deposition was adjourned at

5:15 p.m.)

56

**CERTIFICATE OF OATH**

**STATE OF FLORIDA          )**

**COUNTY OF HILLSBOROUGH   )**

I, Jean M. Wilkes, RPR-CP, Court Reporter, Notary Public, State of Florida at Large, certify that VERNON F. KORHN, III, personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 19th day of April, 2023.

*JEAN M. WILKES*
_____
**JEAN M. WILKES, RPR-CP**
**NOTARY PUBLIC AT LARGE**
**STATE OF FLORIDA**
**My Commission No.  GG 977171**
**Expires:  April 8, 2024**

57

## CERTIFICATE OF REPORTER

**STATE OF FLORIDA          )**

**COUNTY OF HILLSBOROUGH )**

I, Jean M. Wilkes, RPR-CP, Court Reporter, certify that I was authorized to and did stenographically report the foregoing deposition of VERNON F. KORHN, III, and that the transcript is a true record of the testimony given by the witness.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 19th day of April, 2023.


_____
**JEAN M. WILKES, RPR-CP**

58

## SIGNATURE PAGE/ERRATA SHEET

IN RE:   Westport Holdings Tampa; Westport Holdings
         Tampa II - Debtors
                    * * * * *
         Jeffrey W. Warren vs. Valley National Bank

         I, VERNON F. KORHN, III, do hereby certify that I have read the preceding pages and that they are correct, to the best of my knowledge, with the following exceptions:

PAGE NO.   LINE NO.   CHANGE              REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

_____
VERNON F. KORHN, III                      DATE

**Concordance**

< Dates >
**April 10, 2008** 32:12
**April 7, 2023** 1:40
**April 8, 2024** 56:23
**April, 2023.** 56:14, 57:18
**February 13, 2015** 28:17
**February 13, 2015 5:59** 6:28
**February 21, 2014** 54:2
**March 17, 2020** 19:6
**March 28, 2014** 4:11
**March 30, 2014** 36:25
**March 31, 2014** 4:18, 4:26, 4:33,
    4:38, 4:43, 5:7, 5:38, 9:9,
    9:22, 26:24
**March 31st, 2014** 27:13
**May 12, 2014** 6:15, 6:19, 22:9,
    24:9, 26:1
**May 14** 24:10
**May 14, 2014** 6:12
**May 14, 2014.** 21:15
**September 16, 2016** 6:36
**"6"** 33:21
**$12** 43:3
**$15** 9:22, 37:20, 37:23, 41:13
**$15,000,000.00** 4:19
**$3** 26:17, 34:24, 35:7, 37:21,
    38:20, 39:10, 39:21, 39:25,
    40:6, 40:14, 40:19, 40:21,
    41:9, 41:14, 42:14
**$3,000,616.50** 25:25
**$3,000,616.50.** 26:18
**$7.5** 30:4


< 1 >
**10** 4:28, 38:17
**100** 2:13, 9:14, 26:13
**10407** 2:27
**105(1)(b** 41:23
**11** 1:9, 4:35
**12** 4:40, 4:45
**12250** 53:23
**13** 5:9, 5:14
**14** 44:12
**15** 5:19, 5:23, 5:27
**15-1535** 52:13
**16** 5:31
**16-bk-08167-ced** 1:8, 1:14
**16-bk-08168-ced** 1:11
**17** 5:35

**18** 5:39
**1801** 1:45, 2:43
**184** 20:2
**19** 5:45, 6:10
**19th** 56:14, 57:18


< 2 >
**20-ap-00007** 19:6
**20-ap-00007-cpm** 1:24
**20-ap-00007-mgw** 5:43, 6:8
**200** 2:28
**200-plus** 54:18
**2015-CA-585** 31:12
**2022.** 20:2
**204-6423** 2:46
**20th** 20:2
**21** 6:13
**212-1465** 2:17, 2:32
**22** 6:17
**223-9620** 2:47
**224-4485** 2:30
**224-4486** 2:31
**224-9255** 2:45
**22nd** 53:24
**23** 6:22
**28** 6:28
**29** 6:32


< 3 >
**3** 40:3
**30(b)(6** 1:34, 3:4, 4:6, 8:2, 20:19,
    33:12, 51:17
**31** 6:40
**310-0733** 2:16
**32** 6:44
**32256** 2:29
**33** 35:18
**33.** 36:5
**33602** 1:46, 2:15, 2:44
**33612.** 53:24
**33629-5420** 2:6
**3:12** 1:42


< 4 >
**4** 8:9, 35:16
**4.20** 26:23
**420.** 27:18

**435-0396** 2:7
**4916** 2:5


< 5 >
**500106000** 25:22, 26:4
**502** 41:19
**544(b** 41:20
**56** 3:7
**560** 6:44
**57** 3:8
**58** 3:9
**59** 36:24, 37:14
**5:15** 1:42, 55:7


< 6 >
**6** 33:21, 34:1
**600** 2:14
**63** 38:1, 39:3
**63.** 39:8
**651.035(1)(b** 26:2
**66** 41:16, 41:25, 42:12
**68** 4:5, 8:5, 33:8, 33:11, 33:20
**68.** 8:21, 8:22
**69** 4:11, 8:25, 9:13, 42:20, 42:24
**69.** 9:3


< 7 >
**7** 3:6
**70** 4:17, 9:19, 43:22, 44:1
**70.** 9:17
**71** 4:24, 10:5
**71.** 10:3
**72** 4:31, 11:23
**724** 6:44
**726.** 41:23
**726.105(1)(b** 35:1
**73** 4:37, 12:8
**73.** 12:6
**74** 4:42, 12:22
**74.** 12:20
**75** 5:5, 13:9
**75.** 13:7
**76** 5:11, 13:24
**76.** 13:22
**77** 5:16, 14:25
**77.** 14:23
**78** 5:21, 15:13

**Concordance**

**78.** 15:11
**79** 5:25, 15:25
**79.** 15:23


**< 8 >**
**8** 4:8, 4:14, 6:30, 29:18, 52:19
**80** 5:29, 16:22
**80.** 16:20
**81** 5:33, 16:19, 17:9, 17:20, 17:25, 18:2
**81.** 17:7, 17:24
**813** 2:7, 2:16, 2:45, 2:46, 2:47
**82** 5:37, 17:23, 17:25, 18:7
**82.** 18:1, 18:4, 18:5
**83** 5:42, 19:2, 33:9, 33:15
**83.** 18:25
**84** 6:5, 19:22, 33:16
**84.** 19:20, 33:9
**85** 6:12, 21:13, 23:23
**85.** 21:11
**86** 6:15, 22:4, 22:7, 23:23
**87** 6:19, 23:6, 23:23
**87.** 23:4
**88** 6:24, 28:20
**88.** 28:18
**88104.** 25:2
**89** 6:30, 29:15, 29:22
**89.** 29:13
**8:** 1:8, 1:11, 1:14, 1:24, 5:43, 6:8


**< 9 >**
**9** 4:21, 44:12
**90** 6:35, 31:21
**90.** 31:19
**904** 2:17, 2:30, 2:31, 2:32, 46:17
**904.** 46:11
**91** 6:42, 32:15
**91.** 32:13
**92** 6:46, 54:4
**92.** 54:2
**977171** 56:22


**< A >**
**ability** 50:5
**above** 26:3
**Absolutely** 20:13
**acceptable** 37:22

**accepted** 37:23
**accordance** 26:23, 39:20
**account** 22:19, 22:21, 24:24, 25:22, 26:3, 26:4, 26:6, 26:7, 26:11, 26:16, 26:20, 26:22, 34:13, 38:24, 39:10, 39:23, 40:9
**accurate** 13:4, 13:15, 15:6, 15:19, 16:6, 17:2, 20:5, 24:18, 54:11
**across** 35:14, 51:23
**acted** 44:24
**acting** 39:16
**action** 57:15, 57:16
**acts** 47:4
**actual** 41:18
**actually** 24:11, 49:1
**addressed** 9:4, 22:9
**addressee** 24:13
**Adina** 2:21, 46:13
**adjourned** 55:6
**Administered** 1:13
**Administrative** 52:13, 53:7
**Adv** 1:23, 5:42, 6:8
**adversary** 19:4, 20:1, 20:6
**affiliate** 28:4, 53:9
**affiliates** 47:4
**Affirmative** 6:6, 19:25, 33:17, 44:12, 44:13, 44:23, 45:7, 45:12, 45:25, 46:2, 48:9, 48:20, 49:5, 49:16, 49:19, 50:9, 50:20, 51:20
**agency** 40:3
**agent** 9:9, 39:17
**ago** 21:20, 36:11
**Agreement** 4:24, 4:31, 5:12, 5:17, 5:21, 5:25, 5:29, 10:7, 11:14, 12:3, 13:22, 15:3, 15:10, 15:19, 15:22, 16:5, 16:18, 17:3, 26:14, 26:24, 27:2, 27:4, 27:5, 27:12, 27:15, 27:16, 27:18
**Agreements** 5:6, 13:12
**ahead** 20:25
**allegation** 38:5
**allegations** 29:1, 30:8, 36:4, 41:25, 42:23, 43:20, 44:1, 49:22
**allege** 44:24
**alleged** 6:26, 30:12, 39:10, 47:16

**alleges** 38:1, 44:14
**allow** 50:17
**allowable** 41:19
**already** 21:7
**Alys** 4:12, 9:4
**Amend** 5:25, 15:22, 16:5
**Amended** 4:5, 5:42, 6:5, 6:7, 18:24, 19:24, 20:1, 20:20, 33:11, 33:15, 33:16, 33:18, 41:25, 44:2, 48:15, 49:21
**among** 37:4
**amount** 4:18, 43:3
**and/or** 45:8, 45:10, 45:13, 45:15
**Angelis** 6:13, 21:17
**Answer** 6:6, 19:25, 20:20, 33:17, 35:17, 36:4, 37:13, 38:4, 41:24, 42:24, 43:19, 44:8, 44:11, 49:24
**anyway** 16:15
**apart** 12:15
**apollan@mcglinchey.com** 2:33
**apologize** 18:5, 31:6, 35:13, 52:25
**Appeals** 32:11
**appear** 12:16, 15:6, 15:18, 16:5, 17:2, 20:5, 25:6
**APPEARANCES** 2:1
**appeared** 56:10
**appears** 10:2, 12:2, 12:13, 13:6, 13:19, 14:21, 15:9, 15:21, 16:9, 17:5, 23:2, 23:13, 23:17, 28:24, 29:17, 50:14, 54:9, 54:19
**apply** 21:23, 51:7, 51:9, 51:23, 52:1
**Appraisal** 6:46, 53:18, 53:22, 54:7, 54:8, 54:11
**appraised** 43:5
**appreciate** 41:4
**Approval** 25:7
**Area** 46:17
**argument** 52:1
**argumentative** 51:25
**arm** 35:10, 37:22, 45:3
**article** 6:24, 28:16, 28:23, 29:12, 29:25, 30:19
**articles** 28:11, 28:15
**Ashley** 2:13
**aside** 12:14
**assert** 26:15

**Concordance**

assets 42:22, 43:10, 50:17
Assignment 4:37, 4:42, 12:13, 12:17, 12:24
assisted 29:6
associated 29:7
assumption 25:15
attached 26:1
attachment 21:17, 21:25, 22:1, 22:4
Attorney 2:9, 2:19, 2:37, 57:13
attorneys 57:15
Attornment 5:16, 15:2
audited 35:24
authorities 36:2
authorized 8:14, 57:7
availed 50:24
Avenue 1:45, 2:5, 2:43
avoided 41:21, 41:22
aware 11:3, 11:6, 27:23, 27:25, 28:2, 30:3, 30:8, 30:11, 30:18, 30:21, 31:3, 31:6, 31:7, 32:1, 32:5, 32:9, 34:10, 42:16, 53:6, 53:10, 53:13

< B >
back 33:8, 38:17, 39:3
badges 37:4
balance 22:19, 25:25, 26:18, 26:22
Bankcorp 1:27, 5:45, 6:10, 19:11
bankruptcies 34:12
Bankruptcy 1:1, 19:5, 29:5, 29:6, 34:19, 41:20, 43:7
banks 34:17
Bartle 6:43, 29:4, 30:3, 30:12, 32:10, 33:2, 34:5, 34:7, 35:19, 46:8, 47:2, 47:3, 47:4, 47:6, 47:10, 47:12, 47:25, 48:4
based 43:15, 44:18, 45:19
basically 46:6
basis 36:6, 37:19, 38:6, 42:2, 42:11, 43:1, 44:15, 44:25, 45:12, 46:1, 48:10, 48:19, 49:15, 50:8
Bates 4:13, 4:19, 4:26, 4:34, 4:38, 4:44, 5:7, 5:12, 5:18, 5:22, 5:26, 5:29, 5:34, 5:38, 14:5, 23:23
Bay 6:24, 28:17

Bear 42:19
became 43:24
become 11:3, 11:6, 30:21
beginning 27:7
behalf 8:14, 25:9, 25:16
believe 13:3, 13:15, 22:4, 26:10, 26:19, 34:20, 54:20
Below 25:1, 25:5
Benefit 49:6, 49:12, 50:16, 51:21
benefited 37:6, 44:19, 50:3
benefits 50:24, 51:4
best 21:3, 54:10, 58:9
beyond 51:17
board 51:23
borrower 10:23, 10:25, 11:7, 11:8, 11:10, 11:12, 13:5, 13:17, 15:8, 24:22, 26:25, 27:9, 27:15, 34:22, 35:7, 36:9, 36:21, 40:5, 40:9, 43:7, 47:7, 47:8, 47:13, 47:19, 47:24
borrowers 32:22, 34:14, 34:18
borrowing 51:1
bottom 14:6, 33:22
bounce 20:10
box 38:19
breach 46:9
break 20:12, 48:25
Bureau 6:16, 6:20, 22:10
Burr 9:3
Bush 1:44, 2:42
buyout 35:21, 37:1, 37:6
BVM 4:25, 10:8

< C >
call 46:11, 46:16
capacity 11:5, 46:22
Care 49:11, 49:13, 50:18
Case 1:8, 1:11, 1:14, 19:5, 19:7, 20:1, 20:7, 30:9, 30:22, 31:8, 31:9, 31:11, 32:2, 32:4, 32:8, 32:9, 32:12, 32:13, 43:8, 52:13
cases 52:12, 52:20, 53:2
cash 26:7, 37:21, 39:21, 41:15, 42:15
cause 7:5
caused 45:9, 45:14, 45:23
caveat 12:19
CCRC 22:11, 49:10, 50:25

Center 33:22, 49:9
Centurion 2:27
certain 22:20, 30:11
certainty 9:7, 9:15, 11:16, 26:13
CERTIFICATE 3:7, 3:8, 5:33, 5:37, 17:7, 17:15, 17:21, 56:1, 57:1
Certification 25:7
certify 25:22, 26:22, 56:9, 57:7, 57:12, 58:7
cgipson@mcglinchey.com 2:36
CHANGE 58:11
changes 35:20, 36:20
Channel 6:30, 29:18
Chapter 1:9
chart 38:18
check 26:8
Circuit 31:10, 31:11, 32:11
claim 45:25
claims 41:19, 42:17, 53:7
clarify 34:16
clear 11:4, 35:12, 39:13, 40:16, 50:14, 51:12, 52:25
Client 53:25
close 39:17
closing 9:8, 17:4, 18:13, 28:2, 39:12, 39:16, 39:18, 39:20, 39:22, 40:7, 40:14, 43:2, 53:13
Code 41:20, 46:17
collateral 22:21, 26:7, 37:21, 39:1, 39:22, 39:23, 41:15, 42:15
coming 39:14
Commercial 7:22
commercially 35:10, 37:22, 45:2, 45:20
Commission 56:22
commitment 49:1
community 6:27
Company 25:1, 25:2, 39:12, 39:14, 39:15, 39:16, 40:6
Complaint 5:42, 6:7, 18:24, 19:4, 20:1, 20:20, 33:15, 33:18, 35:17, 35:18, 36:24, 38:1, 38:5, 38:18, 39:4, 41:16, 42:1, 42:6, 42:20, 43:22, 44:2
completed 23:3
Comply 5:25, 15:22, 16:5, 26:2
component 49:9

**concealed** 30:13
**concerning** 29:18
**condition** 35:9, 40:6
**conduct** 32:20, 33:2
**conferring** 49:11, 51:21
**confirm** 12:25, 13:12, 14:1, 15:3,
    15:15, 16:2, 16:24, 17:11,
    19:14, 20:3, 21:18, 22:12,
    23:8, 27:14, 28:22, 29:24,
    36:16
**confirms** 39:17
**conform** 48:15
**confusing** 14:15, 21:2
**conjectural** 51:24
**connected** 57:15
**consideration** 44:18
**considered** 24:14
**contained** 36:5, 42:12, 44:1
**contemplated** 35:21
**context** 21:22
**continue** 50:5
**continued** 5:1, 6:1
**continuing** 50:17
**Contracts** 4:43, 12:25, 49:13,
    50:6, 50:18
**controlled** 34:6, 47:2, 48:1, 48:5
**controls** 47:6
**copy** 12:16, 13:4, 13:16, 15:7,
    15:19, 16:6, 17:2, 20:6, 23:2,
    31:15, 54:6, 54:11, 55:4
**Corporate** 1:37, 3:3, 50:23
**corporation** 1:28, 19:12
**correct** 11:21, 58:9
**correctly** 12:16
**correspond** 36:16
**counsel** 25:15, 53:2, 57:13,
    57:15
**COUNTY** 31:11, 56:4, 57:4
**couple** 21:8
**couple-minute** 48:25
**Court** 1:1, 7:2, 7:8, 18:1, 18:4,
    19:5, 30:11, 30:14, 31:10,
    32:11, 49:22, 50:12, 54:22,
    54:24, 55:1, 55:4, 56:8, 57:6
**CPIF** 35:19
**creditors** 37:3, 41:18, 42:16
**custody** 25:23


**< D >**

**d/b/a** 30:25, 31:14
**damages** 45:9, 45:15, 45:18,
    45:22
**Daniels** 4:12, 9:4
**DATE** 1:40, 4:7, 6:48, 11:11, 54:1,
    58:30
**Dated** 4:11, 4:17, 4:25, 4:33,
    4:38, 4:43, 5:6, 5:37, 6:12,
    6:15, 6:19, 6:27, 9:21, 21:15,
    22:9, 24:8, 24:10, 26:24,
    27:13, 28:17, 57:18
**day** 56:14, 57:18
**Dear** 25:20
**Debt** 25:6, 35:11, 37:24, 44:20,
    45:20
**Debtor** 32:10, 45:8, 45:15, 45:18
**Debtor-appellant** 6:43
**debts** 43:24, 44:4, 51:6
**declare** 58:25
**deed** 35:12, 37:24, 41:14, 44:20,
    45:5
**deemed** 48:19
**default** 11:1, 11:7, 11:13
**Defendant** 1:31, 2:19, 2:37,
    45:11, 45:14, 46:24
**Defense** 44:13, 44:23, 45:7,
    45:13, 45:25, 46:2, 46:5,
    48:10, 48:20, 49:6, 49:16,
    49:20, 50:9, 50:20, 51:20
**Defenses** 6:6, 19:25, 33:17,
    44:12, 48:15, 49:21
**defer** 53:2
**Define** 47:14, 48:5, 48:8
**defined** 38:8, 38:12, 38:14,
    38:15, 38:22, 39:2, 42:4, 42:6,
    42:7
**definitions** 38:10
**defrauding** 37:2
**delaying** 37:2
**delicto** 46:1, 47:17
**delinquency** 35:25
**denial** 36:6, 37:19, 42:3, 42:12,
    43:1, 43:11, 45:19
**denied** 42:23, 48:18
**Denies** 36:4, 37:14, 38:4, 41:25,
    43:20, 44:2
**denying** 43:14
**Department** 6:37, 30:23, 31:12
**deposit** 26:18
**Deposition** 1:35, 1:37, 4:6, 6:35,


    8:2, 18:17, 19:18, 28:10, 32:4,
    32:8, 33:12, 55:6, 57:8
**depositors** 34:13
**derived** 38:22
**described** 41:22
**DESCRIPTION** 4:2, 5:2, 6:2
**designated** 7:24, 52:4
**Desmond** 6:16, 6:20, 22:10,
    24:13, 24:16, 25:20
**detail** 49:19
**detailed** 53:1
**details** 53:15
**different** 14:8, 20:11, 20:17,
    43:12
**diligence** 32:21, 33:1, 33:6
**Direct** 2:46, 3:6, 7:13, 49:6
**disburses** 39:19
**disconnected** 46:12, 46:18
**discussed** 39:11
**Discussion** 8:18, 12:1, 21:5
**DISTRICT** 1:2
**Division** 1:3, 7:22, 52:13
**doctrine** 46:9, 46:23, 50:22
**documented** 21:10
**documents** 18:19, 20:11, 20:17,
    21:8, 26:15, 30:12, 35:15
**dollars** 30:13, 39:11
**domestic** 1:27, 19:12
**dominated** 47:2, 47:7, 48:2, 48:5
**done** 33:6, 52:7
**down** 26:21
**Drive** 2:13
**due** 32:21, 33:1, 33:6, 43:24
**duly** 7:10, 56:11
**duty** 46:9
**Dytrych** 9:5, 9:6


**< E >**
**earlier** 24:1
**economic** 49:12
**Ed** 54:22, 55:4
**edit** 16:8
**EDMUND** 2:11
**Effective** 6:47, 54:1
**Eighth** 49:16, 50:8
**Eli** 30:22
**Eliyahu** 6:35, 30:21
**Email** 6:12, 21:10, 21:15, 21:17,
    21:22, 22:5, 24:9

## Concordance

**employee** 57:13, 57:14
**employees** 30:5
**enabled** 49:12
**engaged** 47:4
**entered** 32:10
**enterprise** 50:25, 51:2
**entire** 26:22
**entities** 28:4, 34:6, 34:17, 43:15, 45:10, 45:14
**entitled** 6:25, 6:30
**entity** 10:15, 51:2, 51:18
**Environmental** 5:21, 15:10, 15:19
**equity** 40:10
**equivalent** 37:9, 37:15, 38:2, 39:5, 40:13, 40:23, 40:25, 41:8, 41:12
**escrow** 38:24
**ESQUIRE** 2:3, 2:11, 2:21, 2:24, 2:41
**established** 25:23
**Estate** 7:22, 36:8, 36:22, 53:20
**Estoppel** 48:10, 48:11
**everything** 47:17
**evidenced** 26:1, 37:4
**ewhitson@mcglinchey.com** 2:18
**exact** 11:11
**Examination** 3:6, 7:13, 8:11
**examined** 7:11
**Examiner** 22:10
**exceeded** 42:22, 43:10
**exceptions** 58:10
**exchange** 35:7, 37:9, 37:15, 38:3, 39:5, 40:13, 40:23, 41:8, 41:12, 41:14
**exchanged** 34:24
**excuse** 16:19, 21:11, 41:21, 42:25
**executed** 6:22
**exercise** 11:13
**exercised** 11:17
**EXHIBITS** 4:1, 5:1, 6:1, 23:22
**existing** 38:24
**experience** 34:5, 34:9
**Expires** 56:23
**extent** 45:8, 45:17, 45:22
**extraordinary** 35:23

**< F >**
**F.** 1:38, 3:2, 7:9, 7:19, 56:10, 57:9, 58:7, 58:30
**F.3d** 6:44
**facility** 29:7, 50:3
**fact** 24:18, 30:9
**facts** 50:22, 58:26
**factual** 30:19, 49:19
**failed** 35:19
**fair** 15:6, 15:18, 16:6, 17:2, 42:22
**faith** 44:14, 44:18, 44:24
**fall** 10:25
**falling** 11:12
**familiar** 18:8, 18:10, 18:11, 22:13, 26:4
**familiarity** 17:17
**far** 34:9
**Farther** 26:21
**favorable** 45:20
**FAX** 2:17, 2:32, 2:47
**feel** 17:17, 17:18
**felt** 17:17
**few** 18:22, 36:11
**Fifth** 32:6, 45:25, 46:2
**fighting** 52:8
**file** 18:21
**filed** 19:4, 19:6, 20:1, 20:6, 34:19
**Financial** 6:17, 6:21, 6:26, 6:37, 22:11, 28:3, 28:6, 30:23, 31:13
**financially** 57:16
**first** 7:10, 34:1
**flip** 8:9
**FLORIDA** 1:2, 1:46, 1:50, 2:6, 2:15, 2:29, 2:44, 6:38, 25:24, 25:25, 26:2, 30:23, 30:24, 31:11, 31:12, 34:25, 36:2, 36:10, 36:12, 41:23, 53:24, 56:3, 56:9, 56:21, 57:3
**follow** 6:31, 29:19
**following** 37:4, 52:12, 58:9
**follows** 7:12
**foreclosure** 44:20, 45:5
**foregoing** 57:8, 58:26
**Forman** 9:3
**found** 49:22
**Fourth** 45:7, 45:12
**frankly** 44:19
**fraud** 37:5
**Freiden** 6:35, 30:22, 31:7, 32:1, 32:5, 32:8

**Friday** 6:28
**Funds** 36:14, 36:17, 38:22, 38:25, 39:13, 39:17, 39:20, 40:8, 41:10

**< G >**
**Gary** 9:4, 9:5
**gave** 35:6
**generally** 10:21, 38:22, 43:23
**getting** 46:11
**GG** 56:22
**give** 7:5
**given** 9:2, 57:10
**governed** 36:9, 36:22
**grossly** 37:12, 37:17
**group** 50:23, 51:6
**guarantees** 10:22
**guarantor** 11:9
**Guaranty** 4:24, 10:7, 10:14, 10:16, 10:19, 10:21, 11:14, 11:17
**guess** 27:10

**< H >**
**H.** 2:24
**hand** 7:3, 54:6, 56:13
**handed** 9:16, 18:23, 22:3, 23:1
**handing** 28:16, 29:12
**He'll** 54:25, 55:1
**Head** 6:31, 7:22, 29:19
**Health** 6:17, 6:21, 22:11, 49:9, 49:10
**hear** 8:23
**Hearings** 52:14, 53:7
**held** 25:23
**hereby** 25:22, 58:7
**herein** 41:22
**Highland** 1:45, 2:43
**HILLSBOROUGH** 56:4, 57:4
**hindering** 37:2
**Hold** 26:17, 46:10
**holder** 24:24, 26:20
**holders** 34:13
**holding** 36:14, 36:17, 41:18
**Holdings** 1:8, 1:11, 1:18, 1:20, 6:39, 19:8, 19:9, 24:21, 24:22, 26:19, 27:24, 30:24, 31:13, 42:17, 42:18, 44:6, 44:7, 53:8,

**Concordance**

58:2
**home** 6:32, 29:20
**Honestly** 9:14, 22:17, 30:1
**hostile** 45:4


**< I >**
**idea** 24:12, 24:16, 30:7
**identification.** 8:5, 8:25, 9:19, 10:5, 11:23, 12:8, 12:22, 13:9, 13:24, 14:25, 15:13, 15:25, 16:22, 17:9, 18:7, 19:2, 19:22, 21:13, 22:7, 23:6, 28:20, 29:15, 29:22, 31:21, 32:15, 54:4
**Identity** 45:13, 50:9, 50:21, 51:3, 51:20, 51:22
**IED** 38:23
**II** 1:11, 1:20, 19:9, 22:10, 42:18, 44:7, 58:3
**III** 1:38, 2:11, 3:2, 7:9, 7:19, 56:10, 57:9, 58:7, 58:30
**ILF** 49:8, 49:11
**immediate** 29:2
**inappropriate** 52:5
**Inc.** 4:25, 10:8
**included** 12:18, 13:5, 13:16, 15:7, 15:20, 16:7, 17:3, 17:16, 18:13
**including** 36:2, 45:11
**income** 30:13, 30:15
**incomplete** 12:12
**incorrect** 43:11
**Indemnity** 5:21, 15:10, 15:19
**independent** 50:2
**indicated** 26:18, 28:9, 28:11, 36:13
**indicates** 53:24
**indicating** 20:22, 27:3
**Indirect** 49:6
**individual** 28:10, 32:21, 48:1
**individually** 11:6
**initialed** 16:12
**Inn** 6:46, 53:23
**insiders** 37:7
**insolvency** 34:5, 34:9
**insolvent** 37:10, 37:11, 37:16, 37:17
**instructions** 39:20
**Insurance** 22:10, 36:3, 36:10

**integral** 49:9
**intention** 37:1
**interest** 50:21, 51:3, 51:22
**interested** 57:16
**Interests** 50:9, 51:20
**interpose** 50:10
**interrupt** 25:18
**intolerable** 35:23
**investigated** 35:24
**involving** 52:12
**IRR** 54:1
**ISRAEL** 2:24, 46:14, 46:19
**issue** 23:25
**issues** 6:31, 29:5, 29:19
**it'll** 20:17, 21:9, 22:1
**itself** 23:12, 48:23, 50:24, 52:22


**< J >**
**Jacksonville** 2:29
**jammed** 12:14
**Jay** 4:12, 16:11
**JEAN** 1:48, 56:8, 56:19, 57:6, 57:22
**Jeffrey** 1:17, 2:41, 5:44, 6:9, 19:7, 58:5
**Jersey** 1:27, 19:12
**job** 7:20
**John** 6:43, 29:4, 30:3, 32:10, 33:2, 34:5, 34:7, 46:8, 47:10, 47:25, 48:4
**Jointly** 1:13
**Judicial** 31:11
**jump** 20:16
**jwarren@bushross.com** 2:48


**< K >**
**keep** 52:8
**Keith** 2:3, 23:19, 55:2
**keithtappleby@icloud.com** 2:8
**Kevin** 6:13, 21:17
**Kim** 2:24, 46:13, 46:14
**kind** 14:17, 20:17
**kisrael@mcglinchey.com** 2:35
**knowledge** 32:3, 32:4, 32:7, 32:19, 34:4, 34:9, 34:23, 43:9, 43:15, 44:1, 44:9, 44:10, 51:18, 52:11, 52:16, 53:1, 54:10, 58:9

**KORHN** 1:38, 3:2, 6:13, 7:7, 7:9, 7:15, 7:19, 7:21, 8:7, 9:2, 9:22, 10:8, 11:25, 12:11, 21:18, 21:19, 23:1, 24:8, 49:5, 56:10, 57:9, 58:7, 58:30


**< L >**
**L.** 2:21
**label** 14:5
**LARGE** 1:50, 56:9, 56:20
**Larry** 4:13, 9:4
**last** 16:9, 18:22, 23:22, 52:14
**Law** 2:4
**layman** 10:18
**learn** 29:4
**learned** 29:10
**learning** 28:25
**Leases** 4:37, 12:13, 12:17
**legal** 46:5, 51:14
**legally** 46:6, 46:8, 48:19, 48:21
**length** 35:10, 37:22, 45:3
**Leon** 31:11
**Letter** 4:11, 6:15, 6:19, 9:3, 22:9, 24:8, 24:10, 36:12
**leveraged** 35:21, 36:25, 37:6
**liabilities** 42:22, 43:10
**liability** 45:4
**Licenses** 4:42, 12:24
**lieu** 35:12, 37:24, 41:14, 44:20, 45:5
**Life** 6:16, 6:20, 22:10, 49:13
**Limited** 1:9, 1:12, 1:19, 1:20, 6:40, 19:9, 30:25, 31:14
**LINE** 21:16, 24:18, 24:20, 25:6, 58:11
**liquid** 38:21
**Liquidating** 1:17, 6:7, 19:8, 19:25, 33:17
**listed** 52:14
**lists** 27:9
**litigation** 53:14
**living** 29:6, 50:3
**LLC** 4:32, 10:1
**loans** 32:20, 53:20
**locate** 24:3
**located** 25:24
**locations** 29:5
**long** 21:20
**look** 14:17, 21:8, 27:6, 33:21,

**Concordance**

35:14
**looking** 20:21, 27:7, 27:17, 42:8
**looks** 6:25, 12:12, 16:11, 22:13, 22:18, 23:10
**losses** 45:9, 45:15
**lot** 7:15
**LP** 24:21, 24:22, 27:24

**< M >**
**M.** 1:48, 56:8, 56:19, 57:6, 57:22
**maintained** 38:25
**Management** 4:25, 5:5, 5:11, 10:8, 13:11, 13:21
**Manager** 17:15
**Managing** 5:33, 17:6
**mark** 8:19, 31:19
**market** 37:22
**Matters** 8:10
**Mcglinchey** 2:12, 2:26
**mean** 11:8, 17:17, 18:21, 21:20, 21:25, 25:18, 28:6, 30:17, 39:9, 49:25, 51:13, 52:3, 52:7, 52:9, 54:15, 54:17
**meaning** 34:25, 41:19
**means** 25:2
**Melrose** 2:5
**member** 51:2
**memory** 26:8
**mentioned** 20:16
**merger** 1:29, 8:1, 19:13
**method** 35:13
**MIDDLE** 1:2, 38:19
**million** 9:22, 26:17, 30:4, 30:13, 34:24, 35:7, 37:20, 37:21, 37:23, 38:20, 39:10, 39:21, 39:25, 40:3, 40:6, 40:14, 40:19, 40:21, 41:9, 41:13, 41:14, 42:14, 43:3
**mind** 7:17, 8:9
**minimum** 38:21
**minute** 52:21
**MLR** 25:6, 36:14, 38:3, 38:8, 38:22, 38:25, 39:2, 39:5, 40:4, 40:8, 40:23, 41:9, 41:17, 42:21, 43:23, 51:8, 51:23
**moment** 20:11, 20:18
**moments** 36:11
**Money** 6:31, 29:19, 39:15
**monthly** 30:14

**months** 18:22
**Mortgage** 4:31, 12:3, 27:8
**motions** 50:12
**move** 48:9, 52:6
**moved** 48:14, 48:17, 49:20
**MS** 46:14, 46:15, 46:19, 46:20

**< N >**
**name** 7:18, 9:11
**named** 14:6, 32:9
**National** 1:25, 1:26, 1:35, 3:4, 4:7, 5:45, 6:5, 6:10, 7:25, 11:5, 19:10, 19:11, 19:24, 33:12, 33:16, 37:13, 42:12, 58:5
**Nebraska** 29:7
**necessary** 49:9
**need** 48:7
**needs** 49:2
**net** 43:3
**New** 1:27, 7:17, 19:12
**News** 6:30, 28:23, 29:25
**newspaper** 28:10
**NO.** 1:8, 1:11, 1:14, 1:23, 5:43, 6:8, 9:7, 9:11, 18:8, 18:11, 24:23, 24:25, 25:4, 25:19, 26:5, 27:22, 27:25, 32:19, 34:20, 39:16, 56:22, 58:11
**Non-disturbance** 5:17, 15:3
**nor** 57:14, 57:15
**North** 1:45, 2:27, 2:43, 53:23
**NOTARY** 1:49, 56:9, 56:20
**Note** 4:17, 9:21, 9:25, 11:9, 27:8
**noted** 30:17, 44:18
**nothing** 7:6, 7:11
**Notice** 4:5, 8:1, 8:20, 20:19, 20:20, 20:23, 33:9, 33:12, 33:20, 35:16, 38:12, 42:7, 52:21
**notify** 34:18
**nreid@mcglinchey.com** 2:34
**numbered** 33:21
**Numbers** 4:13, 4:20, 4:26, 4:34, 4:38, 4:44, 5:7, 5:12, 5:18, 5:22, 5:26, 5:30, 5:34, 5:38, 23:23
**Nursing** 4:32, 6:32, 9:10, 10:1, 12:18, 27:17, 27:20, 29:20, 39:22, 41:11, 42:15, 47:9, 47:11, 47:22, 48:2, 48:3, 48:5,

49:11, 50:1, 50:16, 51:9

**< O >**
**OATH** 3:7, 56:1
**objection** 48:18, 48:22, 50:11
**obligated** 10:22
**obligation** 36:20
**obligations** 10:23, 41:22, 51:6, 51:7
**obtain** 35:19
**offer** 49:13
**offhand** 9:11, 17:13, 21:20, 22:25, 26:5, 33:4
**Office** 25:24, 36:2, 36:10
**Officer** 5:37, 17:21
**official** 56:13
**OIR** 21:16, 24:14, 36:12, 36:15, 36:22, 52:12
**OIR"** 36:3
**once** 13:3, 25:8
**One** 12:12, 12:15, 14:3, 14:4, 20:22, 23:2, 28:24, 30:1, 31:25, 42:19, 46:10, 51:1, 53:19
**one.** 27:22, 30:2, 36:8, 39:25
**ones** 20:22, 33:10
**operate** 50:18
**operated** 49:8
**opinion** 51:14
**opposite** 51:4, 51:5
**orchestrated** 36:25
**order** 30:14, 48:16, 50:12
**ordering** 55:2
**original** 13:16, 20:6
**others** 37:4
**otherwise** 16:9, 40:10
**outlined** 39:18
**outlines** 10:14
**Oversight** 6:17, 6:21, 22:11
**owed** 30:4
**own** 48:4
**owned** 34:6, 36:21, 47:2, 48:1, 49:8, 50:16
**owner** 33:5
**owners** 32:21
**ownership** 35:21, 36:21, 47:10
**owns** 47:6

**Concordance**

**< P >**
p.m. 1:42, 55:7
package 10:12, 12:18, 13:5, 13:17, 15:8, 15:20, 16:7, 17:4, 17:16, 18:14, 18:20
PAGE 3:5, 4:3, 5:3, 6:3, 8:9, 12:12, 16:9, 21:4, 33:21, 33:22, 34:1, 38:17, 44:12, 52:15, 52:19, 54:19, 58:11
PAGE/ERRATA 3:9, 58:1
pages 54:18, 58:8
paid 37:23, 38:23, 44:4
Paragraph 26:21, 35:18, 36:5, 36:24, 38:1, 39:3, 39:7, 41:16, 41:25, 42:12, 42:20, 42:24, 43:22, 44:1, 47:18
pari 46:1, 47:17
Parkway 2:27
part 24:14, 27:3, 39:12, 40:4, 52:5
parties 14:17, 39:19, 45:10, 45:13, 57:13, 57:14
Partner 5:33, 17:6, 17:15
Partnership 1:9, 1:12, 1:19, 1:21, 6:40, 19:9, 19:10, 30:25, 31:14
parts 49:9
party 10:22, 43:16, 44:8, 53:15
pay 41:13
paying 43:24
penalties 58:25
percent 9:14, 26:13
perjury 58:25
Permits 4:42, 12:24
person 10:15
personal 40:9
personally 56:10
persons 45:10, 45:13
PHONE 2:7, 2:16, 2:30, 2:31, 2:45
PLACE 1:44, 53:8
placed 35:22, 35:24
PLAINTIFF'S 4:1, 5:1, 6:1
Plaintiffs 2:9
pleadings 32:8
Please 21:3, 31:25, 48:5, 55:5
pled 32:5
pledge 26:14, 26:16
pledged 26:7, 26:11, 38:25
PLLC 2:12, 2:26

pm 6:28
point 7:16, 28:1, 49:1
POLLAN 2:21, 46:15, 46:20
portion 12:15, 38:23
position 39:14, 39:24, 40:2, 40:5, 40:12, 40:22, 41:7, 41:11, 44:3, 47:12, 48:11, 52:2, 53:5
possible 36:1
Post-closing 5:29, 16:18, 17:3
potential 36:1
pre-approval 35:20, 36:8, 36:20
preceding 58:8
preparation 19:17
prepared 53:25
PRESENT 2:39
presented 54:11
President 7:23
pretty 18:21, 49:25
previously 28:9
Price 4:12
principal 1:25, 19:11, 47:3, 47:13, 47:14, 48:2, 48:6
printout 6:42, 28:16, 29:17, 32:13
prior 14:4, 18:17
Pro 1:23, 5:42, 6:8
probably 27:8
problems 6:26, 28:3, 28:7
proceeding 19:5, 35:25
proceedings 52:17
profit 1:28, 19:12
Promissory 4:17, 9:21, 9:25, 27:8
properties 50:4
property 37:21, 43:4, 50:16, 53:18
provided 37:25, 40:6, 42:14, 45:2, 49:10, 50:2, 50:15, 50:16
Provider 24:21
providing 10:15, 44:19, 45:19, 50:5
PUBLIC 1:49, 56:9, 56:20
purpose 10:11, 22:18, 34:6, 37:2
purposely 50:24
pursuant 41:23
put 39:15

**< Q >**

question 16:8, 23:20, 27:11, 31:23, 38:14, 40:24, 41:3, 41:5, 42:2, 42:11, 43:6, 48:13, 49:18, 49:24, 51:11, 51:12, 51:21, 51:24, 53:12, 54:7, 54:14
Questions 11:5, 21:3, 54:21, 54:22, 54:23, 54:24
quick 8:17

**< R >**
R-E 24:20
raise 7:2
rather 49:14, 52:15
RE 1:6, 6:9, 6:36, 6:42, 25:5, 32:9, 58:2
read 14:11, 21:21, 28:22, 28:24, 39:3, 49:14, 52:15, 54:25, 55:1, 58:8, 58:25
reading 30:18
Real 7:22, 8:17, 36:8, 36:21, 53:18, 53:20
really 20:10, 51:14
REASON 17:14, 18:12, 26:10, 27:17, 49:18, 58:11
reasonable 35:10, 45:3, 45:21
reasonably 37:8, 37:15, 38:2, 39:4, 40:13, 40:22, 40:25, 41:8, 41:12
recall 9:8, 9:14, 22:17, 22:23, 25:13, 28:14, 29:2, 29:9, 30:1, 30:2, 30:17, 33:4, 33:5, 47:10, 48:4
receipt 39:19
receive 37:8, 37:15, 38:2, 39:4, 39:21, 40:13, 40:22
received 40:17, 40:18, 40:21, 40:25, 41:8, 41:12
receivership 36:1
receiving 41:9
recess. 20:14, 49:3
recognize 9:23, 10:8, 11:25, 12:10, 12:25, 13:13, 14:1, 15:4, 15:15, 16:2, 16:24, 17:11, 17:21, 19:14, 20:3, 21:19, 22:12, 23:8, 23:11, 29:24, 54:7
recognizes 50:22
recollection 22:14, 24:25

**Concordance**

**record** 7:17, 7:18, 8:17, 26:9, 57:10
**record.** 8:18, 12:1, 21:5
**recover** 46:23
**reduced** 35:11
**refer** 20:10, 20:12, 38:17, 50:11
**reference** 22:20, 27:12, 27:18, 27:20, 35:16
**referenced** 24:17, 26:3, 26:25, 32:2
**references** 21:25, 24:20, 25:3, 25:14
**referencing** 44:6, 47:23, 52:18
**referred** 24:9, 39:13
**referring** 27:14, 33:23, 40:17, 47:8, 52:20, 52:21
**refers** 26:17, 38:14, 38:19, 47:19
**refinance** 44:19, 45:4
**refinanced** 35:11, 44:21
**refinancing** 45:20
**regards** 42:13
**Regulation** 36:3, 36:10
**regulatory** 35:20, 36:7
**related** 26:15, 28:3, 36:14, 53:8
**relates** 47:17, 52:17
**relative** 57:12, 57:14
**relatively** 22:20
**Releases** 5:6, 13:12
**relevant** 9:25, 12:16
**relied** 25:15
**remember** 11:11, 29:25
**rendered** 37:11, 37:17
**Rents** 4:37, 12:13, 12:17
**repayment** 10:23
**repeat** 27:10, 42:9
**Report** 6:46, 34:12, 53:22, 57:8
**REPORTED** 1:48
**Reporter** 3:8, 7:2, 7:8, 18:1, 18:4, 54:22, 54:24, 55:1, 55:4, 56:8, 57:1, 57:7
**reports** 22:19
**Representative** 1:37, 3:3, 7:25, 18:16
**Request** 25:7, 53:17
**requested** 54:8
**required** 25:25, 35:20, 36:7, 36:19, 38:21, 53:19
**requirement** 36:15, 51:23
**requirements** 51:8
**requiring** 30:14

**Reserve** 25:7
**reserves** 38:21
**residents** 35:22, 37:3, 38:23, 49:11, 50:2, 50:4
**response** 8:1, 28:25, 29:3, 41:24, 42:13, 43:12, 43:25
**responsibility** 36:15, 45:10
**rest** 49:14
**restate** 41:5
**retirement** 6:27
**review** 8:12, 18:17, 18:19, 25:16, 33:1
**reviewed** 19:17
**reviewing** 54:18
**rights** 11:13, 11:16
**risk** 35:23
**Ross** 1:44, 2:42
**RPR-CP** 1:48, 56:8, 56:19, 57:6, 57:22
**Rule** 1:34, 3:4, 4:6, 8:2, 33:12
**Ryan** 9:5, 9:6

**< S >**
**S.** 2:11
**saw** 28:13, 28:15
**saying** 40:2, 40:16, 40:18, 43:18
**says** 25:21, 26:22, 42:20, 43:19, 47:1, 51:20
**scan** 12:15
**Schedule** 8:10
**scope** 51:17
**seal** 56:13
**searching** 26:14
**Second** 26:21, 31:10, 31:25, 42:19, 44:13, 46:10
**Section** 8:11, 22:11, 26:2, 26:23, 27:18, 34:25, 41:19, 41:23, 44:12
**secure** 39:1
**secured** 37:21, 43:3
**Security** 4:31, 12:3
**seek** 35:19, 36:7
**seen** 8:7, 9:12, 28:10, 28:23, 32:17
**sell** 50:6, 50:18
**Senior** 7:23
**sense** 20:18, 21:9, 48:14, 51:6, 51:25
**sent** 36:12

**separate** 51:2
**September** 20:2
**Service** 25:6, 34:12, 50:5
**Services** 6:38, 30:23, 31:13, 34:15, 50:2, 50:15
**Seventh** 32:11, 49:5
**SHEET** 3:9, 58:1
**shoes** 46:7
**show** 27:19
**shows** 14:17
**shut-down** 36:1
**sic** 10:21
**side** 38:18
**sign** 16:15, 55:1
**SIGNATURE** 3:9, 16:10, 23:3, 23:12, 23:15, 24:18, 58:1
**signed** 22:23, 23:13, 24:11, 25:8, 25:10
**signing** 25:13
**similarly** 14:11
**simple** 51:21
**simply** 52:15, 54:7
**sir** 23:21
**situation** 45:4
**Sixth** 48:9
**sizable** 53:21
**skilled** 49:10
**Smith** 4:13, 9:4
**solemnly** 7:4
**solution** 44:19, 45:19
**somehow** 12:15
**somewhere** 40:9
**Sorry** 8:22, 18:3, 18:10, 25:18, 31:25, 46:21, 52:19, 52:23
**sort** 20:10
**sounds** 40:18
**source** 14:3, 39:11, 40:10
**sources** 39:17
**South** 2:5, 2:13
**speakerphone** 2:22, 2:25
**speaking** 10:21
**speaks** 48:22
**special** 34:6
**specific** 28:6, 30:8
**specifically** 29:2, 33:5
**speculating** 17:18, 18:15
**speculation** 17:19, 52:4
**spent** 7:15
**stack** 27:7
**Stafford** 2:12, 2:26

**Concordance**

standard 53:19
start 39:9
starting 7:17
STATE 1:50, 6:25, 6:38, 30:22,
    30:24, 31:12, 36:2, 36:15,
    37:14, 56:3, 56:9, 56:21, 57:3
stated 48:18, 58:26
statement 26:1, 28:14, 39:18,
    44:15, 44:25, 46:2, 47:1,
    50:21
statements 30:15
States 1:1, 32:11, 35:18, 36:24,
    38:4, 38:20, 45:7
stating 7:18
Statute 25:14, 34:25, 35:4
Statutes 26:2, 41:23
statutory 38:21
stenographically 57:8
stop 21:3
story 6:30, 21:7, 29:18, 29:25
straightforward 49:25
Street 53:24
strike 48:14, 48:17, 49:21, 50:12
structure 10:14
stuff 52:9
sub 52:14
Sub_landry_00001057 4:44
Sub_landry_00001062 4:45
Sub_landry_00001063 4:27
Sub_landry_00001073 5:22
Sub_landry_00001080 5:23
Sub_landry_00001091 5:13
Sub_landry_00001103 5:14
Sub_landry_00001104 5:8
Sub_landry_00001110 5:9
Sub_landry_00001111 5:18
Sub_landry_00001123 5:19
Sub_landry_00001158 5:30
Sub_landry_00001162 5:31
Sub_landry_00002828 4:34
Sub_landry_00002854 4:35
Sub_landry_00002855 5:26
Sub_landry_00002859 5:27
Sub_landry_00010189 4:39
Sub_landry_00010199 4:40
Sub_landry_00018782 4:20
Sub_landry_00018788 4:21
Sub_laundry_00001072 4:28
Subject 8:10, 21:16, 25:5, 25:6,
    35:11, 35:25, 37:24, 41:14,

44:20, 45:4, 53:18
submit 18:24, 30:14
Subordination 5:5, 5:11, 5:16,
    13:11, 13:21, 15:2
Subsequent 11:12
subsidiary 1:26, 19:11, 49:7
substantially 43:4
successor 1:28, 7:25, 19:12
suffer 45:15
suffered 45:8, 45:18, 45:23
sufficient 48:19, 48:21, 49:22
suggest 20:9, 50:22
Suite 2:14, 2:28
supervision 35:24
swear 7:4
sworn 7:10, 30:14, 56:11


< T >
T. 2:3
talked 24:1
taxes 30:4
tenants 50:1, 50:15
term 38:9, 38:14, 39:1
terms 10:18, 37:22, 42:4, 42:5,
    42:6, 44:18, 45:21, 48:16
testified 7:12, 30:22, 32:1
testify 7:10, 31:7, 52:2
testimony 7:4, 32:6, 57:10
text 21:21, 50:21
themselves 49:23
thereof 50:1
Third 4:5, 6:5, 19:24, 33:11,
    33:16, 44:23
third-party 45:3
thoroughly 18:22
though 16:12, 51:1, 51:25, 53:5
three 20:10, 20:17, 20:24, 23:22,
    35:15
title 7:20, 8:10, 9:9, 39:12, 39:14,
    39:15, 39:16, 40:3, 40:6
titled 14:12, 29:19, 53:23
today 7:24, 8:12, 18:17, 19:18
together 7:16
took 44:14
top 24:8
topics 52:5
total 42:21, 43:9
tough 22:1
towards 27:7

transaction 35:8, 35:9, 35:10,
    37:1, 37:6, 37:11, 37:16,
    37:23, 39:18, 43:16, 44:8,
    44:17, 45:3, 53:14
transactions 37:9
transcript 57:9
Transfer 34:24, 38:3, 38:8, 39:2,
    39:6, 40:23, 41:9, 41:17,
    42:21, 43:23
transferred 38:24, 40:14
transfers 41:21, 41:22
treated 51:1
Trey 6:13, 21:18
trouble 28:12
true 13:3, 13:15, 20:5, 51:5,
    54:11, 57:10, 58:27
Trustee 1:18, 6:7, 19:8, 19:25,
    25:24, 33:17, 46:7, 48:14,
    49:20
truth 7:5, 7:6, 7:10, 7:11
trying 27:13, 47:16
twice 48:14, 49:20
two 43:15, 50:11
types 51:8


< U >
Uameribank 35:19
ultimately 35:25, 50:4
unaware 44:3
unclear 41:3
undercapitalized 37:12, 37:18
Underneath 25:20
understand 40:1, 43:18, 46:6,
    47:16
understanding 40:12
unit 51:1
United 1:1, 32:11
University 6:32, 6:47, 28:3,
    28:12, 29:19, 30:25, 31:14,
    35:22, 50:25, 53:9, 53:23
unsecured 41:18, 42:16
USAB 38:19, 39:1, 39:2, 40:23,
    41:9, 41:17, 42:21, 43:23
Usameribank 1:29, 4:33, 8:1,
    19:13, 21:18, 24:22, 25:24,
    26:20, 34:24, 38:3, 39:5,
    53:25
uses 26:17

**Concordance**

**< V >**
**v.** 1:24
**value** 34:23, 35:6, 35:8, 35:12, 37:9, 37:15, 37:25, 38:2, 39:5, 40:13, 40:23, 40:25, 41:8, 41:12, 42:22
**various** 39:19, 47:4
**verification** 40:8
**verifying** 26:12
**VERNON** 1:38, 3:2, 7:9, 7:19, 56:10, 57:9, 58:7, 58:30
**version** 23:13
**versus** 6:39, 14:4, 19:10, 30:24, 31:13
**via** 2:22, 2:25
**Vice** 7:23
**Village** 6:32, 6:47, 28:3, 28:12, 29:19, 30:25, 31:14, 35:22, 50:25, 53:9, 53:23
**violation** 30:13
**VNB_071916** 5:34
**VNB_071959** 5:35
**VNB_071960** 5:39
**VNB_072030** 5:39
**VNB_072033** 4:14
**VNB_072047** 4:14
**voluminous** 54:14
**vs** 5:44, 6:9, 58:5


**< W >**
**W.** 1:17, 2:41, 5:44, 6:9, 6:43, 32:10, 33:2, 58:5
**wages** 30:5
**Wait** 52:21
**Warren** 1:17, 2:41, 5:44, 6:9, 19:7, 49:1, 58:5
**website** 29:18
**West** 2:5, 32:12
**Westlaw** 6:42, 32:13
**WFLA** 6:30, 29:18
**what-have-you** 25:14
**whatever** 24:17, 48:18
**whether** 11:19, 12:25, 13:12, 14:1, 15:3, 15:15, 16:2, 16:24, 17:11, 19:14, 20:3, 21:18, 22:12, 22:23, 23:8, 28:22, 29:24, 32:17, 34:13, 40:8, 40:24

**whole** 7:6, 7:10
**wholly-owned** 49:7
**WILKES** 1:48, 56:8, 56:19, 57:6, 57:22
**will** 7:5, 18:24, 26:23, 34:18, 35:13
**Wilson** 6:16, 6:20, 22:10, 24:13, 24:14, 24:16, 25:21
**withheld** 30:4
**within** 19:5, 34:25, 35:4, 41:19
**Without** 22:1, 26:12, 26:14, 43:25, 44:9, 44:10, 54:17, 54:18
**WITNESS** 12:2, 14:10, 16:13, 16:16, 31:22, 34:2, 42:4, 42:8, 46:22, 48:21, 51:15, 54:17, 56:13, 57:10
**WNT** 49:7, 49:8, 49:10, 50:23
**word** 14:11, 41:2
**words** 47:15, 48:6, 48:7
**work** 24:6
**worth** 43:4
**wrongdoing** 47:5
**www.flmb.uscourts.gov** 1:4


**< Y >**
**you-all** 46:13